## MILLER KORZENIK SOMMERS RAYMAN LLP

THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

September 10, 2020

*Via ECF*
Hon. LaShann DeArcy Hall, U.S.D.J.
U.S. District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** *Novagold Resources Inc. v. J Capital Research USA LLC*, No. 20-cv-02875-LDH-PK
*Request for Pre-Motion Conference: Rule 12(b)(6) Motion To Dismiss Complaint*

Dear Judge DeArcy Hall:

We represent Defendant J Capital Research USA LLC ("J Capital"). We write to request a pre-motion conference in anticipation of a motion to dismiss the Complaint of Plaintiff Novagold Resources Inc. ("Novagold") for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Novagold is a publicly traded company seeking investors in a future gold mining operation in Alaska. [1] On May 28, 2020, J Capital published a report ("Report") analyzing "publicly available information" and voicing doubts over and challenging the Novagold mining operation's prospects. [2] Novagold responded publicly to the Report's criticisms, but it went one further: suing J Capital for defamation, and mischaracterizing the Report as a "scheme" to intentionally sink its stock. Complaint ¶1.

J Capital's motion will show that all of the statements that Novagold challenges are 1) pure statements of non-actionable opinion; 2) opinions based on disclosed fact (i.e., public documents cited in the Report); and/or 3) statements that are substantially true. None of them are actionable as defamation in New York. The "actual malice" pleading too is deficient. And, Novagold has not pleaded the special damages it must to sustain its "trade libel" claim. Days *before* the Report's release, Novagold's stock price saw a slide even more "precipitous" than the May 28 decline it alleges (Complaint ¶1). Nevertheless, the company has regained its alleged "market capitalization" and then some, despite the Report's continued availability.

*The Statements At Issue*

The Complaint alleges that the Report contains a series of "distortions" and "falsities . . . around three central themes." Complaint ¶20; *see id.* ¶¶21-40. But while Novagold first

---

[1] Complaint ¶10; *see also* Investors Q&A, NOVAGOLD, https://www.novagold.com/investors/questions/ (last visited Sept. 10, 2020).

[2] *See* Complaint ¶16; *see also* "NovaGold (NG US): The Pipe Dream," J CAPITAL, May 28, 2020, *available at* https://www.jcapitalresearch.com/novagold.html (last visited Sept. 10, 2020).

challenges the Report's statement that the company's management "misled investors" (Complaint ¶¶19, 21, 24), it omits the context of the Report that shows such statements are pure opinion. Second, while Novagold challenges the Report's contentions that the Donlin Gold project "is not feasible to put into production at any gold price" and that the Alaska gold deposit "is so remote and technically challenging that the mine will never be built" (*see* Complaint ¶¶19, 21, 25, 36), such statements are plainly non-actionable opinion and predictions about the future. Third, while Novagold challenges the Report's contentions that company insiders have "voted with their feet" and reduced their equity positions in the company (*see* Complaint ¶¶32, 34-35), such statements are opinion and/or substantially true.

*The Complaint Should Be Dismissed With Prejudice*

"In defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015); *accord N. Am. Olive Oil Ass'n. v. D'Avolio Inc.*, No. 16-CV-6986 (SJF)(ARL), 2020 WL 2079421 (E.D.N.Y. Apr. 30, 2020 ) ("*D'Avolio*"). *See also Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998). On a 12(b)(6) motion, a court may consider not only documents incorporated in the complaint by reference, but also documents "integral" to the complaint. *See, e.g.*, *D'Avolio*, 2020 WL 2079421, at *5; *see also Biospherics, Inc.*, 989 F. Supp at 749.

Novagold alleges libel under "New York common law." *See* Complaint at ¶¶48-57. New York has a heightened pleading standard in defamation actions. *See* CPLR § 3016(a) ("In an action for libel or slander, the particular words complained of shall be set forth in the complaint…."). A libel plaintiff must establish "(1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault, established by demonstrating either negligence or malice depending on the libeled party's status; (4) falsity of the defamatory statement; and (5) special damages or *per se* actionability." *Chau v. Lewis*, 935 F. Supp. 2d 644, 657 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014) (citations omitted).

