**BAKER BOTTS** LLP

| | | |
|---|---|---|
| 2001 ROSS AVENUE | AUSTIN | LONDON |
| SUITE 900 | BEIJING | MOSCOW |
| DALLAS, TEXAS | BRUSSELS | NEW YORK |
| 75201-2980 | **DALLAS** | PALO ALTO |
| | DUBAI | RIYADH |
| TEL  +1 214.953.6500 | HONG KONG | SAN FRANCISCO |
| FAX  +1 214.953.6503 | HOUSTON | WASHINGTON |
| BakerBotts.com | | |

September 17, 2020

Hon. LaShann DeArcy Hall, U.S.D.J.
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Jonathan Rubenstein
TEL: 2149536594
FAX: 2146614594
jonathan.rubenstein@bakerbotts.com

> Re:   *NOVAGOLD Resources Inc. v. J Capital Research USA LLC*, No. 20-cv-
> 02875-LDH-PK; Plaintiff's Opposition to Defendant's Request for Pre-Motion
> Conference: Rule 12(b)(6) Motion to Dismiss Complaint

Dear Judge DeArcy Hall:

We write on behalf of NOVAGOLD Resources Inc. ("NOVAGOLD") in opposition to J Capital Research USA LLC's ("JCAP's") request for a pre-motion conference in anticipation of its filing of a motion to dismiss the Complaint for failure to state a claim under Rule 12(b)(6).

NOVAGOLD's claims arise from JCAP's May 28, 2020 publication of a demonstrably false and misleading report designed to create panic, manipulate NOVAGOLD's stock price, and allow JCAP and its confederates to profit on short positions (the "Report"). Compl. ¶ 1. Contrary to characterizations in JCAP's pre-motion letter, the Report goes well beyond "analyzing publicly available information" and merely "voic[ing] doubts" over the NOVAGOLD mining operation's prospects.  Ltr. at 2.  The Report relies on a web of distortions, outright falsehoods, and conversations with anonymous sources to question the integrity of NOVAGOLD's operations and accuse its management of deliberately and systematically misleading investors.  Compl. ¶¶ 20–35.  These serious—and unfounded—charges have caused NOVAGOLD significant and ongoing reputational and financial harm. Compl. ¶¶ 1, 4, 46–47.  What's more, JCAP published the Report to advance its own nefarious goals: nowhere in its pre-motion letter does JCAP dispute that it intended to and did profit from the precipitous drop in share price occasioned by its publication of the Report.

JCAP asserts that its statements are constitutionally protected opinions.  Tellingly, JCAP's pre-motion letter declines to quote the majority of the defamatory *fact* statements cited in NOVAGOLD's Complaint: the letter partially quotes headers into which NOVAGOLD groups defamatory statements but fails to make any mention of the 7-pages of fact statements quoted beneath those headings.  Compl. ¶¶ 21–35.  Indeed, JCAP glosses over one of the Report's most prominent and insidious falsehoods: that the Donlin Gold deposit will require $8 billion in initial capital to develop—a statement plainly contradicted by the very documents on which JCAP purportedly relied.  Compl. ¶¶ 21–22.  It is only by re-characterizing the complained-of statements and breezing past applicable standards that JCAP attempts to describe its basis for dismissal.  Such distortions raise no viable challenge to the Complaint.

***The statements at issue are actionable statements of <u>fact</u>.***

That JCAP has self-characterized the statements in the Report as opinions does not cloak them in the sort of sweeping constitutional protection it describes.  ***First***, analysis of

whether a statement is of fact or opinion extends beyond a cursory examination of the language couching the statement. The U.S. Supreme Court has explicitly rejected similar attempts by defendants to shield statements from liability, recognizing that the statement "'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar'" and that "[i]t would be destructive of the law of libel if a writer could escape liability for accusations of defamatory conduct simply by using, explicitly or implicitly, the words 'I think.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). New York courts apply a multi-factor test focused on the *context* of the statement to determine whether it is of fact or opinion, examining (1) whether the statement at issue has a precise meaning so as to give rise to clear factual implications; (2) the degree to which the statements are verifiable; (3) whether the full context of the communication in which the statement appears signals to the reader its nature as opinion; and (4) whether the broader context of the communication so signals to the reader." *Sandals Resorts Intern. Ltd. v. Google, Inc.*, 86 A.D.3d 32, 39 (N.Y. App. Div. 2011). In context, JCAP's statements appear as part of a purportedly fact-driven research piece—indeed, JCAP itself touted the Report as the product of "serious research and analysis." Compl. ¶ 1, 45.

