```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK

------------------------------X Docket#
NOVAGOLD RESOURCES INC.,       : 20-cv-02875-LDH-PK
               Plaintiff,      :
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
                               :
                               :
J. CAPITAL RESEARCH USA, LLC.  : September 30, 2020
               Defendants      : 10:07 AM
------------------------------X
```

    TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
         BEFORE THE HONORABLE PEGGY M. KUO
         UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


<u>**For the Plaintiff**</u>:          **Jonathan Rubenstein, Esq.**
                              **Jordan Kazlow, Esq.**
                              Baker Botts L.L.P.
                              2001 Ross Avenue
                              Ste 900
                              Dallas, TX 75201

<u>**For the Defendant**</u>:          **David Korzenik, Esq.**
                              **Terence Keegan, Esq.**
                              Miller Korzenik S
                              Sommers Rayman LLP
                              488 Madison Avenue
                              Suite 1120
                              New York, NY 10022


<u>**Transcription Service**</u>:      <u>**Transcriptions Plus II, Inc.**</u>
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  This is an Initial Conference in

2     the matter of NOVAGOLD Resources Inc. v. J Capital

3     Research USA, LLC, docket number 20-cv-2875.  Magistrate

4     Judge Peggy Kuo presiding.

5          Will the parties please state their

6     appearances, starting with plaintiffs?

7          MR. RUBENSTEIN:  Good morning, your Honor.

8          Jonathan Rubenstein on behalf of plaintiff,

9     NOVAGOLD Resources Inc., and with me is my colleague,

10    Jordan Kazlow.

11         MR. KORZENIK:  And on behalf of defendant, J

12    Capital Research, David Korzenik of Miller Korzenik

13    Rayman, and with me my colleague, Terence Keegan.

14         THE COURT:  All right.  Good morning, everyone.

15         So this is an Initial Conference, and it's an

16    opportunity for the parties to inform the Court a little

17    bit more about your respective cases, and then also to

18    set a plan for going forward.

19         Now I know that the defendants have asked for a

20    pre-motion conference before the district judge with

21    regard to a proposed motion to dismiss, and I believe

22    that is coming up in October, October 13th.  So Judge

23    DeArcy Hall will decide at that point whether the motion

24    can go forward, and in the meantime, defendant has

25    requested a stay of discovery, assuming that the motion

3

Proceedings

1    to dismiss goes forward.

2           I don't want to get too much into the weeds on

3    the motion to dismiss because that's for Judge DeArcy to

4    decide, but we may need to talk a little bit about what

5    that will entail because that will inform my decision

6    about whether to stay discovery, or let it go forward.

7           So Mr. Rubenstein, why don't you just start --

8    I understand that this is a defamation lawsuit in two

9    parts, one is defamation by libel, the other is trade

10   libel, both under New York Common Law.

11          I understand that the defamation at issue is

12   related to a report, and then also some Twitter -- some

13   Tweets.  And so you don't need to rehash the complaint,

14   but you can point out the important parts, and maybe a

15   little bit as to why you need discovery, and what kind of

16   discovery you're anticipating, okay?  Mr. Rubenstein, go

17   ahead.

18          MR. RUBENSTEIN:  (Audio interference).  As your

19   Honor pointed out yes, (audio interference) --

20          THE COURT:  Mr. Rubenstein, let me stop you

21   there.  I'm sorry.  Your phone line is cutting out.

22          MR. RUBENSTEIN:  Oh.  Oh, I'm sorry.

23          THE COURT:  It's uneven in terms of picking up

24   your voice and words.

25          MR. RUBENSTEIN:  Oh, I'm sorry, is it better

4

Proceedings

1  now?

2      THE COURT:  This is much better.

3      MR. RUBENSTEIN:  Okay.  Thank you, your Honor.
4  Sorry about that.

5      As you mentioned we have a sort of two causes
6  of action for libel, each of which arises under the same
7  set of facts.  This case is a clear short and distort
8  scheme.  My client, NOVAGOLD is a gold exploration and
9  mining company.  It's based in Canada but the gold assets
10  exist in Alaska.

11      The defendant, J Cap brands itself as a market
12  research firm, and its historical focus has been in the
13  tech sector, with a strong geographical focus on
14  companies based in China, or that do significant business
15  in China.

