# EXHIBIT A

```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK

------------------------------X Docket#
NOVAGOLD RESOURCES INC.,      : 20-cv-02875-LDH-PK
          Plaintiff,          :
                              :
   - versus -                 : U.S. Courthouse
                              : Brooklyn, New York
                              :
                              :
J. CAPITAL RESEARCH USA, LLC. : September 30, 2020
          Defendants          : 10:07 AM
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE PEGGY M. KUO
UNITED STATES MAGISTRATE JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**


**For the Plaintiff**:         **Jonathan Rubenstein, Esq.**
                               **Jordan Kazlow, Esq.**
                               Baker Botts L.L.P.
                               2001 Ross Avenue
                               Ste 900
                               Dallas, TX 75201

**For the Defendant**:         **David Korzenik, Esq.**
                               **Terence Keegan, Esq.**
                               Miller Korzenik S
                               Sommers Rayman LLP
                               488 Madison Avenue
                               Suite 1120
                               New York, NY 10022



**Transcription Service**:     **Transcriptions Plus II, Inc.**
                               61 Beatrice Avenue
                               West Islip, New York 11795
                               laferrara44@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

**1**

Proceedings

1    THE CLERK:  This is an Initial Conference in
2  the matter of NOVAGOLD Resources Inc. v. J Capital
3  Research USA, LLC, docket number 20-cv-2875.  Magistrate
4  Judge Peggy Kuo presiding.
5    Will the parties please state their
6  appearances, starting with plaintiffs?
7    MR. RUBENSTEIN:  Good morning, your Honor.
8    Jonathan Rubenstein on behalf of plaintiff,
9  NOVAGOLD Resources Inc., and with me is my colleague,
10 Jordan Kazlow.
11   MR. KORZENIK:  And on behalf of defendant, J
12 Capital Research, David Korzenik of Miller Korzenik
13 Rayman, and with me my colleague, Terence Keegan.
14   THE COURT:  All right.  Good morning, everyone.
15   So this is an Initial Conference, and it's an
16 opportunity for the parties to inform the Court a little
17 bit more about your respective cases, and then also to
18 set a plan for going forward.
19   Now I know that the defendants have asked for a
20 pre-motion conference before the district judge with
21 regard to a proposed motion to dismiss, and I believe
22 that is coming up in October, October 13th.  So Judge
23 DeArcy Hall will decide at that point whether the motion
24 can go forward, and in the meantime, defendant has
25 requested a stay of discovery, assuming that the motion

                                                                3
                              Proceedings

 1  to dismiss goes forward.
 2           I don't want to get too much into the weeds on
 3  the motion to dismiss because that's for Judge DeArcy to
 4  decide, but we may need to talk a little bit about what
 5  that will entail because that will inform my decision
 6  about whether to stay discovery, or let it go forward.
 7           So Mr. Rubenstein, why don't you just start --
 8  I understand that this is a defamation lawsuit in two
 9  parts, one is defamation by libel, the other is trade
10  libel, both under New York Common Law.
11           I understand that the defamation at issue is
12  related to a report, and then also some Twitter -- some
13  Tweets.  And so you don't need to rehash the complaint,
14  but you can point out the important parts, and maybe a
15  little bit as to why you need discovery, and what kind of
16  discovery you're anticipating, okay?  Mr. Rubenstein, go
17  ahead.
18           MR. RUBENSTEIN:  (Audio interference).  As your
19  Honor pointed out yes, (audio interference) --
20           THE COURT:  Mr. Rubenstein, let me stop you
21  there.  I'm sorry.  Your phone line is cutting out.
22           MR. RUBENSTEIN:  Oh.  Oh, I'm sorry.
23           THE COURT:  It's uneven in terms of picking up
24  your voice and words.
25           MR. RUBENSTEIN:  Oh, I'm sorry, is it better

6

Proceedings

1  significant amount of money already out-of-pocket on
2  account of the J Cap report, NOVAGOLD comes here to hold
3  it, and whomever was working with it, responsible.
4           So that's a bit about the background of the
5  case.  I'm happy to answer any other questions about the
6  background of the case if your Honor wishes.  Otherwise,
7  I can describe the type of discovery that we will be
8  seeking, at least in the outset.
