UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

NOVAGOLD RESOURCES, INC.                                   **Oral Argument Requested**

        Plaintiff,                          Index No. 1:20-cv-02875-LDH-PK

   - against -

J CAPITAL RESEARCH USA, LLC,

        Defendant.
---------------------------------------------------------X


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**


Dated: New York, New York        MILLER KORZENIK SOMMERS RAYMAN LLP
      January 15, 2021

                            By: /s/ David S. Korzenik
                            David S. Korzenik
                            dkorzenik@mkslex.com
                            Terence P. Keegan
                            tkeegan@mkslex.com
                            1501 Broadway, Suite 2015
                            New York, New York 10036
                            Phone: (212) 752-9200

                            *Attorneys for Defendant J Capital Research USA,*
                            *LLC*

**Date of Service: January 15, 2021**

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................................ 1

I.    THE FAC FAILS TO PLEAD ANY ACTIONABLE REPORT STATEMENTS ............. 1

The Challenged Statements Are Protected Opinion on Three Independent Grounds ............ 1

II.   THE FAC MUST BE DISMISSED FOR FAILURE TO PLEAD ACTUAL MALICE .. 14

III.  NOVAGOLD HAS FAILED TO PLEAD FALSITY OF REPORT STATEMENTS...... 18

IV.  THE FAC's TRADE LIBEL AND DAMAGES CLAIMS SHOULD BE STRICKEN ...19

CONCLUSION .......................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014) .......................................................... 15

*Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269 (S.D.N.Y. 1989) ...................... 22, 23, 25

*Bell v. Twombly,* 550 U.S. 544 (2007) ......................................................................... 18

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287 (E.D.N.Y. 2015)
(Bianco, J.), *aff'd*, 670 F. App'x 731 (2d Cir. 2016) ......................................................... passim

*Bernstein v. O'Reilly*, No. 17 CIV. 9483 (DAB),
2019 WL 10995110 (S.D.N.Y. Sept. 26, 2019) ...................................................... 23

*Birkenfeld v. UBS AG*, 172 A.D.3d 566 (1st Dep't 2019) ........................................... 19

*Biro v. Conde Nast*, 807 F.3d 541 (2015), *cert. denied*, 136 S. Ct. 2015 (2016) ........................ 18

*Biro v. Conde Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015),
*and aff'd*, 622 F. App'x 67 (2d Cir. 2015) ........................................................................ 17, 18

*Bofi Fed. Bank v. Seeking Alpha Inc.*, No., 1:16-misc-00025,
Dkt. No. 27 (S.D.N.Y. Feb. 9, 2016) (Oetken, J.) ...................................................... 5

*Bose Corp. v. Consumers Union of U.S. Inc.*, 57 F.R.D. 528 (D. Mass. 1973) ...................... 23, 24

*Brian v. Richardson*, 87 N.Y.2d 46 (1995) ................................................................... 2, 3

*Celle v. Filipino Reporter*, 209 F.3d 163 (2d Cir. 2000) .............................................. 4, 17

*Chau v. Lewis*, 771 F.3d 118 (2014) ............................................................................. 2, 3, 6, 7

*Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150 (S.D.N.Y. 1983) ...................... 22

*Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, No. 1:00CV98K,
2001 WL 670927 (D. Utah Mar. 26, 2001), *aff'd*, 312 F.3d 1292 (10th Cir. 2002) ............... 25

*Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 02 CIV. 9567 (KNF),
2003 WL 22410623 (S.D.N.Y. Oct. 21, 2003) ...................................................... 21

*Deer Consumer Prods., Inc. v. Little Grp.*, No. 650823/2011
2012 WL 5983641 (Sup. Ct. NY Cty. 2012) .......................................................... 5

*Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435 (1960) ................................. 22, 23

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ..................................... 25

*Egiazaryan v. Zalmayev*, 2011 WL 6097136 (S.D.N.Y 2011) ..................................... 18

*Eros Int'l PLC v. Mangrove Partners*, No. 653096/2017,
   2019 WL 1129196 (N.Y. Sup. Ct. N.Y. Cty. Mar. 08, 2019) (Cohen, J.) ........................ passim

*Fotochrome, Inc. v. New York Herald Tribune, Inc.*,
   61 Misc. 2d 226 (Sup. Ct. Queens Cty. 1969) .................................................. 16, 17

*Gallo v. Montauk Video, Inc.*, 178 Misc. 2d 1069 (App. Term 1998) .......................... 24

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ......................................... 16

*Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657 (1989) ........................ 17

*Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423 (S.D.N.Y. 2006) .................. 20, 21

*Immuno AG v. Moor-Jankowski,* 77 N.Y.2d 235 (1991) ................................... 2, 3, 4, 13

*In re Woodbridge Structured Funding, LLC*, 125 A.D.3d 508 (2015) ......................... 9

*Kirsch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) ................................. 3, 7

*La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) ........................................... 15

*Le Massena v. Storm,* 62 A.D. 150 (1st Dep't 1901) ..................................... 22

*Lemelson v. Bloomberg*, 903 F.3d 19 (1st Cir. 2018) ..................................... 18

*Levin v. McPhee*, 119 F.3d 189 (1997) ................................................. 2

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-cv-07568-PGG-KHP,
   2018 WL 847014, at *1 (S.D.N.Y. Jan. 12, 2018), *report and recommendation adopted*,
   2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) (Gardephe, J.) ............................ passim

*Nanoviricides, Inc. v. Seeking Alpha, Inc.*, No. 151908/2014, 2014 WL 2930753 (Sup. Ct. N.Y.
   Cty. June 26, 2014) (Kern, J.) ................................................... 2, 3, 5, 7

*Palin v. The New York Times Co.*, --- F. Supp. 3d. ----, No. 17-cv-4843-JSR, 2020 WL 7711593
   (S.D.N.Y. Dec. 29, 2020) ......................................................... 15

*Penn Warranty Corp. v. DiGiovanni*, 10 Misc. 3d 998 (Sup. Ct. N.Y. Cty. 2005) .......... 20, 21, 23

*Ruder & Finn v. Seabord Sur. Co.*, 52 N.Y.2d 663 (1981) .................................................. 20, 21

*Sabratek Corp. v. Keyser*, No. 99-cv-8589-HB, 2000 WL 423529 (S.D.N.Y. Apr. 19, 2000)
(Baer, J.) ........................................................................................................................... 2, 5, 8

*Salit v. Ruden, McClosky, Smith, Schuster & Russell*, 742 So.2d 381 (Fla.Ct.App.1999) .......... 25

*Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32 (1st Dep't 2011) ......................... 3, 9, 25

*Sandler v. Simoes*, 609 F. Supp. 2d 293 (E.D.N.Y. 2009) .......................................................... 22
*Silvercorp Metals Inc. v. Anthion Management*, 959 N.Y.S. 2d 92,
2012 WL 3569952 (Sup. Ct. N.Y. Cty. Aug. 16, 2012) (Edmead, J.) ............................. passim

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ............................................................................. 17

*Steinhilber v. Alphonse,* 68 N.Y. 2d 283 (1986) ..................................................................... 3, 7

*Stonebridge Capital, LLC v. Nomura Int'l PLC*, 897 N.Y.S.2d 672,
2009 WL 2045621 (Sup. Ct. N.Y. Cty. July 6, 2009), *aff'd*, 68 A.D.3d 546 (1st Dep't 2009) 21

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) ............... 18, 19

*WDF, Inc. v. Kohler Co.*, 30 A.D.3d 589 (2d Dep't 2006) .......................................................... 21

