Seth T. Taube
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel: 212.408.2500
Fax: 212.408.2501
*Attorney for Plaintiff, NOVAGOLD Resources Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOVAGOLD RESOURCES INC., <br><br> Plaintiff, <br><br> v. <br><br> J CAPITAL RESEARCH USA LLC, <br><br> Defendant. | CIVIL ACTION NO.: 1:20-cv-02875 (LDH)(PK) <br><br> **JURY TRIAL DEMANDED** <br><br> Date of Service: May 19, 2021 |

## PLAINTIFF NOVAGOLD RESOURCES INC.'S MOTION TO COMPEL

NOVAGOLD filed the above-captioned libel and trade libel claims to recover the damages it suffered as a result of the demonstrably false and misleading "research report" targeting NOVAGOLD that JCAP issued on May 28, 2020 (the "Report"). Although JCAP holds itself out to be a research organization, publishing "highly diligenced research reports on publicly traded companies, relying on deep on-the-ground primary research," nearly every sentence of the 22-page Report turns on an inaccuracy or distortion. The goal of the Report cannot have been the truth, but rather to harm NOVAGOLD and its shareholders. Indeed, JCAP disclosed on its website, "Be warned. We are short-sellers . . . we will profit if these stocks decline in value." And the scheme worked: while NOVAGOLD worked tirelessly—and at great cost—to combat the Report, its reputation suffered (as demonstrated by the steep decline in the value of its shares). Now JCAP

1

seeks to circumvent liability by withholding all evidence of its wrongdoing on the basis of an overbroad assertion of the reporters' privilege. An order compelling JCAP to produce the requested materials is necessary to provide NOVAGOLD the information it needs to build its case and to which it is entitled under the Federal Rules of Civil Procedure governing discovery. Fed. R. Civ. P. 26(b)(1) (permitting discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense").

JCAP has objected to virtually all requests for documents and information outside the four corners of the Report, including:

- With the exception of an undefined set of publicly-available documents, the documents and information JCAP considered in identifying NOVAGOLD as a subject for the Report (RFP No. 5, Interrogatory No. 1);

- Documents reflecting discussions between JCAP and NOVAGOLD, including JCAP's internal communications concerning those discussions (RFP No. 6);

- Documents reflecting communications or meetings between JCAP and third parties regarding NOVAGOLD and the identification of persons who provided information to JCAP (RFP No. 7 and Interrogatory No. 2);

- Documents and information reflecting JCAP's due diligence, research, or analysis in drafting the Report and the identity of persons involved in researching or drafting the Report (RFP No. 8 and Interrogatories 3 and 5);

- Documents reflecting any meetings between JCAP and anyone about NOVAGOLD or NOVAGOLD securities (RFP No. 11);

- Documents reflecting the purchase, acquisition, sale or disposition of securities by any company in the mining industry or communications about those securities (RFP Nos. 12 and 13);

- Documents and information reflecting persons who paid JCAP any money, consideration, or other inducement to prepare, revise or publish the Report (RFP No. 14, Interrogatory No. 3); and

- Documents and information reflecting editorial input, oversight, or suggested edits or comment of or concerning the Report by any person and the identity of any persons who knew about the Report prior to its publication (RFP No. 15 and Interrogatory No. 6).

*See* Exhibit A, Plaintiff's First Set of Interrogatories; Exhibit B, Plaintiff's First Request for Production of Documents. To date—more than seven months after NOVAGOLD served its requests on October 9, 2020—JCAP has not produced *any* documents responsive to the majority of these critical requests for production.[1] The information JCAP seeks to protect extends well beyond the scope of New York's reporters' privilege, which protects "news obtained or received in confidence" or, in qualified instances, "unpublished news obtained by a journalist or newscaster in the course of gathering or obtaining news." N.Y. Civil Rights Law § 79-h. Indeed, this information spans the very same topics into which the Court expressly permitted discovery at the Parties' September 30, 2020 Initial Conference, including how NOVAGOLD was identified as a target, the third parties that influenced JCAP's decision to target NOVAOGLD, worked with it to create the Report, or put the Report in motion, the research efforts that JCAP claims it undertook

---

[1] On the eve of the Parties' last conference with the Court, JCAP made one production of four publicly-available documents responsive to NOVAGOLD's RFP 5. JCAP has represented that it intends to produce additional publicly-available documents but has neither described the scope of the documents it will provide nor stated when it expects to make such production.

