UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

NOVAGOLD RESOURCES, INC.

        Plaintiff,

    - against -

J CAPITAL RESEARCH USA, LLC,

        Defendant.

Index No. 1:20-cv-02875-LDH-PK

**Declaration of Anne Stevenson-Yang in Opposition to Plaintiff's Motion To Compel and in Support of Cross-Motion for Protective Order pursuant to the Reporter's Privilege**

**ANNE STEVENSON-YANG** hereby declares pursuant to 28 U.S.C. § 1746:

1. I am the Research Director of Defendant **J Capital Research USA, LLC ("JCap")**. I make this declaration in opposition to Plaintiff NovaGold Resources' Motion To Compel disclosure and in support of JCap's Cross-Motion for a Protective Order on grounds of the Reporter's Privilege.

2. I co-founded JCap with Tim Murray who is its Managing Director. I researched and published the article "*Pipe Dream*" about NovaGold that was published with Tim under his byline (the "Report" or the "Article").

3. *J Capital Research*: JCap researches and publishes articles to inform the public on publicly traded companies that we consider to be over- or under-valued. I speak Mandarin fluently and lived in China for 25 years. JCap originally developed a specialty in Chinese companies traded on public markets overseas. In China, which is the major importer of iron ore and coking coal from Australia, Tim developed a specialty in mining and has written extensively on mining companies for more than a decade. His coverage

of Iluka Mining, FMG, Rio Tinto, and copper and iron ore as commodities have been particularly valued by professional investors.

4. We recently covered Northern Dynasty Minerals and its Alaskan "Pebble Mine" project. The Pebble Mine recently lost its critical permits from the U.S. Army Corps of Engineers in connection with its pipeline and mining plans. These Alaskan mining projects are matters of particularly intense public controversy and concern.

5. *JCap's Article on NovaGold*: The NovaGold Article was based on JCap's review and evaluation of publicly available documents about NovaGold – significantly, NovaGold's 2011 Feasibility Study and, among other things, its other public filings. NovaGold has not done any further Feasibility Studies since 2011. Its proposed Donlin Mine is not yet operational, nor are any of its support facilities in Alaska, including its planned pipeline, which is not yet in place or even under construction. It will run through native lands, which is also now a matter of public controversy.

6. *Our Commitments to Journalism and Experience in News*: Both Tim and I have professional journalism backgrounds and training. JCap is a continuation of that commitment to publishing news and worthwhile information to the public.

7. I graduated from the Columbia University School of Journalism in 1983. I worked as a reporter for Gannett newspapers for two years and subsequently worked as a freelance copy editor for Business Week magazine and a freelance reporter for the Courier-Life chain in New York City. After my first three years in China, when I was a "foreign expert" at China Pictorial magazine, I was deputy editor of the China Business Review then editor-in-chief of the Foreign Service Journal in Washington, DC from 1989-93.

8. I founded an English-language newspaper, *City Weekend*, in Beijing and a series of rough-travel guides as well as a travel website called 66cities.com. Tim was COO of that publishing company, 66cities, and remained head of the company after it was acquired by Ringier AG. Tim and I managed about 40 journalists, salespeople, and graphic designers at the newspaper. Under Ringier, Tim managed a business magazine, a cooking magazine, and a cooking show on Chinese television.

9. Tim and I teamed up again in 2010 in the investment-research company I had founded as a joint venture with a small U.S. brokerage called Wedge Partners. In late 2010, we split with Wedge, and in 2011 re-launched as J Capital. In 2012, Tim returned to Australia but continued his work as Managing Director and Mining Analyst of J Capital. I moved back to the United States in June 2014 and similarly continued my work with JCap, traveling to China monthly.

10. We continued, through JCap, to study and report on listed companies. We take our editorial objectives and independence seriously and have built JCap on the principles of journalism that have been at the core of our careers in news.

11. ***Answers to Interrogatories***: Our answers to NovaGold's First Set of Interrogatories were clear and forthright. They are attached as **Exhibit A**. We explained as requested and in detail how we came to choose NovaGold as an editorial subject. We described and identified the persons involved in our preparing the Report on NovaGold – except to the extent that it called for disclosure of communications about our reporting with persons to whom we had promised confidentiality and anonymity.

12. ***Responses to Requests for Production***: The same applied to our responses to Requests for Production. They are attached as **Exhibit B**.

13. ***Reporter's Privilege as to Both Confidential and Non-Confidential Materials***: As to all of NovaGold's discovery demands we asserted the Reporter's Privilege – both as to Confidential and Non-Confidential materials.

