# EXHIBIT A

David S. Korzenik
Terence P. Keegan
MILLER KORZENIK SOMMERS RAYMAN LLP
1501 Broadway, Suite 2015
New York, New York 10036
Tel: 212-752-9200
*Attorneys for Defendant J Capital Research USA LLC*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOVAGOLD RESOURCES INC., <br><br> Plaintiff, <br><br> v. <br><br> J CAPITAL RESEARCH USA LLC, <br><br> Defendant. | CIVIL ACTION NO.: 1:20-cv-02875-LDH-PK |

**RESPONSE OF DEFENDANT J CAPITAL RESEARCH TO PLAINTIFF'S FIRST SET OF <u>INTERROGATORIES</u> and NOTICE TO PLAINTIFF OF NEW ANTI-SLAPP LAW**

Defendant J Capital Research USA LLC ("JCAP" or "Defendant") responds to Plaintiff's First Set of Interrogatories as follows:

**PRELIMINARY STATEMENT AND OBJECTIONS**

This Preliminary Statement and Objections sets forth Defendant's Objections and puts Plaintiff NovaGold on notice of a newly enacted Anti-SLAPP law – signed by New York's Governor and "effective immediately" as of this November 10 - which has a direct impact on this case. NovaGold has an opportunity to withdraw this action to avoid the consequences of the new Anti-SLAPP law and to do so before further costs are incurred.

1) ***The New Anti-SLAPP Law Signed November 10, 2020:*** *After* the Initial Conference and *before* the Filing of the Amended Complaint applicable NY libel law has been changed by statute in a substantial way that will alter the nature and focus of this litigation. The express objectives of the new law, NY Civil Rights Law 70-a, 76-a and related amendments, are: a) to protect defendants in libel cases from the costs of defense and discovery; b) to "stay" discovery pending resolution of threshold dispositive motions; c) to protect defendants from libel claims designed to intimidate and suppress legitimate speakers and their sources; d) to provide a counterclaim and other remedies that provide for recovery of attorneys' fees and other costs; and e) to elevate the fault standard of proof for Private Figure libel plaintiffs to Actual Malice with "clear and convincing" evidence.

   a. *Costs of Discovery Should be Deferred and Controlled to Protect Speakers who are Targeted with Libel Claims*: The discovery that this Plaintiff seeks is intended to impose undue and unfair costs on Defendant for its legitimate and protected speech and it is at odds with the general concern of the federal case law that provides "assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015).
   It is now the requirement and the declared policy of the new New York Anti-SLAPP law and of prior federal case law to stay or, at minimum, to carefully limit discovery demands by a libel plaintiff before initial motions are made and ruled on. Our Objections are based in part on those newly protected rights and interests.

   b. *Stay of Discovery*: It is now, as of Nov. 10, 2020, the law in New York to "stay" discovery in libel cases such as this until dispositive motions have been ruled upon. That feature of the new law may apply in a federal court, but in all events its policy implications are compelling for a federal court in a diversity case and should drive and add force to the prior holdings of some federal courts in the Second Circuit to stay or at least substantially restrict discovery pending a motion to dismiss in a libel case. *The new law including the Stay provision should now be factored in to any operative rulings on discovery under the Federal rules. It was not considered before.*

   c. *Protection against a Libel Plaintiff's Effort to Intimidate Speakers and Sources*: The present action for libel is aimed at silencing and intimidating legitimate critics of NovaGold and legitimate short sellers of its stock.

   Defendant JCAP, if, and when it must Answer, will interpose a Counterclaim under the new Anti-SLAPP law against Plaintiff NovaGold for its attorneys' fees and related costs as well as punitive damages. An award of all such fees and costs etc. is mandatory, i.e., – "shall be" awarded – when the new statutory conditions are met.

d. *Actual Malice Standard Now Applies to both Private and Public Figures*: Under NY Civil Rights Law 76-a (2) the fault standard of proof for Private figure libel plaintiffs in cases involving matters of "public interest" is now Actual Malice which must be proven with "clear and convincing" evidence. "'Public interest' shall be construed broadly." N.Y. Civ. Rights Law § 76-a(1)(d). The lesser 'gross irresponsibility' standard now yields to the higher threshold requirement of Constitutional Malice.

2) *Plaintiff's Amended Complaint is built upon utterly false, unsupported, superfluous and puffed up speculation about Defendant and its Report*. The lawsuit, as the bloviating pleadings suggest, is a public relations maneuver. The discovery that has been demanded by Plaintiff on the basis of its unsupportable and bloated pleadings impose costs and burdens on Defendant that are unreasonable and abusive.

