UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
  NOVAGOLD RESOURCES, INC.                      **Oral Argument Requested**

             Plaintiff,                            Index No. 1:20-cv-02875-LDH-PK

     - against -

  J CAPITAL RESEARCH USA, LLC,

            Defendant.
-------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL
AND IN SUPPORT OF CROSS-MOTION FOR A PROTECTIVE ORDER**

MILLER KORZENIK SOMMERS RAYMAN LLP

David S. Korzenik
dkorzenik@mkslex.com
Terence P. Keegan
tkeegan@mkslex.com
Zachary M. Press
zpress@mkslex.com
1501 Broadway, Suite 2015
New York, New York 10036
Phone: (212) 752-9200

*Attorneys for Defendant J Capital
Research USA, LLC*

# TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND ................................................................ 1

ARGUMENT: NOVAGOLD'S MOTION TO COMPEL SHOULD BE DENIED, AND THE COURT SHOULD ORDER PROTECTION OF JCAP'S "NEWS" MATERIAL ................ 2

    I.    New York State Law Governs the Motion and Cross-Motion ........................................... 2

        A.    JCap Has Established Its Foundation for The Shield Law Privilege ............................. 3

        B.    JCap's Objections Are Grounded on the §79–h Definition of "News" Material ......... 5

    II.    JCap's Privilege Against Disclosure of Confidential Third-Parties Is Absolute ............. 6

        A.    Honoring Commitments of Confidentiality .................................................................. 6

        B.    Constitutional Protection of Anonymous Speech Would Warrant an Additional, Heightened Showing That Novagold Has Not Satisfied .......................................................... 7

    III.    Section 79–h Protects JCap's Nonconfidential News Material from Disclosure ............ 8

        A.    NG Has Failed To Show Such Materials Are "Highly Material and Relevant" .......... 8

        B.    Novagold Has Failed To Show Nonconfidential Material Is "Critical or Necessary" 10

        C.    NG Has Failed To Show Nonconfidential Material Is "Not Obtainable" Elsewhere 12

CONCLUSION ................................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Aequitron Med., Inc. v. CBS, Inc.*, No. 93 CIV. 950 (DC),
 1995 WL 406157 (S.D.N.Y. July 10, 1995) .................................................................... 2

*Baker v. Goldman Sachs & Co.*, 669 F.3d 105 (2d Cir. 2012) .......................................... 5, 10, 11

*Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) ................................................... 2

*Doe v. Cummings*, No. 91-346,
 1994 WL 315640 (N.Y. Sup. Ct. St. Lawrence Cnty. Jan. 18, 1994) ..................................... 10

*Flynn v. NYP Holdings Inc.*, 235 A.D.2d 907 (3d Dep't 1997) ............................................... 10, 11

*Giuffre v. Maxwell*, 221 F. Supp. 3d 47 (S.D.N.Y. 2016) ....................................................... 2, 5, 6

*Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29 (2d Cir. 1999) ..................................................... 2

*Green v. Cosby*, No. 16-mc-00099-P1, Dkt. No. 13 (S.D.N.Y. Apr. 26, 2016) ............................. 6

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 65 (1989) ............................................ 9

*Herbert v. Lando*, 441 U.S. 153 (1979) ............................................................................. 3

*In re Application to Quash Subpoena to Nat'l Broad. Co., Inc.*,
 79 F.3d 346 (2d Cir. 1996) ........................................................................................... 6, 10, 11

*In re Rule 45 Subpoena Issued to Cablevision Sys. Corp.*,
 No. 08-347 ARR MDG, 2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010),
 *adopted in part*, No. 08-MC-347 ARR MDG, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010) .. 7

*Krinsky v. Doe 6*, 159 Cal. App. 4th 1154 (2008) ............................................................... 7

*Matter of Application of Home Box Office, Inc.*, 64 Misc. 3d 566 (Sup. Ct. N.Y. Cnty. 2019) . 8, 9

*Murray Energy Corp. v. Reorg Research, Inc.*, 152 A.D.3d 445 (1st Dep't 2017) .................... 5, 8

*Nanoviricides, Inc. v. Seeking Alpha, Inc.*, No. 151908/2014,
 2014 WL 2930753 (Sup. Ct. N.Y. Cnty. June 26, 2014) ...................................................... 7

