Seth T. Taube
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel: 212.408.2500
Fax: 212.408.2501
*Attorney for Plaintiff, NOVAGOLD Resources Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOVAGOLD RESOURCES INC., <br><br> Plaintiff, <br><br> v. <br><br> J CAPITAL RESEARCH USA LLC, <br><br> Defendant. | **CIVIL ACTION NO.: 1:20-cv-02875 (LDH)(PK)** <br><br> **JURY TRIAL DEMANDED** <br><br> **Date of Service: June 23, 2021** |

**PLAINTIFF NOVAGOLD RESOURCES INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER AND <u>REPLY IN SUPPORT OF ITS MOTION TO COMPEL</u>**

This dispute arises from JCAP's refusal to provide information and documents responsive to 17 of NOVAGOLD's 28 interrogatories and requests for production on the basis of its assertion of reporters' privilege. JCAP's Memorandum of Law in Opposition to Motion to Compel and in Support of Cross Motion for a Protective Order ("Opposition" or "Opp.", Dkt. 62) refers vaguely to some of those seventeen requests but does not directly address the language of any of them. The requests span a wide range of materials and information:

- The documents and information JCAP considered in identifying NOVAGOLD as a subject for the Report (RFP No. 5, Interrogatory No. 1);

- Documents reflecting discussions between JCAP and NOVAGOLD, including JCAP's internal communications concerning those discussions (RFP No. 6);

1

- Documents reflecting communications or meetings between JCAP and third parties regarding NOVAGOLD and the identification of persons who provided information to JCAP (RFP No. 7 and Interrogatory No. 2);

- Documents and information reflecting JCAP's due diligence, research, or analysis in drafting the Report and the identity of persons involved in researching or drafting the Report (RFP No. 8 and Interrogatories 3 and 5);

- Documents reflecting any meetings between JCAP and anyone about NOVAGOLD or NOVAGOLD securities (RFP No. 11);

- Documents reflecting the purchase, acquisition, sale or disposition of securities by any company in the mining industry or communications about those securities (RFP Nos. 12 and 13);

- Documents and information reflecting persons who paid JCAP any money, consideration, or other inducement to prepare, revise or publish the Report (RFP No. 14, Interrogatory No. 3); and

- Documents and information reflecting editorial input, oversight, or suggested edits or comment of or concerning the Report by any person and the identity of any persons who knew about the Report prior to its publication (RFP No. 15 and Interrogatory No. 6).

These requests are not only properly within the scope of discovery contemplated by the Federal Rules, they mirror the topics into which the Court expressly permitted discovery at the Parties' September 30, 2020 Initial Conference. *See* Plaintiff NOVAGOLD Resources Inc.'s Motion to Compel ("Motion" or "Mot.") at 3. In the Opposition, JCAP seeks to ignore the requests at hand and instead cites broadly to a generic discussion of the importance of a free press. JCAP's brief reveals the infirmity of its position: ***JCAP has not identified a single case recognizing a reporters' privilege as broad as the one it seeks to assert here.*** Protected "news" under the New York statute on which JCAP relies[1] is narrowly circumscribed and includes "written, oral, pictorial,

---

[1] JCAP suggests in its Opposition that NOVAGOLD's Motion improperly relies on the wrong law. Opp. 2. This is not so. NOVAGOLD's Motion to Compel relies on the definition of "news" and three-part test for producing such news set out by New York's Shield Law. N.Y. Civil Rights Law § 79-h; Mot. 3-5, 7-9. As noted in NOVAGOLD's briefing, cases interpreting the constitutional privilege's analogous three-part test, although not binding, provide relevant commentary on the relevance of the cause of action (here libel) to the Court's determination of whether the requested evidence is both highly relevant and critical or necessary to a claim. Mot. 9.

photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting public welfare." *See* Mot. 3, *citing* N.Y. Civil Rights Law § 79-h(a)(8). It is not so broad as to encompass all materials that may in any way touch upon or relate to a published document, particularly where—like here—such document is the result of a commercial endeavor and not independent journalism.

JCAP makes much of the New York Shield Law it attempts to hide behind but fails to explain (1) how JCAP's short-and-distort Report is protected by the statute, (2) why NOVAGOLD would not be entitled to documents that plainly do not qualify as "news" within the statutory definition; or (3) why NOVAGOLD would not be entitled to non-confidential documents that meet the statutory three-part test.

