UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
   NOVAGOLD RESOURCES, INC.            **Oral Argument Requested**

               Plaintiff,                        Index No. 1:20-cv-02875-LDH-PK

     - against -

   J CAPITAL RESEARCH USA, LLC,

               Defendant.
--------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR A PROTECTIVE ORDER**

J Capital Research USA, LLC ("JCap") submits this Reply Memorandum of Law in further support of its Cross-Motion for a Protective Order (Dkt. 60) ("Cross-Motion") addressed to the discovery demands of Plaintiff Novagold Resources, Inc. ("Novagold" or "NG"). As discussed below, NG opposes JCap's Cross-Motion only with empty labels devoid of legal support ("self-serving," "narrowly circumscribed," "commercial endeavor") and nothing of factual substance. The Court should grant JCap's Cross-Motion in full.

***New York Provides Organizations Such as JCap with the "Utmost Protection."*** NG falsely claims that JCap "has not identified a single case recognizing a reporters' privilege as broad as the one it seeks to assert here." Plaintiff Memorandum in Opposition (Dkt. 63) ("NG Opp."), at 2. NG itself cites no authority for its suggestion that N.Y. Civ. Rights Law § 79–h (the "Shield Law" or "79–h"), is "narrowly circumscribed" (*id.*). On the contrary, the cases JCap cited in its moving brief ("JCap Mem.") make plain that the Shield Law – pursuant to the New York Constitution – provides reporters with the "utmost protection." *Murray Energy Corp. v. Reorg Research, Inc.*, 152 A.D.3d 445, 446-47 (1st Dep't 2017), *citing Matter of Holmes v. Winter*, 22 N.Y.3d 300, 307, 310 (2013), *cert. denied*, 572 U.S. 1135 (2014); *see* JCap Mem. 5.

Further, in *O'Neill v. Oakgrove Const., Inc.* (JCap Mem. 3), then-Judge Kaye of New York's Court of Appeals emphasized:

> [T]he language of article I, § 8 of our State Constitution is materially different – more expansive – than the First Amendment; article I, § 8 has a longer, independent history; and we have maintained a consistent tradition in this State of providing ***the broadest possible protection*** to "the sensitive role of gathering and disseminating news of public events."

71 N.Y.2d 521, 531 (1988) (Kaye, J., concurring) (emphasis added), *citing Matter of Beach v. Shanley*, 62 N.Y.2d 241, 256 (1984) (Wachtler, J., concurring). *See also Holmes*, 22 N.Y.3d at 307-11 (discussing constitutional underpinnings of Shield Law). NG invites this Court to engage in what Judge Kaye warned against: namely, to "surround" its consideration of the New York reporter's privilege with consideration of the weaker qualified federal reporter's privilege, and "the uncertainty that presently accompanies the Federal law." *O'Neill*, 71 N.Y.2d at 531; *see* JCap Mem. 2; *cf.* NG Opp. 1 n.1, 3 (discussing *Chevron Corp. v. Berlinger*, 629 F.3d 297, 309 (2d Cir. 2011)). The Court should reject NG's effort to dilute 79–h. The Shield Law has been amended four times to strengthen it and to prevent its being diluted in case law.

***JCap Plainly Qualifies for Protection Under the Shield Law.*** NG claims that JCap is a "commercial endeavor," and that it has raised "a question as to whether the publication at issue was for profit." NG Opp. 3, 5. NG misapprehends the law. By its very definitions, 79–h expressly protects journalists who publish "***for gain*** or livelihood." *See* § 79–h(a)(6) (emphasis added); JCap Mem. 3-4. *See also* § 79–h(a)(3) (defining "news agency" as "a ***commercial organization*** that collects and supplies news to subscribing newspapers, magazines, periodicals and news broadcasters") (emphasis added). NG's "question" of a profit motive is not a valid challenge to Shield Law protection, just as it is not a valid pleading of "actual malice" against JCap. *See* First Amended Complaint, Dkt. 34 ¶¶1-4, 43, 45, 51, 58; *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013), *aff'd* 807 F.32d 451 (2d Cir. 2015), *and aff'd* 622 F. App'x

67 (2d Cir. 2015); *see also* JCap's Memorandum of Law in Support of Its Motion To Dismiss, Dkt. 40, at 17-18.

