1               UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
2
                                    *
3  NOVAGOLD RESOURCES INC.          *    Case No.
                                    *
4              PLAINTIFF            *    1:20-CV-02875-LDH-PK
        v.                          *
5                                   *
   J. CAPITAL RESEARCH USA LLC.     *    Brooklyn, New York
6                                   *    August 11, 2021
               DEFENDANT            *
7  * * * * * * * * * * * * * * *

8

9          TRANSCRIPT OF ORAL ARGUMENT BY TELEPHONE
              BEFORE THE HONORABLE PEGGY KUO
10              UNITED STATES MAGISTRATE JUDGE

11 APPEARANCES:

12    For the Plaintiff:        DAVID M. GENENDER, ESQ.
                                JORDAN A. KAZLOW, ESQ.
13                              Baker Botts, LLP
                                2001 Ross Avenue
14                              Ste 900
                                Dallas, TX 75201
15
      For the Defendant:       DAVID S. KORZENIK, ESQ.
16                              ZACHARY M. PRESS, ESQ.
                                Miller Korzenik Sommers Rayman
17                              LLP
                                The Paramount Building 1501
18                              Broadway
                                Ste 2015
19                              New York , NY 10036

20                              TERENCE P. KEEGAN, ESQ.
                                Miller Korzenik Sommers Rayman
21                              LLP
                                488 Madison Avenue
22                              Suite 1120
                                New York , NY 10022
23

24
   Proceedings recorded by electronic sound recording,
25 transcript produced by transcription service.

1                         August 11, 2021

2              THE COURT:  This is an oral argument by telephone in

3    the matter of NOVAGOLD Resources, Inc., versus J. Capital

4    Research USA, LLC, docket number 20-cv-2875.  Will the parties

5    please state their appearances, starting with Plaintiff?

6              MR. GENENDER:  Good morning, Judge.  David Genender

7    and Jordan Kazlow from Baker Botts on behalf of the Plaintiff,

8    NOVAGOLD Resources, Inc.

9              MR. KORZENIK:  And on behalf of Defendant, J. Capital

10   Research, this is David Korzenik, and with me Terence Keegan

11   and Zachary Press of Miller Korzenik Sommers Rayman.

12             THE COURT:  Good morning, everyone.  This is

13   Magistrate Judge Peggy Kuo presiding.  All right.  We are here

14   for an oral argument on two motions.  There is a motion filed

15   at ECF number 56 by the Plaintiff, a motion to compel,

16   responses to various interrogatories and document requests, and

17   then there is a cross motion by the Defendant at ECF number 60

18   for a protective order asserting a report is privileged.

19             So how I'd like to proceed is first, I'd like to see

20   if the parties have any agreement -- or rather any disagreement

21   on the law or the framework that we should be using.  And then

22   I would like to focus on the motion to compel and look at the

23   specific interrogatories and document requests at issue and the

24   responses.  And in the course of the responses, I believe that

25   the issue of the reporter's privilege will be discussed.  So

1    why don't we start with the legal framework, just because I

2    like to understand if the parties agree or disagree about how

3    the Court should be looking at this.  So Mr. Genender or Ms.

4    Kazlow, would you like to start?

5            MR. GENENDER:  Yes, Your Honor.  I think we do have a

6    slightly disagreement about the relevance of the pay-to-play

7    concept that is in the Burlinger (ph.) case, which is a federal

8    case, and the Murray (ph.) case, which is a New York State

9    case.  We believe that is sort of a preliminary issue to decide

10   whether or not the privilege applies.  We also, I believe, have

11   a disagreement about whether or not they have properly invoked

12   the reporter's privilege and met their burden of showing the

13   elements of it.  But as far as the law as to what the

14   reporter's privilege under New York law, I don't think we have

15   a disagreement substantively about that, other than its scope.

16   We believe that the protection that -- for news is not nearly

17   as broad as the Defendant contests.

18           THE COURT:  Uh-huh.  Okay.  Thank you for that.

19           And Mr. Korzenik or Mr. Keegan?

20           MR. KORZENIK:  Yes.  I'll just address this.  One of

21   the things that concern me is that the Plaintiff seems to rely

22   on a number of cases that follow the Gonzalez (ph.) or the

23   federal privilege, which is a much more weaker version of that.

24   So the Burlinger case and several others that they rely on are

25   -- reflect the balancing of that weaker privilege.  What is

1   important, I think, to emphasize here is that Section 79H is a

2   very powerful and potent privilege.  It's been amended four

3   times by the state to strengthen it and to resist any efforts

4   and any judicial weakening of the privilege.  And in some ways,

5   as with any privilege, it blocks disclosure of things that

6   would otherwise be relevant under -- and generally discoverable

7   under both state or federal discovery rules.

8            But it does -- I think we've met the foundational

9   requirements of it very clearly and that the affidavit of Anne

10  Stevenson-Yang, who is the research director and editor of the

11  article in question, shows that we are professional

12  journalists, we do this for gain, which is what the statute

13  requires.  And it imposes two burdens.  One, that the federal

14  privilege doesn't provide at all, and that is an absolute

15  protection against the disclosure of any confidential source or

16  any kind of confidential communication relating to the news,

17  and it defines news very broadly.  And it requires as to

18  nonconfidential material a specific -- a showing of specific

19  particularized critical need.

20           And I must say that the Plaintiffs here have never

21  addressed that question.  They've never challenged our

22  declaration by Anne Stevenson-Yang as to those foundational

23  elements of the privilege.  There have -- they have no record

24  here to overcome this assertion of privilege.  So you know,

25  they don't have a declaration.  They don't challenge any

1   statement made by Anne Stevenson-Yang.  There are no facts,

2   just generalized assertions of categories of need.

3           And those categories that they seek strangely enough

4   actually map in to the very definition of news, as the Second

5   Circuit has defined it when the Second Circuit has to read and

6   define 79H and what its subject matter is, and we'll get to

7   that as we hit the privilege.  Some of it's almost the same

8   kind of language as in Baker versus Goldman Sachs and in the

9   HBO case.  So again, it may seem to them troubling that they

10  can't get generalized requests, but that indeed is what the

11  privilege does.  It prevents access to documents of this kind

12  absent a showing of specific particularized and critical need,

13  and they've come forth with none of that.

14          THE COURT:  All right.  So -- thank you.  Let's go,

15  then, right to the specifics because I think on a motion to

16  compel, it's useful to see what's being asked for and what is -

17  - what has not been produced, all right?  So let's start with

18  the interrogatories because that may go a little faster.  Am I

19  understanding as you're seeking responses, Mr. Genender to

20  interrogatories 1, 2, 3, 5, and 6, correct?

21          MR. GENENDER:  Yes, Your Honor.  It -- my -- I'm

22  happy to go in that order.  It might facilitate things to go

23  through the document request because I think those will --

24          THE COURT:  Oh.

25          MR. GENENDER:  -- sweep up some of the

```
 1    interrogatories.  Some of the -- the --

 2              THE COURT:  All right.

 3              MR. GENENDER:  -- main issue on the interrogatories,

 4    Your Honor, is we have some answers where it's -- the primary

 5    people are this, or most of it is this, and we need a complete

 6    answer.  And in conference we were unable to get -- on either

 7    of the sets of discovery, a statement that they are or are not

 8    withholding information based on the reporter's privilege, and

 9    we don't have any kind of a Rule 26(b)(5) log or explanation

10    other than this affidavit, so it might make more sense to start

11    with the request for production.

12              And just to give the Court the lay of the land on

13    what has and hasn't been produced, before 10:00 on Friday, we

14    had received on these requests four documents, all public, none

15    of them internal.  At 10:00 on Friday last week, we got eight

16    more documents, one of them being the report at issue that's

17    the basis of the claim, the other seven being documents about a

18    pipeline that are all public.  We have no internal emails,

19    notes, drafts, checks, or records of financial contributions at

20    all.  So that's the lay of the land as far as what has and has

21    not been produced.  I think the Court mentioned that in the

22    introduction.

23              THE COURT:  Uh-huh.  All right.  So what you're

24    saying is even as of now, you've received only public

25    documents, not any of the private communications that you've --
```

```
 1          that are part of what you're seeking here.

 2                     MR. GENENDER:  That's exactly correct, Your Honor.

 3                     THE COURT:  All right.  Great.  So let's -- I'll --

 4                     MR. KORZENIK:  Your Honor, could I make one note.  I

 5          welcome Mr. Genender to the fray here, but I would point out

 6          that he was not a participant in any of the prior discovery

 7          events nor any of the meet and confers.

 8                     MR. GENENDER:  I was not.  Jordan Kazlow, who is

 9          sitting here in my office, was and informed me of those facts.

10                     THE COURT:  All right.  So let's move forward.  So

11          the -- I will take you up on your suggestion, Mr. Genender,

12          that we start with the document requests.  So the first

13          document request I think that is at issue is number 5, and this

14          is seeking documents that the Defendant possessed, reviewed,

15          read, or received in connection with the decision to focus on

16          NOVAGOLD, right?  And here, the response is that the primary

17          documents that influenced the decision are described in the

18          answer to interrogatory 1, and they will be produced, and then

19          it says, if there are other documents that are willfully

20          responsive they are subject to the reporter's privilege.

21                     So can you tell me, Mr. Korzenik, what happened with

22          yours here, and then what you're --

23                     MR. KORZENIK:  Well, there --

24                     THE COURT:  -- seeking to protect?

25                     MR. KORZENIK:  -- yeah.  Yes.  There are -- first of
```

1   all, the -- I think that the Plaintiff is actually seeking

2   documents that would indicate -- or communications that would

3   indicate that some third party gave us a tip or some third

4   party urged us to do this.  And if there were such things, we -

5   - we would assert privilege.  But I just want to say that in

6   order to remove that mystery that there's no such documents.

7        The decision was described fully in our answers to

8   the interrogatory.  It was a decision made initially by Anne

9   Stevenson-Yang, and she then communicated that internally and

10  discussed it with Tim Murray, who's the writer of the report

11  and an expert on and knowledgeable, has covered, has done on

12  other articles in the mining area, and so it was their

13  decision.  So there's -- I'm going to say so much as to

14  indicate that there's no third party here.  There's no mystery

15  here.  It's described fully in our answer to the interrogatory,

16  and that's it.