Where, as here, the plaintiff is a public figure, it must demonstrate that the defendant acted with "actual malice" in connection with the alleged defamatory statements. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *see also Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1346 (S.D.N.Y. 1977) (publicly traded corporate plaintiff was public figure; complaint against financial report dismissed). To survive a motion to dismiss, a plaintiff's "actual malice" pleading must be plausible and supported by factual allegations. *Biro*, 963 F. Supp. 2d at 278-80. Novagold does not and cannot meet this "heavy burden." *Id.* at 278.

Assertions of opinion are "privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008). "[C]ourts will not strain to find defamation where none exists," and "[l]oose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable." *Dillon v. City of New York*, 261 A.D.2d 34, 38, 41 (1999) (citations omitted); *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 244 (1991). Courts "consider the content of the communication as a whole, as well as ... the over-all context in which the assertions were made [to] determine ... whether the reasonable reader would have

believed that the challenged statements were conveying facts about the libel plaintiff." *Mann*, 10 N.Y.3d at 276 (citations omitted). A statement of "pure opinion" is one accompanied by a recitation of the facts upon which it is based, or which does not imply that there are undisclosed facts unknown to the reader, and cannot be defamatory as a matter of law. *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986). Nor is a "substantially true" statement actionable "if its 'gist' or 'sting' is not substantially worse than the literal truth." *See, e.g.*, *Cummins v. Suntrust Capital Mkts., Inc.*, 649 F. Supp. 2d 224, 244 (S.D.N.Y. 2009), *aff'd*, 416 F. App'x 101 (2d Cir. 2011) (citation omitted).

New York's Court of Appeals has made clear that the state constitution goes beyond the U.S. Constitution in defining and protecting statements of opinion. In *Immuno AG*, Judge Kaye concluded that "the writer's presumptions and ***predictions*** as to what 'appeared to be' or 'might well be' or 'could well happen' or 'should be' would not have been viewed by the average reader of the Journal as conveying actual facts about plaintiff." 77 N.Y.2d at 255 (emphasis added). Likewise, stock analyst reports, which like the Article contain predictions from facts they disclose, are non-actionable opinion. *See, e.g.*, *Cummins*, 649 F. Supp. 2d 224 (S.D.N.Y. 2009).

A plaintiff alleging trade libel, meanwhile, "*must* establish that the publication of the false material was a substantial factor in inducing others not to have business dealings with it." *Penn Warranty Corp. v. DiGiovanni*, 10 Misc. 3d 998, 1003 (Sup. Ct. N.Y. Cnty. 2005) (citations omitted). Additionally, trade libel requires proof of special damages. *Id.* at 1005.

Here, Novagold claims that the Report "had its intended effect on [the company's] stock price," and that its shares "fell nearly 9% from $10.65 at close of [May 27, 2020] to $9.71 at close on May 28, 2020," the day of the Report's release. Complaint ¶46. "And the price continued to fall over the next weeks, reaching a low of $7.99 on June 18, 2020." *Id.* However, the public record of Novagold's closing daily stock prices show that it *had already fallen* "precipitous[ly]" prior to the Report's publication. Complaint ¶1. In fact, the stock had seen an even more "significant" drop than what the Complaint alleges, earlier that same week of May 2020. Complaint ¶¶4, 46. On Tuesday, May 26, Novagold's trading price closed at $10.41 – 10 percent below the previous trading day's close of $11.57. At any rate, it has since surpassed the $10.65 price that Novagold alleges (Complaint ¶46) – closing at $11.41 on September 10. [3]

Quite apart from the Report comprising statements of opinion or of true facts, Novagold has made no special damages allegations beyond vague references to losing "a significant amount of its market capitalization" (*id.* ¶4) amidst "unusually high trading volume" (*id.* ¶46). The Court should not permit this publicly traded company to seize on a single critical report and blame it for the decrease in "market capitalization" it already was witnessing – especially not when it has regained its alleged loss and then some, despite the Report's continued availability.

|  | Respectfully, |
|---|---|
| cc: Counsel of Record by ECF | /s/David S. Korzenik |
|  | David S. Korzenik |

---

[3] *See* Novagold Resources Inc., MARKETWATCH, https://www.marketwatch.com/investing/stock/ng (last visited Sept. 10, 2020) (click "YTD" graph for prices on May 22, May 26, and Sept. 10).