**Second,** to the extent that any of JCAP's statements may properly be characterized as opinions they are still actionable if they rely on "facts" that are demonstrably false. *Silsdorf v. Levine*, 59 N.Y.2d 8, 10 (N.Y. 1983) ("The complained of statements, although constituting opinions and therefore entitled to a measure of constitutional protection, may nevertheless form the basis for a defamation claim, inasmuch as plaintiff has alleged that the facts set forth by defendants in support of their opinions are false."). For example, JCAP asserts that its statement that the Donlin Gold project "is not feasible to put into production at any gold price" is "plainly" a non-actionable opinion and is merely a prediction about the future. Ltr. at 2. Setting aside JCAP's characterization, and analyzing the statement in its proper context, it reads as one of fact because JCAP's conclusion—opinion or not—is built on false and misleading statements of *fact*: that the terrain is among the most inhospitable on the planet (Compl. ¶ 26); that the stream crossings require engineering work not supported by published reports (¶ 28); that NOVAGOLD could not barge enough diesel to operate the plant (¶ 29); that the planned power plant would be the largest in Alaska (¶ 30); and that the plant would increase electricity produced in that state by about 40% (¶ 30). Each of these statements—and many others to which the Complaint cites (¶¶ 21–24, 33–35)—is a verifiable fact and neither these factual inaccuracies nor the conclusions JCAP draws from them is entitled to the constitutional deference behind which JCAP attempts to hide. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 52 (1988) ("False statements of fact are particularly valueless; they interfere with the truth-seeking function of the marketplace of ideas, and they cause damage to an individual's reputation that cannot easily be repaired by counterspeech, however persuasive or effective"); *Milkovich*, 497 U.S. at 19 (protection does "not extend to a false statement of fact, whether it was expressly stated or implied from an expression of opinion").

### NOVAGOLD has adequately pleaded the requisite level of fault.

JCAP states as though it were a foregone conclusion that, because NOVAGOLD is a public figure, it must demonstrate that JCAP acted with "actual malice." However, as with JCAP's assertion that its statements are protected opinions, the requisite inquiry extends beyond JCAP's own say-so. A company is not per se a "public figure," even if it is publicly traded. *See Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 535 (E.D. Pa. 1999) (applying New York law and rejecting argument that plaintiff was a public figure based on its status as "one of the largest and most influential corporations in the world with one of the most actively traded stocks on the New York Stock Exchange."); *accord Mitre Sports Int'l*

*Ltd. v. HBO, Inc.*, 22 F. Supp. 3d 240, 250 (S.D.N.Y. 2014). The central question—one which JCAP fails even to raise in its pre-motion letter—is whether the plaintiff has voluntarily thrust itself to the forefront of the particular public controversy that is the subject of the complained-of speech. *See Mitre Sports*, 22 F. Supp. 3d at 252. JCAP has not shown that NOVAGOLD is a public figure: the pre-motion letter neither identifies a *public* controversy nor describes how NOVAGOLD injected itself into that controversy. *See Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263 (a public controversy is a "topic upon which sizeable segments of society have different, strongly held views").

And, in any event, NOVAGOLD has adequately pleaded that JCAP acted with actual malice. "Malice" includes both "spite or ill will" and knowledge of falsity or a reckless disregard for the truth." *Liberman v. Gelstein*, 605 N.E.2d 344, 349 (N.Y. Ct. App. 1992). NOVAGOLD alleges that JCAP's Report is an illegal "short and distort scheme,"(Compl. ¶¶ 1–4, 11–12, 16–18, 45–47), that its work is "deliberately indifferent to the truth" (¶ 12), and that it ignored readily-available facts contradicting its Report (¶¶ 11, 22–24, 27–30, 25) in order to "scare investors into selling NOVAGOLD stock so that JCAP could profit" (¶¶ 2, 45–46).

### *NOVAGOLD's trading records disclose substantial and continuing damages.*

JCAP concludes with the remarkable assertion—without citation to case law—that, because NOVAGOLD's share price had experienced drops prior to the Report and because the share price has since "regained its alleged loss," NOVAGOLD has failed to plead special damages and has therefore failed to plead a claim for trade libel. Special damages are those having pecuniary or economic value and it is a plaintiff's burden to plead those damages with "sufficient particularity to identify actual losses." *Enigma Software*, 194 F. Supp. 3d at 292. NOVAGOLD pleads that JCAP's action has caused loss of business (¶ 57), including by robbing it of a significant amount of its market capitalization (¶ 4) evidenced by market losses it observed upon publication of the Report (¶ 46). JCAP's primary argument, which points to trading activity before and after the Report to question the impact of the Report, is one of causation—an evidentiary issue not properly resolved at the pleading stage. Indeed, after further fact development, we believe the evidence will show that pre-Report declines in share price were caused by JCAP's (and its accomplices') own manipulative trading activities. Further, the pre-motion letter does not challenge that JCAP's actions constitute libel per se, which is alone sufficient to meet NOVAGOLD's requirement to plead damages for libel.

And JCAP's argument that NOVAGOLD cannot have been damaged because NOVAGOLD's shares have since surpassed the price at which they were trading prior to the Report is nonsensical. Since the publication of JCAP's Report, NOVAGOLD has consistently underperformed as compared to peer group stocks against which it had routinely *outperformed* prior to the publication of the Report: NOVAGOLD stock has been, and continues to be, undervalued as compared to its peers. That the entire industry has seen an increase in share price in the weeks and months since the Report *highlights* NOVAGOLD's ongoing damages and serves only to demonstrate the gain NOVAGOLD likely would have experienced had JCAP not issued its defamatory Report. JCAP's letter fails to identify any viable challenge to the Complaint; we respectfully ask that the Court deny JCAP's request.

Respectfully,
/s/ *Jonathan Rubenstein*
Jonathan Rubenstein