16      On May 28th, J Cap issued what it titled a
17  research report on my client, NOVAGOLD, and the report is
18  22 pages long, and nearly every sentence in the report
19  contains an either false or misleading statement of fact,
20  and many times both.  And these false and misleading
21  statements fall into three broad categories.  I'm not
22  going to go through all of the statements, but broadly
23  speaking, we're talking about allegations about how
24  NOVAGOLD has misled its investors, about costs of its
25  significant gold exploration and mining project in

5

Proceedings

1    Alaska, misrepresentation concerning the logistics of

2    building that mine, and false statements about company

3    insiders dumping shares of the company, and reducing

4    their equity in the company.

5         And when this report was released on May 28th,

6    NOVAGOLD shares tumbled, and they lost a substantial

7    amount of market share as the market reacted to the J Cap

8    report.

9         Now J Cap made no secret of the fact that it

10   had a short position in my client, but publishing

11   outright falsities about my client in order to push down

12   the stock price and cover a short is improper, and it's

13   illegal, and that's why we're here.

14        NOVAGOLD has been left with a muddied

15   reputation, to say the least, and forced to constantly

16   attempt to regain market's trust by showing that J Cap's

17   report was false, and misleading, and really nothing more

18   than a hit piece.

19        NOVAGOLD believes that this plan by J Cap to

20   create a report that was chock-full of falsities and

21   misleading statements, was -- and dump it on the market

22   in an attempt to cover a short position was in place for

23   many months, and that NOVAGOLD believes that the facts

24   will show that J Cap didn't act alone.

25        So with its damaged reputation, and a

6

Proceedings

1   significant amount of money already out-of-pocket on

2   account of the J Cap report, NOVAGOLD comes here to hold

3   it, and whomever was working with it, responsible.

4           So that's a bit about the background of the

5   case.  I'm happy to answer any other questions about the

6   background of the case if your Honor wishes.  Otherwise,

7   I can describe the type of discovery that we will be

8   seeking, at least in the outset.

9           THE COURT:  So I just have one question.  You

10  talked about J Cap's short position, and you said they

11  were open about it.  Can you just tell me a little bit

12  about how that information was conveyed?

13          MR. RUBENSTEIN:  So the report was published on

14  J Cap's website, and J Cap -- and it was on or around the

15  headline, made it clear that the company had a short

16  position in NOVAGOLD and then proceeded to release the

17  report.

18          THE COURT:  Okay.  Great.  Then please go ahead

19  in terms of what discovery you're anticipating.

20          MR. RUBENSTEIN:  Sure.  So at least at the

21  outset, your Honor, we would anticipate seeking discovery

22  on a handful of different topics.  We -- NOVAGOLD would

23  like discovery on how NOVAGOLD was identified as a target

24  for the report.  The third parties that either influenced

25  J Cap's decision to target NOVAGOLD, or worked with it to

7

Proceedings

1    create the report, or put the report in motion.

2            Discovery, of course, about whatever research

3    efforts that J Cap claims that it undertook to compile

4    the report, information concerning the -- J Cap's trading

5    of NOVAGOLD's securities, or any other related securities

6    in the industry that could have been put in motion

7    through this scheme.

8            Let's see.  The public -- let's see, the

9    publication of the actual report and the Tweets, your

10   Honor mentioned the Tweets, the online publication of the

11   defamatory statements, those were really more of the ilk

12   of republication of many of the statements that existed

13   in the report.  We would like some, you know, discovery

14   about who controls that method of publication of those

15   statements, which is to say Twitter, and their Twitter

16   account.

17           Those general categories come to mind, at least

18   at the outset of the discovery that we would like to seek

19   from J Cap.

20           THE COURT:  Okay.  So it sounds like part of

21   what you're trying to prove in your case is that it was a

22   scheme, and that it was deliberately published to drive

23   down the stock prices to the benefit of the defendant,

24   and that is one of the -- I forget which one of the

25   libels it is where it says if you are -- I guess the

8

Proceedings

1   definition by libel, if it's actual malice, then that

2   would be an element of --

3           MR. RUBENSTEIN:  Yes, but --

4           THE COURT:  -- that (indiscernible) --

5           MR. RUBENSTEIN:  Yes, that's exactly right.

6   And while we might -- and we do dispute whether actual

7   malice is appropriate in this case, and whether NOVAGOLD

8   is a public figure, the defendant certainly has made that

9   assertion, that the defendant is a public figure, and

10  that actual malice is required.