9           THE COURT:  So I just have one question.  You
10 talked about J Cap's short position, and you said they
11 were open about it.  Can you just tell me a little bit
12 about how that information was conveyed?
13          MR. RUBENSTEIN:  So the report was published on
14 J Cap's website, and J Cap -- and it was on or around the
15 headline, made it clear that the company had a short
16 position in NOVAGOLD and then proceeded to release the
17 report.
18          THE COURT:  Okay.  Great.  Then please go ahead
19 in terms of what discovery you're anticipating.
20          MR. RUBENSTEIN:  Sure.  So at least at the
21 outset, your Honor, we would anticipate seeking discovery
22 on a handful of different topics.  We -- NOVAGOLD would
23 like discovery on how NOVAGOLD was identified as a target
24 for the report.  The third parties that either influenced
25 J Cap's decision to target NOVAGOLD, or worked with it to

Proceedings

1  create the report, or put the report in motion.
2            Discovery, of course, about whatever research
3  efforts that J Cap claims that it undertook to compile
4  the report, information concerning the -- J Cap's trading
5  of NOVAGOLD's securities, or any other related securities
6  in the industry that could have been put in motion
7  through this scheme.
8            Let's see.  The public -- let's see, the
9  publication of the actual report and the Tweets, your
10 Honor mentioned the Tweets, the online publication of the
11 defamatory statements, those were really more of the ilk
12 of republication of many of the statements that existed
13 in the report.  We would like some, you know, discovery
14 about who controls that method of publication of those
15 statements, which is to say Twitter, and their Twitter
16 account.
17           Those general categories come to mind, at least
18 at the outset of the discovery that we would like to seek
19 from J Cap.
20           THE COURT:  Okay.  So it sounds like part of
21 what you're trying to prove in your case is that it was a
22 scheme, and that it was deliberately published to drive
23 down the stock prices to the benefit of the defendant,
24 and that is one of the -- I forget which one of the
25 libels it is where it says if you are -- I guess the

12

Proceedings

1  as they really here, when everything is so plainly matter
2  of opinion, and when it is a classic analyst report,
3  typical analyst report and evaluation of a company's
4  future projects, a bet or a prediction about its future,
5  which is based on publically-available materials, all
6  cited to in the complaint, and all cited to in the
7  report, that's opinion in its purest sense.
8      Now the thing that's also significant here is
9  in Biro, for example, versus Conde Nast, that was decided
10 in the Southern District by Judge Oetken, and D'Avolio
11 case decided in the Eastern District by Judge Feuerstein,
12 citing Biro, Biro says Rule 12(b)(6) not only protects
13 against the costs of meritless litigation but it provides
14 assurance to those exercising their First Amendment
15 rights, that doing so will not needlessly become
16 prohibitively expensive.
17     And court generally recognize that when a case
18 involves libel, when a case involves the First Amendment,
19 when it involves an opinion defense, which is a
20 constitutional matter, especially in New York under Amino
21 AG and Brian v. Richardson, those two cases actually make
22 it clear that New York's opinion defense, and its
23 definition of opinion is broader than that of the U.S.
24 Constitution, so that things that were considered in
25 Malkovich, which the plaintiff cites that were considered

```
                                                              13
                            Proceedings
```

1  to be factual, are deemed to be opinion under Judith
2  Kaye's decision of this New York Court of Appeals in the
3  Amino AG, and also in the Brian v. Richardson case.  They
4  look more broadly at the context of these things.
5           Analyst reports are predictions, and one of the
6  things Amino AG says is that writers' presumptions and
7  predictions as to what appeared to be, or what might well
8  be, or what could well happen, or should be, would not
9  have been viewed by the average reader of the journal.
10 That was a science journal as conveying actual facts
11 about the plaintiff.  And that rule applies are in the
12 commons case in which was cited, the analyst reports.
13          It applies to analyst reports as in the
14 Biospherics case, which basically is our case.  In that
15 case, the analyst group, Sugaree, which is the company,
16 is not up to the company's claims, but in that case, the
17 Court said the prediction of an analyst's opinion is not
18 actionable, however harmful it may be.
19          And Judge Daniels in the Chau case in the Big
20 Short case, he said yeah, of course opinions can be
21 harmful, but that doesn't make them actionable, and
22 that's what this plaintiff is trying to say.