*Yangtze River Port and Logistics Ltd. v. Hindenburg Research*, No. 150721/2019, 2020 WL
905770 (N.Y. Sup. Ct. N.Y. Cty. Feb. 25, 2020) (Sherwood, J.) ..................................... passim

**Statutes**

N.Y. Civ. Rights Law §76-a ................................................................................................. 14, 15

**Other Authorities**

J Capital Research, https://jcapitalresearch.com (last visited Jan. 15, 2021) ................................ 8

**Rules**

Fed. R. Civ. P. 9(g) .................................................................................................................... 22

**Treatises**

Robert D. Sack, SACK ON DEFAMATION: LIBEL, SLANDER, AND RELATED PROBLEMS (PLI 5th ed.
2019) ...................................................................................................................................... 22

**Constitutional Provisions**

N.Y. State Constitution Art. 1, Sec. 8 ........................................................................................... 3

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant J Capital Research USA LLC ("JCap") submits this Memorandum of Law in support of its Motion To Dismiss the First Amended Complaint ("FAC") of Plaintiff Novagold Resources Inc. ("Novagold" or "NG").  *See* Order dated Dec. 29, 2020.  Dismissal is warranted because: 1) The FAC fails to plead any actionable statements in JCap's "Pipe Dream" Report ("Report") or tweets; 2) it fails to plead actual malice, as it must under New York state and federal law; and 3) it fails to state a claim for trade libel, and pleads no cognizable damages.

**ARGUMENT**

**I.     THE FAC FAILS TO PLEAD ANY ACTIONABLE REPORT STATEMENTS**

**The Challenged Statements Are Protected Opinion on Three Independent Grounds.**

JCap's Report and the challenged statements in it are protected opinion on three independent grounds: a) They are opinion because JCap's statements and the context in which they were made fall squarely in line with the seven *Silvercorp/Yangtze* Line of short seller cases decided by New York state and federal courts; b) they are "pure opinion" because the Report discloses, cites and/or hyperlinks to the publicly available documents on which its conclusions are based (and Plaintiff does not challenge the truth or authenticity of those underlying public documents; the FAC just quarrels over their meaning) (FAC ¶¶21-31); and c) the statements at issue are predictions and projections about the future prospects of Novagold's still unrealized mining plan.  (Under the leading New York case, the equation is simple: Predictions = Opinions.)

***New York Courts Have Repeatedly Applied The* Immuno *Test To Short Seller Reports.***

When analyst reports *disclose that the writer is a short seller*, especially when they make that disclosure as robustly as JCap did; when they use *words that "signal" opinion*, like *Pipe*

*Dreams*, etc., as JCap did; when they disclose, cite and hyperlink to *publicly available documents* on which their conclusions are based, as JCap did; when they are published on the *internet* and accompanied by social media tweets to which plaintiff responded, as was so here; when they offer *predictions* about the future outcome of a proposed and as yet unrealized plan as JCap did; and when they criticize the future prospects of a *publicly traded company*, then they are uniformly and consistently ruled to be *non-actionable and constitutionally protected opinion*. Every one of the seven New York short seller cases, came to that same conclusion. [1] They are referred to herein as the "*Silvercorp/Yangtze* Line" or as the "*Silvercorp* Cases."

The legal analysis that dictates that consistent outcome is built on New York's opinion test enunciated by the Court of Appeals in *Immuno AG v. Moor-Jankowski,* 77 N.Y.2d 235 (1991) (accusations made in a science journal) and *Brian v. Richardson*, 87 N.Y.2d 46 (1995) (accusations of criminality in an op-ed article). *Immuno* and *Brian* are steadily followed by the Second Circuit in cases such as *Chau v. Lewis*, 771 F.3d 118 (2014) (a case against the author Michael Lewis and his short seller source); and *Levin v. McPhee*, 119 F.3d 189 (1997).

Opinion is constitutionally protected and favored. *Immuno* announced that "the protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by Federal Constitution." *Id.* at 249; *see also Sandals*

---

[1] *See, e.g.*, **Silvercorp** *Metals Inc. v. Anthion Management*, 959 N.Y.S. 2d 92, 2012 WL 3569952 (Sup. Ct. N.Y. Cty. Aug. 16, 2012) (Edmead, J.)*;* **Yangtze River** *Port and Logistics Ltd. v. Hindenburg Research*, No. 150721/2019, 2020 WL 905770 (N.Y. Sup. Ct. N.Y. Cty. Feb. 25, 2020) (Sherwood, J.); **MiMedx** *Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-cv-07568-PGG-KHP, 2018 WL 847014, at *1 (S.D.N.Y. Jan. 12, 2018), *report and recommendation adopted*, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) (Gardephe, J.); **Eros** *Int'l PLC v. Mangrove Partners*, No. 653096/2017, 2019 WL 1129196 (N.Y. Sup. Ct. N.Y. Cty. Mar. 08, 2019) (Cohen, J.); **Sabratek** *Corp. v. Keyser*, No. 99-cv-8589-HB, 2000 WL 423529 (S.D.N.Y. Apr. 19, 2000) (Baer, J.); **Nanoviricides,** *Inc. v. Seeking Alpha, Inc.*, No. 151908/2014, 2014 WL 2930753 (Sup. Ct. N.Y. Cty. June 26, 2014) (Kern, J.); **Bellavia** *Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287 (E.D.N.Y. 2015) (Bianco, J.), *aff'd*, 670 F. App'x 731 (2d Cir. 2016) (though not a short seller case, the defendant's accusations against the plaintiff company were held to be opinion under the N.Y. opinion test).

*Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 40 (1st Dep't 2011).  The approach now used in New York for determining whether statements are protected opinion is based on a four part formula: "(1) [W]hether the statement at issue has a precise meaning so as to give rise to a clear factual implication; (2) the degree to which the statements are verifiable, i.e., 'objectively capable of proof or disproof'; (3) whether the full context of the communication in which the statement appears signals to the reader its nature is opinion; and (4) whether the broader context of the communication so signals the reader."  *Sandals* at 39-40, *citing Immuno* at 243 (internal citations omitted).  The inquiry is therefore no longer limited to whether the challenged statement, standing alone, is factual or not.  Some are.  But they are nonetheless deemed opinion.

In *Kirsch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006), the fourth and most significant factor is described as follows (emphasis added):

> [C]onsideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is *likely to be opinion*.

*Id.* at 403 n.7; *Bellavia*, 151 F. Supp. 3d at 293.  *See also Chau*, 771 F.3d at 129, *citing Steinhilber v. Alphonse,* 68 N.Y. 2d 283, 292 (1986).

The *Immuno* standard is to be applied generously in favor of the constitutional values that the opinion privilege is intended to protect.  *See* N.Y. State Constitution Art. 1, Sec. 8. "Determining whether a statement is an allegation of fact or mere opinion is a legal question for the court."  *Chau*, 771 F.3d at 128, *quoting Brian* at 51.

Under this standard, "[s]ifting through a communication for the purpose of isolating and identifying assertions of fact should not be the central inquiry."  *Nanoviricides* at *4 *citing Sandals* at 41-42. As the *Immuno* Court observed, "We are concerned that -- if indeed 'type of

speech' is to be construed narrowly -- insufficient protection may be accorded to central values protected by the law of this State." *Id.* at 250.