3

to compile the Report, information concerning JCAP's trading of NOVAGOLD securities or any other related securities in the industry, and the publication of the Report. *See* Exhibit C, Transcript of September 30, 2020 Teleconference at 7, 26. JCAP's refusal to provide the documents essential to NOVAGOLD's case finds no support in law and an order compelling answers to Interrogatories 1, 2, 3, 5, and 6 and documents responsive to requests for production 5, 6, 7, 8, 11, 12, 13, 14, and 15 is appropriate.

**ANALYSIS**

The state legislature has defined New York's reporters' privilege: it protects professional journalists and newscasters from contempt for failing to disclose "news" or the identity of the source of any such news. N.Y. Civil Rights Law § 79-h. "News" is a defined term. It means "written, oral, pictorial, photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting public welfare." *Id*. at § 79-h(a)(8). While an absolute privilege protects "news obtained or received in confidence or the identity of the source of any such news," only a qualified privilege protects nonconfidential news. *Id*. at § 79-h(b)–(c). Such privilege may be overcome with a "clear an specific showing that the news: (i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternate source." *Id*. at § 79-h(c).

"[T]he burden is on the person claiming the privilege to show entitlement." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 309 (2d Cir. 2011). Here, JCAP has made no showing that the reporters' privilege protects it from producing the broad range of materials to which it now objects. JCAP's conclusory objections in its responses state only that "[i]f there are other documents that are arguably responsive to this request, they are subject to the reporters' privilege," "we object as well on the grounds of the reporters' privilege," or "JCAP objects to this Request on the grounds

4

set forth in [paragraph] 7 above." *See* Exhibit D, Response to Plaintiff's First Set of Interrogatories; Exhibit E, Response to Plaintiff's First Request for Production of Documents. Such broad references make no effort to describe what material JCAP is withholding (or even whether such material exists), why such material would qualify as "news," or whether that material is purportedly confidential or nonconfidential. As a preliminary issue, it is not clear that the privilege would apply at all to JCAP's activities which, if sponsored by another party for the purpose of driving down NOVAGOLD's share price, do not constitute newsgathering at all. Even setting aside this threshold question, the privilege is not nearly so broad as JCAP asserts and, in any event, NOVAGOLD is entitled to the non-confidential information that is essential to its case.

**I.  JCAP's short-and-distort Report is not newsgathering protected by the reporters' privilege.**

Not only is information such as the editorial control that others might have exercised over the Report or consideration that they might have paid JCAP to target NOVAGOLD not news (as discussed further in Section II below) but discovery of such materials is necessary to determine whether the reporters' privilege applies to any of JCAP's materials at all. The reporters' privilege is intended to shield from contempt *professional journalists* and *newscasters* who seek to protect *news* coming into their possession in the course of gathering news to disseminate to the public. N.Y. Civil Rights Law § 79-h. To the extent JCAP's publication had no aim of disseminating any such news to the public, but rather was published with the sole intent of driving down NOVAGOLD's share price for the profit of it or others, it does not fall within the ambit of the reporters' privilege protection to begin with. But JCAP has refused discovery into the documents that would make this preliminary determination even possible, asserting that the privilege prohibits disclosure of any discussions it had with third parties, including discussions directing JCAP's work or incentivizing it to target NOVAGOLD (RFP 5, Interrogatory 1), meetings with third parties

about NOVAGOLD or its securities (RFP 7, Interrogatory 2), documents reflecting communications about NOVAGOLD securities (RFPs 12 and 13), documents reflecting persons who paid JCAP money, consideration, or other inducement to prepare, revise, or publish the Report (RFP 14, Interrogatory 3), and documents and information reflecting editorial input or oversight of third parties (RFP 5, Interrogatory 6).