14. We have produced and will continue to produce copies of all of the publicly available documents on which the Report was based and which are identified in the Report as the basis of our findings.

15. ***Short Sellers***: NovaGold's Interrogatories were built and framed on a mistaken premise that JCap or its writers were short sellers of NovaGold stock. The reality is that JCap held no short position on NG stock – neither did I, nor Tim, nor any family members. We, therefore, had no short positions to disclose and no brokerage documents to provide. We said so in our answers. Generally, in an abundance of caution, we disclose in our reports that we are "short" the stock, because we may benefit from a decline in the share price.

16. ***Editorial Control and Independence***: To the extent that any short sellers of NovaGold stock might or did act on their review of the "Pipe Dream" Report, they had no control or right to control our reporting; and for JCap's part, we had no control or right to control their transactions. No short seller or recipient of our reports has any right or ability to dictate what we publish or when we are ready to publish; and JCap has no right or ability to dictate whether or when any short seller or long seller engages in any transaction. Our credibility and independence are central to what we do and what we publish.

17. ***Basis and Foundation of JCap's Assertion of the Reporter's Privilege***: The Reporter's Privilege is based upon the following assertions (that are described more fully above and throughout this declaration). Among them:

a. *Professional Journalist*: I am a professional journalist who for gain and for my livelihood is engaged in gathering, collecting, writing and editing financial news intended for publication via JCap and its website www.jcapitalresearch.com. JCap regularly processes and researches financial news intended for dissemination to the public. Our Answers to the Interrogatories affirm these facts as well. In our answer to Interrogatory No. 9 we describe how and through what distribution channels our articles are distributed to the public.

b. *News and Communications Concerning News*: The materials that JCap has concerning NovaGold and its Article about NovaGold are written, oral, photographic and electronically recorded *information and communications concerning* matters of public concern, public interest and affecting public welfare. Specifically, the activities of a publicly traded and highly regulated company such as NovaGold (which has many required regulatory filings) could cause very substantial environmental impacts – especially if the mine became operational. For example, NovaGold plans to run a 300-plus mile long pipeline up into central Alaska through native lands, and it would be processing tons of toxic waste materials in the course of its planned operations. (Arsenic, cyanide, mercury, and sulfur, among them according to its Feasibility Study.) Its planned activities would have substantial implications for Environmental, Social and Governance Standards that have become an increasingly urgent focus of public and corporate concern for investors and for the public.) The executives of NovaGold, as with publicly traded companies, must as a matter of law and regulation disclose their compensation, any conflicts of interest that they may have, etc. Information about

them is a matter of public concern because their actions affect the wealth of public shareholders.

c. *Confidential News and Communications; Honoring Commitments to Confidentiality*: Some of the materials that JCap has regarding NovaGold and the Report are communications with persons to whom JCap has *promised anonymity and confidentiality*. We must honor those commitments; and we assert the Reporter's Privilege in order to do so. We would like to be able to use such confidential materials to support our case. But we have made commitments to confidentiality and anonymity; and we will honor them. I understand that New York protects such confidential information and communications *absolutely and unconditionally*. NovaGold complains that it will not be able to use confidential information or sources against us or against the source(s); but by the same token, we cannot use them in our defense either – as much as that would be to our advantage.

d. *Asserted Protection for Nonconfidential and Unpublished News and Communications Regarding News*: Some of the materials that JCap has concerning NovaGold and its Report on NovaGold constitute *unpublished* news, information and communications obtained and prepared by JCap in the course of its work on the Report and in the course of gathering information for the Report about NovaGold. To the extent that information was published – i.e., contained in the publicly available reports and filings on which the Report was expressly based – those are being produced. But to the extent that they are unpublished, JCap asserts the Reporter's Privilege as to them. Such unpublished materials are, I

6

understand, protected by a qualified privilege which NovaGold can only overcome with a "clear and specific showing." From a reading of NovaGold's papers, it describes no specific or particularized need – just a generalized demand to see whatever JCap has. If they had more to offer or something more specific to put at issue, then I could address it here. Generalized need is not *specific* or even *critical* need, as I understand is required. General relevance will not suffice. And NovaGold's papers are so general that they do not allow me to address the specific or critical need issues that the Privilege requires.

e. *Ongoing Coverage*: The Court should note too that when we follow a company that we are reporting on we continue to gather news and information about it with potential further reporting in view. We have done that with other reports and may well do so here. NovaGold knows that and sues us to suppress any further coverage. But the news, information, and materials that we gather post-publication of the Report, as part of that continued research are no less entitled to protection by the Reporter's Privilege.