   *Plaintiff must preserve and prevent spoliation of all documents and communications to and from any public relations or investor relations firm/consultants and its legal counsel concerning the drafting and publication of its public relations responses to the JCAP report and its drafting and preparation of its two pleadings, including without limitation, those statements of the pleadings that go beyond what is called for or required by Rule 8.*

3) Plaintiff's discovery requests have been propounded at particularly early stage of this case and they are therefore unreasonably and unfairly premature:

   a. Plaintiff did not file its Amended Complaint until a week ago, i.e., on Nov. 16, 2020.

   b. The parties served their Initial Disclosures only yesterday, Nov. 23, 2020;

   c. Plaintiff's Complaint and its Amended Complaint are extremely broad and discursive and unreasonably expansive in scope. So, the case will require significant Case Management oversight if discovery in this case is to be proportionate, fair and reasonable in scope and cost.

   d. Defendant and counsel have at this very early stage in the proceeding yet to complete a full review of the documents that may be at issue in this case. And therefore Defendant must reserve the right to supplement or amend this response and to preserve objections based on privilege as to documents that it has yet to fully review.

   e. Defendant has not yet Answered or Moved with respect to the Amended Complaint, so issue is not yet joined nor has the action been subject to any motions that would lead to its dismissal or to its narrowing;

4) Though Magistrate Judge Kuo allowed *some* early discovery before we could make any motions with respect to the Complaint or Amended Complaint, these

Interrogatories and related document requests exceed the scope of the permitted discovery. *In view of newly enacted New York law, "effective immediately" as of Nov. 10, 2020, that limited discovery will need to be reviewed and reassessed.*

5) Defendant has not completed its document search, its investigation or analysis of the facts relating to the case, its discovery in this action, nor its preparation for relevant threshold motion practice. The responses contained herein are based only upon such knowledge, information and documents as are presently available and specifically known to Defendant. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add meaning to known facts, and establish entirely new conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the responses herein set forth. The following responses are given without prejudice to Defendant's right to produce subsequently discovered documents, evidence of any subsequently discovered fact, or facts which Defendant may later recall, or contentions which may be later formulated.

6) Defendant accordingly reserves the right to amend, modify or supplement the responses herein as additional documents are located, additional facts are ascertained and further analysis is made. The responses herein are made in a good faith effort to supply as much information and specification of legal contentions as is presently known but are not intended to preclude and shall not preclude Defendant from making contentions or relying upon documents, facts or witnesses or additional information obtained during discovery, or further research or analysis.

7) *Reporters Privilege*: Defendant objects to the disclosure of unpublished materials, communications, consultants and sources pertaining to its Report that go beyond those materials and references that are published, cited, linked and identified in the Report itself. Such unpublished materials are protected by the Reporters Privilege. The production of such editorial materials would be an imposition upon the freedom of the press under the First Amendment of the U.S. Constitution, Article 8 of the Constitution of the State of New York, the statutory and common law of New York (*see, e.g.*, N.Y. Civ. Rights Law § 79-h), and/or any other applicable law or rule of evidence protecting journalist newsgathering information and activities. Any need for the information is outweighed by the public interest in protecting the editorial work product and confidential information and sources of journalists and the news media. Significantly, the requests lack the particularity and clarity that would permit Plaintiff to meet the *requisite particularized need* that, among other things, must be shown in order to overcome the reporter's privilege for non-confidential materials. That showing under § 79-h must be "clear and specific." Confidential unpublished materials, communications and sources are protected from disclosure by an *absolute* privilege under Civ. Rights Law § 79-h which may not be overcome by any showing of particularized need.

8) *Attorney-Client and Work Product Privilege Preserved*: Defendant objects to the First Set of Interrogatories, and to each individual interrogatory, to the extent they attempt or purport to seek information protected from disclosure by the attorney-client privilege and/or the work product doctrine, and it will not produce such information. No such

4

documents have as yet been identified, but if they do exist and are identified the assertion of that privilege is reserved.

9) *Objection to Description of Documents to Be Produced*: Defendant objects to First Set of Interrogatories, and to each individual Interrogatory, to the extent that they are unreasonably cumulative or duplicative of document demands, and to the extent that they demand a recitation of facts and information contained in documents that are produced. To be required to do so is a wasteful and needlessly costly exercise that does nothing more than impose costs on Defendant.