*O'Neill v. Oakgrove Const., Inc.*, 71 N.Y.2d 521 (1988) ....................................................... 3

*Trump v. O'Brien*, 958 A.2d 85 (N.J. App. Div. 2008) .......................................................... 5

*Watchtower Bible & Tract Soc. of N.Y., Inc. v Village of Stratton*, 536 U.S. 150 (2002) .............. 7

**Statutes**

New York Civil Rights Law § 79–h ....................................................................................... passim

**Other Authorities**

1990 N.Y. Sess. Law Serv. 33 (McKinney 1990) ........................................................................ 3

**Rules**

Fed. R. Evid. 501 ......................................................................................................................... 2

# MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL AND IN SUPPORT OF CROSS MOTION-FOR A PROTECTIVE ORDER

***Defendant J Capital Research USA, LLC*** ("JCap") submits this Memorandum of Law in opposition to the Motion To Compel of Plaintiff Novagold Resources, Inc. ("Novagold" or "NG"), and in support of its Cross-Motion for a Protective Order. Novagold's Motion ("Mot.") should be denied, and JCap's Cross-Motion granted, because:

> 1) JCap has properly laid its foundation for "reporter's privilege" protection under New York Civil Rights Law § 79–h (the "Shield Law");
>
> 2) Under the Shield Law, JCap has *absolute* protection against having to reveal third parties to whom it has promised confidentiality related to its report on Novagold (the "Report") and any communications with them or about them;
>
> 3) Additionally, Novagold has not made the showing that courts require of such a plaintiff to reveal anonymous speakers under the First Amendment;
>
> 4) Novagold has not begun to meet its burden under the Shield Law for obtaining any nonconfidential privileged material from JCap; and
>
> 5) The elements of the Shield Law privilege *overlap* with the elements to be ruled on in the pending Motion To Dismiss. That ruling will have direct bearing on a) whether the materials sought are "highly material" to the action or b) whether they are "critical or necessary" to the action, as § 79–h requires. NG cannot meet the § 79–h tests with generalized speculation. While NG's Motion can be denied now for that reason alone, it certainly cannot be granted until it is reconciled with a ruling on the substantive motion. Doing otherwise would risk inconsistent rulings with the District Judge. If this Court does not deny NG's Motion outright, it should deny it without prejudice until after the Motion To Dismiss ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this Motion and Cross-Motion, as well as the foundation of the Shield Law reporter's privilege, is more fully set forth in the accompanying Declaration of Anne Stevenson-Yang ("Stevenson-Yang Decl.").

Novagold served JCap with its first set of Interrogatories and first Requests for Production of Documents on October 9, 2020. JCap timely served its objections and responses on November 24, 2020. *Id.* ¶¶11, 12. The parties briefed JCap's Motion To Dismiss Novagold's

First Amended Complaint in January and February 2021 (Dkts. 38-43, 46-47, 49-50), and filed a Status Report on discovery with the Court on March 12, 2021 (Dkt. 48). Both parties are in the midst of document production. Novagold served JCap with its first production of documents on March 11, 2021 (namely, copies of email communications between Novagold and JCap, and copies of certain Novagold public statements and press releases); and JCap served Novagold with its first production of documents on April 23, 2021 (namely, copies of publicly available documents to which the Report cites, representing some 900 pages of material).

**ARGUMENT: NOVAGOLD'S MOTION TO COMPEL SHOULD BE DENIED, AND THE COURT SHOULD ORDER PROTECTION OF JCAP'S "NEWS" MATERIAL**

**I.      New York State Law Governs the Motion and Cross-Motion**

Novagold's libel and trade libel claims arise under New York State law. Accordingly, New York's Shield Law governs – not decisions by federal courts in the Second Circuit recognizing a weaker, qualified reporter's privilege (e.g., *Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011); Motion To Compel, Dkt. 56, at 4, 6 ("Mot.")); or cases interpreting another state's law (e.g., *Aequitron Med., Inc. v. CBS, Inc.*, No. 93 CIV. 950 (DC), 1995 WL 406157, at *1 (S.D.N.Y. July 10, 1995)) (Mot. 9); [1] *see also* Fed. R. Evid. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"); *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 475 (S.D.N.Y. 2016). Novagold relies largely on cases that apply and interpret the *federal* privilege; not the New York State privilege. Other cases they rely on are outdated.