**I.     The Opposition confirms that JCAP's short-and-distort Report is not newsgathering protected by the reporters' privilege.**

As a threshold matter, to the extent that JCAP's Report was published not to gather or disseminate news to the public but rather to drive down NOVAGOLD's share price for the profit of itself or others, JCAP is not entitled to the protections of the reporters' privilege. JCAP's discussion of the qualifications of its principals and their "commitment to publishing news" misses the point. Opp. 4. It is *JCAP's* burden to show that it is entitled to claim the reporters' privilege and "[t]hose who do not retain independence as to what they will publish but are subservient to the objectives of others who have a stake in what will be published have either a weaker privilege or none at all." *See* Mot. at 6; *citing Chevron Corp. v. Berlinger*, 629 F.3d 297, 309 (2d Cir. 2011); *see also Matter of Murray Energy Corp. v. Reorg Research, Inc.*, 152 A.D.3d 445, 447 (N.Y. App. Div. 1st Dept. 2017) (collecting cases) (recognizing that "[o]ther courts have found the extent of a

3

publication's independence and editorial control to be important in determining whether to apply the Shield Law" and adopting same ).

JCAP's self-serving belief that NOVAGOLD is "mistaken" as to whether JCAP or its writers were short sellers of NOVAGOLD stock and conclusory assertion that "its principals exercised full editorial control over the Report's content and publication" do not meet this burden. Opp. 4. Indeed, the Opposition *admits* that JCAP "discloses in its reports that it is 'short' the stock, *because it may benefit from a decline in the share price.*" *Id.* (emphasis added). These are not disclaimers used by real sources of "news" that the New York Shield law is intended to protect. In *Murray Energy*, though the court ultimately held that the privilege applied to the respondent organization, it found it "***significant***" that respondent had "established that its editorial staff is ***solely*** responsible for deciding what to report on and that it does not accept compensation for writing about specific topics or permit its subscribers to dictate the content of its reporting." *Murray Energy*, 152 A.D.3d at 447. JCAP steadfastly refuses to provide the information—included in NOVAGOLD's discovery requests—that would allow it to make the same showing here.

II. **The Opposition confirms that certain of the documents and information that JCAP refuses to produce do not qualify as "news" and are not subject to the protections of New York's reporters' privilege.**

JCAP's failure to address NOVAGOLD's specific requests directly highlights the overreach of its privilege assertion. Much of the information to which JCAP has objected to producing does not qualify as "news" at all—whether obtained confidentially or non-confidentially. For example, JCAP's sources of funding—which are called for in RFP 14 and Interrogatory 3 for documents and information reflecting persons who paid JCAP any money, consideration, or other inducement to prepare, revise, or publish the Report—are plainly not "written, oral, pictorial, photographic, or electronically recorded information or communication

4

concerning local, national or worldwide events or other matters of public concern or public interest or affecting public welfare." N.Y. Civ. Rights Law § 79-h. JCAP's effort to recast such *funding* as either a confidential source or anonymous publisher misses the point. Opp. 7. JCAP has not cited *any* authority relying on New York's Shield Law to protect from discovery sources of income, particularly where there is a question as to whether the publication at issue was for profit.

Similarly, JCAP refuses to provide rough drafts of the Report and communications between its principals regarding the analysis or due diligence it conducted in drafting the Report—even where such drafts and communications do not reflect the provision of any confidential information. Mot. 7. JCAP's citation to general case law protecting the identity of confidential sources—*see* Opp. 6 *citing Green v. Cosby*, No. 16-mc-00099-P1, Dkt. No. 13 (S.D.N.Y. Apr. 26, 2016)—fails to address the specific request for JCAP's rough drafts and internal communications reflecting the research and due diligence it carried out in drafting the Report, if any. And in *Trump*, the relevant discovery sought "the identity of the sources of [the author's information] and [the author's] notes of interviews with those sources." *Trump v. O'Brien*, 958 A.2d 85, 88 (N.J. App. Div. 2008). Though the court notes that the withheld discovery included "drafts of the book, and communications concerning news-gathering and editorial processes . . . *the relevance of [those requests was] not substantively addressed by Trump in his initial motion or on appeal*." *Id.* at 88 n.2 (emphasis added). As to this request as well, JCAP fails to identify case law supporting its overbroad invocation of New York Shield Law. In all events NOVAGOLD is entitled to discovery of materials that do not qualify as "news."

**III.   The Opposition confirms that NOVAGOLD is entitled to the non-confidential information that is (i) highly material and relevant; (ii) critical or necessary to the maintenance of its claim or proof of material issues; and (iii) not obtainable from any alternative source.**