NG does not challenge *any* of the facts attested to by Anne Stevenson-Yang, JCap's principal, in either its interrogatory responses or JCap's moving Declaration. That evidence establishes JCap's journalistic mission, editorial independence, and confidentiality promises to third parties in the course of writing the Report. See JCap Mem. 3-4, 6-7, 8. Like the news organization and articles at issue in *Reorg Research* (JCap Mem. 5, 8; NG Opp. 4), JCap's Report on NG was not commissioned; nor could any third party "dictate the content of [JCap's] reporting." 152 A.D.3d at 447. *See* Stevenson-Yang Decl. ¶¶11, 16. In addition, JCap detailed in its interrogatory responses how its principals were "solely responsible for deciding what to report on." *Reorg Research*, 152 A.D.3d at 447; Stevenson-Yang Decl. Ex. A at 5-6 (attesting to how Ms. Stevenson-Yang and Tim Murray, JCap's managing director and the Report's author, alone "identified and selected NovaGold as the subject of their research and their Report").[1]

***JCap Has Amply Established Absolute Protection for Confidential Information.*** NG fails to distinguish any of JCap's supporting authorities on the foundation and scope of the Shield Law. In particular, NG acknowledges how the New Jersey appellate court in *Trump v. O'Brien*, 958 A.2d 85 (N.J. App. Div. 2008) (JCap Mem. 5-6) recognized the journalist's absolute privilege for confidential information under N.Y. Civ. Rights Law § 79–h(b). NG suggests that JCap has not laid the same foundation as the journalist in *O'Brien* (NG Opp. 6). The "totality of the evidence" offered by JCap is more than "sufficient" to establish absolute protection for confidential material (*O'Brien*, 958 A.2d at 97):

---

[1] As JCap discussed in its Moving Memorandum, Shield Law protection is not conditioned on "provid[ing]" to NG for its evaluation the very "information" that the law protects from disclosure. NG Opp. 4; *see* JCap Mem. 4. One cannot break the privilege in order to test it.

3

***First***, like the reporter in *O'Brien*, JCap "chose not to identify" by name the "expert" or "engineer" to which the Report refers – "thereby diminishing to an extent the weight that" the Report's assessment of NG's prospects "would have had were [its] sources identified, thus permitting a detailed evaluation of the extent and accuracy of their knowledge." [2] *See O'Brien*, 958 A.2d at 97; *see also* JCap Report, Dkt. 39-1, at 5, 8.

***Second***, whereas the journalist in *O'Brien* "attested to the fact that the sources sought confidentiality because of fear of retribution and he agreed to provide it" (958 A.2d at 97), JCap's principal attested to having "promised anonymity and confidentiality" to certain persons in the course of reporting on Novagold. Stevenson-Yang Decl. ¶17(c). Again, they are commitments that JCap "must honor." *Id.* [3]

***Third***, as in *O'Brien*, "common sense supports" the anonymous third parties' "desire for confidentiality since, if identified, it appears inevitable that they would be named as defendants in [the instant] defamation suit and would likely suffer additional personal and economic consequences." 958 A.2d at 97. Here, NG has made plain its intent to pursue any short-sellers, critics, or persons with whom JCap spoke in preparing the Report. ***It has sought extensions of time to name new defendants because of the very privilege assertions at issue here.*** *See* Dkts. 45 (Mar. 4, 2021), 53 (May 5, 2021).