17        And to the extent that there are internal

18  communications about that choice -- there may or may not be,

19  but I don't believe so -- they would be exactly the kind of

20  thing that comes under the definition of news as Baker (ph.) --

21  as the Second Circuit defines -- reads it and how -- as the

22  Second Circuit reads 79H and the -- I think it's Section 8

23  definition of news.  And I'll later, when we get to other

24  points, read exactly what Baker says about that and what the

25  Second Circuit says about that.  In fact, it's exactly that

1    type of communications about matters of public concern that

2    come under the privilege.

3             THE COURT:  Uh-huh.  Okay.  So let me try to unpack

4    what you just described.  So in the response to interrogatory

5    1, there is a description of Ms. Stevenson-Yang and Mr.

6    Murray's discussion or their -- the things that led them to

7    believe that this article was appropriate and was the genesis

8    of this report.  And the -- so -- and you're saying that there

9    are some public documents here, and it says, "Defendant has no

10   objection to producing them."  And then it says in the response

11   here, "If there are other documents, they're subject to the

12   reporter's privilege", so I can understand why there's some

13   lack of clarity as to what exists and what doesn't exist and

14   what's being produced and what isn't.  So let's go back to my

15   initial inquiry, which is, did you produce documents in

16   response to this document request number 5, Mr. Korzenik?

17            MR. KORZENIK:  Yes.  And I --

18            THE COURT:  Okay.

19            MR. KORZENIK:  -- would -- I'd like to make one point

20   about that in terms of what we did.  The report is a typical

21   report by, you know, analysts of companies based on the

22   publicly available materials.  It's not a report that is based

23   on some insiders or other kinds of interviews.  It really is a

24   report that's based on a -- evaluating NOVAGOLD's 10-year-old

25   feasibility study that is the foundation of its offering.

1    NOVAGOLD doesn't have a mine yet.  It hasn't built a 300-mile

2    pipeline into Alaska.  It hasn't mined anything.  It just has a

3    feasibility study from 2011.

4           And we are -- and the -- it's -- it has applications

5    -- quite a few -- many applications that relate to running the

6    pipelines through Native American land, that relate to how they

7    handle arsenic and cyanide and other kinds of toxic materials

8    that they're going to store underground permanently once they

9    get this mine going, but they haven't started.  So it's --

10   their statement is just a forward-looking statement and they

11   say that in their own papers about what they're doing, and

12   we're writing a critique of that forward-looking statement

13   saying, we don't think it's realistic; we don't think they can

14   do it at the prices that they're hoping to do.  So our -- it's

15   a forward-looking statement about a forward-looking statement,

16   and it's pure opinion.

17          But the key thing is -- to this particular

18   interrogatory is that our report is based on publicly available

19   documents.  It's our opinion and our evaluation of those

20   publicly available documents.  Also looking at -- and we cite

21   them, and we quote them, other studies by governmental agencies

22   and other not-for-profits and so on.  If we cite it, we produce

23   it.  If we quote it, we produce it.  If we relied on it, we

24   produce it.

25          But it -- the work that we did here is a forward-

1    looking evaluation of a forward-looking plan that has not as

2    yet been implemented.  So it's all about the future, and it's

3    all about opinion.  So if we've relied on the document and we

4    cite to it, we certainly do present it and we have presented

5    them.  And we had some difficulty locating some of the -- one

6    of the delay in it, we had some definitely locating some of the

7    public documents that were -- that appeared to be no longer

8    available online.  But much of what we've done here is based on

9    -- is really relying on those public materials.  We produced

10   them.

11              THE COURT:  Uh-huh.  All right.  So Mr. Korzenik,

12   perhaps the problem is the way you have phrased the response

13   because you're using very hedging language and I heard Mr.

14   Genender raise issue as to that.  So for example, the response

15   that the primary documents that influence the decision are

16   described in the response to interrogatory 1, and it doesn't

17   say that they're the exclusive document.  And then it says,

18   "Defendant has no objection to producing them", and then you

19   don't state what, in fact, you are producing, all right?  And

20   then you say, "If there are other documents that are

21   responsive, those are protected by the reporter's privilege",

22   but we don't know which documents you're talking about because

23   you don't know if they exist or not.  If they don't exist --

24              MR. KORZENIK:  Right.

25              THE COURT:  -- then that's the end of the issue.  But

1    if you're saying you're not sure because you haven't really

2    done the search, then I don't know that any of us is in a

3    position to state, or for me, to decide, whether it should be

4    produced because I don't know what documents you're talking

5    about, so this part --

6             MR. KORZENIK:  I understand.

7             THE COURT:  -- of the problem here.  Okay.

8             MR. KORZENIK:  I understand your dilemma, so I want

9    to address this.  If we relied on, as primary source material,

10   those documents -- but for example, if Anne sent a note to Tim

11   about her opinion about something or her reaction to it, then

12   that would be something on which Tim relied and used when he

13   was writing.  But we say, and we say so strongly, that they

14   have no right to have access to that.

15            In other words, there are all kinds of things --

16   there are people who -- if we reached out to an expert, for

17   example, we had a one-hour expert that we called and we

18   disclosed that, you know.  You -- they have these expert

19   agencies that you can call up.  And we asked that expert to

20   opine on the feasibility study and that's a confidential expert

21   and that's a communication with that expert about the news and

22   it's privileged, and we do not intend to turn it over.

23            And I would say this, I would love to be able to use

24   the opinion of that expert to protect ourselves, but we made a

25   commitment to that expert to treat them confidentially, and

13

1   therefore, we must and will assert that privilege.  So that's

2   our dilemma.  In other words, I --

3             THE COURT:  All right.  Okay.  Could I --

4             MR. KORZENIK:  So -- but I --

5             THE COURT:  -- just interrupt you for --

6             MR. KORZENIK:  -- the dilemma is, if I disclose

7   things to you, those are things that are within the privilege.

8   And I understand the difficulty there, but that's --

9             THE COURT:  Yeah.  So we'll --

10            MR. KORZENIK:  -- what the privilege permits us to

11  do.

12            THE COURT:  Unfortunately, Mr. Korzenik, the Federal

13  Rules of Civil Procedure foresee this kind of dilemma and

14  provide an opportunity to -- or a way to deal with it.  So you

15  -- what you need to do is to answer the question, which you've

16  only phrased here conditionally, "If there are other

17  documents."

18            So what you need to do is to create a log that

19  describes the things you're talking about without breaking the

20  privilege.  So if you're saying that there are communications

21  between Ms. Stevenson-Yang and Mr. Murray and you can say those

22  we think are privileged under the reporter's privilege because,

23  you know, as you've argued, you're a news-gathering

24  organization so you're subject to the reporter's privilege.

25  These are communications between -- internally between

14

1    journalists or just a news-gathering process.  It's privileged,

2    okay.  Then you can describe that set of documents without

3    telling us what specifically is in it and then Mr. Genender can

4    make an argument as to why it's not covered and then I can make

5    a decision as to whether it is covered.

6              Then if you're saying you've consulted with an expert

7    again, don't just tell us who the expert is and don't tell us

8    what the contents were, but you can say we promised

9    confidentiality.  All right.  So then under 79H,

10   confidentiality, you've got the absolute privilege and that

11   would be how that piece is analyzed.  But at the moment,

12   there's nothing here that --

13             MR. KORZENIK:  Yeah.

14             THE COURT:  -- allows --

15             MR. KORZENIK:  I think we already have --

16             THE COURT:  -- me to look at it.

17             MR. KORZENIK:  We actually did -- yeah.  I think we

18   did do that already.  In other words --

19             THE COURT:  Where is it?

20             MR. KORZENIK:  -- I'm mindful of the rule.  Well, for

21   example --

22             THE COURT:  Where can I find it?

23             MR. KORZENIK:  -- in our -- in the interrogatories,

24   we actually describe, for example, that expert and what we --

25   and that we --

```
 1                THE COURT:  Okay.  But --

 2                MR. KORZENIK:  -- communicated with that expert.  And

 3    I don't --

 4                THE COURT:  Where's --

 5                MR. KORZENIK:  -- really want to say more about that

 6    expert than I did.  We have

 7                THE COURT:  Mr. Korzenik, I'm --

 8                MR. KORZENIK:  -- we obviously have --

 9                THE COURT:  Just -- Mr. Korzenik, let me just stop

10    you there --

11                MR. KORZENIK:  Sure.  Okay.

12                THE COURT:  -- because I'm trying to decide whether -

13    - how to rule on the motion to compel a response to document

14    request number 5, and your response to document request number

15    5 doesn't enable to say whether you have properly responded.

16    That -- that's  --

17                MR. KORZENIK:  All I can say is I --

18                THE COURT:  -- know -- I don't know what I'm supposed

19    to do with the action as given here because it's -- it strikes

20    me that it's not complete.  Now, if you've produced -- you've

21    more fully answered it elsewhere, I would like you to point me

22    to that because on the face of your response to document

23    request number 5, it is not a full response.

24                MR. KORZENIK:  I think that it is.  I will say this,

25    the only communications that could possibly relate to that
```

```
 1   decision to select NOVAGOLD as the subject of this report are
 2   communications between Anne and Tim.  There are -- we disclosed
 3   some -- one person who's confidential who we wanted to, we
 4   asked about, and we disclosed this about some comparable
 5   companies, but it was unhelpful and it didn't guide us.  There
 6   was some --
 7           THE COURT:  Okay.  Just point me, Mr. Korzenik, to
 8   your privilege log and that will help me decide what your --
 9           MR. KORZENIK:  No.  First of all, no.
10           THE COURT:  Okay.
11           MR. KORZENIK:  We will not do a log.  We will
12   identify because the log --
13           THE COURT:  Mr. --
14           MR. KORZENIK:  -- is attorney-client privilege.
15           THE COURT:  Mr. Korzenik.
16           MR. KORZENIK:  Yeah.
17           THE COURT:  Mr. Korzenik.
18           MR. KORZENIK:  Yes.
19           THE COURT:  You are required to produce under Rule
20   26, right?
21           MR. KORZENIK:  A description.
22           THE COURT:  Rule 5.  Yes, a description.  That's what
23   I'm talking about.
24           MR. KORZENIK:  And what I'm saying is that I believe
25   that we've done so if you want us to re --
```

```
 1                 THE COURT:  Then tell me where.  Tell me -- but tell
 2       me where it is.  That's all.
 3                 MR. KORZENIK:  In our response, in our response to --
 4                 THE COURT:  To?
 5                 MR. KORZENIK:  -- Request Number 5.
 6                 THE COURT:  All right.  I'm reading your response to
 7       Request Number 5, all right.  And it says --
 8                 MR. KORZENIK:  And then the related Interrogatory
 9       Number 1.
10                 THE COURT:  Okay.  Interrogatory Number 1 talks about
11       Ms. Stevenson-Yang's trip to Alaska and then her discussion
12       with Mr. Murray.  And there are four articles you talked about
13       here.  And he had -- there were some internal discussions.
14                 MR. KORZENIK:  Correct.
15                 THE COURT:  All right.
16                 MR. KORZENIK:  That's it.
17                 THE COURT:  So now, so did you -- did you because
18       document request number 5 is a request for documents.  Did you
19       produce those documents?  I know you've identified them, but
20       did you produce them?
21                 MR. KORZENIK:  I believe that we have.  That was our
22       intention to have done so, and I believe that we have.
23                 UNIDENTIFIED SPEAKER:  Judge, we have --
24                 MR. KORZENIK:  If we haven't, if we haven't, we would
25       produce them.
```