11          THE COURT:  Uh-hum.

12          MR. RUBENSTEIN:  And yes, and so I do agree

13  with your Honor's characterization with a slight tweak to

14  it, which is that it is NOVAGOLD's position that this

15  report was created with the intent to harm NOVAGOLD, to

16  harm NOVAGOLD's reputation in the industry, and the

17  natural byproduct of that for J Cap would be lowering the

18  price of stock which it would then use to cover its

19  position in product.

20          THE COURT:  Oh, okay.  I would've thought it --

21  your theory would be the other way around, that they're

22  trying to make money and in the process, they're hurting

23  your client's reputation, but you're saying the intent

24  was to harm the reputation, and the byproduct was to make

25  money.

9

Proceedings

1        MR. RUBENSTEIN:  Yes.  I assume we might be

2  talking about things that happen almost instantaneously

3  in time.

4        THE COURT:  Okay.

5        MR. RUBENSTEIN:  The first has to happen before

6  the second can happen.

7        THE COURT:  Okay.  And I wasn't sure if legally

8  it made a difference, which the intent was.  So I just

9  wanted to be clear about it.

10        MR. RUBENSTEIN:  Sure.

11        THE COURT:  All right.  So I think that's all I

12  have.  Mr. Korzenik, or Mr. Keegan, go ahead.

13        MR. KORZENIK:  Yes.  I'm going to try to speak

14  on my speaker phone, if that's not as clear, then please

15  tell me, and I'm going to go directly to the handset.

16        THE COURT:  So far so good.

17        MR. KORZENIK:  So far so good.  So there are

18  three points that I want to address, and one is the first

19  one is why cases that implicate First Amendment issues,

20  and in particular, the opinion defense which is a matter

21  of law, a matter of U.S. Constitution, but more

22  importantly, a matter of New York State Constitution, and

23  why that warrants a stay.

24        The second thing I wanted to do is I wanted to

25  look at some of the statements that they've put in their

10

Proceedings

1 letter, that they say are actionable, and your Honor is

2 going to see why they are matters of pure opinion.

3          And the third thing I wanted to discuss, and

4 I'm going to move it up front because it occupied most of

5 what my adverse colleague offered as his main pitch, this

6 idea of some kind of short conspiracy, I do -- most of my

7 work is media defense, and I've represented many news

8 organizations who claim that the -- and websites that do

9 financial reporting.

10          And in virtually every single one of them,

11 every single one of them in which a company claims that

12 they've been defamed by a news article, or by an analyst,

13 and seeking out an analyst website that we've acted for,

14 in everyone of them, they all insist that this is a

15 conspiracy of short sellers, and that claim is usually --

16 is almost -- not just usually, every time I've seen it,

17 is a canard.  It's total -- it's totally made up.  It's -

18 - and it's particularly --

19          When you look, for example, in the famous Enron

20 case, the main pitch that Enron made against Fortune

21 Magazine's writer, Bethany McLean, was that her main

22 source was Chanos, who was a short seller.  That's the

23 same thing with WorldCom, it's the same thing with that

24 famous case about the Big Short, Michael Lewis' book,

25 which I had some involvement with, where Mr. Chau, who

11

Proceedings

1    sold these CDOs sued them for -- sued the book publisher

2    in Michael Lewis, and the short seller, Eisman, and the

3    Court decided it was a matter of opinion.  But the big --

4    the claim that Chau was making was oh, they're short

5    sellers, they're short sellers.

6            In Seeking Alpha, where it just comes up all

7    the time, the claimants say exactly what Mr. Rubenstein

8    offered, and Judge Oetken, for example, in one argument

9    came up with this response by the Bank of the Internet

10   suing -- Seeking Alpha to try to find out what an

11   anonymous poster had said.  The anonymous poster

12   disclosed that he was short on BofI stock, and Oetken

13   said, well, if there really were a shorting conspiracy to

14   this stock, it would be somewhat odd to the posters

15   reveal that they're short the stock, and if it truly was

16   a conspiracy, you would think that they would hide that

17   information.  And in any event, he said I find it's too

18   attenuated, and he threw that out on a threshold motion

19   that involved a subpoena.

20           But what's interested, BOFI wanted to get the

21   name of the anonymous analyst in order to sue him or her,

22   and the Court not only didn't just stay it, it said they

23   can't get this discovery at all through Seeking Alpha, so

24   they couldn't sue.