23          THE COURT:  Can you focus on the discovery --
24          MR. KORZENIK:  So what --
25          THE COURT:  -- issue because these are --

                                                                15
                              Proceedings

 1              MR. KORZENIK:  For BOFI, it is actually --
 2   there are several BOFI cases, but the one --
 3              THE COURT:  No, no, not the case.  I'm looking
 4   -- you were reading from your client's website.
 5              MR. KORZENIK:  Oh, the website.  I'm sorry.
 6   Yes.  If you go -- if your Honor goes to
 7   www.jcapitalresearch.com and Terence, I think it's at the
 8   home page.
 9              MR. KEEGAN:  That's right, your Honor.
10   JcapitalReserach.com, when you access that website --
11              THE COURT:  I see it.
12              MR. KEEGAN:  You see a banner, and then --
13              THE COURT:  It says we are biased.  We go deep,
14   so that investors don't have to.
15              MR. KORZENIK:  Yes.
16              MR. KEEGAN:  Yes.
17              THE COURT:  Okay.
18              MR. KORZENIK:  So they're making clear that
19   their statements are - that they are shorts.
20              THE COURT:  Uh-hum.
21              MR. KORZENIK:  And so they're very open about
22   it.  So let's look at the statements that Mr. Rubenstein
23   highlighted, both in his letter, and his complaint.  He
24   said, "Oh, well we misled investors."  By the way, this
25   is just like the Sugaree case, Biosphere.

16
Proceedings

1  But look at the rest of the sentence, and then
2 look at the report.  It's about pipe dreams.  It's about
3 predictions.  It's about the future.  It's about a bet
4 that it won't succeed.
5  So here's the rest of the sentence, and this is
6 really instructive, "For the past 15 years, NOVAGOLD's
7 management team has systemically misled investors with,"
8 now listen, "subjective presentation of information about
9 a deposit so remote, and technically challenging that the
10 mine will never be built."  So that's a prediction, and
11 the rest of the report is basically is based on the
12 opinions of the writers about the "publicly-available
13 information" that they examined.  So what that is is pure
14 opinion.
15  Here's another one.  "The Donalin Gold
16 Project" --
17  THE COURT:  Well --
18  MR. KORZENIK:  -- is not feasible --
19  THE COURT:  So I'm sorry to cut you off because
20 I don't have --
21  MR. KORZENIK:  Yes.
22  THE COURT:  -- I didn't set aside a full hour
23 for this discussion, so I --
24  MR. KORZENIK:  Okay.
25  THE COURT:  And it's not for me to decide the

17
Proceedings

1  ultimate issue of whether this is, in fact opinion.  I
2  really need to focus on the discovery.
3          MR. KORZENIK:  Right.
4          THE COURT:  So can you please talk to the
5  discovery that Mr. Rubenstein has proposed, and tell me
6  why that shouldn't be allowed at this stage.
7          MR. KORZENIK:  Well, I think I did in the sense
8  that the whole idea that he wants to investigate who our
9  -- who might have been cited as to write this report, or
10 who might be involved in the report, or why we wrote it,
11 is utterly beside the point when it comes to opinion.
12 This case will be dismissed on that ground.
13         THE COURT:  Uh-hum.
14         MR. KORZENIK:  And the whole idea of a stock --
15 being short is not an impropriety.  And being a short
16 seller is not an impropriety, it is one of the important
17 functions of the market.  So his effort, which he focuses
18 on here to explore the short -- the motivation for the
19 article, is utterly beside the point and it's a waste of
20 time, and we don't have that kind of -- those types of
21 resources to spend on that kind of really fishing
22 expedition.
23         So what's going to happen though for us is if
24 the actionable statements are deemed to be a legitimate
25 basis for discovery, and they are not, they're opinion,

```
                                                                19
                          Proceedings
 1          THE COURT:  -- why it shouldn't be the subject
 2   of discovery now.
 3          MR. KORZENIK:  The subject of discovery that I
 4   was raising was stuff that he had put into his initial --
 5   you know, his statement about -- to us earlier in our
 6   meeting about what discovery he wanted.