**The Immuno *Test Applied to Short Seller Libel Cases.*** In the New York cases that have applied the *Immuno* test to short seller analyst reports and attacks, all of them involved allegations that were more aggressive and more factual sounding than the statements at issue in JCAP's Report. All of them turned on the *identical* operative indicia of opinion that are equally manifest in this case. All of them concluded that the allegedly defamatory facts were nonactionable opinion. Nothing distinguishes any of them from this case; and Plaintiff in its pre-motion letter did not even try.

> In ***Silvercorp***, defendant's report accused Silvercorp of: 1) "massive accounting fraud"; and 2) "misrepresenting the quality of its silver deposits and drilling costs and falsely representing its financial position." *Id.* at *1. All these statements were deemed "opinion." *Id.* at 15-16.

> In ***Yangtze***, defendant's report accused Yangtze of: "On-the-ground research shows assets to be largely fabricated." *Id.* at *1. "[T]he supposed leased land is . . . a total fabrication." *Id.*; that the plaintiff's company is "a shell", "a scheme . . . . used to pay the chairman." *Id.* at *8. All these statements were deemed "opinion." *Id.* at *7.

> In ***MiMedx***, defendants accused MiMedx of: 1) being "engaged in fraudulent channel stuffing"; 2) "definitely revenue fraud"; and 3) "failed to disclose it was subject to SEC investigation." 2018 WL  847014 at *2; *7.  All these statements were deemed "opinion." *Id.* at *7.

> In ***Eros***, defendants accused Eros of: 1) "self-dealing" and "improper enrichment"; 2) "channels money to family members through dummy production deals."; and 3) "burned through $312 million and is headed for a liquidity crisis." *Id.* at *7-8. All these statements were deemed "opinion." *Id.*

> In ***Bellavia***, defendants accused *Bellavia* of: 1) "fraudulent litigation"; and 2) "induc[ing] dealers to join this lawsuit . . . with the misleading promise of millions in reward." *Id.* at 290. All these statements were deemed "nonactionable opinions" "as a matter of law." *Id.* at 292.  As with the many other opinion decisions, "The burden rests with the plaintiff to establish that in the context of the entire communication a disputed statement is not protected opinion."  *Id.* at 292 *quoting Celle v. Filipino Reporter*, 209 F.3d 163, 179 (2d Cir. 2000). *Bellavia*, in line with the Second Circuit rulings, and the other *Silvercorp* Cases,

explains that the application of the four opinion factors "is not rigid and mechanical, and no single factor is dispositive." *Id.* at 293.

In **Sabratek**, defendant short sellers accused *Sabratek* of: 1) "using misleading numbers" concerning its net income; 2) "falsifying sales figures"; 3) "engag[ing] in fraudulent activity; and 4) "complete fraud" to "pump the stock price." *Id.* at *1. All these statements were deemed "opinion." *Id.* at *6-7.

In **Nanoviricides**, [2] a pseudonymous short seller posted an article about Nanoviricides under the name "Pump Terminator." The analyst's article was posted on *SeekingAlpha.com*, a financial website which features articles posted by analysts and others about various investments. Nanoviricides sued Seeking Alpha for pre-action disclosure to get the identity of the short seller so that Nanoviricides could sue the short seller critic. Among other things, Pump Terminator accused the company of: 1) pump[ing] the stock +330% while heavily diluting shareholders and stealing NNVC out from under public investors as insiders siphoned off millions"; 2) the CEO "hires his wife as CFO while Auditor and Internal Controls are failing"; 3) "NNVC shareholders are fed a steady diet of . . . promises and promotion that never materialize into anything meaningful"; and 4) called it "similar to the China RTO Frauds"; etc. *Id.* at *1-2. Seeking Alpha opposed the disclosure of its contributor. The Court denied disclosure of the short seller's identity, finding that all the allegedly defamatory statements were non-actionable opinion.

### *Comparison of JCap's Statements with Statements in the Silvercorp/Yangtze Line*.

Here are the words that the FAC describes as "the Report's central falsehood – that the mine cannot be constructed" (itself a *prediction*; not a fact):

> "For the past 15 years, NOVAGOLD's management team has systematically misled investors with *subjective presentation* of information about a deposit so *remote and technically challenging* that the mine *will never be built*."

FAC ¶¶19-20 (emphasis added). So from the start, the "central falsehood" embodied in this putative summary statement, signals to readers, that the Report is opinion:

---

[2] Our firm acted for Seeking Alpha in *Nanovirides* and in other actions to oppose efforts to unmask short seller analyst contributors. As in *Nanoviricides*, those cases too were dismissed on the grounds a) that the articles at issue were *non-actionable opinion* and b) that the anonymity of Seeking Alpha's contributors deserved protection. (Seeking Alpha has protected the anonymity of its contributors where it concludes that the articles were posted in good faith.) In those cases, courts followed the same opinion analysis applied in the *Silvercorp* Cases: *Bofi Fed. Bank v. Seeking Alpha Inc.*, No., 1:16-misc-00025, Dkt. No. 27, at 27:31 (S.D.N.Y. Feb. 9, 2016) (Oetken, J.); *Deer Consumer Prods., Inc. v. Little Grp.*, No. 650823/2011, 2012 WL 5983641 (Sup. Ct. NY Cty. 2012) (this firm represented *Seeking Alpha* at an earlier stage of the case).

> First, investors are "misled" *not* by *objective statements,* but by "*subjective presentations*." A "subjective presentation" is more on the order of an optimistic projection. Those are words of opinion, not fact. Facts are objective; but opinions are *subjective*. So JCap is contesting NG's opinions about its feasibility and future prospects.

> Second, what are those "subjective presentations" about? The rest of the sentence tells us: they are "subjective presentations" *about* "a deposit so remote and technically challenging that the mine will never be built." To say that something is "so remote and technically challenging" is the essence of opinion. Is a jury supposed to certify that the mine is not "so remote or technically challenging" and is a sure bet? A jury should not be in the business of doing feasibility studies or certifying the merit of a business plan.

If, and when, NG and its principal Mr. Kaplan are sitting atop a large pile of gold, they can proudly say, years from now, "They said it couldn't be done. But we did it!" Ambitious plans can draw robust criticism. Such is what skeptics often say of ambitious entrepreneurs and inventors – Elon Musk, Thomas Edison, and other venturing entrepreneurs among them. All faced the same naysayers.[3]  Some succeed; some don't. But those entrepreneurial bets are *bets*, the typical subjects of ardent opinion. That is what analysts and financial commentators do. They say, X is a great idea; go long. Or X is a terrible idea; go short.

Simply put, publicly traded companies and their ambitious plans are the proper and expected subjects of robust and often rancorous opinion in the "Shark Tank" that is the "broader social context" for these arguments that the *Immuno* opinion test compels us to take into account. That is a prime reason why statements that appear to be factual in the first instance are deemed non-actionable opinion by courts.

---

[3] In *Chau*, the Second Circuit categorized "derogatory statements" to be "opinion" and offered the following observation: "While someone may not appreciate being called a fool, it is an expression of one's view of another, and moreover might not reflect reality: history has shown many "fools" to have been visionaries. Time may prove the insult misguided, but the insult is not itself a fact—but rather, is one's perception of facts—at the time it is uttered." *Chau* at 129.

The main word that the FAC relies on to allege a libelous fact is the word "misled." But *most* of the *Silvercorp* Cases also engage accusations of "misleading" statements, some of them more forceful and factual sounding than JCAP's.