Courts have confirmed that "for determining the existence, or in any event the strength, of the press privilege, all forms of intention to publish or disseminate information are not on equal footing . . . . Those who do not retain independence as to what they will publish but are subservient to the objectives of others who have a stake in what will be published have either a weaker privilege or none at all." *Berlinger*, 629 F.3d at 308; *see also Matter of Murray Energy Corp. v. Reorg Research, Inc.*, 152 A.D.3d 445, 447 (N.Y. App. Div. 1st Dept. 2017) (("Other courts have found the extent of a publication's independence and editorial control to be important in determining whether to apply the Shield Law." (collecting cases)). JCAP has made no showing that it has not been compensated or otherwise incentivized to report on NOVAGOLD or that others did not exercise editorial control over what it could and could not say about NOVAGOLD. Just the opposite—JCAP expressly stated when it published its piece that it would "profit if these stocks decline in value":

## J Capital is short NovaGold (NG US)

Be warned. We are short-sellers. We are biased. We do our best to find and present facts, based on extensive primary research and using public sources. But we will profit if these stocks decline in value. We do not offer advice. We present our views.

### The NovaGold Pipe Dream

JCAP made a conclusory assertion in the Parties' joint letter to the Court that its "Interrogatory responses demonstrate how its principals exercised full editorial control over the Report's content and publication." But its actual responses include broad catchalls that it "objects

6

under the Reporters' Privilege to disclosing any other discussions or communications" (Interrogatory 3) and that "as [to] any other persons who knew of the Report or its preparation prior to its publication, [it] objects on the grounds of the Reporters' Privilege" (Interrogatory 6). It is not clear at all from JCAP's objections whether any such persons or information exists: its vague responses provide no answer as to whether JCAP's work is at the pay or direction of a third party. Further, JCAP has refused to provide any documents at all that might shed light into its editorial processes and substantiate its unverified post-discovery claim that its principals exercised "full control." NOVAGOLD is entitled to such information to determine whether any reporters' privilege could even apply to JCAP's documents and communications.

## II. Certain of the documents and information that JCAP refuses to produce do not qualify as "news" and are not subject to the protections of New York's reporters' privilege.

Setting aside whether the reporters' privilege applies to JCAP's reporting or the documents underlying that reporting at all, certain of the information to which JCAP has objected to producing does not qualify as "news" whether obtained confidentially or non-confidentially. JCAP's sources of funding and internal processes are plainly not "written, oral, pictorial, photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting public welfare." N.Y. Civ. Rights Law § 79-h. Without explanation or citation to authority, JCAP has asserted that the reporters' privilege is so broad as to cover any and all internal communications about its reporting processes. For example, JCAP has refused to provide rough drafts of the Report and communications between its principals regarding the analysis or due diligence it conducted in drafting the Report (if any) (RFP 8, Interrogatories 3 and 5). Similarly, JCAP has refused to provide any documents reflecting persons who paid JCAP any money or other inducement to

prepare or revise the Report (RFP 14). NOVAGOLD is entitled to discovery of these documents and information.

**III. NOVAGOLD is entitled to the non-confidential information that is (i) highly material and relevant; (ii) critical or necessary to the maintenance of its claim or proof of material issues; and (iii) not obtainable from any alternative source.**

Finally, JCAP has made no showing that any of the information it seeks to protect was obtained in confidence. Non-confidential information must be produced upon a showing that it "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternate source." N.Y. Civ. Rights Law § 79-h(c).

Many of the requests plainly do not call for confidential information, including: documents reflecting communications between JCAP and NOVAGOLD (including internal JCAP discussions concerning those communications) (RFP 6); documents reflecting the purchase, acquisition, sale, or disposition of securities by any company in the mining industry (RFPs 12 and 13); documents reflecting persons who paid JCAP money, consideration, or other inducement to prepare the Report (RFP 14); and documents and information reflecting editorial input, oversight, or suggested edits concerning the Report (RFP 15 and Interrogatory 6). Other requests—though they conceivably may call for confidential information (if such information exists), also call for non-confidential information, including: documents and information JCAP considered in identifying NOVAGOLD as a subject for the Report (including internal communications on such selection) (RFP 5 and Interrogatory 1); and documents and information reflecting communications or meetings between JCAP and third parties regarding NOVAGOLD or its securities (including those meetings that were neither anonymous nor confidential) (RFP 7, 11–13 and Interrogatory 2).