18. **The Public Interest in What JCap Publishes**: As discussed above, JCap wrote a report about Northern Dynasty Minerals' Pebble Mine project which has notable similarities and parallels to NovaGold's Donlin Mine project. *See* https://www.jcapitalresearch.com/northern-dynasty.html. Other news reporting on these mines demonstrates the significant public concern and public interest that attach to them.

   a. Krysti Shallenberger, Alaska Public Media, *In Secret Recordings, Pebble Mine Execs Say Donlin Mine Is Too Expensive to Build,* (Sept. 21, 2020), available at https://www.alaskapublic.org/2020/09/21/in-secret-recordings-pebble-mine-is-too-expensive-to-build.

b. Henry Fountain, The New York Times, *An Alaska Mine Project Might Be Bigger Than Acknowledged,* (Sept. 21, 2020), available at https://www.nytimes.com/2020/09/21/climate/pebble-mine-alaska.html.

c. Henry Fountain, The New York Times, *Alaska's Controversial Pebble Mine Fails to Win Critical Permit, Likely Killing It*, (Nov. 25, 2020) available at https://www. https://www.nytimes.com/2020/11/25/climate/pebble-mine-permit-denied.html.

19. These articles, among many others, show the level of public interest and controversy that Alaskan gold mining businesses, such as Donlin Mine and the Pebble Mine and their planned mines and pipelines engage. Alaska gold mining businesses draw a high degree of public scrutiny and news attention. Donlin Mine is second in size to Pebble Mine according to NovaGold documents. What JCap published and gathered news on regarding NovaGold was a clear "matter of public interest and concern."

20. JCap is a small financial news company. The time we have had to expend on this litigation and on the expansive discovery demands that NovaGold and its counsel have imposed on us has been tremendously burdensome and costly in time and expense for us. That is NovaGold's purpose and all to its advantage – to chill and intimidate criticism and to leave the field clear for only complimentary reporting on NovaGold and its own self-promoting publicity designed to convince investors and the public that its 2011 Feasibility Study justifies the handsome remuneration that NovaGold management secured on the exercise of its options.

21. ***NovaGold Insists That Its Own "Forward Looking" Statements are Opinion; JCap's "Forward Looking" Report Should Likewise Be Recognized as Opinion***: This Court should also take note of NovaGold's own disclaimers that it puts forth in its own hype and publicity. It asks readers to recognize,

8

> Forward-looking statements involve various risks and uncertainties. There can be no assurance that such statements will prove to be accurate, and actual results and future events could differ materially from those anticipated in such statements. . . . The Company's forward-looking statements reflect the beliefs, opinions and projections on the date the statements are made.

GlobeNewswire, *NovaGold Issues its 2020 Integrated Annual Report and Sustainability Summary with its Hallmark Questions and Answers Section*, (Apr. 26, 2021), available at https://www.globenewswire.com/en/news-release/2021/04/26/2216845/0/en/NOVAGOLD-Issues-its-2020-Integrated-Annual-Report-and-Sustainability-Summary-with-its-Hallmark-Questions-and-Answers-Section.html.

When NovaGold makes *self-promoting "forward looking"* report about their as yet far from realized plans, that is to be read as "opinion." But when JCap publishes a *critical "forward looking"* article about NovaGold as yet far from realized plans, NovaGold claims that cannot be called "opinion."

22. ***Impact of the Pending Motion to Dismiss on the Reporter's Privilege***: If the statements at issue are deemed *opinion* as they should be, then NovaGold's discovery demands will not be relevant or material or critical or specifically addressed to any demonstrable need. Our assertion of the Reporter's Privilege and the specifics that NovaGold must show are tied directly to the elements at issue in the pending motion. There is no justification or need for breaking our privilege before it is determined that the statements at issue are opinion and whether NovaGold has pleaded "actual malice." As I understand it, the elements of our motion to dismiss are inextricably tied to the elements of the Reporter's Privilege.

23. For these reasons and to protect our past and ongoing reporting, we assert the Reporter's Privilege.

9

Wherefore, JCap respectfully requests that the Court deny NovaGold's Motion to Compel and grant JCap's Motion for a Protective Order together with such other and further relief as the Court deems just and proper.

I affirm the truth of the statements herein under penalty of perjury.

_____
Anne Stevenson-Yang

Dated: June 2, 2021
      Westbrook, CT