10) *Objection as to Present Disclosure of Experts:* Defendant also objects to the First Set of Interrogatories, and to each individual interrogatory contained therein, to the extent they purport to require the disclosure of Defendant's expert witnesses and reports and other information prior to the date on which such expert information must be served under Federal Rules and/or Court Order, and Defendant will not produce such information, if required at all, prior to said date.

## **INTERROGATORIES & RESPONSES**

**Interrogatory No. 1:** Provide a complete factual explanation of how you identified NOVAGOLD as a subject for the Report. Include in your answer a description of any documents you reviewed prior to drafting or publication of the Report, and identify any persons with whom you communicated regarding the selection of NOVAGOLD as a subject for the Report or the statements contained in the Report. For persons not affiliated with JCAP, include the organization with which they are affiliated and their titles and duties within that organization.

**RESPONSE:**

Anne Stevenson-Yang is the Research Director of JCAP. In 2018 she traveled to Alaska, in the Fairbanks area and far to the North of it, on a kayak trip. Through her travels she became familiar with the harsh and difficult terrain, expanse and weather conditions of Alaska's interior. That drew her to consider its impact on that state's main industries – prominent among them, gold mining. Tim Murray, the Managing Director of JCAP, did not travel with Ms. Stevenson-Yang on her kayak trip to Alaska, but she discussed it with him on her return. Murray had knowledge and experience about mining. They searched and considered a number of gold mining

companies that had or were planning operations in that area and they identified and selected NovaGold based on their review of 1) NovaGold's 10-Ks and 2) Four (4) articles about NovaGold that had appeared in *Grant's Interest Rate Observer*. There may have been some other public resources that they searched and reviewed, but those are the two primary ones. That is how JCAP identified and selected NovaGold as the subject of their research and their Report about it entitled, *NovaGold: The Pipe Dream*. ("*Pipe Dream* Report" or "*Pipe Dream*"). Tim Murray contacted NovaGold's investor relations department. He arranged a call with Jason Mercier on October 10, 2019.

As to documents reviewed "prior to drafting or publication" of the *Pipe Dream* Report, they are all of the documents identified in the Report in references, links, and footnotes. They are all publicly available as are the documents referenced in the course of "selecting" NovaGold as the subject of *Pipe Dream*. If there were other documents or ancillary materials consulted in the preparation of the Report, we will identify them as our examination of files advances – but any disclosure of them is subject to the Reporters' Privilege objection asserted above at ¶ 7. But the identified materials are the primary materials on which the Report was based.

**Interrogatory No. 2:** Identify all persons who have provided information to you, or received information from you, concerning NOVAGOLD, NOVAGOLD securities, your investment in NOVAGOLD securities, the drafting of the Report, the Report, or the events described in the Petition. Include in your answer a detailed factual statement of the information provided.

**RESPONSE**:

JCAP has never held any NovaGold securities. It never held any form of investment or any "short" in NovaGold. Neither did either of its principals, Anne Stevenson-Yang or Tim

6

Murray. Neither did any of their spouses or family members.

Regarding "persons providing information concerning NovaGold," the information that JCAP had about NovaGold came from the publicly available documents described in our Answer to Interrogatory #1.

This Interrogatory is poorly framed and therefore unclear, but there were three persons directly involved in drafting and preparing the Report: 1) Anne Stevenson-Yang, 2) Tim Murray, and 3) John Besant-Jones, a forensic accountant who works with JCAP. Mr. Besant-Jones provided financial analysis of the available documents referenced.

Also consulted was an investor advisor who discussed comparable companies. He/she did not provide any information about NovaGold itself. The consultation was of limited value. This person did not to Defendant's knowledge have or take any investment or position in NovaGold. If he/she did, JCAP is not aware of it.

To the extent that JCAP consulted an expert – referred to in Interrogatory #4 – that is described in the Response to Interrogatory #4.

To the extent that there were any recipients of JCAP's Report (see responses to Interrogatories below), they did not provide information to JCAP about NovaGold.

Jason Mercier of NovaGold spoke with Tim Murray on October 10, 2019.

Unpublished materials, communications regarding the Report and identities of persons consulted are protected under the Reporters Privilege and Defendant objects to this Interrogatory to the extent that it can be construed to call for any unpublished materials that are protected by the Reporters' Privilege as set forth in ¶ 7 above and from materials that would not be subject to discovery at this stage in the litigation under the new NY Anti-SLAPP law.