---

[1] In the Second Circuit, the federal constitutional privilege for confidential materials is qualified, not absolute, and the test for showing entitlement to nonconfidential materials is less stringent than New York's Shield Law. *See generally Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 35 (2d Cir. 1999). *Gonzales* does *not* control this case. Neither does *Herbert v. Lando*, 441 U.S. 153 (1979) (Mot. 9).

2

In 1988, New York's Court of Appeals adopted the three-part test that the state's legislature would further develop two years later as Shield Law amendments. *Compare O'Neill v. Oakgrove Const., Inc.*, 71 N.Y.2d 521, 527 (1988), *with* N.Y. Civ. Rights Law § 79–h; 1990 N.Y. Sess. Law Serv. 33 (McKinney 1990):

> [E]xceptions to the demand for all relevant evidence should "'not [be] lightly created nor expansively construed, for they are in derogation of the search for truth'" in the adjudication of disputes within the judicial system (*Herbert v. Lando*, 441 U.S. 153, 175 [further citations omitted]).
>
> The court is confronted in this case with two competing interests: the interest in maintaining the free flow of information by the organized press and the evidentiary needs of an injured litigant.
>
> . . . . The only rationale for cloaking the press with this exceptional protection rests on the unique role of reporters as purveyors of information to the public and of newspapers as forums for criticism, discussion and debate.
>
> That rationale tips the balance in favor of a constitutional qualified privilege for the press in this case, because without the extra gloss of protection against ordinary disclosure the unique functions of the press could be seriously interdicted. The nature of the press function makes it a more likely target for subpoenas which, in turn, will generate cost and diversion in time and attention from journalistic pursuits.

*O'Neill*, 71 N.Y.2d at 532-33 (Bellacosa, J. concurring). The 1990 amendments not only incorporated a three-part test to obtain nonconfidential materials as discussed in *O'Neill*; but they also added a clause directing absolute protection for confidential "news" material. *See* N.Y. Civ. Rights Law § 79–h(b). Novagold's authorities *pre-date* the Shield Law's augmented protections.

### A. *JCap Has Established Its Foundation for The Shield Law Privilege*

Under the Shield Law, JCap's principals are "professional journalists," and the company is a "professional medium or agency which has as one of its regular functions the processing and researching of news intended for dissemination to the public." N.Y. Civ. Rights Law § 79–h(a)(6). Founded in 2011, JCap is a financial news company that researches and publishes

3

articles to inform the public on publicly traded companies that it considers to be over- or under-valued. Stevenson-Yang Decl. ¶¶3, 9, 20. Both of its principals have professional journalism backgrounds and training. *Id.* ¶¶6, 7-10. JCap is a continuation of their professional commitment to publishing news and worthwhile information to the public. *Id.* ¶6. Its principals take their editorial objectives and independence seriously, and have built JCap on the principles of journalism that have been at the core of their lengthy careers in news. *Id.* ¶10, ¶¶17-19.

Novagold's Interrogatories were built and framed on a mistaken premise that JCap or its writers were themselves short sellers of Novagold stock. *Id.* ¶15. The reality is that JCap held no short position on NG stock – neither its principals, nor any of its family members. *Id.* Therefore, JCap had no short positions to disclose and no brokerage documents to provide. *Id.* It said so in its interrogatory answers. *Id.*; *see* Exhibit A to Stevenson-Yang Decl., at 6, 12, 13 ("Decl. Ex. A."). Generally, in an abundance of caution, JCap discloses in its reports that it is "short" the stock, because it may benefit from a decline in the share price. Stevenson-Yang Decl. ¶15; *see* Dkt. 40 ("Mem."), at 8; *cf.* Mot. 6. To the extent that any short sellers of Novagold stock might or did act on their review of the Report, they had no control or right to control JCap's reporting; and for JCap's part, it had no control or right to control any such transactions. Stevenson-Yang Decl. ¶15.