In its Opposition, JCAP continues to fail to make a showing that *any* of the information it seeks to protect was obtained in confidence. Mot. 8. In *Trump*, on which JCAP relies, the court recognized that "[t]o invoke the privilege the journalist carries the burden of *proffering at least preponderant evidence of the mutuality of the understanding, or agreement, of confidentiality*." *Trump*, 958 A.2d at 97. To satisfy its burden, the author in that case "attested to the fact that the sources sought confidentiality because of fear of retribution" and the court found that "common sense supports the sources' desire for confidentiality since, if identified, it appears inevitable that they would be named as defendants in Trump's defamation suit and would likely suffer additional personal and economic consequences." *Id*. JCAP has provided no similar evidence here. Indeed many of the requests plainly do not call for confidential information, including: documents reflecting communications between JCAP and NOVAGOLD (including internal JCAP discussions concerning those communications) (RFP 6); documents reflecting the purchase, acquisition, sale, or disposition of securities by any company in the mining industry (RFPs 12 and 13); documents reflecting persons who paid JCAP money, consideration, or other inducement to prepare the Report (RFP 14); and documents and information reflecting editorial input, oversight, or suggested edits concerning the Report (RFP 15 and Interrogatory 6). And other requests—though they conceivably may call for confidential information (if such information exists), also call for non-confidential information, including: documents and information JCAP considered in identifying NOVAGOLD as a subject for the Report (including internal communications) (RFP 5 and Interrogatory 1); and documents and information reflecting communications or meetings between JCAP and third parties regarding NOVAGOLD or its securities (including those meetings that were neither anonymous nor confidential) (RFP 7, 11–13 and Interrogatory 2). Mot. 8.

To the extent that non-confidential documents NOVAGOLD seeks qualify as "news" at all, NOVAGOLD is entitled to those documents that are (i) highly material and relevant; (ii) critical or necessary to the maintenance of its claim or proof of material issues; and (iii) not obtainable from any alternative source. Mot. 9, citing N.Y. Civil Rights Law § 79-h(c). Contrary to JCAP's assertion, the documents NOVAGOLD seeks are not merely "germane" to the case—they go to "the very heart of NOVAGOLD's libel and trade libel claims and is fundamental in determining JCAP's level of fault." Mot. at 9. By latching onto a single word used in NOVAGOLD's brief, JCAP seeks to side-step the actual legal arguments raised.

Courts have recognized that it is fundamentally unfair to permit a media defendant to resist discovery on such "a basic issue as knowledge in a defamation case." Mot. 9 *citing Aequitron Med., Inc. v. CBS, Inc.*, No. 93 CIV. 950 (DC), 1995 WL 406157, at *3 (S.D.N.Y. July 10, 1995). Though *Aequitron* was decided on a constitutional privilege (as NOVAGOLD's Motion recognizes) the court's logic remains applicable. Mot. 9. JCAP provides *no* explanation as to why the particular cause of action (in this case defamation) is not a critical component to determining whether the requested material is necessary to the maintenance of that claim. And, as the *Aequitron* court recognized, because the point is not whether the requested information existed but "whether the defendants had the information and, if so, how the information impacted their state of mind" requests that seek insight into JCAP's diligence, research, and analysis are *uniquely* within JCAP's possession. Mot. 9. The *Graco* case to which JCAP cites is inapposite. That case did not address materials going to the heart of a libel claim, but rather materials believed to be inconsistent with deposition testimony for impeachment purposes only. *In re Application to Quash Subpoena to Nat. Broadcasting Co., Inc.*, 79 F.3d 346, 351 (2d Cir. 1996). The court held that the movant had

not overcome the Shield Law's three-part test where it showed only that the requested material would be "useful" and not "critical or necessary."  *Id*.

Finally, JCAP's last ditch effort to—for a third time—attempt to stall discovery until after the Court's ruling on its Motion to Dismiss is without merit.  Opp. 11–12.  NOVAGOLD's burden to *plead* its claims is entirely separate from its burden to *prove* those claims and the pending motion has no bearing on the discovery to which NOVAGOLD is entitled.

## CONCLUSION

For the reasons stated above, NOVAGOLD respectfully requests that the Court compel JCAP to fully answer its interrogatories 1, 2, 3, 5, and 6 provide documents responsive to its requests for production 1, 2, 3, 5, 6, 7, 8, 11, 12, 13, 14, and 15.


Dated:  June 23, 2021                                                  **BAKER BOTTS L.L.P.**

*/s/ Jonathan Rubenstein*
Seth T. Taube
30 Rockefeller Plaza
New York, New York 10112
Tel: 212.408.2500
Fax: 212.408.2501
*seth.taube@bakerbotts.com*

Jonathan Rubenstein (*adm. pro hac vice*)
Jordan Kazlow (*adm. pro hac vice*)
2001 Ross Avenue
Dallas, Texas 75021
Tel.: (214) 953-6500
Fax: (214) 953-6503
*jonathan.rubenstein@bakerbotts.com*
*jordan.kazlow@bakerbotts.com*

***Attorneys for Plaintiff,***
***NOVAGOLD Resources Inc.***

8

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of June 2021, a copy of the foregoing Plaintiff NOVAGOLD Resources Inc.'s Memorandum of Law in Opposition to Defendant's Motion for a Protective Order and Reply in Support of its Motion to Compel were filed with the Clerk of the Court, Eastern District of New York, and will be sent via email and electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).
.

> */s/ Jonathan Rubenstein*
> Jonathan Rubenstein