Thus, "from the circumstances surrounding the imparting or gathering of the news, it is reasonable to conclude that the principals mutually intended that the identity of the source and the substance of the news or information would be maintained

---

[2] In *O'Brien*, the reporter had objected to disclosing to Donald Trump the "three people who [per the reporting at issue] had had direct knowledge of his holdings." *See* 958 A.2d at 89. Similarly, JCap has objected to disclosing to NG the "the anonymous industry professionals referred to in the Report, including the 'engineer . . . who worked on costing the pipeline' identified on page 2; the 'pipeline expert . . . familiar with the project" identified on page 5; the 'pipeline engineer familiar with Donlin' identified in footnote 4; and the 'expert' identified on page 8." *See* Stevenson-Yang Decl. Ex. A, at 8-9 (response to NG Interrogatory No. 4).

[3] As Ms. Stevenson-Yang states, "NovaGold complains that it will not be able to use confidential information or sources against us or against the source(s); but by the same token, we cannot use them in our defense either – as much as that would be to our advantage." Stevenson-Yang Decl. ¶17(c). *See also* N.Y. Civ. Rights Law § 79–h(d) ("Any information obtained in violation of the provisions of this section ***shall be inadmissible*** in any action or proceeding or hearing before any agency.") (emphasis added).

confidential." *O'Brien*, 958 A.2d at 97 (citation omitted). "[R]etribution" against third-parties was "feared" in *O'Brien* (*id.*); here, it is all but assured.

***Public Concern Over NG Continues To Increase.*** NG does not contest on this cross-motion that its mining activities are clear "matters of public concern or public interest." *See* § 79–h(a)(8) (statutory definition of "news"); Stevenson-Yang Decl. ¶¶18-19. It cannot. Just this week, the Orutsararmiut Native Council – a tribal council located where the Donlin Gold mine plans to operate – appealed the State of Alaska's decision to uphold the mine's water quality permit. *See* Complaint, *Orutsararmiut Native Council v. Dept. of Env. Conservation & Donlin Gold LLC*, No. 3AN-21-06502CI (Alaska Super. Ct. June 28, 2021). [4] In a press release responding to the lawsuit, NG stated that it is updating the Feasibility Study that JCap focused on in its Report – a study whose "economic assessment" of the mine is premised on, among other factors, its ability to secure government permits. *See* "Donlin Gold Affirms Its Strong Support for ADEC Commissioner's Upholding of Section 401 Certification" (June 29, 2021), *available at* https://www.globenewswire.com/news-release/2021/06/29/2254387/0/en/Donlin-Gold-Affirms-Its-Strong-Support-for-ADEC-Commissioner-s-Upholding-of-Section-401-Certification.html; Dkt. 39-1, at 7-8, 11. As JCap has explained in its motion to dismiss, with the Report focusing on such a matter of "public concern," NG's burden to plead fault – i.e., actual malice – is high. *See* Dkt. 40, at 17. Here, in its opposition to JCap's Cross-Motion, NG has not shown why the Court should break JCap's privilege and permit NG to pursue speculative theories on meeting that burden. *See* JCap Mem. 5.

---

[4] *See also* "Bethel Tribe Challenges DEC Commissioner's Decision Upholding Donlin Gold Mine Permit," EARTH JUSTICE (June 28, 2021), https://earthjustice.org/news/press/2021/bethel-tribe-challenges-dec-commissioners-decision-upholding-donlin-gold-mine-permit (click on "Legal Document").

***NG Has Made No Record for the Relief It Seeks.*** NG hopes to break JCap's 79–h privilege without making any record for its cause. Its Opposition tries to do that without meeting or even addressing the basic requirements of the statute:

1. Without a "*specific and clear showing*" of what it seeks, choosing instead to repeat its general, shotgun and exploratory requests without addressing any of *JCap's actual and concrete answers to those requests* (instead, NG hopes to be permitted to sift through the rest of JCap's files to find something that *might* be relevant or helpful) (JCap Mem. 8-9);

2. Without showing how any *specific* items sought are not just relevant, but "*highly material and relevant*" (the statute's call for specificity requires that NG know what it is looking for (*id.*);