18

```
 1              THE COURT:  So, okay.  So have you -- so those were

 2    the documents that were produced, the public available

 3    documents that were produced on Friday; is that right?

 4              MR. KORZENIK:  Correct.

 5              THE COURT:  Okay.  So then --

 6              MR. KORZENIK:  And before then, before then, we were

 7    just completing --

 8              THE COURT:  All right.

 9              MR. KORZENIK:  We were doing what -- we were trying

10    to complete those.

11              THE COURT:  Great.  So then that takes care of the

12    first part of your response.  Now the second part of your

13    response says, if there are other documents that are arguably

14    responsive to this request, they are subject to the reporter's

15    privilege, all right.  And then I don't know, number one, if

16    there are other documents because you don't state yes or no,

17    and if they don't, then that's the end of the issue and we

18    don't have to talk about it anymore.  But if there are, then I

19    need to know what they are.  Again, don't tell the contents.

20    I'm not interested in the contents, but I need to have enough

21    of a description to understand whether they are subject to the

22    reporter's privilege because here I don't -- I don't know what

23    documents you're talking about.  I've read your responses to

24    the interrogatories, but I don't see references there to

25    documents.
```

1          MR. KORZENIK:  Uh-huh.  I would say, Your Honor, one

2    of the difficulties there is just the vagueness of their own

3    request, but no, I don't really think that there's anything

4    else here.

5          THE COURT:  Okay.  Then if your response --

6          MR. KORZENIK:  In other words, I don't -- in other

7    words, we made this early choice.  We made it on our own.  I

8    mean, I shouldn't even be disclosing this to anybody.  But we

9    made this choice.  It's an internal decision.  It's an internal

10   editorial deliberation.  It's an internal editorial process.

11   And you're asking me to sort of say what it gives --

12         THE COURT:  So, Ms. Korzenik --

13         MR. KORZENIK:  And I'm -- and I'm choking on that

14   because I don't feel --

15         THE COURT:  Okay.

16         MR. KORZENIK:  -- that that's really right.

17         THE COURT:  All right.  But --

18         MR. KORZENIK:  I'm trying to be as open and

19   forthcoming as I can --

20         THE COURT:  All right.

21         MR. KORZENIK:  -- without losing that privilege.

22         THE COURT:  Okay.  Let's --

23         UNIDENTIFIED SPEAKER:  Your Honor, Your Honor.

24         THE COURT:  Hold on.  Hold on.  Wait a sec.  Wait.

25   Hold on a second.

```
 1            UNIDENTIFIED SPEAKER:  Sure.
 2            THE COURT:  Mr. Korzenik, all argument is an
 3   opportunity for the parties to tell me their side of the case.
 4   It is not an opportunity to argue with the Court when I express
 5   a concern.  If you don't want to give me any information, I
 6   will make my ruling, and if the ruling is compelling you to
 7   respond or to produce a privilege log, then that's how it's
 8   going to be, all right.  So I'm just giving you the opportunity
 9   to tell me why or and how it is that this response is
10   responsive and complete and that's it.  We're going to move on,
11   okay?  So --
12            MR. KORZENIK:  But I view it as a complete
13   description -- it's a -- go ahead.
14            THE COURT:  Okay.  That's fine.
15            MR. GENENDER:  Thank you, Your Honor.
16            THE COURT:  I'm hearing -- I hear you.
17            MR. KORZENIK:  Terence --
18            THE COURT:  I hear you, so Mr. Genender.
19            MR. KORZENIK:  Terence has one comment on it since he
20   was closer to some of the production.
21            MR. KEEGAN:  I apologize, Your Honor, for trying to
22   break in.
23            THE COURT:  Well, people cannot be talking over each
24   other.  I don't know why you're talking over each other.  Who
25   is Terence?
```

```
1             MR. KORZENIK:  Terence is my --

2             MR. KEEGAN:  Terence Keegan, Your Honor.  And I

3  apologize.  I don't mean to interrupt anybody.

4             THE COURT:  All right.  Go ahead.

5             MR. KEEGAN:  But I did hear what Your Honor is saying

6  about a privilege log and I wanted to just address that

7  specifically.

8             THE COURT:  Mr. Keegan, what do you want to say?

9             MR. KEEGAN:  Just on the comment of a privilege log.

10 That is not something that specifically came up with any of our

11 meet and confers with opposing counsel, but be that as it may,

12 we're talking about it now and I understand that.  That the

13 concern here and the risk is that preparation of a privilege

14 log and production of a privilege log would violate the

15 reporter's privilege itself.  And that is a concern that's been

16 addressed in prior cases.  For example, the Cosby (ph.) case

17 that we cited in our brief.

18             I can point you to the judge's ruling on that,

19 finding that there was no waiver of the privilege by the movant

20 there failing to provide a privilege log.  And the judge in

21 that case said, I quote, I do not believe that the submission

22 of a privilege log would serve a useful purpose in the context

23 of this case where it is crystal clear that a party is seeking

24 in the production of materials that falls within this shield

25 law.  That is to say, unpublished materials collected by
```

1    professional journalists in the context of news gathering.

2              I'm happy to follow up with Your Honor and provide

3    you with that specific cite, but again, it's the case material

4    that we've provided in our brief already.

5              THE COURT:  All right.  So are you telling me that

6    the argument you're making is exempt from Federal Rule of Civil

7    Procedure 26(e)(5) that says that you must describe the nature

8    of the documents not produced and do so in a manner that

9    without reviewing the information itself privileged or

10   protected will enable other parties to assess the claim?

11             MR. KORZENIK:  No, no.  You're --

12             MR. KEEGAN:  That's it, Your Honor.  Without

13   revealing the nature of the material.  That's the dilemma that

14   we're facing.

15             THE COURT:  This is what I'm asking you to do.  This

16   is what I'm asking you to do.  This is what I've been asking

17   you to do for quite some time this morning.

18             MR. KEEGAN:  I -- I --

19             THE COURT:  And perhaps you don't like the use of the

20   word privilege log, but 26(b)(5) has been invoked and I'm just

21   asking you to tell me without reviewing the information itself,

22   enough information that will assess -- what will enable the

23   parties to assess the claim.  And I don't know, as I said

24   repeatedly, and I'm not really sure why you're not

25   understanding this.  When you say if there are other documents

23

```
 1    that are arguably responsive, they are subject to the
 2    privilege, I do not know what documents you're talking about.
 3                MR. KORZENIK:   Okay.  Your Honor --
 4                THE COURT:  And I wouldn't want the contents, but if
 5    you don't tell me -- so, number one, are there such documents?
 6    Let's start there.
 7                MR. KORZENIK:  Yes, there are communications between
 8    Anne and Tim regarding their choice.
 9                THE COURT:  Okay.  So and is that the only --
10                MR. KORZENIK:  Their selection.  And we think that --
11                THE COURT:  Is that the -- that's great, so thank you
12    for that.
13                MR. KORZENIK:  That's all that there could.
14                THE COURT:  Okay.
15                MR. KORZENIK:  That's all that there could be because
16    --
17                THE COURT:  If -- let me talk.
18                MR. KORZENIK:  Here's one other thing, Your Honor.
19                THE COURT:  No, please don't interrupt.
20                MR. KORZENIK:  This is real --
21                THE COURT:  Don't interrupt.  Let me try to
22    understand.  Number one, you have said one category of
23    documents are the communications between Ms. Stevenson-Yang and
24    Mr. Murray.  Are there other categories?
25                MR. KORZENIK:  I don't think there could be and but -
```

```
 1    -
 2              THE COURT:  Okay.  That's fine.  So it's --
 3              MR. KORZENIK:  And the way that I know that is by
 4    reading their --
 5              THE COURT:  Can I just -- can I just stop you there
 6    because I'm just trying to get my arms around.  I don't need to
 7    know the reasons why they exist or don't exist.  I just want to
 8    know if they exist or not, all right.  This is why it's very
 9    difficult for me to make a decision on this case because I'm
10    not getting the information in a clear way that helps me
11    understand what we're talking about.  So if the only category
12    of documents that might fall, might possible, and in the -- if
13    there are other documents that are arguably responsive
14    category, the only documents that you've identified are
15    communications between Ms. Yang and Mr. Murray and no other,
16    then that's great.  Then that's all we're going to talk about,
17    so I just want to be clear.
18              MR. KORZENIK:  That I'm --
19              THE COURT:  Is that it?  Are there more?
20              MR. KORZENIK:  There are.  I want to read their
21    demand, their request, number 5, and I want to show how it
22    falls directly within the category of privileged material by
23    its own terms.  All documents that you've possessed, reviewed,
24    read, or received in connection with your decision to focus on
25    NOVAGOLD as the subject of the report or that influenced such
```

1    decision.  Now that is, just by its own terms, a request for

2    internal editorial process and the exercise of editorial

3    judgment.  I should not have to describe anything further than

4    to read that provision in order to know that it seems

5    privileged information.