25           So when First Amendment issues are implicated,

12

Proceedings

1  as they really here, when everything is so plainly matter

2  of opinion, and when it is a classic analyst report,

3  typical analyst report and evaluation of a company's

4  future projects, a bet or a prediction about its future,

5  which is based on publically-available materials, all

6  cited to in the complaint, and all cited to in the

7  report, that's opinion in its purest sense.

8         Now the thing that's also significant here is

9  in Biro, for example, versus Conde Nast, that was decided

10  in the Southern District by Judge Oetken, and D'Avolio

11  case decided in the Eastern District by Judge Feuerstein,

12  citing Biro, Biro says Rule 12(b)(6) not only protects

13  against the costs of meritless litigation but it provides

14  assurance to those exercising their First Amendment

15  rights, that doing so will not needlessly become

16  prohibitively expensive.

17         And court generally recognize that when a case

18  involves libel, when a case involves the First Amendment,

19  when it involves an opinion defense, which is a

20  constitutional matter, especially in New York under Amino

21  AG and Brian v. Richardson, those two cases actually make

22  it clear that New York's opinion defense, and its

23  definition of opinion is broader than that of the U.S.

24  Constitution, so that things that were considered in

25  Malkovich, which the plaintiff cites that were considered

Transcriptions Plus II, Inc.

13

Proceedings

1    to be factual, are deemed to be opinion under Judith

2    Kaye's decision of this New York Court of Appeals in the

3    Amino AG, and also in the Brian v. Richardson case.  They

4    look more broadly at the context of these things.

5         Analyst reports are predictions, and one of the

6    things Amino AG says is that writers' presumptions and

7    predictions as to what appeared to be, or what might well

8    be, or what could well happen, or should be, would not

9    have been viewed by the average reader of the journal.

10   That was a science journal as conveying actual facts

11   about the plaintiff.  And that rule applies are in the

12   commons case in which was cited, the analyst reports.

13        It applies to analyst reports as in the

14   Biospherics case, which basically is our case.  In that

15   case, the analyst group, Sugaree, which is the company,

16   is not up to the company's claims, but in that case, the

17   Court said the prediction of an analyst's opinion is not

18   actionable, however harmful it may be.

19        And Judge Daniels in the Chau case in the Big

20   Short case, he said yeah, of course opinions can be

21   harmful, but that doesn't make them actionable, and

22   that's what this plaintiff is trying to say.

23             THE COURT:  Can you focus on the discovery --

24             MR. KORZENIK:  So what --

25             THE COURT:  -- issue because these are --

14

Proceedings

1           MR. KORZENIK:  Yes.

2           THE COURT:  -- ultimate issues of whether the -

3 -

4           MR. KORZENIK:  Well, that is --

5           THE COURT:  -- dismissal of the case at all --

6           MR. KORZENIK:  -- the reason --

7           THE COURT:  So --

8           MR. KORZENIK:  Yeah.

9           THE COURT:  -- okay, so tell me what the

10 discovery issue is.

11          MR. KORZENIK:  Well, that is -- so the

12 discovery issue is this, and let's look at the topics

13 that they want discovery on.  The whole short business,

14 and trying to figure out who are people are, is an

15 invented story.

16          And note, here's the heading of our website,

17 "Be warned.  We are short-sellers.  We are biased.  We do

18 our best to find and present facts based on extensive

19 primary research, and using public resources, but we will

20 profit if these stocks decline in value.  We do not offer

21 advice.  We present our views."  So that falls right

22 into what Judge Oetken observed about the Seeking Alpha,

23 one of the --

24          THE COURT:  Can you give me the website,

25 because I can look it up right now, and follow along.

15

Proceedings

1      MR. KORZENIK:  For BOFI, it is actually --

2   there are several BOFI cases, but the one --

3      THE COURT:  No, no, not the case.  I'm looking

4   -- you were reading from your client's website.

5      MR. KORZENIK:  Oh, the website.  I'm sorry.

6   Yes.  If you go -- if your Honor goes to

7   www.jcapitalresearch.com and Terence, I think it's at the

8   home page.

9      MR. KEEGAN:  That's right, your Honor.

10   JcapitalReserach.com, when you access that website --

11      THE COURT:  I see it.

12      MR. KEEGAN:  You see a banner, and then --

13      THE COURT:  It says we are biased.  We go deep,

14   so that investors don't have to.