 7          THE COURT:  Uh-hum.
 8          MR. KORZENIK:  So I guess he's not interested
 9   in those things, but --
10          THE COURT:  At this stge.  I asked him to tell
11   me what discovery --
12          MR. KORZENIK:  Oh.
13          THE COURT:  -- he wants now.
14          MR. KORZENIK:  So what I'm saying is that this
15   -- what he just raised has nothing to do, the reason that
16   we wrote the article has nothing to do with whether a
17   reasonable reader would view it as opinion or not under
18   New York's Constitutional definition of opinion because
19   if it is opinion, which can be decided on a reading of
20   the words by a judge, it's a root matter of law to be
21   decided by the Court, that discovery is not needed.
22          And that applies generally to this short
23   conspiracy.  We've disclosed, and he admits that we've
24   disclosed that we are short sellers, and there's nothing
25   wrong with that.
```

26
Proceedings

1	THE COURT:  All right.  So I think that the
2	limited discovery that's been proposed can go forward,
3	and so I will deny the motion to stay discovery, but
4	given that you have your conference before Judge DeArcy
5	Hall in about two weeks, if you want to raise the issue
6	with her again, it is your prerogative, because she has
7	the right to overrule any of my decisions, but I think
8	that based on what I am hearing, there isn't a strong
9	enough basis to stop all discovery, especially given the
10	limited discovery that Mr. Rubenstein has put forward as
11	a proposed set of early discovery, and especially given
12	concerns about preservation of materials in this area.
13	So let me just take a quick look --
14	MR. KORZENIK:  We of course are preserving --
15	we're preserving materials.  The one question I have,
16	your Honor, is do we need to do sort of formal objections
17	before the 13th, or can we imply know that the discovery
18	is stayed until we present the same issue before Judge
19	Hall?
20	THE COURT:  Well, I will put down her that the
21	-- that I'm denying the request to stay, and if you want
22	then to post something saying that you intend to object
23	to that, and would seek leave to bring it up at the
24	conference on October 13th, then that will let Judge
25	DeArcy Hall know that that's what you intend to do, all

```
                                                                27
                            Proceedings
 1  right?
 2             MR. KORZENIK:  And would you also make note of
 3  the fact that it was some limited discovery, that it
 4  wasn't plenary?
 5             THE COURT:  I'm sorry, to make note of what?
 6             MR. KORZENIK:  That -- note that it was
 7  limited, some limited discovery --
 8             THE COURT:  Yes, that is limited to --
 9             MR. KORZENIK:  -- (audio interference).
10             THE COURT:  -- the items that Mr. Rubenstein
11  mentioned to start, and then, you know, as we move
12  forward, if there's a need -- we would be doing it in
13  steps, because I don't know how long this -- number one,
14  whether the motion to dismiss will go forward, and number
15  two, if it does, how long it will take.
16             So if it turns out, for example, that it takes
17  several months, and there's a point at which the
18  plaintiffs then say okay, we've done this first phase,
19  we're still waiting for a decision but we would like to
20  proceed with the next phase, of course they could raise
21  that.  That is how I intend to manage the discovery in
22  this case.  All right?
23             So the motion to stay discovery was a motion to
24  stay all discovery, I'm denying it.  I'm permitting the
25  limited discovery to go forward on the items that Mr.
```

28

Proceedings

1  Rubenstein outlined, and so unless Judge DeArcy Hall
2  overrules me, you should move forward on that.  It
3  doesn't stop the parties from coming back to say we would
4  like to do more discovery, and for me to then look at
5  where you are at that point, and what that next discovery
6  is.  Okay?
7             MR. KORZENIK:  Okay.
8             THE COURT:  So I think it's worth doing things
9  in this phased way.  Mr. Korzenik?
10            MR. KORZENIK:  Yes, thank you, your Honor.
11            THE COURT:  All right.  So I --
12            MR. RUBENSTEIN:  Thank you, your Honor.  I
13 appreciate your time.
14            THE COURT:  And so what I will do is the
15 discovery plan that you've given me sets forth some dates
16 including a settlement conference date, so let's spend a
17 few moments.  Now this was, I know, submitted
18 unilaterally by the plaintiffs.
19            Mr. Korzenik, do you want to have a settlement
20 conference with the Court at some point too?
21            MR. KORZENIK:  We have discussed it with the
22 other side, but I -- at this stage, I think it's going to
23 be difficult.  I think that I'm always open to discussing
24 it with them.  We don't have hostile relations by any
25 means.  I'm not sure how it would be done, but I think we

31

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **6th** day of **October** 2020.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.

Transcriptions Plus II, Inc.
15