Many of the statements challenged in the *Silvercorp* Cases could, when viewed standing alone or studied in isolation, be seen as assertions of fact. But when they are subjected to the four-factor *Immuno* and *Brian* test which demands an examination of the "broader social context" in which they are made, they gain recognition as protected opinion. In short, the required analysis rejects isolated examination of particular statements and instead looks for broader "*signals to a reader*" that the statements are "*likely to be opinion.*" *Kirsch* at 403 n.7; *see also Chau*, 771 F.3d at 129, *citing Steinhilber*, 68 N.Y.2d at 292.

**Examining the Broader Social Context in Which Short Seller Reports Are Made.** In examining the broader social context in which short seller reports are made, courts consistently look first at the disclosures and disclaimers that the short-sellers made:

**Nanoviricides**: "The disclosure directly proceeding the article explicitly identifies the article as an expression of the author's own opinion. Thus, at the outset, a reader is signaled that the statements to follow are the authors opinion." *Id.* at *5. And "the author states: 'Disclosure: I am short NNVC.'" *Id.* at *1.

**Yangtze**: The plaintiff alleged that the defendant, as here, was engaged in a "classic short and distort" scheme. *Id.* at *4. But, the Court observed: Hindenburg Research's report disclosed "We are short YRIV." As here, the report thus "signaled" that it was the "opinion" of the writers. *Id.* at *9-10.

**Silvercorp**: "The documents themselves reveal the disclosure of the author's self interest in that the author 'works for a firm that currently has a short position' in Silvercorp. Such motive as noted in *Immuno, Brian*, and *Sandals*, indicates to the reader that the author is expressing his opinion." *Id.* at 9. (Hence, contrary to Novagold's argument, the fact that the writer is a short seller and discloses that he is a short seller militates in favor of a finding that the report is one of opinion. It is a key "signal" of opinion in the *Silvercorp* Cases.)

**Sabratek**: The defendant's disclosure in *Sabratek* was less robust. It simply said, "we may now have and from time to time have directly or indirectly a long or

short position in the securities mentioned." *Id.* at n.2. But, that too was deemed to signal opinion.

***MiMedx***: The defendant's disclosure that it was short MiMedx stock, strongly counted toward the ruling that the statements at issue were opinion.  *See id.* at *9-12.

***Eros***: The court held that disclosure of financial interest or other motive behind a report is a "signal" of opinion. *Id.* at *12. The court concluded: "Our courts have traditionally viewed an author's announced self-interest as evidence that the author's statements likely constitute opinions."  *Id.* at *8 n.6.

The bottom line is that in all these decisions, the disclosure that the writer is a short seller *drives the rulings decisively toward opinion.*  It "signals" opinion.  Significantly, JCap's disclosures are even more forceful than those in the *Silvercorp* Cases (J Capital Research, https://jcapitalresearch.com (last visited Jan. 15, 2021)) ("JCap Website"):

> ***Be warned. We are activists, usually on the short-side. We are biased. . . . we will profit if these stocks decline or, when we are long, rise in value.***

JCap's other disclaimers also signal "opinion." In its Terms of Service, JCap states "any report on this site contains a very large measure of analysis and opinion." *See* Declaration of David S. Korzenik dated Jan. 15, 2021("Korzenik Decl.") ¶1(a), Ex. A at 1)*.*  Its Terms, which precede the Report itself, require users to agree that they "represent to J Capital Research USA LLC that you have sufficient investment sophistication to critically assess the information, and analysis and opinion on the site." *Id.*  Signals of opinion are emblazoned throughout the Report and Website.

The world of financial news commentary is by its nature combative, aggressive, critical, full of opinion, swagger and contested views and assessments of competing bets placed in the markets. This is not only the case on TV and radio commentary about stock prices and trends, but it is especially so in the setting of the internet and on social media.

Plaintiff NG adds to its claims a number of tweets that it alleges to be defamatory – the tweets comment on and link to the *Pipe Dreams* report. But the "broader social context" of the

internet only adds more force to the conclusion that the statements at issue are matters of obvious opinion – especially when a report is supplemented with related tweets or other social media offerings. New York courts, those that ruled in the *Silvercorp* Cases, reinforce that point:

> In addition, the allegedly defamatory statements were advanced on social media . . . which New York courts typically protect as statements of opinion, rather than fact (*See In re Woodbridge Structured Funding, LLC*, 125 A.D.3d 508, 509 (2015)). *Yangtze* at *7.

> New York courts have consistently protected statements made in online forums as statements of opinion rather than fact." *Bellavia* at 295 *citing Sandals* at 415-16, "so-called social media, such as Facebook and Twitter, is increasingly deemed to attract "less credence to allegedly defamatory remarks" than other contexts . . ."); *accord Silvercorp* at *8.

***A Report Is "Pure Opinion" When its Conclusions Are Based on Underlying Documents and When the Reader Is Therefore Free to Decide for Themselves.*** The Report is based on a set of publicly available documents that it identifies and expressly references. Some of them are hyperlinked in the Report. Significantly, these are the very same publicly available documents that Plaintiff NG lists in its FAC (*see* ¶10) and elsewhere in the FAC. No less significantly for this Motion to Dismiss, Plaintiff does ***not*** challenge the truth or authenticity of any of these documents. That is not surprising, since they are Novagold's own documents and some of them are government studies. So, NG's FAC, relies on the *very same documents* to argue why JCap is wrong. That is the essence of pure opinion.

Remarkably, NG's entire FAC consists of arguing over the meaning and conclusions that one should draw from those underlying documents and studies. Thus, NG's own pleading asserts that its quarrel with JCap is over the conclusions that one should draw from those same documents and studies. And that makes this motion to dismiss very easy to decide, since the FAC thus demonstrates that the Report is entirely a matter of disputed opinion. FAC ¶21-35.

NG's public relations response to the Report (*see* FAC ¶¶41-45, "Novagold Fights Back") reflects the very same quarreling over how NG documents are to be read.  No defamation case can be built from that.

The *Yangtze* Court made the very same point.  It recognized that plaintiff was arguing in its own FAC that the publicly available documents support plaintiff's reading of the documents – not defendant's reading of them.  *See id.* at *12.  The Court further noted that plaintiff did not challenge the truth or authenticity of those underlying documents.  *See id.*  Plaintiff just disagreed with how they should be read.  That is the essence of opinion, and of why this FAC must be dismissed.  NG is doing exactly what Yangtze did that got its FAC dismissed.

Judge Sherwood in *Yangtze* actually lists the documents that both sides cited and relied on to make his point. He observed, "The Report includes charts, graphs, . . . hyperlinks to a multitude of publicly available sources." *Id.* at *2. That's what the JCap Report does and that is what the FAC does.  There is no dispute over authenticity of those materials.  The motion to dismiss can be granted on this ground alone.

In *Eros*, the Court saw right through the plaintiff's claims and called out the fact that the Defendants reports and articles analyze "publicly available" materials which are "all disclosed" and some hyperlinked. *See id.* at *7. "Crucially . . . Eros does not dispute the existence of the source material" it just quarreled over how it should be read.  *See id.* at *8.

*Eros* relied on *Yangtze* for the same ruling: As in *Yangtze*, Judge Cohen recognized that the Plaintiff's FAC "*belie[s] its claims*" since it merely argues with defendant's conclusions.  *Id.*

That is exactly what NG's FAC does here, it belies its claims since it argues over JCap's conclusions.  Among the most remarkable examples:

➢ ¶10: NG admits that the feasibility of the Donlin Gold project is documented by "thousands of pages of environmental, technical, and social studies" – the "key

findings" of which "are well documented in the publicly available" materials that the paragraph lists.  The Report references and relies on these same materials.