Such non-confidential information—to the extent it qualifies as news at all—is essential to NOVAGOLD's maintenance of its libel and trade libel claims. Indeed, courts have recognized the

8

particular importance of such discovery in defamation cases. In *Aequitron Med., Inc. v. CBS, INC.*, a court in the Southern District of New York overruled the Defendant's constitutional reporters' privilege objection and compelled discovery including correspondence, reporter's notes and notebooks concerning the preparation of the broadcast, outtakes, communications with federal agencies, and defendants' internal documents concerning journalistic standards or ethics. No. 93 CIV. 950 (DC), 1995 WL 406157, at *3 (S.D.N.Y. July 10, 1995). In doing so, the court recognized the fundamental unfairness of permitting a media defendant to resist discovery on such "a basic issue as knowledge in a defamation case." *Id.* at *3. This was true even where the information was available from other sources because "the point is whether defendants had the information and, if so, how the information impacted their state of mind." *Id.* Many of NOVAGOLD's requests cover information identical in nature to the information the court compelled in *Aequitron*. *See* RFPs 5, 8 and 15 and Interrogatories 1, 3, 5, and 6. JCAP avers that it is relying on New York's privilege law which it asserts differs from the constitutional privilege on which the *Aequitron* court ruled, but the inquiry is the same in either event and asks whether the requested nonconfidential information is (i) highly material and relevant; (ii) critical or necessary to the maintenance of a party's claim, defense, or proof of an issue material thereto; and (iii) is not obtainable from any alternative source. *Id.*; N.Y. Civil Rights Law § 79-h(c).

The requested information goes to the very heart of NOVAGOLD's libel and trade libel claims and is fundamental in determining JCAP's level of fault—particularly to the extent that JCAP asserts NOVAGOLD must show actual malice. *See Herbert v. Lando*, 441 U.S. 153 (1979) (expressing concern over the interference a broad press privilege would have on the ability of a defamation plaintiff to establish the ingredients of actual malice). JCAP's research, analysis, and diligence, including the decisions it made as to what to review and concerning the facts on which

9

it would report and those it would leave out are all germane to the question of whether JCAP knowingly or recklessly disregarded the truth. And this information is uniquely within JCAP's possession—neither the public documents nor the Report itself provide input in the editorial process and research (or lack thereof) that JCAP undertook in developing the Report.

## CONCLUSION

For the reasons stated above, NOVAGOLD respectfully requests that the Court compel JCAP to fully answer its interrogatories 1, 2, 3, 5, and 6 provide documents responsive to its requests for production 1, 2, 3, 5, 6, 7, 8, 11, 12, 13, 14, and 15.

Dated: May 19, 2021  **BAKER BOTTS L.L.P.**

*/s/ Jonathan Rubenstein*
Seth T. Taube
30 Rockefeller Plaza
New York, New York 10112
Tel: 212.408.2500
Fax: 212.408.2501
*seth.taube@bakerbotts.com*

Jonathan Rubenstein (*adm. pro hac vice*)
Jordan Kazlow (*adm. pro hac vice*)
2001 Ross Avenue
Dallas, Texas 75021
Tel.: (214) 953-6500
Fax: (214) 953-6503
*jonathan.rubenstein@bakerbotts.com*
*jordan.kazlow@bakerbotts.com*

***Attorneys for Plaintiff,***
***NOVAGOLD Resources Inc.***

# CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of May 2021, a copy of the foregoing Plaintiff Novagold Resources Inc.'s Motion to Compel and Exhibits thereto were filed with the Clerk of the Court, Eastern District of New York, and will be sent via email and electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).
.

*/s/ Jonathan Rubenstein*
Jonathan Rubenstein