**Interrogatory No. 3:** Identify all persons involved in researching, drafting, or paying or

underwriting the costs of preparation of the Report, including a detailed factual statement of each person's involvement. For persons affiliated with JCAP, include their titles and duties in JCAP. For persons not affiliated with JCAP, include the organization with which they are affiliated and their titles and duties within that organization.

**RESPONSE:**

The persons involved in researching and publishing the *Pipe Dream* Report have been identified and their involvement described in the Answers to Interrogatories 1 and 2 above.

The persons involved in paying for and underwriting the costs of preparation of the Report: JCAP pays for and covers all costs associated with the preparation of the Report. JCAP does not bill those costs to any third party.

For the three persons affiliated with JCAP, their titles and duties in JCAP have been provided above.

We object to providing the name of the person with whom we briefly consulted to discuss comparable companies. That person's role was peripheral, and for the reasons described above in the Objections – specifically, Paragraphs 1 and 7 above – we object to providing their name. Nonetheless, we have described them and have described their limited and largely marginal role. JCAP objects under the Reporters' Privilege and under the objection in Paragraphs 1, 3, 4, 5 & 7 to disclosing any other discussions or communications made in connection with the Report. JCAP reiterates here its objection to discovery at this stage of the case in view of the protections afforded by New York's newly enacted Anti-SLAPP law. See Paragraphs 1, 3 & 4.

**Interrogatory No. 4:** Identify the anonymous industry professionals referred to in the Report, including the "engineer . . . who worked on costing the pipeline" identified on page 2; the

"pipeline expert . . . familiar with the project" identified on page 5; the "pipeline engineer familiar with Donlin" identified in footnote 4; and the "expert" identified on page 8. For persons affiliated with JCAP, include their titles and duties in JCAP. For persons not affiliated with JCAP, include the organization with which they are affiliated and their titles and duties within that organization.

**RESPONSE:**

JCAP consulted with an expert service to obtain a consultation with an expert in the field of pipelines and pipeline costs. Through the service, JCAP had a one-time phone consultation of about an hour long with the expert provided by the service. That is the expert referred to in the *Pipe Dream* Report who assisted in understanding the studies cited in the Report.

To the extent that he/she may be an expert in the case, his/her information and identity will not be provided until the time that experts are to be disclosed under the requirements of a relevant scheduling order. See Objection #10 above.

To the extent that this expert is a source for the *Pipe Dream* Report, his/her identity and information is subject to the Reporters' Privilege which JCAP has asserted in Objection #7 above. JCAP reiterates here its objection to discovery at this stage of the case in view of the protections afforded by New York's newly enacted Anti-SLAPP law. See Paragraphs 1, 3 & 4.

**Interrogatory No. 5:** Provide a detailed factual statement of any research or investigation regarding NOVAGOLD or NOVAGOLD securities that you conducted or that was conducted on your behalf during the drafting of the Report or prior to the publication of the Report. Identify all documents you reviewed prior to the publication of the Report.

**RESPONSE:**

This interrogatory has already been largely answered in the responses above, including

without limitation, the response to Interrogatory #1 which sought description of documents reviewed "prior to drafting or publication." Again, as noted in the above responses, the research and investigation was largely focused on the publicly available documents and information cited in the Report. As to investigation of "NovaGold securities," we take that to reference investigation and research into JCAP's alleged ownership or acquisition of NovaGold securities. As was explained in the answers above, JCAP neither held nor owned any NovaGold securities. To the extent that this request seeks unpublished materials, communications and sourcing, JCAP objects to it on the basis of the Reporters' Privilege as set forth in ¶ 7 above. JCAP reiterates here its objection to discovery at this stage of the case in view of the protections afforded by New York's newly enacted Anti-SLAPP law. See Paragraphs 1, 3 & 4.

**Interrogatory No. 6:** Identify all persons who knew of the Report or its preparation prior to its publication, including a description of the information that such persons knew about the Report and when they learned about the preparation of the Report. For persons affiliated with JCAP, include their titles and duties in JCAP. For persons not affiliated with JCAP, include the organization with which they are affiliated and their titles and duties within that organization.

**RESPONSE:**

The primary persons who knew about the Report or its preparation prior to its publication are the three JCAP persons: 1) Anne Stevenson-Yang; 2) Tim Murray; and 3) John Besant-Jones. Their roles and titles have been identified in the answers to the interrogatories above.