With all of this said, Novagold is not entitled to obtain the very material that is the subject of its Motion "to determine whether any reporters' privilege could even apply." Mot. 7. It is illogical to suggest that one can break a privilege to test it. Significantly, Novagold's requests, as broad and general as they are, *by their own terms* seek materials protected by the reporter's privilege. Novagold's own cited authority recognizes that extending Shield Law protections to organizations such as JCap "is consistent with New York's 'long tradition, with

roots dating back to the colonial era, of providing the utmost protection of freedom of the press'—protection that has been recognized as 'the strongest in the nation.'" *Murray Energy Corp. v. Reorg Research, Inc.*, 152 A.D.3d 445, 446-47 (1st Dep't 2017) (citation omitted) (upholding Shield Law protection for provider of "real-time information about debt-distressed companies" distributed to a limited number of high-end subscribers); *see* Mot. 6.

### B. JCap's Objections Are Grounded on the §79–h Definition of "News" Material

"News" under the Shield Law is defined as "written, oral, pictorial, photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare." N.Y. Civ. Rights Law § 79–h(a)(8). As courts in the Second Circuit have recognized, "the Shield Law does not narrowly apply only to the specific exchanges where the source conveys 'news.'" *Giuffre*, 221 F. Supp. 3d at 479.

> As the Second Circuit has held, the Shield Law protects journalists from "inquiries into the newsgathering process," as a whole. *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 109 (2d Cir. 2012) (affirming holding that Shield Law applied to "unpublished details of the newsgathering process," such as who made calls and interviewed particular sources, techniques for the reporters' investigation, and the backgrounds of the coauthors and editorial staff).

*Id.* Here, the scope of such "news" encompasses more than unpublished material about Novagold and its Donlin mine project; it includes "communications" about such unpublished materials. And this is so, regardless of whether JCap obtained it ***prior*** to or ***after*** publication of the Report. Courts have held "news" also to encompass "drafts" of the publication at issue and "internal communications" about "reporting processes" of the type Novagold seeks.

For example, in *Trump v. O'Brien*, 958 A.2d 85 (N.J. App. Div. 2008), Donald Trump had sued reporter and author Timothy L. O'Brien for libel. O'Brien asserted the Reporter's Privilege under the New York Shield Law and its protections for "news" material. The court

5

protected Defendant O'Brien's reporting materials, including "notes of interviews with confidential and nonconfidential sources, drafts of [O'Brien's] book, and communications concerning news-gathering and editorial processes." *Id.* at 88 n.2; 94.

Elsewhere, in *Green v. Cosby*, No. 16-mc-00099-P1, Dkt. No. 13 (S.D.N.Y. Apr. 26, 2016), Bill Cosby had sought to compel materials from *New York* Magazine related to its 2015 article reporting on 35 women's stories of his assaulting them. *See id.* at 2:10-23. The *Cosby* court held that it was "very clear" the Shield Law privilege applied to "notes that the reporter took" and transcripts or recordings of interviews. It denied Cosby's motion – which he had made in the context of a defamation case to probe for "alterations" or "changes" in his accusers' stories. The Court also concluded that the motion "borders on the frivolous." *Id.* at 6:13-14, 25:17-24. *See also In re Application to Quash Subpoena to Nat'l Broad. Co., Inc.*, 79 F.3d 346 (2d Cir. 1996) ("*NBC*") (quashing subpoena for out-takes of interviews).

## II.   JCap's Privilege Against Disclosure of Confidential Third-Parties Is Absolute

### A. *Honoring Commitments of Confidentiality*

Identities of confidential or anonymous third parties, and any materials referencing them which JCap obtained in connection with the Report, are and must be shielded from disclosure. N.Y. Civ. Rights Law § 79–h(b); *see Giuffre*, 221 F. Supp. 3d at 476 ("At a minimum, the Shield Law would absolutely preclude any inquiry into the identity of confidential sources on which [journalist] relied in reporting the Articles or any information that may reveal those sources' identities.").