3. Without a clear and specific demonstration that the materials sought are "***critical***";

4. Without contesting or even bothering to address any of the facts asserted in *JCap's Declaration of Anne Stevenson-Yang* (Dkt. 61) in support of its motion;

5. Without contesting or even bothering to address any of the facts presented in *JCap's Answers to Interrogatories and Responses to NG's Requests for Production* (Stevenson-Yang Decl. Exs. A-B);

6. Without providing *any declaration or factual assertions of its own* beyond the speculation conjured in its Opposition;

7. Without support of *New York case law interpreting 79–h* (instead, NG relies on cases applying *weaker* [5] reporter's privileges that it contends are "analogous," Opp. 2 n.1).

---

[5] The federal reporter's privilege has no absolute protections for confidential sources and communications with them. New York's Shield Law does. And it is New York's Shield Law that applies here. *See* JCap Mem. 2.

In short, ***NG has made no record*** on which to overcome the Shield Law; no record on which to dispute the foundation of JCap's assertion of privilege; and no record on which to meet the burdens that 79–h imposes on it.

NG cannot take the measure of 79–h by using cases that analyze *different* privileges from different jurisdictions – privileges that are weaker and less generously interpreted and applied.

***NG's List of Discovery Demands, by Its Own Broad Terms, Falls Squarely into the 79–h Definition of "News."*** The Shield Law defines "news" as "information or communication concerning . . . events or other matters of public concern or public interest . . . ." § 79–h(a)(8). A quick review of NG's list of broad demands (NG Opp. 1-2) shows that is what NG is looking for: "news" just as 79–h defines it.

***First***, NG's first listed demand seeks information on how JCap "considered identifying NG as a subject of the Report." JCap answered that Interrogatory fully and forthrightly. JCap explained how it chose NG as the subject of its Report. NG does not address that fact even obliquely. Any documents reflecting deliberations fall under the 79–h definition of "news." To get them, NG must meet the three-pronged test. It did not bother. (It is not even clear in the first place what this request has to do with the elements of a libel claim. It is just background.)

The Court asked NG to focus and to be specific about its demands. Instead, NG just reprinted its broad demands without discussing how JCap answered them; what documents JCap agreed to provide or what documents JCap had already provided.

***Second***, NG asks for documents reflecting discussions between JCap and NG and "JCap's internal communications concerning those discussions." The former JCap agreed to provide. NG already has them. The latter, "communications" about that fall within the definition of "news." NG made no 79–h showing as to that request.

***Third***, NG wants communications and information relating to JCap sources. That broad demand falls squarely within the 79–h definition of news. Nothing more; nothing less. And as for the confidential sources – such information is "absolutely" privileged.

***Fourth***, NG wants all of "JCap's due diligence, research, or analysis in drafting the Report and identity of the persons in researching or drafting of the Report." The first part of this shotgun request seeks straight 79–h "news," i.e., information and communications" about matters of "public interest." As for the identification of persons who researched and drafted the Report, JCap fully answered that: It identified them.

***Fifth***, NG seeks documents reflecting any meetings with "anyone about NG or NG securities." That shotgun request again seeks sources – privileged under 79–h(c) and confidential sources, "absolutely" privileged under 79–h(b). As for documents concerning NG securities, JCap did not trade – long, short, or otherwise in NG securities. JCap therefore has no documents regarding such trades. *See* Stevenson-Yang Decl. Ex. B, at 9 (RFP No. 11).

***Sixth***, NG seeks documents reflecting "purchase, acquisition, sale or disposition of securities by any company in the mining industry or communications about those securities. This shotgun request seeks "news" under 79–h; but JCap's answers to interrogatories and responses to RFP's make clear that it had no such trades and no such documents.