6            And the other thing that's rather crucial here is

7    what the Second Circuit followed in the HBO case that basically

8    says that the burden's not on us to show that something is --

9    that it's news.  And the burden's on them to show, to make a

10   clear and specific showing so that the Second Circuit said,

11   since the Respondent does not know what is actually contained

12   in the outtakes, she cannot factually assert that the footage

13   is highly material to her defense.  And that kind of statement

14   by the Second Circuit when it applies 79(h), it is the key

15   language that described the burden that this Plaintiff has

16   never, ever attempted to meet.

17           But if their demand -- and this is my closing point.

18   If their demand seeks privileged information, if it seeks news

19   as it's defined by 79(h) and by the Second Circuit, then

20   there's nothing further that need be disclosed or logged or

21   described.  They described it themselves as being news.

22           MR. GENENDER:  Judge, if I could be heard.  It's

23   David Genender for the Plaintiff.

24           THE COURT:  Yes, Mr. Genender.

25           MR. GENENDER:  Thank you, Judge.  They've already

1    identified non-privileged material responsive to this.  The

2    burden of establishing an exemption from discovery falls on the

3    party responding.  The language which I heard Mr. Korzenik read

4    doesn't trump Rule 26(b)(5).  And this is this frustration we

5    had.  And Mr. Korzenik's right.  I was not on those prior

6    calls, but Ms. Kazlow is and she assures me and Jordan can

7    speak to, that the issue of a privilege log came up repeatedly.

8    And we heard the same argument that we heard today, which is we

9    can't do a privilege log because that would violate the

10   reporter's privilege.  It's like saying a privilege log would

11   violate the attorney-client privilege, but we know that's not

12   true.  Those get produced all the time.

13            And that is the frustration we had.  And we thought

14   coming into this the answer was there are no documents.  And I

15   thought at the beginning, Mr. Korzenik said that, there may or

16   may not be.  Now we find out there are documents eight months

17   after the fact.  There is not a single reference in the

18   declaration of Ms. Yang to support the privilege.  And I fear

19   what's going to happen is we're going to get a privilege log

20   and we're going to end up back in front of the Court.  And that

21   may be necessary.  I understand the dynamics of it.  But it's a

22   little frustrating that they've had eight months to do what

23   Rule 26 requires them to do.  And we have advised them of it

24   and they just refuse to.  And we're here taking the Court's

25   time.  We've used -- I don't know if it's a third or a sixth of

```
 1    the time that we have allocated on one request.
 2              MR. KORZENIK:  I would say that what you've just
 3    described it utterly untrue.  And it also ignores the fact that
 4    your requests have, virtually every single one of them, sought
 5    internal news material, communications about matters of public
 6    concern that the reporters are covering.  Every request does
 7    that.  They track the definition of news peculiarly.  And so
 8    what am I supposed to do?  A lot for a request that asks for
 9    news?  Am I supposed to do a log for a request that asks for my
10    internal communications about the choice?  Those are
11    privileged.  I don't need to do a log for that.  Your request
12    impunes itself.  Your request insists of disclosure of what the
13    privilege itself defines as news.
14              THE COURT:  So what I'm hearing you say, Mr.
15    Korzenik, is that in response to this document request, the
16    only -- other than the private -- the publicly available
17    documents that you have produced, the other documents are
18    internal documents which are subject of privilege; is that
19    right?
20              MR. KORZENIK:  That's correct.
21              THE COURT:  Okay.  Then that's all you needed to say.
22              All right.  Let's move on then.  So if we go to
23    document request number 6, this looks very similar.  No, this
24    is between -- sorry.  This is communications between the
25    Plaintiffs and the Defendants.  And it -- the response is that
```

```
 1   there was an inquiry to the Plaintiff by the Defendant from Mr.
 2   Murray and then there was a telephone conference and a
 3   subsequent email.  The email will be produced.
 4           UNIDENTIFIED SPEAKER:  Yeah, we're fine with that and
 5   we've produced that --
 6           THE COURT:  Okay.
 7           UNIDENTIFIED SPEAKER:  -- whatever we have.
 8           THE COURT:  And then because there were no in-person
 9   meetings and there may have been investor relation calls that J
10   Cap called into, so.
11           UNIDENTIFIED SPEAKER:  Correct.  We don't have --
12           THE COURT:  All right.  So how is this positioned,
13   Mr. Genender?
14           MR. GENENDER:  Your Honor, two things.  One, they
15   haven't produced the email, but we're not really fussing about
16   that.  The internal communications about discussions with Mr. -
17   - between NOVAGOLD and Tim Murray.  A document such as Tim
18   Murray told us the facts.  We're going to ignore them and write
19   a story because we're getting paid to and our sponsor will make
20   money off of it is highly critical to the malice element.  And
21   we don't know whether that document exists or not because they
22   haven't provided any description.  It just says any --
23           THE COURT:  What document?
24           MR. GENENDER:  I'm sorry.
25           THE COURT:  Which document?
```

```
 1              MR. GENENDER:  Document request number 6, Your Honor,
 2    in the second --
 3              THE COURT:  Oh, no, no.  Which?  You said you don't
 4    know which -- if any document exists.  I meant what you --
 5    which document you're referring to.
 6              MR. GENENDER:  I'm sorry.  If there was a document,
 7    an internal document --
 8              THE COURT:  Where?
 9              MR. GENENDER:  -- where they said --
10              THE COURT:  Where did they say that?
11              MR. GENENDER:  Yeah, where they said that.  I don't
12    know if it exists or not.  All they're saying is there are
13    other materials.  I don't know what they are.  I don't know who
14    they're between.  I don't know what the subject matter is.  I
15    have no way of assessing whether or not --
16              THE COURT:  Okay.  Mr. Genender, I'm puzzled by your
17    -- what you're saying because this response seems to be
18    responding.
19              MR. GENENDER:  I'm sorry.  The third sentence of the
20    response says any other materials relating to it are protected
21    from disclosure by the reporter's privilege.  I don't know if
22    there are any other materials and I don't know what they are.
23    That's our concern here.
24              THE COURT:  Relating to the email?
25              MR. GENENDER:  Yes.
```

1          THE COURT:  Okay.  And so what I'm hearing and is

2     that Mr. Korzenik is saying that those other "other materials"

3     are internal documents that are discussions among the people at

4     J Cap.

5          UNIDENTIFIED SPEAKER:  Right.

6          THE COURT:  Rather than the communications between J

7     Cap and NOVAGOLD.

8          UNIDENTIFIED SPEAKER:  Correct.

9          THE COURT:  Okay.  That was --

10         UNIDENTIFIED SPEAKER:  Yes, Your Honor.  Those would

11    be responsive to the requests.

12         THE COURT:  Okay.  Yeah.  But they are -- exactly.

13    They're saying that that might be responsive to the request,

14    but they're asserting the report is privilege --

15         MR. GENENDER:  Yes, and I don't --

16         THE COURT:  -- and internal communication.

17         MR. GENENDER:  And I don't have any way to test that.

18    I have no information about it.  If, for example, there was a

19    communication that said, we got information.  We're going to

20    ignore it and run a hit piece and do a short and distort, that

21    could exist and they could be asserting the reporter's

22    privilege over it.  I have no way to assess it.

23         THE COURT:  Right.  Okay.

24         MR. KORZENIK:  It doesn't.

25         THE COURT:  Well, let's put a pin in that.

1          MR. KORZENIK:  Just so that you're not -- yeah, you

2     don't get it.

3          THE COURT:  Yeah.  Let's put a pin in that and come

4     back to it when we talk about the reporter's privilege at

5     large.

6          MR. GENENDER:  Okay.

7          THE COURT:  But at least I can identify here that if

8     the documents being over which the privilege is being asserted

9     are internal communications, right?  And so as far as the

10    subject of the request, which is documents reflecting the

11    communications between Plaintiff and Defendant, the scope of

12    those documents has been, I think, adequately explained.  All

13    right.

14         So let's move on to 7, which is about communications

15    between the Defendant a third party, right.  So it's a little

16    bit unclear, but now that we've had some discussion, let me try

17    to read between the lines.  Are you asserting that, Mr.

18    Korzenik, some of these are subject to the absolute privilege

19    because they're confidential sources?

20         MR. KORZENIK:  Yes, absolutely.

21         THE COURT:  Okay.  And are there non-confidential

22    sources?

23         MR. KORZENIK:  I don't think so.  I think they're

24    just internal.

25         THE COURT:  Okay.  So they're either internal or

1    confidential.

2             MR. KORZENIK:  Right.

3             THE COURT:  And --

4             MR. GENENDER:  And, Judge, just so that --

5             THE COURT:  -- does everybody agree?

6             MR. GENENDER:  Judge, I don't know if that's right or

7    not.  When I look at the declaration from Ms. Stevenson-Yang,

8    pages -- page 6 under paragraph 17, C and D, they talked about

9    these communications and plainly says some of the materials

10   that J Cap has regarding NOVAGOLD are communications with

11   persons to whom J Cap has promised anonymity and

12   confidentiality.  It presupposes there are some that are not.

13   And so I'm a little -- and I have no way of knowing looking at

14   the response to request number 7 what is what.  And that's my

15   concern there.  And it's the same with the internal documents,

16   which is paragraph D on page 6 with Ms. Stevenson-Yang's

17   declaration.  She says some of the materials constitute

18   unpublished news, but there's no specification of what and

19   what's being withheld for us to assess it.  That's our concern

20   there.

21            THE COURT:  All right.  So let me -- I'm just pulling

22   up that declaration.  Which paragraph are you talking about?

23            MR. GENENDER:  I'm sorry, Judge.  It's document 61,

24   ECF61 at page 6 of 10.

25            THE COURT:  Yeah.  And I see subsection C and

1    subsection D.  Which one are you talking about?

2            MR. GENENDER:  I was talking about subsection C with

3    respect to third-party communications.  Some of the materials

4    that J Cap has regarding NOVAGOLD are communications with

5    persons who J Cap has promised anonymity and confidentiality.