15      MR. KORZENIK:  Yes.

16      MR. KEEGAN:  Yes.

17      THE COURT:  Okay.

18      MR. KORZENIK:  So they're making clear that

19   their statements are - that they are shorts.

20      THE COURT:  Uh-hum.

21      MR. KORZENIK:  And so they're very open about

22   it.  So let's look at the statements that Mr. Rubenstein

23   highlighted, both in his letter, and his complaint.  He

24   said, "Oh, well we misled investors."  By the way, this

25   is just like the Sugaree case, Biosphere.

Proceedings

1      But look at the rest of the sentence, and then

2 look at the report.  It's about pipe dreams.  It's about

3 predictions.  It's about the future.  It's about a bet

4 that it won't succeed.

5      So here's the rest of the sentence, and this is

6 really instructive, "For the past 15 years, NOVAGOLD's

7 management team has systemically misled investors with,"

8 now listen, "subjective presentation of information about

9 a deposit so remote, and technically challenging that the

10 mine will never be built."  So that's a prediction, and

11 the rest of the report is basically is based on the

12 opinions of the writers about the "publicly-available

13 information" that they examined.  So what that is is pure

14 opinion.

15      Here's another one.  "The Donalin Gold

16 Project" --

17      THE COURT:  Well --

18      MR. KORZENIK:  -- is not feasible --

19      THE COURT:  So I'm sorry to cut you off because

20 I don't have --

21      MR. KORZENIK:  Yes.

22      THE COURT:  -- I didn't set aside a full hour

23 for this discussion, so I --

24      MR. KORZENIK:  Okay.

25      THE COURT:  And it's not for me to decide the

17

Proceedings

1   ultimate issue of whether this is, in fact opinion.  I

2   really need to focus on the discovery.

3          MR. KORZENIK:  Right.

4          THE COURT:  So can you please talk to the

5   discovery that Mr. Rubenstein has proposed, and tell me

6   why that shouldn't be allowed at this stage.

7          MR. KORZENIK:  Well, I think I did in the sense

8   that the whole idea that he wants to investigate who our

9   -- who might have been cited as to write this report, or

10  who might be involved in the report, or why we wrote it,

11  is utterly beside the point when it comes to opinion.

12  This case will be dismissed on that ground.

13         THE COURT:  Uh-hum.

14         MR. KORZENIK:  And the whole idea of a stock --

15  being short is not an impropriety.  And being a short

16  seller is not an impropriety, it is one of the important

17  functions of the market.  So his effort, which he focuses

18  on here to explore the short -- the motivation for the

19  article, is utterly beside the point and it's a waste of

20  time, and we don't have that kind of -- those types of

21  resources to spend on that kind of really fishing

22  expedition.

23         So what's going to happen though for us is if

24  the actionable statements are deemed to be a legitimate

25  basis for discovery, and they are not, they're opinion,

18

Proceedings

1  we're going to be spending huge amounts of time having

2  experts talk about whether it's "feasible to put into

3  production at any gold price because it's so remote and

4  technically challenging a mine to build", is that

5  something a jury should decide?  Should the jury be

6  asked, or should we have to get discovery on whether that

7  prognosis is right or wrong?

8             THE COURT:  Well, I didn't hear --

9             MR. KORZENIK:  They say (audio interference) --

10            THE COURT:  I'm sorry.  Again, I'm just trying

11  to --

12            MR. KORZENIK:  Yes.

13            THE COURT:  -- bring you back to the points

14  here.  Mr. Rubenstein is not asking -- that was not on

15  his list of discoverable items at this stage.

16            MR. KORZENIK:  Well, look --

17            THE COURT:  The items listed do not include the

18  expertise, it was information, and I can go through it

19  again if you want to know what to focus on, he said

20  information on NOVAGOLD identified this particular

21  plaintiff as a target --

22            MR. KORZENIK:  That's not (audio interference).

23            THE COURT:  -- and the third parties to work

24  together.  So can you just focus on those things, and --

25            MR. KORZENIK:  Yes.

19

Proceedings

1          THE COURT:  -- why it shouldn't be the subject

2    of discovery now.

3          MR. KORZENIK:  The subject of discovery that I

4    was raising was stuff that he had put into his initial --

5    you know, his statement about -- to us earlier in our

6    meeting about what discovery he wanted.