➢ ¶21 sets up NG's argument over the meaning of its "feasibility study" – cited and relied on by both sides – and over JCap's interpretation of what "the feasibility study clearly shows."

➢ ¶22: "The $8 billion figure [from the most recent 2012 Feasibility study] referenced by JCap in its report includes *operating costs* as required under [GAAP] . . ." So, anyone who reads the 2012 Study can see what the argument is about.  In all events, costs are costs.

➢ At ¶23, NG quibbles over the "meager drill assays in 2017."  NG says, they "were *not meager*; they were *proportional* to Donlin Gold's goal" (emphasis added).  That's opinion.

➢ At ¶21, NG complains about Report's claim that "management's biggest misrepresentation is around the cost to build the pipeline."  But that too is an opinion because it is based on a comparison with the comparable pipeline (the Mackensie pipeline) which was costed out in 2013 for double the amount that NG estimated for its long pipeline.  That's argument; that is opinion.

➢ ¶25 begins NG's argument over whether "the deposit is so remote and technically challenging that the mine will never be built."  That line which summarizes the second group of alleged falsehoods is itself nothing more than flat out opinion.  And what does NG base its counter-argument on? Once again, "the thousands of pages of publicly available studies supporting the Donlin Gold project."

➢ ¶25 goes on to attack JCap's claim that "the Donlin deposit… is not *feasible* to put into production *at any gold price*." And what does NG base its argument on? Once again, it's disputed reading of the same "publicly available feasibility study conducted by credentialed industry-leading professionals…" NG's statement is opinion and so is JCap's.  It is all quarrelsome opinion.

➢ At ¶26, NG tangles with JCap on its argument that the "proposed natural gas pipeline central to powering the project is *dead on arrival*," and that "the terrain around the dominant deposit is *among the most inhospitable on the planet*." These statements of patent opinion are challenged at paragraph 27.  And what does NG rely on? The same old feasibility study that both sides are arguing over.  This is not serious pleading.  It's a public relations argument dropped into a complaint.  It proves that this lawsuit is about different readings of the same documents, and is therefore attacking straight garden-variety opinion.

➢ ¶¶32-35 is NG's argument about the exercise of NG stock options. No one denies that they exercised options. The quarrel is over what that means – "voting with their feet" or not. Readers can figure that out on their own.

➢ In sum, each FAC paragraph about the Report is a fight over the meaning of the same studies and documents that both sides point to.  The FAC impugns itself.  It pleads for its own dismissal.

*NG's PR Rebuttal Cited in the FAC Further Makes JCap's Point.*  It is notable that NG's public relations response (*see* FAC ¶¶41-45, "*Novagold Fights Back*"), makes the same arguments based on the same underlying documents.  NG apparently wrote its PR piece and then copied its arguments into the FAC.  In *Silvercorp*, the plaintiff did the same thing.  It issued the same type of "rebuttal" as did NG, and that was another factor that contributed to the court's dismissal of the complaint as opinion.  The *Silvercorp* court said: "The point-counterpoint nature of Silvercorp's press release and . . . posting is characteristic of opinionated debate." *Id.* at 2.  The FAC (*see* ¶¶41-45) replays the repartee between JCap's tweets and NG's rebuttal. In short, NG's FAC is itself a debate with JCap over the meaning of publicly available documents. And that attests to its character as pure opinion.

*Under* **Immuno***, Predictions are Opinions: The Report Is a Prediction About the Prospects of an As Yet Unrealized and Ambitious Plan.*  Novagold does not yet have a business. It does not yet have an operating gold mine. It does not yet have product to sell, gold or otherwise. It has no customers. But, it has plans and studies and projections. Energy, for example, would be needed to extract the gold – hence, the need for fuel to be piped some 315 miles up to the mine site deep in Alaska to get it started.  JCap recognized that the Donlin Gold site was located in a remote, technically challenging and inhospitable part of Alaska.  So, its report examined NG's plans, its feasibility studies and other public documents to assess the prospects of the company's plans in the face of these obvious obstacles.  Hence the title: *Pipe Dream*.  Not all analyst reports critique a company's *future* plans – but when they do, they are even more decisively in the zone of opinion.  The case law recognizes that.

*Immuno*, the leading New York State Court of Appeals ruling on opinion, recognized that idea when it stated,

> We conclude that the body of the letter in issue communicated . . . accusations… and that the writer's *presumptions and predictions* as to what "appeared to be" or "might well be" or "could well happen" or "should be" would not have been viewed by the average reader of the Journal as conveying actual facts about plaintiff.

*Id.* at 255 (emphasis added).  Predictions and presumptions about future activities and conditions are by their very nature the stuff of opinion, judgment and assessment.  Chief Judge Kaye warned that to plumb such writings for "factual assertions" or implications would interfere with the expression of "highly partisan points of view" that the N.Y. State Constitution protects. *MiMedx*, 2018 WL 847014 at *7, cited *Immuno* on this very point (74 N.Y.2d 548, 560, *aff'd after remand by* 77 N.Y.2d 235 (1991)):

> Speculations as to the . . . potential future consequences of proposed conduct generally are not readily verifiable, and are therefore intrinsically unsuited as a foundation for libel.

That core principle recognized by *Immuno* is of particular moment here where the dispute between Novagold and JCap is very much about the *potential future outcome and consequences of Novagold's proposed plans*.  They are "not readily verifiable and they are therefore intrinsically unsuited as a foundation for libel."  *Id.*

**The Statements Lack Defamatory Meaning and Are Not "Of or Pertaining" to Novagold.**  The FAC claims that the alleged "falsities contained in the Report revolve around three central themes" of the JCAP.  The FAC groups the 15 alleged falsehoods into three themes. And they are quoted in ¶¶10-35 of the FAC.  Not only are they all Opinion and argument, but most of them *also* 1) lack any defamatory meaning and 2) they are not "of and pertaining" to the Plaintiff.  They may be about Alaska, the river conditions during the winter as well as electric

power needs, what they might be and how they might be supplied. But they are not defamatory; and they are not about the plaintiff.  And, they are in all events opinions.

## II.     THE FAC MUST BE DISMISSED FOR FAILURE TO PLEAD ACTUAL MALICE

### Novagold's Pleading Fails for Three Independent Reasons.

The burden of proving actual malice with clear and convincing evidence falls on this plaintiff for three independent reasons: 1) New York's Anti-SLAPP law imposes that standard on both public and private figures in libel actions when the subject is a matter of "public interest"; 2) Novagold by its own pleading and activities is at minimum a "limited purpose public figure"; and 3) such publicly traded companies have long been deemed public figures.

*New York's Anti-SLAPP Law.*  This action is one "involving public petition and participation" under the expanded provisions of New York's Civil Rights Law, which now include "(1) any communication in a place open to the public or a public forum in connection with an issue of public interest;" and "(2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." N.Y. Civ. Rights Law §76-a(1)(a).  The new law states: "'Public interest' shall be construed broadly, and shall mean any subject other than a purely private matter."  N.Y.Civ. Rights Law §76-a(1)(d).

In such an action, "damages may only be recovered if the plaintiff, in addition to all other necessary elements, *shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue."*  N.Y. Civ. Rights Law § 76-a(2) (emphasis added).

14

The new statute embodies the same "actual malice" standard long in place for actions "involving alleged defamation against public figures or, in some cases, against private figures whose speech was of public concern." *See MiMedx*, 2018 WL 4735717, at *8 (citation omitted).