The Expert referenced in the Response to Interrogatory #4 and the Investor Consultant referenced in the Response to Interrogatory #2 would have understood that JCAP was doing research on NovaGold but they would not have known at the time that JCAP interviewed them

what the Report would say or even whether it would ultimately be published. There was no subsequent communications with either of these individuals prior to the publication of *Pipe Dream*.

As so any other persons who knew of the Report or its preparation prior to its publication, JCAP objects on ground of the Reporters' Privilege and on the basis of the new protections regarding discovery now afforded defendants in libel actions under New York's Anti-SLAPP law cited above.

**Interrogatory No. 7:** Identify all persons who are able to publish to the Twitter account @JCap_Research.

**RESPONSE:**

Ms. Stevenson-Yang and Mr. Murray.

**Interrogatory No. 8:** Identify all persons who are able to publish to the domain jcapitalresearch.com.

**RESPONSE:**

Ms. Stevenson-Yang and Mr. Murray.

**Interrogatory No. 9:** Identify all means by which the Report was published, including any mailing or email subscription lists. Include in your answer a description of the recipients each publication is intended to target and estimated number of recipients reached.

**RESPONSE:**

The *Pipe Dream* Report was published via three means of distribution:

1. The *Worldflow* news outlet. It reaches a number of different news outlets. Worldflow news outlets include, for example, Bloomberg, Reuters, RsrchXchange, and other smaller outlets. Each outlet makes its own determination as to whether it will publish the Report based on its own determination of its newsworthiness for them. JCAP does not control that process. JCAP does not presently know the number of readers that would have seen the Report via Worldflow.

2. *JCAP Emails to subscribers*, clients, former clients and contacts. Approximately 1600 addresses. JCAP objects to producing any list of emails and contact information. The information is not relevant or designed to reach relevant evidence, and its disclosure might reveal confidential sources as well as a range of other reports and editorial projects in violation of the Reporters Privilege. We object to the disclosure of such contacts and email addresses on the basis of the protections referenced in Paragraphs 1, 3, 4, 5 and 7 as set forth in detail above.

3. *JCAP Website: JCapitalResearch.com.* JCAP will attempt to ascertain the number of page views associated with the Report.

**Interrogatory No. 10:** For each purchase, sale, trade, acquisition, or other disposition (hereinafter, collectively "trade" or "trades") of any NOVAGOLD securities by you or for the benefit of JCAP or its members, principals or managers, identity all the securities traded, the trade dates, the types of trade, the quantity of securities traded, and the purchase or sale price per security for each trade, the brokerage accounts in which the trades occurred, and the name of any brokers or financial advisors involved in the trades.

**RESPONSE:**

JCAP did not trade in NovaGold securities; nor did any brokerage company or agent do so for JCAP. JCAP does not have or know the details (i.e., trade dates, quantities, types of trade or sale/purchase prices) of trades of NovaGold securities by third parties.

**Interrogatory No. 11:** Identify by name and title each person who advised or recommended you trade NOVAGOLD securities

**RESPONSE:**

    None. JCAP did not trade in or own NovaGold securities.

**Interrogatory No. 12:** Describe the nature and extent of any research, due diligence, or investigation regarding NOVAGOLD or NOVAGOLD securities that you conducted or that was conducted on your behalf prior to each of the trades identified in your answer to Interrogatory No. 1.

**RESPONSE:**

None. JCAP did not trade in or own NovaGold securities.

**Interrogatory No. 13:** State whether any of the NOVAGOLD securities for which you were the beneficial owner during the Relevant Time Period were held, owned, or possessed in any method other than in your name (*e.g.*, in the name of a brokerage firm or transfer agent, in the name of a nominee, or otherwise).

**RESPONSE:**

None. JCAP did not trade in or own NovaGold securities.

Dated: November 24, 2020                MILLER KORZENIK SOMMERS RAYMAN LLP

                                              By: _/s/David S. Korzenik_____
                                                    David S. Korzenik
                                                    Terence P. Keegan
                                      *Attorneys for Defendant J Capital Research USA LLC*
                                                  1501 Broadway, Suite 2015
                                                  New York, New York 10036
                                                  Tel.: 212-752-9200
                                                  dkorzenik@mkslex.com

# VERIFICATION
## UNDER USC 28 § 1746

      I have read the foregoing RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES and know its contents.

      I am a principal for the Defendant in this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 24, 2020

_____
Anne Stevenson-Yang