Here, some of the materials that JCap has regarding Novagold and the Report are communications with persons to whom JCap has promised anonymity and confidentiality. Stevenson-Yang Decl. ¶17(c). JCap itself would like to be able to use such confidential materials to support its case. But JCap made commitments to confidentiality and anonymity; and

6

it must honor them. *Id.* Moreover, the First Amendment protection due anonymous, expressive speech is well established. *See, e.g.*, *Watchtower Bible & Tract Soc. of N.Y., Inc. v Village of Stratton*, 536 U.S. 150, 166-67 (2002).

### B. *Constitutional Protection of Anonymous Speech Would Warrant an Additional, Heightened Showing That Novagold Has Not Satisfied*

Novagold's requests also reach for "documents reflecting persons who paid JCAP money, consideration, or other inducement to prepare the Report" (Mot. 8, *citing* RFP 14) – now referred to "JCAP's sources of funding" (Mot. 7) (a term which Novagold did *not* use in its Interrogatories or Requests for Production; and which it did not use when the Court set the scope of permitted discovery in September 2020). *See also* Exhibit B to Stevenson-Yang Decl., at 11 ("Decl. Ex. B."). It is by no means evident nor is it explained why that would be "*highly material*" or in any sense "*critical*" to the maintenance of this case. *See* Point III, *supra*. If Novagold's theory is that a such a person or entity is a "source," then such information is *privileged* – and *absolutely* so if assurances of confidentiality were made. If Novagold's theory is that such person or entity might be a "publisher" of the Report, and if that person or entity has also been given assurances of anonymity, then disclosure of their identity may not be compelled unless Novagold overcomes the privilege that has long attached to anonymous speech. That involves a distinct, "prima facie" merits showing that Novagold has not come close to meeting. *See In re Rule 45 Subpoena Issued to Cablevision Sys. Corp.*, No. 08-347 ARR MDG, 2010 WL 2219343, at *8 (E.D.N.Y. Feb. 5, 2010), *adopted in part*, No. 08-MC-347 ARR MDG, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010); *see also Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1172 (2008); *Nanoviricides, Inc. v. Seeking Alpha, Inc.*, No. 151908/2014, 2014 WL 2930753 (Sup. Ct. N.Y. Cnty. June 26, 2014).

But under *neither theory* is any of this information "highly material" or "critical" to the maintenance of the case.  *See* Point III, *supra*.  To add to that, if the statements at issue are *opinion*, then there is *no need – and no justification* for any disclosure of such persons.  And it would be wrong and unfair to breach these privileges before such a merits determination.

JCap answered and answered directly the Interrogatories Novagold posed about who paid for the costs of the Report.  The answer is simple: JCap did.  No one advanced any costs for JCap.  See Decl. Ex. A at 7-8 (Interrogatory 3); Decl. Ex. B at 11 (RFP 14).

Also significant to Novagold's request regarding "funding" (Mot. 7) is that, as the Stevenson-Yang Declaration sets forth, JCap retained "independence and editorial control" in conceiving of, writing, and publishing the Report.  *Reorg Research*, 152 A.D.3d at 447; Stevenson-Yang Decl. ¶¶10, 16; *see generally* Decl. Ex. A, at 4, 10-11 (Interrogatory Responses).  No one controls the substance of JCap's reports, or when a report is ready to be published, except JCap.  Stevenson-Yang Decl. ¶¶10, 16.

In all events, the Court should find that JCap's material related to third parties with which it has confidentiality agreements should be absolutely shielded from disclosure.

## III. Section 79–h Protects JCap's Nonconfidential News Material from Disclosure

JCap's privilege in nonconfidential "news" material cannot be broken unless Novagold "has made a ***clear and specific*** showing that the news: (i) is ***highly material*** and relevant; (ii) is ***critical*** or necessary to the maintenance of [its] claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source."  N.Y. Civ. Rights Law § 79–h(c) (emphasis added).  Novagold has failed to make any such showing.

### A. *NG Has Failed To Show Such Materials Are "Highly Material and Relevant"*

Under the first prong of the Shield Law test, mere "relevance" is not enough.  *See, e.g.*, *Matter of Application of Home Box Office, Inc.*, 64 Misc. 3d 566, 571 (Sup. Ct. N.Y. Cnty. 2019)

("[T]he Shield Law requires a showing not just that the footage is material, but rather that it is 'highly' material."). Nor does speculation as to relevance make a "clear and specific showing." *See id.* at 572 ("Since Respondent does not know what is actually contained in the outtakes, she cannot factually assert that the footage is highly material and relevant to her defense.").