***Seventh***, NG seeks documents and information reflecting persons who paid JCap any money, consideration, or other inducement to prepare, revise, or publish the Report." This request is broad and ill-defined. If "inducement" refers to subscribers or sponsors, then that is not permitted discovery. Subscriber and reader information is both privileged (*see, e.g.*, *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1167-69 (W.D. Wash. 2010)) and beyond the scope of the permitted limited discovery. If "inducement" refers to anyone who would qualify as

a "*publisher*" of the report or to a "speaker," or to one otherwise legally responsible for the Report, then that would cover "*anonymous speakers*" who are protected from disclosure under the anonymous speech cases cited in JCap's Moving Memorandum (*id.* at 7). Significantly, NG chose not to address the anonymous speech issue *at all* in its Opposition. NG never once troubled itself to meet or even consider the test that must be met to force such disclosure. This broad demand could also cover confidential sources who would in all events be *absolutely* protected from disclosure under 79–h(b). No showing of any kind can force their disclosure.

*Eighth*, NG seeks documents and information concerning "editorial input, oversight, suggested edits or comment of or concerning the Report," etc. That shotgun demand covers *pure* 79–h "news" and "communications concerning news." This ambitious request is too lacking in specificity to even begin to make a 79–h showing. In all events, NG didn't meet the test.

NG has chosen simply to repeat its broad requests without addressing JCap's concrete answers to those requests; and without refining the issues in any measure. The parties' meet and confers were far more specific and focused than the broad shotgun demands that JCap and the Court must now try to untangle. This is an example of a party throwing everything at the wall and hoping that something might stick. It is one more way in which NG seeks to impose vexatious costs on JCap and to suppress and punish critical speech – critical *opinion* – about NG.

Still, NG thinks it sufficient to list its shotgun discovery demands that plainly by its own terms fall right within the 79–h definition of "news."

***NG Wishfully References* Berlinger *as a Jump Off for Its Speculation that JCap's Report Was Controlled by Some Third Party.*** If NG wants to challenge the 79–h privilege on that ground, then NG should first read and factually challenge the substance of JCap's Declaration; and then NG should read and factually challenge JCap's Answers to NG's

9

Interrogatories.  There JCap very concretely explained when and how JCap selected NG as the subject of its Report.  No one else but Anne Stevenson-Yang and Tim Murray made that decision.  As explained in JCap's Answers to Interrogatories, there were confidential sources who were *later* consulted to develop the Report, but the choice of subject was JCap's and JCap's alone.  JCap also controlled when any report would be published and when it was ready for publication.  No one else could and no one else did.  It does not suffice to speculate that it *could have been* a *Berlinger*-type situation (NG Opp. 3-4) – especially when *Berlinger* [6] interprets the scope of a weaker federal common law privilege and not the 79–h privilege at bar.

To say that X is "germane" or merely "relevant" does not make it critical or highly relevant.  And relevance is meaningless to 79–h when NG casts non-specific requests for a broad class of documents that are at best only potentially relevant.  If general or potential relevance were to suffice then the 79–h privilege would protect nothing.

***Conclusion.***  JCap's Cross-Motion for a protective order should be granted.

| | |
|---|---|
| Dated: New York, New York<br>June 30, 2021 | MILLER KORZENIK SOMMERS RAYMAN LLP<br><br>By: /s/David S. Korzenik<br>David S. Korzenik<br>dkorzenik@mkslex.com<br>Terence P. Keegan<br>tkeegan@mkslex.com<br>Zachary Press<br>zpress@mkslex.com<br>1501 Broadway, Suite 2015<br>New York, New York 10036<br>Phone: (212) 752-9200<br>*Attorneys for Defendant J Capital Research USA, LLC* |

---

[6] Ever since *Berlinger*, many Plaintiffs have tried to play the decision as a card to evade the privilege.  But every news organization has sources, and typically has understandings with sources.  That does not mean a source "controls" the news report.  If a source's input could so easily trigger *Berlinger*, then the Shield Law would melt away.  "Control" of a much grander scale must be at hand.  Here, there is no "control," much less any of the kind that NG dreams of.