6    And the analog on D, some of the materials, which presumably

7    are the internal materials that he's referring to, are

8    confidential.  And we just have no way of telling what the non-

9    confidential is and what the confidential is.  This declaration

10   suggests there is material that is not subject to the absolute

11   privilege.  We just have no way of assessing it.

12           THE COURT:  Uh-huh.  So the use of the word some is

13   causing some issue.

14           MR. KORZENIK:  I believe that those are either

15   internal or they're confidential third-parties.  You've got to

16   realize that this report is a report that is our own opinions

17   about it.  It's based on an evaluation of their feasibility

18   study and other government reports and filings that relate to

19   it, so it's not as if it's sort of an undercover or

20   investigated thing.  We listened to calls.  We did try to reach

21   out to NOVAGOLD.  I just -- I think that when it comes to this,

22   they're either internal discussions or they are discussions

23   with confidential sources or commenters, and that's it.

24

25           ///

1

2

3              I think that when it comes to this, they're either

4      internal discussions or they are discussions with confidential

       sources or commenters, and that's it.
5
               MR. GENENDER:  Judge, if  --
6
               THE COURT:  All right.  --
7
               MR. KORZENIK:  And by the way, if we did speak to
8
       somebody else, you're still not entitled to it.  In other
9
       words, you need to have  -- you can't just break it by saying
10
       that you need some more.  If anything that's going on here, we
11
       don't have  -- I mean, I don't think I need to say this, but I
12
        -- we don't have any sort of undercover insider sources.
13
               THE COURT:  Well, so  --
14
               MR. GENENDER:  Judge, if it's okay, I'm going to  --
15
               THE COURT:   -- right.  Let me just ask Mr. Korzenik.
16
               So in Ms. Stevenson-Yang's declaration when she says
17
       some of the materials that J. Cap has regarding NOVAGOLD in the
18
       report are communications with persons with whom J. Cap. has
19
       promised anonymity and confidentiality.
20
               On its face, doesn't seem to say that there are also
21
       communications with people for whom there has been  -- there
22
       has not been confidentiality promised, right?
23
               MR. KORZENIK:  Yeah.
24
               THE COURT:  Again, I'm just trying to get my arms
25

```
 1   around what's excluded because when you use a word like "some",
 2   then  --
 3            MR. KORZENIK:  No.  I understand.
 4            THE COURT:  -- what's the rest of it?  So is the
 5   rest of it  --
 6            MR. KORZENIK:  I understand.
 7            THE COURT:  -- communications with people who have
 8   not been promised confidentiality, or is it that the rest of it
 9   is materials that are just internal and have nothing to do with
10   outside sources?
11            MR. KORZENIK:  I think that the answer is that it's
12   either internal or it's confidential.  We don't really  --
13            THE COURT:  Okay.
14            MR. KORZENIK:  -- have a lot of sources, but you
15   know, the real  -- you know, Plaintiffs in these cases are  --
16   always are  -- want a (indiscernible) test and find out what
17   the content is in order to determine if they need it or not.
18            And what I think David is doing here is really
19   seeking to kind of sift through our files to see if there might
20   be a statement as, oh, we're going to do a hit piece and really
21   blow these people apart, and we don't think any of this is true
22   but we're just going to hit them.
23            You know, I mean, this is fantasy, and they say they
24   already have, you know, some kind of  -- that they have enough
25   to plead it.  I don't think so.  But you don't get  -- if I'm
```

1    not required to show  -- to say what the content of that

2    communication is, if I'm  -- if we did speak to some third

3    party, and by the way we disclosed everybody who was in the

4    interrogatories.  We disclosed everyone who was involved in

5    writing the report.  If there's some third party  --

6                THE COURT:  All right.  So  --

7                MR. KORZENIK:  -- I don't know who it is right now,

8    but  --

9                THE COURT:  Okay.

10               MR. KORZENIK:  -- and I could look again, but I

11   think it's a waste of time.

12               THE COURT:  All right.  So let's do it this way.  Do

13   you see, Mr. Korzenik, why some of the language being used is

14   causing a lack of clarity?

15               MR. KORZENIK:  Yes.  But I think that it's  --

16               THE COURT:  Okay.  And some of  --

17               MR. KORZENIK:  -- but it's not  -- it's lack of

18   clarity.  I mean, here's the dilemma.  Well, am I  --

19               THE COURT:  But here  --

20               MR. KORZENIK:  -- supposed to  -- yeah.  In other

21   words  --

22               THE COURT:  No.  So this is what I'm trying to do,

23   Mr. Korzenik.  I'm trying to help out here.  I'm not the enemy.

24   All right?

25               MR. KORZENIK:  I don't think  --

```
 1                 THE COURT:  So what I  --

 2                 MR. KORZENIK:   -- I don't think so.

 3                 THE COURT:  Well, you're pushing back as if I'm

 4     trying to hinder, okay?  And I'm not.  So  --

 5                 MR. KORZENIK:  All right.

 6                 THE COURT:   -- I'm trying to figure out a way that

 7     you can protect your privilege in the course of our discussing

 8     it and yet get enough information so that everybody knows what

 9     exists and what doesn't exist.

10                 I find a very common problem in these discovery

11     issues is that it's not even clear whether something exists.

12     And if it doesn't exist, we don't have to spend so much time

13     talking about it.  But if it  --

14                 MR. KORZENIK:  Right.

15                 THE COURT:   -- exists, getting enough information to

16     know what we're talking about enables us to talk about it.  So

17     I think you've now sufficiently clarified what was meant by the

18     word "some" in the declaration by Ms. Stevenson-Yang, and so if

19     you're telling the Court that there are either confidential

20     sources, right, or internal discussions, and those are covered

21     by the  -- you're asserting the privilege, that's fine.

22                 The question here was whether there were

23     nonconfidential sources that we need to think about.  But

24     you're saying that it isn't about nonconfidential sources.

25     It's about internal discussions.  Is that right?
```

```
 1              MR. KORZENIK:  I'll look at it again.  I don't  --

 2              THE COURT:  Okay.

 3              MR. KORZENIK:  -- can't imagine that there were.

 4    There could have been idle  --

 5              THE COURT:  Okay.

 6              MR. KORZENIK:  -- conversation, we're looking at

 7    these guys, you know, what do you know about them?  I don't

 8    know anything about them.  You know  --

 9              THE COURT:  And here's it's about  --

10              MR. KORZENIK:  -- I don't know  --

11              THE COURT:  -- documents, so if you don't have

12    documents, you don't have to reconstruct that.  It's about

13    documents.  All right?  But this is part of the  -- their  --

14    the language is being used in a way that is causing people to

15    think that there are gaps and my goal  --

16              MR. KORZENIK:  Right.

17              THE COURT:  -- today  --

18              MR. KORZENIK:  I agree.

19              THE COURT:  -- is to try to fill in those gaps.

20    Okay?

21              MR. KORZENIK:  Right.  I appreciate that.  And I

22    would just ask Your Honor to be mindful of the fact that some

23    of those gaps are their problems, not mine.  In other words  --

24              THE COURT:  Well, but  --

25              MR. KORZENIK:  -- it's just news  --
```

1          THE COURT:   -- it may be their problem in terms of

2    their burden but it is everybody's problem if we don't

3    understand what we're talking about.

4          MR. KORZENIK:  Correct.

5          THE COURT:  But this is all I'm trying to do is to

6    identify the gaps because language is not always precise, and

7    then to see where we go from there.

8          MR. GENENDER:  Judge, maybe  --

9          THE COURT:  Let's move on to  --

10         MR. GENENDER:  Judge, just let me make one comment on

11   that.  It's David Genender for the Plaintiff.

12         There's been a couple references to an expert service

13   and I presume a hired expert.  That is an individual who if

14   they had promised confidentiality they could have put in their

15   declaration that specific reference or evidence of that.  They

16   haven't done it.  I don't know that when you go hire an expert

17   consultant through a service there's an expectation of

18   confidentiality and they certainly haven't proved it here.

19         When Mr. Korzenik was talking about producing all the

20   things that were quoted in the material, he left out the fact

21   that there's this unquoted, or unidentified source that they

22   quote.  And there's nothing in the record so far that I've seen

23   that indicates that specific person who, by the way, they are

24   reserving the right to designate and disclose as an expert,

25   presumably after the close of discovery that supports hiding

1    his identity now.

2              And I don't know whether the right thing for the

3    Court to do is force them to do that or overrule the objection

4    but they plainly could have said there was an expert; he's an

5    engineer; he demanded confidentiality before he'd speak to us,

6    and that was part of our agreement with him.  The record's bare

7    on that.  And  --

8              THE COURT:  Well, but --

9              MR. KORZENIK:  No.  That's not  -- it's there.

10             THE COURT:  Mr. Genender.

11             MR. KORZENIK:  It's in the  --

12             THE COURT:  Hold on.

13             MR. KORZENIK:  Yes.

14             THE COURT:  Please don't interrupt.

15             I think there was, in the interrogatory number 4,

16   which was not being  -- was not part of the motion to compel,

17   reference made to the expert.

18             MR. GENENDER:  There was.  There was.

19             THE COURT:  So all right.  So you're not seeking to

20   compel on this interrogatory.  Why are we talking about it?

21             MR. GENENDER:  Well, if the document  -- I thought he

22   just said there are documents that they relied on that might

23   have come from this expert.