7          THE COURT:  Uh-hum.

8          MR. KORZENIK:  So I guess he's not interested

9    in those things, but --

10          THE COURT:  At this stge.  I asked him to tell

11    me what discovery --

12          MR. KORZENIK:  Oh.

13          THE COURT:  -- he wants now.

14          MR. KORZENIK:  So what I'm saying is that this

15    -- what he just raised has nothing to do, the reason that

16    we wrote the article has nothing to do with whether a

17    reasonable reader would view it as opinion or not under

18    New York's Constitutional definition of opinion because

19    if it is opinion, which can be decided on a reading of

20    the words by a judge, it's a root matter of law to be

21    decided by the Court, that discovery is not needed.

22          And that applies generally to this short

23    conspiracy.  We've disclosed, and he admits that we've

24    disclosed that we are short sellers, and there's nothing

25    wrong with that.

20

Proceedings

1        THE COURT:  Uh-hum.

2        MR. KORZENIK:  So the real question is why do

3   we have to spend time, and money, providing disclosure of

4   something that is irrelevant to the motion that we've

5   made, and really ultimately is not even a -- isn't going

6   to survive a Rule 12(b)(6) motion.  So those --

7        THE COURT:  So you're saying that the motion on

8   whether this is the issue, which you're going to pose in

9   the motion to dismiss of whether this is opinion, should

10  be decided just on the four corners of the alleged

11  statement and the complaint.  There should --

12       MR. KORZENIK:  That's correct.

13       THE COURT:  -- be no (audio interference)

14  information necessary to make that determination.

15       MR. KORZENIK:  That's correct.  He does not

16  need any of that, or nor do we, in order to ascertain

17  whether --

18       THE COURT:  Nor does Judge DeArcy Hall.

19       MR. KORZENIK:  -- (audio interference)

20  statement -- exactly.  And that's exactly what the Ammino

21  case, that's exactly what the Chau case, is what every

22  case on opinion says, is that you don't need any of this

23  stuff.  You do it on the basis of the four corners of the

24  complaint, and Judge Feuerstein in D'avolio says you look

25  at all of the documents in the complaint, and that a

21

Proceedings

1   reference that's incorporated by reference therein, and

2   that is the basis for terminating the action.

3              THE COURT:  Okay.

4              MR. KORZENIK:  And so I am pointing to the

5   general constitutional policy that when First Amendment

6   issues are implicated, and opinion is going to be the

7   dispositive case -- and by the way, even if he contends

8   that something might survive, why should we have

9   discovery about whether you need that horizontal drilling

10  across screens or not?

11             THE COURT:  He didn't say that --

12             MR. KORZENIK:  Why are we even having --

13             THE COURT:  -- as part of what he is requesting

14  in the discovery at this point.

15             MR. KORZENIK:  He did in his papers to us, but

16  if he's --

17             THE COURT:  Again, this is --

18             MR. KORZENIK:  -- just asking --

19             THE COURT:  I asked specifically what discovery

20  he wants now, and that was not on the list.  So --

21             MR. KORZENIK:  Right, but keep in mind that if

22  we needed to protect -- defend ourselves in this case,

23  and prove that our opinions are good ones, then we would

24  have to do a lot of Alaskan depositions in order to

25  confirm some of those things.

22

                    Proceedings

1            THE COURT:  Sure.

2            MR. KORZENIK:  So that's just not fair.  But

3    the other -- so it relates to the fact that our discovery

4    burdens would be incredibly onerous, and their requests

5    for discovery into why we wrote this report is just

6    utterly a sideshow.  It's a sideshow of the claim, and

7    it's a total diversion from the actual legal issue that

8    we are raising in our 12(b)(6) to Judge Hall.

9            And so for that reason, I'm requesting that

10   this discovery, and all discovery, burdens be deferred

11   until this motion can be determined.

12           THE COURT:  Okay.  So Mr. Rubenstein --

13           MR. KORZENIK:  It may be that the whole thing -

14   -

15           THE COURT:  Yes.

16           MR. KORZENIK:  -- the conspiracy thing is also

17   going to fall by the way in the motion for --

18           THE COURT:  I hear you.  All right.

19           Mr. Rubenstein, why do you need to do the

20   discovery now rather than perhaps in a few weeks, or a

21   few months?