Novagold cannot shake free of the actual malice standard that applies to this case under the new New York Anti-SLAPP law (*NY Civil Rights Law* §70-a and §76-a):

a.  The new law, effective Nov. 10, applies expressly to anyone who has "commenced or **continued**" such an action.  N.Y. Civ. Rights Law § 70-a(1) (emphasis added).

b.  The requirement that a plaintiff prove actual malice regardless of their public or private figure status is a *substantive* feature of the law, not a procedural one. N.Y. Civ. Rights Law 76-a(2).

c.  The new law has no *Erie* problem. It was designed to avoid *Erie*: Its substantive provisions are contained in N.Y. Civil Rights Law; and its separate procedural provisions (special motions and stays) appear in the CPLR.  We are not relying on CPLR provisions.  We are not making a special motion based on the CPLR.

d.  The new law is different than the California Anti-SLAPP.  So *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) does *not* apply to the NY statute.  It is similar to the Nevada Anti-SLAPP which the Second Circuit *did* apply in *Adelson v. Harris*, 774 F.3d 803, 807, 809 (2d Cir. 2014). The Second Circuit in *Reid* made clear that the Nevada Anti-SLAPP is "quite different" from California's.  966 F.3d at 86 n.3.  The Second Circuit in *Reid* defended its *Adelson* ruling because the "effects of the [Nevada] Anti-SLAPP law. . . are substantive." *Id.* (citation omitted).

e.  Sarah Palin recently objected on similar grounds to the application of the NY Anti-SLAPP law to her long standing libel case against the *New York Times*. On December 29, 2020, Judge Rakoff ruled against all Palin's objections and will apply the Anti-SLAPP to her action.  *See Palin v. The New York Times Co.*, --- F. Supp. 3d. ----, No. 17-cv-4843-JSR, 2020 WL 7711593, at *5 (S.D.N.Y. Dec. 29, 2020).

f.  The new law was "effective immediately" on November 10, 2020.  Novagold chose to file its FAC on November 16.  JCap gave plaintiff notice of the new law on Nov. 24.  Plaintiff had an opportunity to withdraw and not to continue the action before JCap incurred further costs.

*Novagold Is At Minimum A Limited-Purpose Public Figure.*  NG is not a *closely held* company; it is a *publicly traded* company.  NG is not a company engaged in an unregulated business.  Its activities are *highly regulated* for environmental impact (like the infamous Pebble Mine) with various public filings that reflect the very substantial public character of its open pit mining activities and long distance pipeline construction.  To plan and seek public permits to build an open pit mine plus a 315-mile pipeline through central Alaska is nothing short of "thrust[ing] [oneself] "into the vortex of public controversy."  *See, e.g.*, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974).

For NG to claim private figure status is more than disingenuous.  NG's FAC alone establishes NG at very least as a limited purpose public figure.  NG is not a quietly run company operating in a little known backwater of industry.  It seeks out and secures much press to promote its gold mining plans as the FAC boasts.  And it polices criticism of its plans aggressively as this action demonstrates.  Mr. Kaplan, NG's principal, has – in a bit of cute puffery – suggested in a recent new article that Warren Buffett has supported his Donlin Gold project by investing in Barrick Gold.  *See generally* Korzenik Decl. ¶1(e), Ex. E.  Yet questions about Barrick's interest in Donlin have been the subject of other news reports.  *See, e.g.*, Korzenik Decl. ¶1(d), Ex. D. The bottom line is that NG is at very least a limited purpose public figure and must therefore prove and plead actual malice.

*Publicly Traded Companies Are Ordinarily Subject to the Actual Malice Requirement.*
New York courts have long recognized the public's "interest in" and "need for information concerning . . . the successes, failures or manipulations of specific corporations in which thousands of people have invested their personal fortunes."  *Fotochrome, Inc. v. New York Herald Tribune, Inc.*, 61 Misc. 2d 226, 230 (Sup. Ct. Queens Cty. 1969); *accord MiMedx*, 2018

16

WL 4735717, at *8 n.5 (corporation suing over "'short and distort' market manipulation conspiracy" was public figure). And they therefore expect such companies to meet the actual malice standard. *See also Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015).

### *Novagold Has Failed to Plausibly Plead Actual Malice as It Must under*

*Iqbal/Twombly.* The Actual Malice standard requires that a libel plaintiff prove with "clear and convincing evidence" that the defendant published each alleged falsehood with "a subjective awareness of either falsity or probable falsity of the defamatory statement or acted with reckless disregard of its truth or falsity." *Celle*, 209 F.3d at 182 (2d Cir 2000). "Reckless disregard" requires that "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

"Not only is proving actual malice a heavy burden"; but "in the era of *Iqbal* and *Twombly*, pleading actual malice is a more onerous task as well." *Biro*, 963 F. Supp. at 278 (citations omitted) (collecting cases), *aff'd*, 807 F.3d 541 (2d Cir. 2015). Here NG's FAC fails. To support its "actual malice" pleading, Novagold continues to rely on the allegation that JCap's "intent" in publishing the Report was to "profit on short positions" it allegedly held in Novagold stock. *See* FAC ¶¶1-4, 43, 45, 51, 58. But such a "purported financial motive – standing alone – does not support a finding of actual malice." *MiMedx*, 2018 WL 4735717, at *12 (granting Rule 12(b)(6) dismissal of complaint alleging "short and distort" defamation conspiracy). *See Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 667 (1989) ("Nor can the fact that the defendant published the defamatory material in order to increase its profits suffice to prove actual malice."). *See also Fotochrome*, 61 Misc. 2d at 231 (reporter's alleged admission to

having a short seller's interest in an article was "not in and of itself sufficient to defeat" defendant's MSJ based on failure to show actual malice).  A speaker's financial interest – long, short or otherwise – does not count toward actual malice pleading.  NG's FAC has only pleaded actual malice buzzwords plus bombastic contentions regarding short-sellers and their "short and distort" scheme.  That leaves NG's FAC threadbare.

"Moreover, because actual malice is a measure of the defendant's attitude toward the truth, not his attitude toward the plaintiff, allegations of the defendant's bias or hostility fail plausibly to establish actual malice."  *MiMedx* at *8, *quoting Egiazaryan v. Zalmayev*, 2011 WL 6097136, at *8 (S.D.N.Y 2011)*.

All else Novagold pleads are "actual malice" buzzwords such as "reckless disregard" (FAC ¶¶3, 51, 58) – which are "simply not enough" to support a plausible actual malice inference.  *Biro*, 963 F. Supp. at 279 (citations omitted).

The FAC must be dismissed with prejudice, just as similarly defective complaints were dismissed in *Biro v. Conde Nast*, 807 F.3d 541, 545 (2015), *cert. denied*, 136 S. Ct. 2015 (2016) *(quoting Bell v. Twombly,* 550 U.S. 544, 556 (2007)); *Adelson v. Harris*, 973 F.Supp.2d 467, 503 (S.D.N.Y. 2013), *aff'd*, 774 F.3d 803 (2d Cir. 2014); *MiMedx*, 2018 WL 4735717; and *Lemelson v. Bloomberg*, 903 F.3d 19 (1st Cir. 2018).