Novagold likewise cannot "factually assert" that any of the nonconfidential material it seeks is "highly material and relevant." All it has stated on this Motion is that:

> JCAP's research, analysis, and diligence, including the decisions it made as to what to review and concerning the facts on which it would report and those it would leave out are all *germane* to the question of whether JCAP knowingly or recklessly disregarded the truth.

Mot. 9-10 (emphasis added). Accepting arguendo that such material is "germane," that is hardly *particularized* as "highly material and relevant." N.Y. Civ. Rights Law § 79–h(c)(i).

Every libel plaintiff can argue generally that they need all editorial materials because they have to prove "actual malice." If that excuse were sufficient, then the Shield Law privilege would be empty. According to Novagold, the Court is supposed to have sympathy for its generalized requests, because it must prove JCap's "level of fault." Mot. 9. Novagold's problem is that it does not know where to start – it never plausibly pleaded actual malice in the first place. So, it needs to embark on a general search of all of JCap's files to find *something* as yet unknown and unidentifiable that *might* help them.[2] However, speculation that materials are "germane" to a "question" is nowhere near enough to overcome the Shield Law. This alone warrants denial.

---

[2] For example, to understand just how far-fetched Novagold's "actual malice" aspirations are, it is important to take stock of what "actual malice" actually is. According to the Supreme Court, a lack of editorial policies and/or an alleged failure to adhere to reporting standards cannot establish actual malice. Even "an extreme departure from professional standards" does not rise an "actual malice" level. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989). If Novagold cannot even plausibly plead actual malice, there is no need – "highly material" or "critical" or otherwise – that would permit them to overcome JCap's privilege.

9

### B. Novagold Has Failed To Show Nonconfidential Material Is "Critical or Necessary"

***1. "[G]ermane" Does Not Begin* to Meet the Standard**: The Second Circuit has held that the Shield Law's second prong is not duplicative of the first, as NG suggests (Mot. 9-10):

> We think that "critical or necessary" as used in the statute must mean something more than "useful," particularly since the first statutory factor requires that the material sought must be shown to be "highly material and relevant" in any event. Several courts have held that in order to find unpublished news to be critical or necessary within the meaning of § 79–h, there must be a finding that the claim for which the information is to be used "virtually rises or falls with the admission or exclusion of the proffered evidence."

*NBC*, 79 F.3d at 351 (citations omitted). "The test is not merely that the material be helpful or probative, but whether or not ... the action may be presented without it." *Baker*, 669 F.3d at 108 (citation omitted); *see also Doe v. Cummings*, No. 91-346, 1994 WL 315640, at *1 (N.Y. Sup. Ct. St. Lawrence Cnty. Jan. 18, 1994) (holding that movants who had met the first prong of § 79–h(c) nevertheless failed the second).

In enforcing the Shield Law, one New York state appellate court held that a defamation plaintiff could not obtain from defendants "[a]ll documents relating to any news article mentioning plaintiff," including "research files [and] reporter's notes," where the plaintiff had "simply stated that the materials were 'critical' to his claim without setting forth any analysis in support thereof." *Flynn v. NYP Holdings Inc.*, 235 A.D.2d 907, 908-09 (3d Dep't 1997).

In *Flynn,* the libel defendants produced to the plaintiff "prior newspaper clippings, contending that they were the only documents that [the reporter] relied on in preparing the article" at issue there. *Id.* at 908. However, not only did the *Flynn* court rule that the defendants' nonconfidential research files were protected by the Shield Law; "if the requested documents were deemed confidential, defendants would be afforded unqualified protection from having to divulge such sources or materials." *Id.* (citation omitted).

Here, as in *Flynn*, JCap has produced (and is continuing to produce) copies of the publicly available documents on which the Report expressly relied for its "analysis" (Mot. 9) – most all of which are Novagold's own public filings and statements. *See* Mem. at 9, 11. All Novagold sets forth in support of obtaining nonconfidential privileged materials is an assertion:

> JCAP's research, analysis, and diligence, including the decisions it made as to what to review and concerning the facts on which it would report and those it would leave out are all *germane* to the question of whether JCAP knowingly or recklessly disregarded the truth.