24             MR. KORZENIK:  No.  There aren't.  No.  No.

25             THE COURT:  Okay.  So then that's it.

```
 1            Let's move on.  So request number 8 talks about a
 2   document about research.  And then it says here, "documents
 3   responsive to the request", you're looking for all
 4   communications with the anonymous industry professional.  And
 5   then the response is "the request for unpublished material is
 6   overbroad" and then that "these documents are covered by the
 7   privilege".
 8            Okay.  And then it says here about the one-hour
 9   telephone call with an expert on the pipeline, expert materials
10   don't need to be produced as part of the fact.
11            MR. KORZENIK:  Yeah.  I mean, Your Honor, I'll just
12   address that.  We would love to use the expert in our support
13   but we have an understanding with him and have said that in a
14   number of places that  -- or her, that this is confidential,
15   and we have found that it would be great if that person would
16   be willing to step forward.  We would love it.  We'll beg them
17   to do it.  But if they want to stay confidential, then we can't
18   do anything about that.  And that's what we're going to honor,
19   that obligation.
20            THE COURT:  Okay.  All right.  Great.
21            MR. GENENDER:  And Judge, just on that point, again,
22   maybe I missed it.  I don't see anywhere in interrogatory
23   response number 4 or in request number 8 where they identify or
24   state that there's a confidentiality agreement with the expert.
25   And if there is, that's great.  I just think they ought to log
```

1   it and say it, that there was a mutual understanding of

2   confidentiality.  I think that's what the law requires.

3          And if they'd told us that's what it was and there's

4   nothing else, we could have moved on, but we just don't have

5   that eight months after  --

6          THE COURT:  Okay.

7          MR. GENENDER:  -- the requests are out.

8          THE COURT:  Well, we're moving on now.  So let's go

9   on to document request number 11.  Actually, for 11, 12, and

10  13, the response was very clearly none, right?

11         So document request number 11 says there are no

12  documents.

13         And then request number 12, it says that there is

14  none or  -- and also you know, slightly hedging but not

15  presently aware, but that's the standard anyway of being able

16  to say none, with an update if you become aware of any

17  documents.  And then also, very unequivocally, J. Cap has no

18  trades in NOVAGOLD or any comparable mining company.

19         And the same thing for document request number 13, J.

20  Cap owned no NOVAGOLD securities and no brokerage accounts that

21  held NOVAGOLD securities.

22         So what more is there to compel there?

23         MR. GENENDER:  Well, if that was the answer and they

24  hadn't continued to assert their reporter's privilege  -- for

25  example, number 13, in all events they object to the request on

 1   the grounds set forth in 1, 3, 4, 5, 7, and 9; 7, Your Honor,

 2   is the reporter's privilege.  I think the objections ought to

 3   be withdrawn and if they learn of something down the road that

 4   is responsive, that's subject to a privilege, they can amend

 5   their answer.

 6          That's all we've been trying to do is confirm there

 7   are no responsive documents that are hiding behind  --

 8          THE COURT:  It says that.  It says that.  So I think

 9   we need to move on from that.

10          All right.  So then let's look at document request

11   number 14, anybody who paid any money or considerations.  So I

12   see here that the response is  -- that all of this is just a

13    -- you're asserting the reporter's privilege, Mr. Korzenik.

14   Was there a yes or a no, nobody paid money for this, or you're

15   just saying whether anybody did or not is covered by the

16   privilege?

17          MR. KORZENIK:  Well, this is where, you know, they

18   don't know what they're looking for or asking for.  If the

19   person is a type of subscriber or a recipient who paid for it,

20   we've given our public distribution channels so they know what

21   those are.  So we're not going to turn over subscribers or

22   recipients.  That's confidential and it wasn't in the first

23   round of production, in any event.

24          If they're some kind of sponsor or paid for the

25   report in some way, that's not  -- that's confidential and that

1    has nothing to do with this request.  But if they are  -- one

2    thing that is key here is they keep submitting to Your Honor,

3    and now their third letter, that they're looking to add

4    additional parties who they might be able to name.

5              And what they're really doing there is seeking pre-

6    action disclosure.  And when you want to do that to find

7    somebody who is a funder in the sense of being a liable

8    publisher, then you're speaking of someone who's an anonymous

9    speaker.

10             Because people who pay money to publish something, if

11   that's what they're looking for, are anonymous speakers.  And

12   when you do that then you have to follow what the law requires

13   to unmask such a funder or contributor or publisher, if that's

14   what they think this person is.

15             And you have to follow the Seeking Alpha cases that

16   we defended, and all successfully.  You have to follow

17   Watchtower, the Supreme Court case on  -- that recognizes

18   anonymous speech.  So if a person  -- and I don't like the

19   case, but Citizens United says that people who provide monetary

20   support to a publication is speech, and if it's anonymous,

21   they're entitled to be anonymous.

22             So if that's what they're looking for and they're

23   looking to name another party, which is what they probably are

24   trying to do, then you've got to answer that  -- you've got to

25   jump that hurdle, and they haven't.

```
1              In other words, we've put it in our notice of motion.
2    We put it in our memo of law.  We cited all those cases,
3    Nanoviricides versus Seeking Alpha.  New York follows it,
4    California, Connecticut  -- everyone follows this.  They don't
5    address it.  They don't provide a declaration that supports
6    their assertion here.  They don't even address our legal
7    argument.  They don't touch it.  There's no record that would
8    permit them to get that kind of discovery.
9              So to the extent that anyone is communicating with us
10   about the report and the article, confidential.  To the extent
11   that anyone, quote, funded it and doesn't want to be disclosed,
12   they're anonymous speakers.  We've made that clear that if
13   that's what they think is going on here and that there's
14   liability, then jump the Nanoviricides, Watchtower hurdle.
15             But they don't bother.  And what do you need to do to
16   jump that hurdle?  You have to show that you have a cause of
17   action against that third party that is likely to be successful
18   on the merits.  Did they even identify what their cause of
19   action is against that third party?  Nowhere.  Did they say it
20   in their complaint?  Nowhere.  Did they say it in  -- did they
21   even name a third party or a John Doe?  Nowhere.
22             So it doesn't appear in their complaint.  It doesn't
23   appear in their response papers.  They don't address our cases
24   at all.  I think that's over.
25             MR. GENENDER:  Judge, if I could be heard?
```

```
 1                THE COURT:  Yes, please.

 2                MR. GENENDER:  So I think what we're seeing here

 3   clearly is there's not a reporter's privilege being asserted

 4   here.  Mr. Korzenik is making a lot of suppositions about what

 5   NOVAGOLD is going to do and what they're not going to do.

 6                The reality is that this interrogatory, people who

 7   fund the report, is directly relevant to whether or not they

 8   actually are able to claim the reporter's privilege.  This is

 9   pay to play.  This is the Berlinger case, which is a federal

10   case, but also the Murray (ph) case, which is a New York State

11   case that says if don't have as  -- the amount of editorial

12   independence you have, which is affected by people who are

13   paying you to do something, goes to the degree and whether the

14   reporter's privilege even applies.

15                In addition to that, with respect to the claims in

16   this case against this Defendant, this document request is

17   directly relevant to actual malice.  Were they so swayed by the

18   prospect of somebody funding them, giving them money to do this

19   piece, someone who might be out there preparing to short sell

20   the stock, that they were reckless and disregarded the truth

21   with respect to NOVAGOLD?

22                So the supposition about, well, they're going to try

23   to sue them is nice and all, but there's nothing in the record

24   to suggest that.  What's in the record is that documents about

25   who funded and whether there's editorial independence is
```

1    relevant.  And the reporter's privilege  -- I didn't even hear

2    him argue with, but it plainly doesn't apply to this.

3             And there's a confidentiality order in place, a

4    protective order in place.  So if they want to designate as

5    confidential, do so.  And there's been no showing by them that

6    the funders wanted to remain anonymous although if they were

7    short sellers who were part of the scheme that we have alleged,

8    maybe they did, but I don't see it here.  This one is the one

9    that they ought to produce and they should have produced months

10   ago.

11            THE COURT:  All right.  So let's move on.

12            MR. KORZENIK:  The one thing that is  --

13            THE COURT:  What did you want to say, Mr. Korzenik?

14            MR. KORZENIK:  No.  Just that there's a procedure for

15   obtaining that kind of thing and they never addressed it.

16            THE COURT:  Yeah.  All right.

17            So let's move on to the last point, which is number

18   15, and that is the request for editorial process.  So if the

19   reporter's privilege  -- if in fact the Defendant is covered by

20   the reporter's privilege, then this would be covered, right,

21   because of editorial process?

22            Mr. Genender?

23            MR. GENENDER:  Well, this is not necessarily the

24   process.  So for example, the case that J. Cap cites from the

25   Second Circuit, I think it's the Geoffrey (ph), talks about the

1    procedures.  This is talking about the actual substance that

2    will go into the suggested edited revisions of this piece,

3    which goes directly to their knowledge.

4           As we've cited from  -- I think it's the Athatron

5    (ph) case, which is a U.S. Constitutional case, but the logic

6    applies, that knowledge is relevant, especially when you've

7    alleged malice like we have.

8           So I do see their attempt to broaden the language of

9    that case to include this but that case itself was really more

10   talking about, you know, who were the people that did the

11   interviews?  What are the processes and procedures?  We want

12   the substance here.  And as I believe Mr. Korzenik  -- or

13   rather, shouldn't address him personally, as J. Cap pointed out

14   in their brief, you don't expand these protections because you

15   want to have there be a search for truth.

16          So if there are revisions and emails, we need to

17   change this because it's not going to have enough of an effect

18   on the stock price or we really need to focus him on this

19   because our funder wants us to really do  -- again, Your Honor,

20   I'm making all this up.  But these are all relevant types of

21   documents that are highly relevant to the claims that are made

22   in this case, and there's no other way to get them.

23          THE COURT:  Okay.

24          MR. KORZENIK:  May I address that?

25          THE COURT:  All right.  So  --

1           MR. KORZENIK:  Address speculation.  You're telling

2   us  --

3           THE COURT:  All right.

4           MR. KORZENIK:   -- that you're making this up and

5   it's speculation.  And it is  -- this request maps exactly into

6   Baker's Second Circuit description of news.  It is evidence

7   that relates to the ability, efficiency, and diligence of the

8   reportorial personnel, their news-gathering methods generally

9   as applied in preparing the article, the witness' personal

10  knowledge and assessment of these matters.

11          So that goes to draft, as in HBO, outtakes,

12  everything.  Those are  -- your request maps right into the

13  definition of what is protected by 79H.

14          MR. GENENDER:  And Judge, let me just  --

15          THE COURT:  All right.  So let's  -- I  --

16          MR. GENENDER:   -- we disagree.

17          THE COURT:  I hear loud and clear that you disagree.

18  Okay.  So let's do this.  Now that we've gone through all the

19  document requests, let me try to make this discussion a little

20  more focused.