22           MR. RUBENSTEIN:  So our position, your Honor,

23   is that the -- I mean, as we put in our letter, we as the

24   plaintiff, you have a general right to a speedy

25   resolution of the claims, and the longer that this false

23

Proceedings

1   report that belies my client left and right is out there,

2   the longer that my client has to spend time and money

3   with investors, and the market, in beating back the

4   falsities time and time again, and delays to justice that

5   it is due.

6          And what I'm hearing from opposing counsel is

7   an argument is similar to sort of what we hearing the

8   context as if personal jurisdiction were at issue in, you

9   know, limiting it to something that is needed to resolve

10  the motion to dismiss.

11         And what we are talking about more is the

12  general principle that the filing of the motion to

13  dismiss doesn't get you a stay of merits discovery, and

14  we believe that merits discovery ought to proceed for one

15  of the reasons -- one of the reasons is what I just

16  mentioned.  Another one is this -- as we mentioned in the

17  letter, we believe that discoverable information is

18  contained by third parties who are not under any

19  obligation to preserve documents at the moment, and may

20  not even have been identified, and so we want --

21         MR. KORZENIK:  Could you tell us how that

22  relates to the motion?

23         THE COURT:  Can you please not interrupt?

24         MR. KORZENIK:  Okay.

25         THE COURT:  Go ahead.

24

Proceedings

1          MR. RUBENSTEIN:  And so --

2          MR. KORZENIK:  All right.

3          MR. RUBENSTEIN:  -- and so we believe that the

4    potential pendency of a motion to dismiss in this case,

5    and I know your Honor doesn't hear me of the merits of

6    the motion to dismiss, so I am not going to go into that,

7    but suffice it to say is that we think that this is not

8    the motion of the ilk that opposing counsel just

9    described.

10          So our view is that the potential pendency of

11   this motion to dismiss is not something that should put

12   the brakes on merits discovery, and stand in the way of

13   the speedy resolution of our claims, which we wish to

14   begin pursuing discovery on immediately.

15          THE COURT:  All right.

16          MR. KORZENIK:  Your Honor?

17          THE COURT:  So Mr. Korzenik, you wanted to say

18   something?  Yes, you can now.

19          MR. KORZENIK:  Yes.  So the reason that I say

20   that this short conspiracy, which we deal with all the

21   time, is irrelevant, is that if the statements are

22   opinion, then the short conspiracy falls apart, and for

23   that reason -- the other thing is that Jonathan is -- you

24   know, as with many commercial litigators, they view this

25   just as a commercial case, but when the case implicates

25

Proceedings

1   the First Amendment, then 12(b)(6) is supposed to protect

2   defendants from exercising -- who exercise their First

3   Amendment rights, and assuring them that doing so will

4   not needlessly become prohibitively expensive.

5           So there's a policy in many -- most libel

6   rulings that there should be an early disposition on

7   motions to dismiss, and that they should be permitted,

8   and that's what the Judge Oetken did in Biro, and that's

9   what most courts, in fact Judge Sack as well, favors

10  early disposition of these cases.  And if this stuff is

11  opinion, then the conspiracy canard falls away, and

12  that's why I'm asking for a stay pending resolution of

13  the motion.

14          THE COURT:  All right.  So --

15          MR. KORZENIK:  But I'll just close with one

16  thing, the Sandals case which they cite, your Honor

17  should look at that too, because it goes to the New York

18  constitutional definition of opinion, and it cutoff

19  discovery all together of Sandals Resort Company, that

20  wanted to get to the bottom, just as these plaintiffs do,

21  of the negative statements that were made about their

22  company, and that hurt their stock price.  The Court

23  found it to be pure opinion based on the documents

24  reviewed, and presenting the defendants' point of view.

25  Discovery wasn't just stayed, it was outright denied.

Proceedings

1      THE COURT:  All right.  So I think that the

2  limited discovery that's been proposed can go forward,

3  and so I will deny the motion to stay discovery, but

4  given that you have your conference before Judge DeArcy

5  Hall in about two weeks, if you want to raise the issue

6  with her again, it is your prerogative, because she has

7  the right to overrule any of my decisions, but I think

8  that based on what I am hearing, there isn't a strong

9  enough basis to stop all discovery, especially given the

10  limited discovery that Mr. Rubenstein has put forward as

11  a proposed set of early discovery, and especially given

12  concerns about preservation of materials in this area.