## III.   NOVAGOLD HAS FAILED TO PLEAD FALSITY OF REPORT STATEMENTS

Because "falsity – or lack of substantial truth – is an element of a New York defamation claim, it follows that a plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court."  *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017); *see id.* at 246-47 (collecting cases).  In short, "[t]o satisfy the falsity element of a defamation claim, plaintiff must allege that the complained of statement is 'substantially false.'"  *Id.* at 242 (citation omitted).  *See also Birkenfeld v. UBS AG*, 172 A.D.3d

566, 566 (1st Dep't 2019) (statements that plaintiff had been "convicted in the U.S. for, among other things, having lied to the U.S. authorities" were "at a minimum, substantially true," supported by "admitted facts" from plaintiff's "plea agreement"). "[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Tannerite*, 864 F.3d at 242.

Novagold's FAC fails to demonstrate substantial falsity of the Report statements. In essence, Novagold attempts to advance a different interpretation of the same public documents to which the Report accurately referenced throughout. *See* FAC ¶10. For example:

- Novagold does not dispute that its statements have disclosed a projected $1.3 billion in operating costs; it simply contends they should not be regarded together with Novagold's projected initial capital expenditures of $6.7 billion. FAC ¶22. Yet the Report discloses that JCap has included the "capitalized opex" (closer to $1.4 billion) from the previous financial statements in its analysis of the project's "Initial Capex" – and puts forth reasons why this "hidden" cost should be considered with initial costs. Report at 16.

- Novagold claims the Report's statement that the "terrain around the Donlin deposit is among the most inhospitable on the planet" in "demonstrably false." FAC ¶26; Report at 2. Yet Novagold does not dispute that the terrain along the pipeline route "is frozen for seven months of the year" (Report at 7). And the FAC even admits that "approximately 75 miles of the planned 315-mile route includes rugged mountainous terrain." FAC ¶27.

- Elsewhere, Novagold does not dispute the cash that its insiders have realized from their "exercise of options." The FAC admits that they "exercised options" and thereby, as the Report put it, "voted with their feet." FAC ¶32. The acknowledged "exercise of options" in JCap's view makes NG a "stock promote" to the primary benefit of its executives (Report at 1, 18 Table 4). Novagold simply would prefer to call those sales the "exercise of options." FAC ¶¶34-35. That makes the Report's account of it substantially true.

Novagold's failure to plead substantial falsity of these Report statements and others in is an additional basis on which the Court should dismiss the FAC.

## IV.    THE FAC's Trade Libel AND DAMAGES CLAIMS SHOULD BE STRICKEN

***Trade Libel Confined.***  Trade libel "is confined to denigrating the quality of a business'

goods or services."  *Ruder & Finn v. Seabord Sur. Co.*, 52 N.Y.2d 663, 670-71 (1981); *see Eros*,

2019 WL 1129196, at *11 (dismissing disparagement claim against a short seller based on *Ruder*

*& Finn*).  The FAC's new damages allegations (¶¶48-49) fail to plead *any* requisite facts

suggesting "the publication of the false material was a substantial factor in inducing others not to

have business dealings with it."  *Penn Warranty Corp. v. DiGiovanni*, 10 Misc. 3d 998, 1003

(Sup. Ct. N.Y. Cty. 2005); *see also Eros*, 2019 WL 1129196, at *11 (citation omitted)

(disparagement "is confined to denigrating the quality of a business' goods or services").

Novagold has no alleged goods or services to denigrate.  And JCap did not write about

them.  *See also Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 472 (S.D.N.Y.

2006) (dismissing as "not colorable" injurious falsehood claim where "the alleged statements

giving rise to plaintiff's proposed injurious falsehood claim are the same statements used in

support of plaintiff's defamation claim . . . . [and which] do not speak to the quality of plaintiff's

goods or services at all").

The consequence of this failure of the trade libel claim is twofold: a) Not only does that

cause of action get dismissed, but b) with it, all the alleged "special damages" such as attorneys'

fees and remedial press release costs *must be stricken from the FAC*.  Not only are such damages

not cognizable anyway in trade libel cases; but they are uncontroversially out of the question in a

regular libel claim – where the standard American Rule applies.

***Alleged Legal Fees and PR Costs Not Cognizable or Plausibly Pleaded; Novagold Has***

***Failed to Plead Proper Special Damages.***  The putative "special damages" that Novagold has

tried to replead in its FAC are not permitted or cognizable even in trade libel cases.  Nor have

they been properly pleaded here.  Novagold has therefore failed to plead the special damages that

trade libel claims require.  The consequence of this is twofold: those damages allegations should

be stricken, and with them, the trade libel cause of action.

Trade libel, which is also referred to in New York case law as "injurious falsehood" and

product or commercial disparagement, "is a tort separate and distinct from the tort of

defamation."  *Henneberry*, 415 F. Supp. 2d at 470, *citing Ruder & Finn,* 52 N.Y.2d at 670-71.

In New York,

> The elements of a claim of injurious falsehood, which is also called product
> disparagement or trade libel, are: (i) falsity of the alleged statements; (ii)
> publication to a third person; (iii) malice; and (iv) special damages. *See Drug
> Research Corp. v. Curtis Publishing Co.,* 7 N.Y.2d 435, 440 [(1960)]. . . .  The
> requirement of pleading and proving special damages is applied strictly. . . . Thus,
> a motion to dismiss a claim of injurious falsehood may be granted for failure to
> allege special damages with the requisite specificity.  [*See*] *Drug Research Corp.*,
> 7 N.Y.2d at 440-41. . . . (citations omitted)

*Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 02 CIV. 9567 (KNF), 2003 WL 22410623, at *7

(S.D.N.Y. Oct. 21, 2003) (dismissing injurious falsehood claim under Rule 12(b)(6)).  A plaintiff

alleging trade libel "*must* establish that the publication of the false material was a substantial

factor in inducing others not to have business dealings with it."  *Penn Warranty*, 10 Misc. 3d at

1003 (citations omitted).

Novagold does not allege any statements from JCap's Report as *distinct* to its trade libel

cause of action.  *See* FAC ¶¶57-59.  As such, the Court should dismiss Novagold's trade libel

complaint for the same reasons as discussed above.  *See, e.g.*, *WDF, Inc. v. Kohler Co.*, 30

A.D.3d 589, 589 (2d Dep't 2006) (statement was nonactionable opinion); *Stonebridge Capital,

LLC v. Nomura Int'l PLC*, 897 N.Y.S.2d 672, 2009 WL 2045621, at *6 (Sup. Ct. N.Y. Cty. July

6, 2009), *aff'd*, 68 A.D.3d 546 (1st Dep't 2009) (statement not "knowingly" false).

Although the Court granted Novagold leave to do so (*see* Minute Entry and Order dated Nov. 2, 2020), it has failed to amend its Complaint with any sufficient or cognizable special damages to sustain its trade libel action.

"It has been said that, when special damages are required to be proved, they must be pleaded with precision. . . . Cases frequently founder on this rock."  1 Robert D. Sack, SACK ON DEFAMATION: LIBEL, SLANDER, AND RELATED PROBLEMS, § 2.8.5, at 2-140 (PLI 5th ed. 2019). "Language which merely disparages a product is not actionable *unless* special damages are pleaded and it appears that such damage is a natural and immediate consequence of the disparaging statements."  *Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989) (emphasis added), *citing Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435, 440 (1960)*; Le Massena v. Storm,* 62 A.D. 150, 154 (1st Dep't 1901).  Such special damages "must be fully and accurately identified with sufficient particularity to identify actual losses." *See, e.g.*, *Sandler v. Simoes*, 609 F. Supp. 2d 293, 303 (E.D.N.Y. 2009) (citation omitted).  *See also* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").