Mot. 9-10 (emphasis added). "Germane" is not enough to meet the first "highly material and relevant" prong of the Shield Law. N.Y. Civ. Rights Law § 79–h(c)(i). It does not even begin to meet the "critical or necessary" prong. N.Y. Civ. Rights Law § 79–h(c)(ii).

Novagold has likewise failed to show how any nonconfidential materials are "fundamental" to its libel or trade libel proof. Mot. 9. It has not attempted to "convince the [C]ourt" – as it must to meet the Shield Law's second prong – that its claims "'virtually rise or fall with the admission or exclusion of the proffered evidence.'" *Flynn*, 235 A.D.2d at 908 (citations omitted); *NBC*, 79 F.3d at 351; *Baker*, 669 F.3d at 108. [3]

***2. Motion To Compel and Motion To Dismiss – Overlapping Issues***: JCap has moved to dismiss NG's libel claim on grounds that i) all of the Report statements at issue are protected

---

[3] On the contrary, Novagold has alleged in its First Amended Complaint ("FAC") that:

> Statements in the Report about what information was or was not conveyed to the investing public by NOVAGOLD are demonstrably false. Statements in the Report about NOVAGOLD's project plans and their costs are blatantly misleading with a reckless disregard for the true facts. . . . All JCAP needed to do was honestly analyze the publicly available information to find the truth.

Dkt. 34, ¶3; *see also* Mot. 1 ("nearly every sentence of the 22-page Report turns on an inaccuracy or distortion"). NG therefore appears to concede that the only "fundamental" materials to its claims, and specifically to its actual malice or "reckless disregard" fault proof, are the Report and its own "publicly available information." That also shows why the report is nonactionable opinion.

opinion; ii) NG fails to plead, as it must, that JCap published the statements at issue with actual malice; and iii) the Report statements are not false. *See* Dkt. 38; Dkt. 40, at 6, 19, 23. JCap also has moved to dismiss NG's trade libel claim for failing to plead any requisite facts. Mem. at 25. Even if only part of Novagold's FAC is dismissed – leaving fewer claims or statements at issue – Novagold would have to *particularize* its need for privileged material further from the level it has failed to meet here.

If the Report is deemed opinion or the FAC fails to plausibly plead actual malice, then there is no need – no particularized need, not a "highly material" need, nor a "critical" need – for the editorial materials sought and therefore no way that Novagold can overcome New York's Shield Law privilege. Judicial economy and avoidance of inconsistent results warrant, at least, denying NG's Motion without prejudice until after JCap's Motion To Dismiss is decided.

### C. NG Has Failed To Show Nonconfidential Material Is "Not Obtainable" Elsewhere

Lastly, Novagold contends that "neither the public documents nor the Report itself provide input in the editorial process and research (or lack thereof) that JCAP undertook in developing the Report" (Mot. 10). Not so. On its face, the Report shows JCap's "research" of Novagold's public and financial statements – it expressly cites to these documents throughout. *See, e.g.*, Report, Dkt. No. 39-1, at 1, 9, 10, 15-17, 20; *see* Dkt. 34, at 3-4. Additionally, Novagold already has copies of "communications between JCAP and NOVAGOLD" (Mot. 8) – they are among the relatively few materials Novagold has produced to JCap in response to JCap's own document requests. They too "provide input" as to JCap's "editorial process and research" (Mot. 10).

## CONCLUSION

Novagold's Motion should be denied, and JCap's Cross-Motion should be granted.

| | |
|---|---|
| Dated: New York, New York<br>June 9, 2021 | MILLER KORZENIK SOMMERS RAYMAN LLP<br><br>By: /s/ David S. Korzenik<br>David S. Korzenik<br>dkorzenik@mkslex.com<br>Terence P. Keegan<br>tkeegan@mkslex.com<br>Zachary M. Press<br>zpress@mkslex.com<br>1501 Broadway, Suite 2015<br>New York, New York 10036<br>Phone: (212) 752-9200<br><br>*Attorneys for Defendant J Capital Research USA, LLC* |