21          So my reading of the case law is that the Defendant

22  here qualifies as news, right?  So just because it's a business

23  report and there's a subscription doesn't make it not news.

24  And even if there are other nefarious purposes, as Plaintiff is

25  alleging, it again doesn't make it not news because it is a

1    communication regarding events of public concern or interest

2    affecting the public.

3

4         ///

5         THE COURT:  Right?  Because it is a communication

6    regarding events of public concern or interest affecting the

7    public.  And I think there's been some cases that I've found

8    where subscription services are found to qualify.  So in light

9    of that, the privilege applies and we need to look at the

10   privilege itself.  So we'll look at the Section 79-h.  Clearly

11   if it's confidential that there's an absolute privilege.  To

12   the extent that they were confidential first as identified any

13   communications there would be covered.

14        The question then becomes when it's not covered by

15   confidentiality and there's not an absolute privilege, then

16   there has to be a clear and specific showing by the asserting

17   party, so in this case, by the Plaintiff of the three parts,

18   right?  Highly material and relevant, critical or necessary,

19   and then not obtainable from alternative sources.

20        The most I have seen so far is an argument that the

21   information is germane.  And so I'm not sure what you mean by

22   germane, but that is not the same as material and relevant or

23   critical and necessary.

24        And then there are also pieces of what are being

25   asked for, which I think we've been able to clarify to the

1    extent that things don't exist, and if there are other things

2    that do exist, what the category is of things there.  So for

3    example, I've heard Mr. Korzenik talk about internal

4    communications and asserting the privilege, the reporter's

5    privilege over those.  And then the same thing with the

6    editorial content and process.

7           So I think the parties should take a look again at

8    what you're asserting here in light of my finding here that the

9    Defendant qualifies for the reporter's privilege and then to

10   make your showing, Mr. Genender, of what specifically you're

11   looking for and why you need it.  Right?

12          There's some requests that are very broad.  So for

13   example -- let me see if I can find one -- where the request is

14   for parties that the Defendant may have given information to.

15   And I am not entirely clear what the relevance is of that.  And

16   then I don't know whether the privilege would apply to that.

17   It's just not clear because the requests are broad and I don't

18   know that you've really looked very carefully to focus on the

19   things you need.

20          And then once you've focused on what you need to make

21   those showing about -- it's not just material and relevant.

22   It's highly material and relevant.  And it's not just would be

23   helpful.  It is critical or necessary.  Necessary, right, or

24   critical, which is close to necessary.  And then the third

25   part, it's not alternative but it's an additional part.  All

1    three of these must be met.  Not obtainable from alternative

2    sources.

3            So if you want, we can go through each of these

4    categories in light of that.  And Mr. Genender, if you want to

5    make those arguments now, I will hear you, or I will give the

6    parties an opportunity to go back to the drawing board and

7    write out what exactly you're looking for and how to meet these

8    tests.

9            Yes.  Go ahead.

10           MR. GENENDER:  The only thing I could think of,

11   Judge, that might help us along that lines is it seems like J

12   Cap has identified specific documents.  And it might help us if

13   they were to identify them under Rule 26 as required so that we

14   could then see whether we need to pursue them or not.  We're

15   trying to pursue that in conference despite faulty memories

16   about it.  And we thought that was the right way to do it.

17           If we could get some sense of what it is that does

18   and doesn't exist, we could determine whether it's worth

19   fighting about.  And that's kind of the frustration we've run

20   into in this process.

21           THE COURT:  All right.  So why don't we do this.  And

22   again, I'm not asking the Defendant to reveal any privileged

23   information.  And maybe we shouldn't talk about a privilege log

24   because that implies certain things.  But if you can describe

25   the category of documents that you're withholding or that

```
 1    you're asserting the privilege on, then at least the

 2    conversation can be had in terms of how to do the analysis of

 3    whether that category of documents is highly material and

 4    relevant, critical or necessary, and not obtainable from

 5    elsewhere, right?

 6            And if it's something like, you know, internal

 7    communications among the defense side, that's, I think, fine as

 8    a category or communications with people who -- I mean, I can't

 9    even make it up because I don't know what we're talking about.

10    Just so we can have the conversation about in what way these

11    documents may or may not be highly material and relevant,

12    critical and necessary, and not obtainable elsewhere.

13            Is that still not possible to do, Mr. Korzenik?

14            MR. KORZENIK:  I mean, it's possible to -- I think we

15    already kind of covered the answers to it.  There's certain

16    categories of requests that they've made where I just don't

17    even -- I'll go back and check, but there are only internal

18    conversations and there are only conversations with

19    confidential outsiders.

20            THE COURT:  Okay.

21            MR. KORZENIK:  You know, it's possible there's some

22    idle ones, but I mean --

23            THE COURT:  Well, you can only be aware of --

24            MR. KORZENIK:  -- this case.

25            THE COURT:  -- what you're aware of, okay?
```

1          MR. KORZENIK:  Yeah.  But the other thing I would

2   say -- and this is what I would ask -- is that some of their

3   requests are asked and answered.  And some of their requests

4   are so broad and they map into the definition of news.  In

5   other words, sometimes they're asking us for our editorial

6   process and drafts and communications about it that would show

7   that we didn't care about the truth.

8          I don't need to do a log for that because their

9   request seeks nothing more and nothing less than privileged

10  material.  And I don't think --

11         THE COURT:  Right.

12         MR. KORZENIK:  -- and they gave the description by

13  their request.  And you know --

14         THE COURT:  Okay.

15         MR. KORZENIK:  -- I had a number of cases like this

16  in front of Judge Sweet (ph).  He just took all of the city's

17  requests that were general and broad of the kind of that most

18  of the requests here are and just said I can't -- that's not

19  specific enough.  That's no particularized need.

20         THE COURT:  Well, this is part of what I'm saying.

21         MR. KORZENIK:  Your Honor expressed the same view.  I

22  think Your Honor expressed the same point that Judge Sweet did.

23         THE COURT:  Which is why I have asked for there to be

24  a more particularized showing by the Plaintiff of what you're

25  seeking.  All right?

```
 1            MR. KORZENIK:  Okay.
 2            THE COURT:  So I think the upshot of our discussion
 3    and what I'm deciding today is that I'm going to deny the
 4    motion to compel because based on the description -- based on
 5    my finding or my conclusion that the Defendant is engaged in
 6    news and so can assert the reporter's privilege and that there
 7    have been no particularized showing, either, you know, there
 8    are things that are confidential sources, and that's absolute,
 9    or there has not been a showing by the Plaintiff of those three
10    things that they need to show under 79-h.
11            And so we've already gone through, for example, the
12    document request #15, which is editorial.  And I've already
13    stated my view that it is completely covered by reporter's
14    privilege because it's editorial.  So to go into details as to
15    what the editorial process is would not be necessary because
16    it's -- I guess the way you put it, Mr. Korzenik, is that the
17    question itself maps directly onto what is covered by the
18    privilege.
19            So I think to the extent, Mr. Genender, you are
20    seeking to compel certain information that you really need, you
21    need to reword your request or propound a different set of
22    requests that acknowledges my finding that the Defendant can
23    assert the reporter's privilege, right?  So anything that's
24    going to break that privilege is not going to be permissible
25    and it will not require any kind of withholding of documents
```

 1    because the privilege covers everything by definition.  So I

 2    get that point.  That makes sense to me.

 3              I also think, you know, to the extent that there's

 4    room to just clarify, I hope we've done that today, but to

 5    clarify whether the documents exist or not, it seems to me, at

 6    least in document requests 11, 12, and 13, that the answers

 7    were very clear.  Those do not exist.  And all the other stuff

 8    is verbiage.  And so you can ignore that.  That doesn't negate

 9    the clear answer, which is that those documents don't exist.

10    Right?

11              MR. GENENDER:  Understood, Judge.  And my

12    understanding then is with respect to the pre-11 requests, we

13    are to confer to see if we can narrow those down and get some

14    additional understanding as to what does and doesn't exist.

15    And if we need to propound more narrow or specified requests,

16    we are allowed to do that?

17              THE COURT:  Yes.  Except that -- let me just look at

18    those.  Because #15 to me seems pretty clearly covered by the

19    privilege, right?

20              MR. GENENDER:  I mean, just the ones before 11.  The

21    numbers --

22              THE COURT:  Yes.

23              MR. GENENDER:  -- lower than 11.

24              THE COURT:  5, 6, 7, 8.  Let me take a look at those.

25    What documents you possess reviewed in connection with the

```
 1    decision.  I heard the response to that is those documents are

 2    internal communications.

 3                MR. KORZENIK:  That's correct.

 4                THE COURT:  So that would all be covered by the

 5    reporter's privilege.  There's nothing there that needs to be

 6    detailed.

 7                MR. GENENDER:  I was hopeful that we -- I mean, we

 8    are now learning for the first time that these are documents

 9    between Ms. Stevenson-Yang and I forget his name.  Is it Mr.

10    Murray?

11                THE COURT:  Mr. Murray.

12                MR. GENENDER:  Mr. Murray.  There's a case called

13    Murray, which is why I was having trouble with that.  And we

14    would like the opportunity at least to see whether we

15    can -- now that we know what the communication is that's being

16    withheld to make the showing.  We haven't had notice of what

17    any of these withheld documents were.

18                THE COURT:  Yes.  And that's part of the issue of the

19    privilege.  The privilege passed a cloak over these

20    communications.

21                MR. GENENDER:  Yes, Your Honor.  But --

22                THE COURT:  You can make your showing.  You can make

23    your argument as to why they are highly material and relevant,

24    critical or necessary, and not obtainable from other sources.

25    I know it's difficult, but I mean, you have to do the best you
```

1    can.

2              MR. GENENDER:  Well, I think what I would like to ask

3    the Court to let us do is digest this, perhaps confer with

4    counsel about -- now that we now have a better sense of what

5    does and doesn't exist, what is and isn't confidential, I mean,

6    it sounds like he's saying they are willing to state in these

7    responses that there's only confidential communications with

8    outsiders, no nonconfidential ones.  And I understand the

9    Court's ruling that those are off limits.  I get it.  I

10   understand #15, the Court's ruling is off.