13      So let me just take a quick look --

14      MR. KORZENIK:  We of course are preserving --

15  we're preserving materials.  The one question I have,

16  your Honor, is do we need to do sort of formal objections

17  before the 13th, or can we imply know that the discovery

18  is stayed until we present the same issue before Judge

19  Hall?

20      THE COURT:  Well, I will put down her that the

21  -- that I'm denying the request to stay, and if you want

22  then to post something saying that you intend to object

23  to that, and would seek leave to bring it up at the

24  conference on October 13th, then that will let Judge

25  DeArcy Hall know that that's what you intend to do, all

27

Proceedings

1   right?

2          MR. KORZENIK:  And would you also make note of

3   the fact that it was some limited discovery, that it

4   wasn't plenary?

5          THE COURT:  I'm sorry, to make note of what?

6          MR. KORZENIK:  That -- note that it was

7   limited, some limited discovery --

8          THE COURT:  Yes, that is limited to --

9          MR. KORZENIK:  -- (audio interference).

10         THE COURT:  -- the items that Mr. Rubenstein

11  mentioned to start, and then, you know, as we move

12  forward, if there's a need -- we would be doing it in

13  steps, because I don't know how long this -- number one,

14  whether the motion to dismiss will go forward, and number

15  two, if it does, how long it will take.

16         So if it turns out, for example, that it takes

17  several months, and there's a point at which the

18  plaintiffs then say okay, we've done this first phase,

19  we're still waiting for a decision but we would like to

20  proceed with the next phase, of course they could raise

21  that.  That is how I intend to manage the discovery in

22  this case.  All right?

23         So the motion to stay discovery was a motion to

24  stay all discovery, I'm denying it.  I'm permitting the

25  limited discovery to go forward on the items that Mr.

28

Proceedings

1   Rubenstein outlined, and so unless Judge DeArcy Hall

2   overrules me, you should move forward on that.  It

3   doesn't stop the parties from coming back to say we would

4   like to do more discovery, and for me to then look at

5   where you are at that point, and what that next discovery

6   is.  Okay?

7           MR. KORZENIK:  Okay.

8           THE COURT:  So I think it's worth doing things

9   in this phased way.  Mr. Korzenik?

10          MR. KORZENIK:  Yes, thank you, your Honor.

11          THE COURT:  All right.  So I --

12          MR. RUBENSTEIN:  Thank you, your Honor.  I

13  appreciate your time.

14          THE COURT:  And so what I will do is the

15  discovery plan that you've given me sets forth some dates

16  including a settlement conference date, so let's spend a

17  few moments.  Now this was, I know, submitted

18  unilaterally by the plaintiffs.

19          Mr. Korzenik, do you want to have a settlement

20  conference with the Court at some point too?

21          MR. KORZENIK:  We have discussed it with the

22  other side, but I -- at this stage, I think it's going to

23  be difficult.  I think that I'm always open to discussing

24  it with them.  We don't have hostile relations by any

25  means.  I'm not sure how it would be done, but I think we

29

Proceedings

1    would consider that maybe at some later stage.

2         THE COURT:  All right.  So what I'll do is I

3    will not enter a scheduling order today.  I will let the

4    parties go back to the table, have some discussions, and

5    then perhaps after October 13th, set forth a plan,

6    whether discovery is moving forward -- if discovery is

7    not stayed, let's say, that you should put forward a plan

8    for how discovery will move forward, and at that point,

9    you can also put down dates for settlement, and all those

10   other dates, if you can predict at that point.

11        If you don't know, then you can simply say, you

12   know, TBD, to be determined, but at some point soon, we

13   need to have a scheduling order that either has dates, or

14   states that things are being put off for a while, all

15   right?

16        MR. KORZENIK:  Okay.

17        MR. RUBENSTEIN:  Okay.

18        THE COURT:  Is there any questions, Mr.

19   Rubenstein?

20        MR. RUBENSTEIN:  Not from me, your Honor.

21   Thank you for your time today.

22        THE COURT:  And Mr. Korzenik?

23        MR. KORZENIK:  Nothing further, your Honor.

24   Thank you.

25        THE COURT:  All right.  Thank you, everybody.

30

Proceedings

1    Appreciate it.

2              MR. KORZENIK:  Thank you.

3              MR. RUBENSTEIN:  Thank you.

4                        (Matter Concluded)

5                          -o0o-

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

31

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **6th** day of **October** 2020.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.