Novagold's FAC alleges no lost profits or lost contracts.  Although it cites to *Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150 (S.D.N.Y. 1983) in support of its amended allegations (FAC ¶48), Novagold has not alleged the type of special damages that the *Charles Atlas* court held properly pleaded.

In *Charles Atlas*, the plaintiff had alleged a disparagement had "caused it to lose $30,323 in sales and revenues and to expend $14,000 in 'special advertising expenses'"; "at least one" of which was "both properly pleaded and legally sufficient" to survive motion to dismiss.  570 F.

Supp. at 155. [4] Novagold claims that "at least $212,000" in fees of the counsel that it engaged "[i]mmediately after publication of the Report" (FAC ¶49), along with "at least $201,000" worth of employee and management time (*id.*), constitute special damages. They do not.

The *Charles Atlas* court itself raised questions over "[w]hether legal fees expended to prosecute a claim for product disparagement can be recovered as an item of special damages." *Charles Atlas*, 570 F. Supp. at 156. But it bracketed the question, permitting the case to proceed in an era when complaints were not subject to a *Twombly-Iqbal* test. *See id.* at 157-58.

Subsequent authority has resolved the *Charles Atlas* court's "question" in the negative. In *Angio*, "All of the cases cited by plaintiff" in opposition to defendant's motion to dismiss "include[d] instances where money was awarded for special damages *including* legal fees. . . . In no case, however, were legal fees the sole damages incurred, as is claimed here." *Id.* (emphasis added). The *Angio* court held that "legal fees and executive time, standing alone do not comprise special damages, and, therefore, that the trade libel claim is insufficiently pleaded." 720 F. Supp. at 274. This Court should reach the same conclusion and reject the special damages pleading.

First, just because Novagold purports to divide its alleged damages into chunks of "at least $212,000" in legal fees and "at least $201,000 in employee time to date" (FAC ¶¶49, 57), that does not mean that it has even begun to itemize special harm. *Drug Research Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435, 441 (1960) ("round figures, with no attempt at itemization," insufficient for "libel on the product"); *Penn Warranty*, 10 Misc. 3d at 1005. *See also Bernstein v. O'Reilly*, No. 17 CIV. 9483 (DAB), 2019 WL 10995110, at *5 (S.D.N.Y. Sept. 26, 2019)

---

[4] The FAC's other case citation, to *Bose Corp. v. Consumers Union of U.S. Inc.*, 529 F. Supp. 357, 365 (D. Mass. 1981) (FAC ¶48), is a final decision after trial. Earlier in that case, ruling on a motion to dismiss, the court required the plaintiff to plead special damages "with a greater degree of specificity" than alleging lost profits from sales of $2,851,200. *See Bose Corp. v. Consumers Union of U.S. Inc.*, 57 F.R.D. 528, 530 (D. Mass. 1973). At any rate, the First Circuit reversed the district court's judgment for failure of the plaintiff to prove actual malice, and the Supreme Court affirmed the reversal. *See* 692 F.2d 189, 196-97 (1st Cir. 1982), aff'd, 466 U.S. 485 (1984).

(allegation that plaintiff paid "'at least $6,500'" for "medical treatment" held to be "round figure" that was "insufficient to sustain Plaintiff's allegation of special harm;" motion to dismiss granted); *Bose*, 57 F.R.D. at 530 (dismissing pleading allegation of $2,851,200 in lost profits as insufficiently itemized absent a basis for figure's computation).

Second, irrespective of alleging that it incurred legal fees "prior to the filing of this suit" (FAC ¶49), Novagold has not distinguished those from legal fees it has incurred for the litigation itself – recovery of which would be "improper" per the American Rule absent "any agreement, statute or court rule authorizing" such an award. *Gallo v. Montauk Video, Inc.*, 178 Misc. 2d 1069, 1070 (App. Term 1998) (citation omitted). No such "agreement, statute or court rule" is in play here.

There is no material distinction in Novagold's pleading between counsel's "assist[ing]" the company "in analyzing" the May 28 JCap Report "(including its authors and effects), refuting the misstatements in the Report . . . , analyzing market activity, and clearing Novagold's name" (FAC ¶49) and counsel's drafting of the Complaint that Novagold filed just one month after the Report's publication. [5] *See* Dkt. No. 1 (June 29, 2020). In fact, the Complaint (and the FAC) copies many, if not most, of its allegations from the 40-page "Fact Matrix" that Novagold also released in June 2020 (FAC ¶43). *See* "Fact Matrix in Response to May 28, 2020 JCAP Report," Novagold, *available at* https://www.novagold.com/_resources/news/2020-06-08c.pdf (June 8, 2020); *compare, e.g.*, *id.* at 11 ("JCAP's statement concerning insider selling improperly conflates the sales of shares by insiders with the exercise of options by insiders."), *with* FAC ¶35 (JCAP's statements concerning insider sales deliberately conflate the *sale of shares by insiders* with the *exercise of options by insiders* – two materially different transactions.").

---

[5] Likewise, the FAC contains no clear allegations that employees spent time on tasks *separate* from this litigation, or even pre-suit. Indeed, Novagold alleges employee time costs of "$201,000 *to date*." FAC ¶49 (emphasis added).

Litigation costs do not constitute special damages to sustain a trade libel claim. *Angio*, 720 F. Supp. at 274. "[S]uch a rule would eviscerate the requirement that special damages must be pleaded and proven because every plaintiff necessarily incurs attorneys' fees and costs in pursuing a lawsuit." *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, No. 1:00CV98K, 2001 WL 670927, at *4 (D. Utah Mar. 26, 2001), *aff'd*, 312 F.3d 1292 (10th Cir. 2002) ("*CTI*"), *citing Angio*, 720 F. Supp. at 274.

***Novagold's Allegations About Stock Price Decline or Fluctuation Must Be Stricken Because They Fail To Allege Any Actual Realized Loss.*** Nor would a decrease in Novagold's stock price or "market capitalization," allegations of which linger in the FAC (¶¶1, 4, 43, 46). Nowhere does the FAC allege the price decline as a realized "economic loss" of Novagold's own. *See generally Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346-48 (2005). This deficiency was recognized previously in a closely analogous libel context by a Utah district court in *CTI*. There, the court agreed with the defendant that the publicly-traded plaintiff's complaint had failed "to show how a decline in its stock price harmed CTI, as opposed to its shareholders." *Id.* at *3-4. The plaintiff also had failed to show how "mere fluctuations in the closing stock price" constituted "realized, liquidated and measurable losses" of its own. *Id.*, *citing Salit v. Ruden, McClosky, Smith, Schuster & Russell*, 742 So.2d 381, 388 (Fla.Ct.App.1999). The *CTI* court rejected the plaintiff's notion that a loss in "market capitalization" was recoverable as special damages – and denied the plaintiff leave to amend its Complaint "to add attorneys fees and costs incurred by CTI in 'clearing' its name." *Id.* at *3. This Court should as well. *Compare id.*, *with* FAC ¶¶4, 49. [6]

## CONCLUSION

The Court should dismiss the FAC in its entirety with prejudice.

---

[6] The FAC fails to plead *any* other damages specifics other than its stock price decrease. *See* ¶¶46-47, 50.

Dated: New York, New York
      January 15, 2021

MILLER KORZENIK SOMMERS RAYMAN LLP

By: /s/ David S. Korzenik
David S. Korzenik
dkorzenik@mkslex.com
Terence P. Keegan
tkeegan@mkslex.com
1501 Broadway, Suite 2015
New York, New York 10036
Phone: (212) 752-9200

*Attorneys for Defendant J Capital Research USA, LLC*