11             But on some of these other ones, we'd like to at

12   least find out a little bit more information about what the

13   internal communications were to see whether they come within

14   79-h now that we know they exist.

15             THE COURT:  Well, if they're internal communications,

16   they do come within 79-h unless you can make your showing.

17             MR. GENENDER:  And that's the discussion we'd like to

18   have.  For example, if J Cap is able to say there are no

19   internal communications relating to funding with third-party

20   sources who were dictating what we would and wouldn't do, you

21   know, we can talk about whether or not that's something that

22   would resolve our issue.

23             The only other question, Your Honor, I believe is --

24             THE COURT:  Well, hold on a second.  I'm not sure

25   they need to even say that.

```
 1                MR. GENENDER:  I don't --

 2                THE COURT:  Because even if there were such

 3       communication, I don't know that they need to tell you that

 4       they exist.

 5                MR. GENENDER:  Understood, Your Honor.  I think we

 6       just have a disagreement about the scope of 79-h.  If there

 7       are --

 8                THE COURT:  Yeah.

 9                MR. GENENDER:  -- internal documents showing their

10       knowledge and state of mind and there's an allegation --

11                THE COURT:  To actual malice?

12                MR. GENENDER:  And actual malice.  Yes.

13                THE COURT:  Okay.  Well, then make the argument about

14       actual malice.  But I don't -- right?

15                MR. GENENDER:  We will, Your Honor.

16                THE COURT:  We don't have enough information.  If you

17       want to make that argument, you can do that, but you haven't.

18       That's why I'm --

19                MR. GENENDER:  Well, I believe --

20                THE COURT:  -- denying your request.

21                MR. GENENDER:  -- it's in our papers, Your Honor, but

22       I understand what the Court's saying.  We did argue that it's

23       relevant and necessary for actual malice.  There's no other way

24       to show it.  Knowledge is key.  And that's the Aquitaine (ph)

25       case.
```

1          I did have one other request for the Court.

2          THE COURT:  Can I just say for that that you need to

3   be more specific about the specific request, not just that you

4   need information for actual malice.  But to the extent that you

5   were making a specific request for specific documents, why

6   those specific documents are necessary to show actual malice.

7   That's what I'm missing.

8          MR. GENENDER:  Understood, Judge.  We will look at

9   that.

10         THE COURT:  All right.

11         MR. GENENDER:  The only other request which is not

12  addressed, I believe, is #14, which is about persons who paid

13  the money or inducement to prepare, revise, or publish the

14  report.  I don't see how that's news.  I don't think I heard

15  them argue that it's news.  It's directly relevant to actual

16  malice.

17         THE COURT:  So let's go back to this, Mr. Korzenik.

18  Okay.  So in your explanation, what I'm hearing is, well,

19  people pay money to subscribe to our newsletter.  I don't know

20  what you -- if that's fair to say.  And so if people pay money,

21  are you talking about those people?  And if so, no, we're not

22  giving you our subscriber list.  That's not really relevant.

23         But if you're asking for other people who've paid

24  money, then that is also precisely the information that would

25  be privileged, not necessarily by 79-h but through the other

```
1    source which you called the anonymous speaker.  Is that right?

2              MR. KORZENIK:  That is correct.

3              THE COURT:  Right.  So I have not dug into the

4    anonymous speaker issue, so I'll have to look into that.

5    But --

6              MR. KORZENIK:  They haven't either.  That's the thing

7    that's --

8              THE COURT:  Yeah.

9              MR. KORZENIK:  -- remarkable to me.  It's not that we

10   didn't notice it.  We did.

11             THE COURT:  And so I think if that's the issue then,

12   Mr. Genender, you would need to address that.

13             MR. GENENDER:  Your Honor, the briefing talks about

14   it in the construct of the reporter's privilege showing that

15   it's a source and it's privilege.

16             THE COURT:  But is it the reporter's privilege?

17             MR. GENENDER:  I don't see the reporter's

18   privilege -- I don't see how it's news.  That's the issue.

19             THE COURT:  Well, but I've told you I've ruled that

20   the reporter's privilege does apply, so let's move on from that

21   point going forward.

22             MR. GENENDER:  Yes, Your Honor.  But for example, the

23   reporter's privilege -- if it was relevant and we asked them

24   for copies of their water bill, the reporter's privilege

25   wouldn't cover that.  The reporter's privilege shouldn't cover
```

1   something which would impugn their editorial independence.

2   That is the point of request #14.  It goes to the intent and

3   actual malice.  We are doing this for money, not for the search

4   of truth.  And --

5            THE COURT:  Right.

6            MR. GENENDER:  -- we're getting paid to do this.  And

7   it's we're going to disregard -- it's relevant to whether or

8   not there is -- knowledge is false.  We need you to say this.

9   Here's the money.  Do it.  And that would go to whether or not

10  they intentionally disregarded the truth.  It's not a --

11           THE COURT:  Can I just say that you're talking about

12  editorial independence.  That is part of the analysis as to

13  whether the Defendant is a news organization.  And I found

14  that, right?

15           MR. GENENDER:  Yes, Your Honor.  But it's also

16  independently relevant on the issue of malice, of actual

17  malice.

18           THE COURT:  Okay.  And that's my point is that I

19  don't see where you're speaking -- I'm denying the motion to

20  compel in its entirety now.  And if you want to show actual

21  malice, then you can make that argument.

22           MR. GENENDER:  Understood.

23           THE COURT:  So I don't think that you have made that

24  showing to me at this point, but I'm giving you the opportunity

25  to make that showing if you think you want to give it another

```
 1    try.  But be more specific and not just say it's actual malice,
 2    Judge, so we get it --
 3                MR. GENENDER:  Understood.
 4                THE COURT:  -- or we get this whole thing.  The
 5    pleadings maybe by necessity because of how much ground you
 6    needed to cover were not very particular on it.  And so that
 7    has made it very difficult for me to make specific rulings on
 8    the motion to compel because if I were to order you to compel
 9    or order the Defendant -- compel the Defendant to turn over
10    documents in response to specific requests, those are very
11    specific.
12                And so I need to have the showing under 79-h that are
13    specific to each request and each thing you're seeking.  Now,
14    in the course of doing that, you may come to realize, A, it's
15    already been answered or, B, it would be nice to have that
16    information, but it's not highly material and relevant or
17    critical and necessary, in which case if you can't make that
18    showing then you don't -- you know, you should move on.
19                MR. GENENDER:  Understood, Judge.
20                THE COURT:  I'm just asking for the specific argument
21    on each thing.  And if it includes actual malice, then you also
22    need to be specific on each of those.  So once you do that,
23    then the Defendant will have an opportunity also to oppose your
24    renewed motion to compel.  Right?
25                So let's do it this way.  Either you're going to
```

```
 1    renew your motion to compel with specific requests and you can

 2    also narrow the requests that are currently there and clarify

 3    what it is you're seeking.  So for example, you might decide

 4    that you want the information that was given to Defendant but

 5    you don't really need the information or you can't make the

 6    showing as to the information that the Defendant gave to

 7    someone else.  I think that was in one of the requests.  So you

 8    can do that and stick with the same document requests and

 9    numbers that are at issue today.

10            Or if there are going -- well, let's just do it that

11    way.  Why don't we do that because I think if I let you

12    propound different requests it's going to take us in a

13    completely different direction, and I don't think that's really

14    the right way to do it.  So let me just limit you to you may

15    renew your motion to compel if you make specific showing and/or

16    narrow your request.

17            MR. GENENDER:  Understood.  Understood.

18            THE COURT:  So how much time do you think you'll

19    need?  I would like to put a deadline.

20            MR. GENENDER:  I'm looking at my calendar.  Can we

21    have 30 days?

22            THE COURT:  All right.  So today is August 11th.  If

23    I give you 30 days, it's September 10th.

24            And then, Mr. Korzenik, how much time will you need

25    to respond?
```

1        MR. KORZENIK:  I would ask for 30 days as well after

2   that.  I don't know where that lands.  I'm just concerned about

3   some of the Jewish holidays that are coming up.  And I

4   don't --

5        THE COURT:  I have that Rosh Hashanah starts on

6   September 6th.  Yom Kippur is on September 15th.  Sukkot starts

7   on September 20th.

8        MR. KORZENIK:  Yeah.  So if you put me a little

9   past -- and then I have a Media Law Conference at the end of

10  September.  So if you could get me into the second week of

11  October, the beginning of that, I'd appreciate it.

12       THE COURT:  All right.  If I gave you 30 days,

13  October 10th is a Sunday for the Columbus Day weekend.  So the

14  next business day is October 12th.  I'll give you October 13th

15  just so you have --

16       MR. KORZENIK:  Okay.  All right.

17       THE COURT:  -- one business day after the holiday.

18       MR. KORZENIK:  Okay.

19       THE COURT:  All right.  So that's the response.  And

20  then we'll take it from there.  Now, we didn't get to the

21  interrogatories, but I think in light of everything that was

22  discussed, you can probably work those out.  And that can be

23  wrapped into your motion to compel here as well.

24       MR. GENENDER:  Understood, Judge.

25       THE COURT:  Under your motion to compel.

1          MR. GENENDER:  We have plenty of guidance from the

2     Court.  We know what to do.

3          THE COURT:  All right.  Good.  So are there any

4     questions then, Mr. Korzenik, or anything else we should --

5          MR. KORZENIK:  No.  I think we'll work with that.

6          THE COURT:  All right.  Then, Mr. Genender,

7     everything's clear?

8          MR. GENENDER:  Understood, Judge.  Thank you so much

9     for your time this morning.

10          THE COURT:  All right.  Thank you, everybody.

11          MR. KORZENIK:  Thanks very much, Your Honor.

12          MR. GENENDER:  Thank you.

13        (Proceedings concluded)

14                              CERTIFICATE

15     I certify that the foregoing is a correct transcript from

16     the record of proceedings in the above-entitled matter.

17

18

19     Dated: <u>August 16, 2021</u>                *Carrie Clouse*
                                         _____
20                                       Carrie Clouse, CET
                                         Opti-Script, Inc.

21

22

23

24

25