1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                    :
NOVA GOLD RESOURCES, INC.,          : 20-Cv-2875 (LDH)
                                    :
        Plaintiff,                  :
                                    :
                                    : United States Courthouse
    -against-                       : Brooklyn, New York
                                    :
                                    : May 6, 2022, Friday
J CAPITAL RESEARCH USA, LLC,        : 2:00 p.m.
                                    :
        Defendants.                 :
                                    :
                                    :
                                    :
                                    :
- - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
BEFORE THE HONORABLE LaSHANN DeARCY HALL
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Plaintiff:    BAKER BOTTS, LLP
                      2001 Ross Avenue
                      Dallas, Texas
                   BY:  DAVID GENENDER, ESQ.
                      JORDAN KAZLOW, ESQ.

For the Defendant:    MILLER KORZENIK SOMMERS RAYMAN, LLP
                      1501 Broadway
                      New York, New York 10036
                   BY:  DAVID KORZENIK, ESQ.


Court Reporter:  Michele D. Lucchese, RPR, CRR
                 Official Court Reporter
                 E-mail:  MLuccheseEDNY@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

```
                        Proceedings                    2

 1          THE COURTROOM DEPUTY:  Civil cause for oral argument

 2   in Nova Gold, Incorporated versus J Capital Research USA, LLC,

 3   20-cv-2875.

 4          Counsel, please state your appearances for the

 5   record.

 6          MR. GENENDER:  Good morning, Your Honor.  David

 7   Genender and Jordan Kazlow for Nova Gold.

 8          THE COURT:  Good afternoon.

 9          MR. KORZENIK:  And good morning, Your Honor.  David

10   Korzenik, Miller Korzenik Sommers Rayman, LLP, for the

11   Defendant J Capital Research.

12          THE COURT:  You all can be seated.

13          We are here for an argument in connection with the

14   defendant's motion for reconsideration of the Court's

15   determination on its motion to dismiss.  In its written

16   submission, the defendants raise a number of bases upon which

17   they believe the Court erred in denying the motion to dismiss.

18          I will hear from the defense.

19          MR. KORZENIK:  Thank you very much, Your Honor.

20   It's great to be back in court.  I will tell you it is my

21   first appearance in person in a court.

22          THE COURT:  I hope we don't let you down.

23          MR. KORZENIK:  I am excited nonetheless.

24          THE COURT:  Fair enough.

25          MR. KORZENIK:  So there are a number of points that
```

Proceedings                                                    3

1    I did raise in the motion.  I want to at least discussion four

2    of them if I can with Your Honor.  And I'm glad we have time,

3    but I enjoy speaking about these issues, so you may have to

4    stop me.

5            THE COURT:  Okay.  Don't you worry there.

6            MR. KORZENIK:  Okay.  First, the first one I want to

7    point to is the issue about the words of opinion, words like

8    we believe, we think, and so on.  And I think the Court had

9    initially said that thought there was only this sort of

10   disclaimer at the beginning, but they said the Court had

11   observed there was no other words signaling opinion.  But

12   there were, and they were quite plentiful.  There were at

13   least something like 26 throughout, and many of them relating

14   to particular terms that the plaintiff had challenged.

15           The plaintiff's response to this is that well,

16   maybe, but those words are there, but maybe it's not enough.

17   And I would ask Your Honor not to take that invitation because

18   I think it misconstrues and distorts the way in which factor

19   three analysis should be done on opinions.  So factor three --

20           THE COURT:  Let's take a step back for a second with

21   respect to the signalers, et cetera.  At page 10 of the

22   opinion and distinguishing the cases cited by the defense, I

23   say that the documents in these cases, on a whole, were

24   pregnant with signals to the reader that the statements made

25   therein were opinion.  The Court then states here, in

Proceedings                                          4

1    contrast, the defendant points to its general disclaimer in

2    terms of service, but nothing else.

3           So the Court -- my job is to look at the arguments

4    as they are advanced by the lawyers, not the arguments as I

5    would have made them, but the arguments as they are advanced

6    by you.  So when you look at the weigh in which your motion is

7    crafted, that's exactly what you did, you did not undertake to

8    go through and identify various signals attached to the

9    various statements.  What you did instead was say, judge, look

10   at the disclaimer and look at the terms of service.  So that's

11   what I did.

12          MR. KORZENIK:  Right.  I would say this, as Your

13   Honor observed and I think the Silvercorp seven line of cases

14   were correctly decided.  And what they leaned on most heavily,

15   more than just the particular opinions signaled or words was

16   the fact of the hyperlinking, was the fact of the highly

17   adverse and financial interest which was announced.  And so

18   those words --

19          THE COURT:  I'm sorry, forgive me, the last part?  I

20   didn't hear you.

21          MR. KORZENIK:  The highly adversarial and

22   financially adverse position that they were taking in Yangtze,

23   Judge Sherwood pointed most heavily to the hyperlinking, and

24   we focused on that, he pointed most heavily to the fact that

25   the position taken was adverse and financially adverse to the

1   interest of the subject of the short report.  So those were

2   the most salient that pushed factor three into a global

3   conclusion that the entire report was opinion, even though it

4   included words that were far more aggressively critical of the

5   company saying that their assets were largely fabricated and

6   that their lease, leased land was a total fabrication and so

7   on.  We never say anything as aggressive or as factual or

8   referring to past conduct.  Our's is about total predicted

9   conduct.

10          The same thing with Silvercorp itself with Judge

11   Edmead points to hyperlinking.  That was one of the most

12   salient factors.  And, again, the most adverse nature of the

13   presentation was taken by her to signal opinion.  More than

14   just doing a word count of we believe, we think.

15          And by the way, those words are there anyway in the

16   Complaint.  Those words are all in the quotations from the

17   report that they cite as salient.

18          But I will say that it is hyperlinking and the

19   adverse stance, financial bias that in all those cases drove

20   the finding of opinion and that's why we focused on it most

21   heavily.  The same thing with MiMedx, where the Court said

22   that the financial bias weighs in favor of opinion and does

23   not count toward actual malice.  There they did an actual

24   malice analysis as well as opinion.

25          THE COURT:  Right.  But in terms of the context of

1  this motion, which is a motion for reconsideration, right,

2  this is not us starting -- this is not an opportunity for a

3  fresh start.  So if you talk about the way in which you

4  advanced your arguments in your motion to dismiss --

5          MR. KORZENIK:  So in the motion --

6          THE COURT:  -- and I'm going to tell you, quite

7  candidly, I think the problem is the way in which you briefed

8  your submission.  I think you could have had a different

9  outcome if you approached your brief differently.

10          MR. KORZENIK:  That's possible, Your Honor, but I

11  would say this in the space that we had --

12          THE COURT:  Are you live?

13          MR. KORZENIK:  I'm sorry.

14          THE COURT:  That would make life much better.

15          MR. KORZENIK:  So the reason that I focused on

16  hyperlinking and the reason that I focused on the adverse

17  character of the report, the financial adversity, and the

18  reason we focused on the social context as well, made the

19  factor three analysis the -- whether it's opinion in the

20  context of the written work itself -- were more important than

21  just saying we believe, we think, et cetera.  Those are all

22  there.  But the thing that drove Yangtze, the thing that drove

23  MiMedx, the thing that drove Silvercorp and all the other

24  ones, Eros, and so on, were those factors more than just we

25  believe.  Because I didn't want to try to sort of trivialize

1   the thing by saying we believe, we believe, et cetera.  Those

2   signal opinion, but more importantly, hyperlinking, financial

3   adversity, and the social context, especially the internet

4   use, has been consistently treated by --

5           THE COURT:  Right, but I want to go by what you're

6   advancing as the error that the Court made in its

7   determination, and the first one is that you said that the

8   Court erred in stating that the order states that the report

9   realizes only on general website disclaimer in terms of

10  service but nothing else.  Clearly you see your statement

11  there is patently false when you read it compared to the

12  opinion.  That's not what the Court said.  That's not what I

13  said at all what I said.

14          MR. KORZENIK:  Well, the Court said that we did not --

15          THE COURT:  What I said here in contrast defendant

16  point to its general website disclaimer in terms of service,

17  but nothing else.

18          There's nothing in that sentence that says that the

19  report relies on its general disclaimer.  It's not my job to

20  litigate this for you.  I have 535 cases.  If you want to make

21  a point, you have to make that point.  You can't just give me

22  documents and expect that I am going to undertake what a

23  lawyer should do, which is to go through and identify what's

24  important for the Court to note.  You chose to highlight only

25  the distributors and the terms of service.

Proceedings                                                    8

1          MR. KORZENIK:  No, that's not correct.  I

2   highlighted the hyperlinking as well and that was not referred

3   to at all in the factor three analysis.  So to take factor

4   three analysis --

5          THE COURT:  Let me go back again.  You state, in

6   your motion for reconsideration, and I'm quoting at page 1,

7   the order states -- this is what you're saying I did wrong,

8   that the report relies only on general website disclaimer in

9   terms of service but nothing else.  That is untrue.

10         MR. KORZENIK:  But it does refer to something else

11  and it does refer to hyperlinking.

12         THE COURT:  But what you're saying was my error is

13  not -- is not borne out when you read my opinion.

14         MR. KORZENIK:  But it -- the problem that I have

15  with that is that I have a limited amount of space to do this.

16         THE COURT:  Then you should have asked for more

17  space.

18         MR. KORZENIK:  I couldn't do that.

19         THE COURT:  Why not?  Did I preclude you from doing

20  it?

21         MR. KORZENIK:  No, Your Honor did not ever do that.

22         THE COURT:  So you could have done that?

23         MR. KORZENIK:  I could, but I just want to emphasize

24  that the most salient factor four elements are hyperlinking

25  and the disclaimer and the financial adversity.  Those are the

Proceedings                                                    9

1    things that drove those other cases.

2          THE COURT:  Right, but in terms of a motion for

3    reconsideration, remember where we are procedurally, in terms

4    of saying how I erred, what it is that I somehow did wrong,

5    what you said is that the order states that the report relies

6    -- I'm tired of reading this.  I've read it now three times.

7    That's just not true.  So where do I go from there?  That's

8    not true.

9          Perhaps if it had been argued differently, I would

10   have looked at it differently, but the mistake or the error

11   that you said that I made in that regard, if you look at the

12   opinion itself and read the words of the opinion not as the

13   opinion is being cast, that simply didn't happen.

14         MR. KORZENIK:  But the report is the report, and the

15   words of belief and thinking and so on were all part of our

16   discussion of the various rows.

17         THE COURT:  Are you referring to in your reply,

18   because not in your opening?

19         MR. KORZENIK:  Both in the reply and the opening

20   because in the opening we talk about some of those same

21   statements that were in the rows and the opening motion.

22         THE COURT:  What rows?

23         MR. KORZENIK:  The rows are -- the plaintiff had a

24   set of --

25         THE COURT:  That couldn't have been in the opening

Proceedings                                    10

1   because the plaintiff responds in opposition.

2           MR. KORZENIK:  Correct.  Even though I didn't call

3   them rows in the opening doesn't mean that they weren't

4   referred to.

5           THE COURT:  Show me what you're talking about.  Help

6   me out.

7           MR. KORZENIK:  I'm going to eat up all my time in

8   this, but in the --

9           THE COURT:  I'm at page 8.  Significantly J Cap's

10  disclosures are even more forceful than Silvercorp.  J Cap's

11  other disclaimers signal opinion and its terms of service, its

12  terms.  You say --

13          MR. KORZENIK:  We also spent -- at page 11, we go

14  through the specific paragraphs, the allegations in the

15  Complaint.  So we list --

16          THE COURT:  But so what?  I can have the Complaint.

17  All you say is this is opinion.  That's not argument.  I had

18  the Complaint.  You identify the paragraphs and you simply say

19  this is opinion.  That's argument.  This is opinion.

20          MR. GENENDER:  Your Honor --

21          THE COURT:  You can't actually believe that the

22  bulleted allegations from the Complaint is sufficient argument

23  concerning identifying signals, why it is that the context of

24  those signals might make those opinion -- conclusory

25  assertions that the defendants believe something is an opinion

1   doesn't carry the day for me.

2           MR. KORZENIK:  But I didn't make a bald assertion

3   that it was opinion.  I leaned most heavily on the most

4   salient factors of the Silvercorp 7, I leaned on hyperlinks.

5   I leaned on the declaration of financial adversity and I did

6   refer to specific statements as well.

7           THE COURT:  I think you and I have a --

8           MR. KORZENIK:  So I understand Your Honor's point --

9           THE COURT:  Excuse me.  I think we have a difference

10  of opinion --

11          -- in what constitutes sufficient argument to carry

12  the day on this point.  I understand what you're explaining to

13  me now is your intention.  I simply don't think you

14  accomplished it in your submissions.

15          MR. KORZENIK:  If that's the case, does it then

16  serve us well to engage in a trial or a --

17          THE COURT:  No.  You know what serves you well, do

18  summary judgment, makes your arguments there.

19          MR. KORZENIK:  Well, that was an alternative that I

20  was going to suggest.  I had prepared this, and I will give it

21  to the other side, sort of a list of the paragraphs of the

22  statements that they say we made that were false and then our

23  statement about why those are both opinion and not indicators

24  of any kind of actual malice.  And it may then permit Your

25  Honor to actually look at some of the things that are outside

1   of the Complaint, which Your Honor had earlier suggested,

2   understandably, and that I don't argue with, that those are

3   issues that are outside of the record, or outside of the

4   Complaint and I would consider them but not now.

5        THE COURT:  If there is a way to smartly kind of

6   order discovery such to that we deal with certain discovery

7   issues that may allow this Court to do a partial summary

8   judgment to narrow this case -- I don't handle discovery, but

9   I would invite that discussion for you all to have with the

10  magistrate judge.  Obviously, I don't want or ever would want

11  to have an overly-broad proceeding.

12       The motion to dismiss didn't accomplish that.  A

13  motion for summary judgment may.  It would require some

14  discovery.  You all would have to perhaps come up with a

15  proposal to smartly again decide the order in which discovery

16  could be made and I would consider it as an alternative if it

17  were structured properly.

18       MR. KORZENIK:  Could I make one suggestion on that

19  or a note?  We actually have had some discovery at the very

20  beginning of the case before we had our first initial

21  conference with Your Honor.  We went to Magistrate Judge Kuo

22  and she -- I wanted not to have discovery until the motion was

23  decided.  She suggested that there should be and plaintiffs --

24  she said well, what do you want?  They gave a list of things

25  that they wanted, it would be partial discovery.  And we

1   basically did that.  In other words, we argued over that.  We

2   pretty much disclosed everything that they asked except the

3   confidential sources that are absolutely protected under the --

4           THE COURT:  For which I have a motion on my desk

5   from the plaintiffs concerning the source of the funding for

6   the article; correct?

7           MR. GENENDER:  That's correct, Your Honor.

8           THE COURT:  And I am curious in terms of the

9   categorization of statements as opinion versus fact, et

10  cetera, do you believe that my determination on that motion

11  has any bearing on the way in which the issues perhaps for

12  trial would be narrowed?

13          MR. GENENDER:  The funding issues, we do not believe

14  trigger the reporting privilege, go to actual malice, it's

15  relevant to actual malice.  So if Your Honor is talking about

16  gatekeeping on the actual statements, I don't think so

17  candidly, Your Honor.  But we do think it's important.

18          THE COURT:  I believe it is an important issue.  We

19  will get to that in a second.  It's certainly on my radar.

20  It's something that we have undertaken in chambers to look

21  into.  But what I really do believe that what the defendants

22  want to accomplish here is to potentially narrow this case.

23          MR. KORZENIK:  Yes, very much so.

24          THE COURT:  I have no problem with you doing so, I

25  simply do not believe that based on the submission that I got

1   on the motion to dismiss that I could have accomplished what

2   it is that you wanted and there is a potential avenue towards

3   that in a motion for summary judgment.

4            MR. KORZENIK:  Then we'll engage in that way.  I

5   just want to touch on two other points that --

6            THE COURT:  Sure.

7            MR. KORZENIK:  -- are independent grounds for

8   dismissal.  I just want to play them out before Your Honor and

9   discuss that.

10            The point that is very, very significant to the

11   defense and significant in terms of the case law that the

12   Court relied on is this issue from the Palen case and the

13   significance of hyperlinks.  Hyperlinks to the challenged

14   statement have always been a benchmark of opinion, quite apart

15   from the other factors.

16            THE COURT:  Give me a second.  I just need to find

17   where in my opinion the citation to the Palen case is found.

18            MR. GENENDER:  Your Honor, it is at page 19.

19            THE COURT:  19?

20            MR. GENENDER:  Yes.

21            MR. KORZENIK:  I think that's right.

22            MR. GENENDER:  Right above section C.

23            THE COURT:  Thank you.

24            MR. KORZENIK:  So the point is --

25            THE COURT:  I'm sorry., I just have to catch up with

1    my own work.

2         MR. KORZENIK:  Take your time.

3         THE COURT:  All right.  So what I have said is that

4    it's plausible that there was indeed a disregard for the

5    truth.  In the Palen case, the Court said, look, you can have

6    multiple plausible inferences to be drawn, one of which is

7    that it could somehow demonstrate a mistake or an error absent

8    malice, but one is that perhaps there was malice and you know

9    who gets to decide that is the jury, right?

10        MR. KORZENIK:  Not on that point.

11        THE COURT:  Not on what point?

12        MR. KORZENIK:  On the point about hyperlinks.

13   Because I went back, after I read your reference to Palen and

14   I looked at the Palen decision.  If you read the Second

15   Circuit opinion, it isn't really clear exactly what the

16   hyperlink was.  When you go back to Judge Rakoff's ruling, you

17   can see that it relates not to the link to Palen's website

18   that was -- that was the subject of the editorial criticism,

19   but to an ABC article, and most significantly, Bennett, who

20   was the supervisor of the piece, said he had not read it.  So

21   that sort -- I think that's incorrect.  I think the Second

22   Circuit is going to walk that back.

23        THE COURT:  But they haven't yet.

24        MR. KORZENIK:  They haven't yet.  Butt my view is

25   that -- the Second Circuit -- and I want to -- was more

1   faulting Judge Rakoff, and I think he actually did something

2   that was interesting and creative, they faulted him for the

3   hearing.

4           THE COURT:  He would be pleased to hear that.

5           MR. KORZENIK:  I don't know him, but I think he had

6   an important idea and I think the Second Circuit had a missed

7   opportunity, but that's me.  What is most significant, though,

8   about it, is that what they said was linked - first with

9   something that he didn't look at, and number two, it isn't the

10  same thing that was being criticized; it was just an ABC News

11  article that took a different angle on it.

12          But that's not what we have here.  What we have here

13  is a direct hyperlink to the feasibility study and the

14  publically-related documents, so that the reader can actually

15  read those and decide if we were wrong, for example, the Capex

16  thing - --

17          THE COURT:  So you're suggesting that if someone

18  purposefully, intentionally publishes a factual falsehood and

19  does so because they know I'm going to grab the headline and

20  -- this is not your case, this is my hypo -- but I will

21  include a hyperlink to something that contains the truth,

22  someone may or may not look at it, I'm excused from publishing

23  that falsehood, which I'm doing because I want them to see the

24  headline, you know, Judge DeArcy Hall murders husband.  The

25  hyperlink says actually she was acquitted of murdering her

Proceedings                                            17

1   husband.  So as long as you have the hyperlink, you can

2   maliciously put Judge DeArcy Hall murdered her husband, so

3   long as -- is that --

4           MR. KORZENIK:  I would ask Your Honor to look at it

5   from this point of view:  Hyperlinks across the board in every

6   case that I've ever seen on it, including the ones here, have

7   always been seen as a signal of opinion because the reader can

8   take the measure of it and have always been viewed as undoing

9   actual malice.

10          THE COURT:  By the way, you made that statement in

11  your submission, but by the way, you did so without a

12  citation.  There was zero citation to that proposition in your

13  submission.

14          MR. KORZENIK:  Oh, no, I think I cited it in my

15  reply for sure.

16          THE COURT:  Maybe I should have gone to the reply

17  for the citation, but you certainly said it in your opening

18  submission --

19          MR. KORZENIK:  Well, there are no cases -- and I do

20  watch these cases quite closely -- there are no cases that say

21  that hyperlinks will be a cause -- hyperlinks to the

22  criticized subject.  In other words, if you put before the

23  reader -- I mean, by the way, keep in mind here, not only do

24  we put in the hyperlinks but their pleadings say that the way

25  that we would know that it was false was by reading their

1  report, and most of these things are basically opinion matters

2  anyway on their own.

3          THE COURT:  I guess it depends on how it's asserted,

4  huh?

5          MR. KORZENIK:  That's correct.

6          But to say that -- I would say that this was new

7  law, to tell newsroom reporters, to tell newsroom lawyers that

8  this once benchmark of fairness and lack of actual malice,

9  this benchmark of opinion is no longer something that can be

10  relied on, that would be news to the newsrooms.

11          THE COURT:  What the Second Circuit said is, you

12  know what, let the jury decide whether indeed it is indicative

13  of malice or not.  That's what the Second Circuit said.

14          Now, you may indeed be correct that they may walk

15  that back but they haven't.

16          MR. KORZENIK:  No, I'm not talking about whether

17  they'll walk that back, because that, I disagree with it, but

18  even if that stands, that didn't happen here.  In other words,

19  it was not an article -- the link did not go to Palen's

20  website.  That was the thing that people could judge for

21  themselves had the *New York Times* linked that to their

22  article.  But instead, they just had a link that apparently

23  was in some copy that went to Bennett and he says I didn't

24  look at it.

25          THE COURT:  Yes.  But in the Palen case you had the

Proceedings                                    19

1  asserted false statement and then you had some hyperlink to

2  another document that included information that was contrary.

3         MR. KORZENIK:  That's correct, but it wasn't the

4  criticized statement from Palen.  It was somebody else's take

5  on it, which would not necessarily negative that.  In other

6  words, what you want to link to are the -- if you are

7  criticizing the feasibility study, you link to that study.  If

8  you're criticizing your website and say that it put cross

9  hairs on people, which it didn't really do --

10        THE COURT:  What about my hypo?  I don't think you

11 answered my question.

12        MR. KORZENIK:  I think that it actually does --

13 well, first of all, nothing of the kind is happening here.

14 I've never seen --

15        THE COURT:  Are you a politician or a lawyer?  You

16 have to answer my question.  What about my hypo?

17        MR. KORZENIK:  That's certainly an unusual one, I

18 have to say.  I've never actually seen it.

19        THE COURT:  The plaintiffs would suggest that my

20 hypo is on all fours with the facts in this case.

21        MR. KORZENIK:  No, that's not true because -- no.

22 We are saying that the feasibility study says this and we

23 criticize the feasibility study about its estimates about its

24 future performance and we say why.

25        So, for example -- there are many examples, but this

Proceedings                                                      20

1    Capex thing, we give the numbers that they did.  We give the

2    6.7 billion and the 8 billion, and then we say they describe

3    it differently.  One says it's Capex.  We think it's a cost,

4    it's a cost in either case.  We don't like the way they

5    describe it, and here's the way they describe it.  So that's

6    not saying something that's utterly false.

7           THE COURT:  I'm not going to go on a

8    statement-by-statement discussion here for the very reason

9    that this is not summary judgment that we're going to be able

10   to do that.  But my recollection is that there were

11   demonstrably, if you look at the feasibility study, false

12   statements that were contained in the opinion, if the

13   feasibility study is to be believed as accurate, and the

14   question I have --

15          MR. KORZENIK:  They say it is.

16          THE COURT:  Right.  So if you go off the feasibility

17   study in that statement and you compare the two, something

18   would have to be false and it would make the report false.

19          But the question that I was answering in terms of

20   the hyperlink is whether the existence of the hyperlink to the

21   accurate statement completely does away with any culpability

22   for the falsehood that is asserted in the report.

23          MR. KORZENIK:  I can only point to the cases that

24   say that that's how it works.  I can only point to the

25   Silvercorp 7 that say that that's how it works.

```
                         Proceedings                    21
```

1        THE COURT:  Again, in your opening, you didn't cite

2    to anything.  Show me what I was supposed to be looking at in

3    your reply because I didn't recall it in your opening

4    submission, unless I missed it.  If I missed it in your

5    opening, then you'll point that out to me, but I didn't see

6    that anywhere.

7        MR. KORZENIK:  All right.  Let me -- where did I --

8        THE COURT:  So you discuss this issue at page 9 of

9    our opening submission.  There's not a citation.  There's no

10   legal citation on page 9, no legal citation on page 10, no

11   legal citation on page 11.

12       MR. KORZENIK:  Well, I tried -- so the cases that I

13   do point to a long that line as to the linking are *Lawrence*

14   *versus Donnelly*.

15       THE COURT:  Where?

16       MR. KORZENIK:  On page 3, going from page 2 to page

17   3 in the reply and also in *McFarland versus Esquire*.

18       THE COURT:  Page 3 of your opening submission?

19       MR. KORZENIK:  Of my reply.

20       THE COURT:  Forgive me.

21       MR. KORZENIK:  So I would just point out that

22   these --

23       THE COURT:  Hold on a second I have to catch up to

24   you.  I'm at page 3 of your reply.

25       MR. KORZENIK:  Yes.

1            THE COURT:  I'm supposed to be looking -- I see

2    fourth row, fifth row, seventh row.

3            MR. KORZENIK:  It says -- this is on page two, this

4    reference to paragraph 6.  It says --

5            THE COURT:  Hold on.  We are all trying to catch up.

6            MR. KORZENIK:  Okay.

7            THE COURT:  Of his reply.

8            MR. GENENDER:  Reply to the original motion or the

9    consideration?

10           MR. KORZENIK:  The consideration.

11           THE COURT:  No, no, no, no.  I was asking about in

12   your original motion.

13           MR. KORZENIK:  All the Silvercorp 7.  They all do

14   that.

15           THE COURT:  I think you -- I don't know if I should

16   take it as a compliment to what you think about district court

17   judges, but I think we think we can get in your head, because

18   where you make the argument at pages 9, 10 and 11, I don't see

19   any citation.  Look at pages 9, 10, and 11 of your submission,

20   that is where you make the argument concerning the hyperlinks,

21   as best as I can tell, and I see no citation to any cases.

22           MR. KORZENIK:  Yes.

23           THE COURT:  So, sorry, not going to do it.  It is

24   not my job to litigate the case for you.  It is not my job to

25   go through it.

1          MR. KORZENIK:  Not at all.  Not at all, but I went

2    through --

3          THE COURT:  Show me where you make the argument and

4    cite to anything to support it.  I see the argument at

5    pages --

6          MR. KORZENIK:  Your Honor, I will find it.  I'm sure

7    that I devoted time to the hyperlinks.  That was one of our

8    main --

9          THE COURT:  I thought you did at pages 9, 10, and

10   11.

11         Plaintiff, I'm going to ask you because I assume

12   you're going to -- is it someplace else that I am missing?

13         MR. KORZENIK:  I think it is at 9, 10, and 11.

14         MR. GENENDER:  No, Your Honor.

15         THE COURT:  Show me a legal cite at pages 9, 10, and

16   11 that I would have used to rely on to be able to understand

17   that you are making an argument that the law demands that

18   where there is a hyperlink that attaches contrary information

19   that might verify the veracity of the statements contained in

20   the challenged document that the attachment of that hyperlink

21   in and of itself makes the defendant not culpable for alleged

22   misstatements?

23         MR. KORZENIK:  Right.  And that is because by the

24   time I now talk about at 8, 9, 10, and so on, I'm no longer

25   doing citations, I'm referencing them by name because I have

1    already given their citation.

2         THE COURT:  Not a helpful way to draft a motion to

3    dismiss.

4         MR. KORZENIK:  But, Your Honor, I don't need to keep

5    rerunning the cites.

6         THE COURT:  Apparently you do.  I'm the audience.

7    It doesn't really matter what you think; does it?  I'm telling

8    you.  No.  Stop we are not going to do it.  You're submission

9    is deficient.  It just is.  But putting aside your submission,

10   I believe that the Palen decision states what this Court has

11   said it stated in our opinion, most importantly.  Because the

12   question is did this Court somehow misstep.  And by the way,

13   when I do, I am usually grateful that the attorneys have

14   pointed it out to me so that I can correct it, but nothing

15   that you have said here convinces me that my use of Palen in

16   this opinion was somehow inconsistent with the Second

17   Circuit's determination of the Palen decision as it was

18   written but rather how you believe it should or will be

19   corrected in the future.

20        MR. KORZENIK:  No, I'm not basing it -- I just make

21   that offhand remark that it will be walked back.  But what I

22   am doing is distinguishing the Second Circuit's decision in

23   Palen from what happened here.

24        Bennett said he did not see it.  We did and we've

25   linked it in the article itself.  Bennett's link, whatever it

1    was, that was sent to him by I think his editor Campbell was

2    not to the criticized subject of his editorial.  Our's was to

3    the criticized feasibility study at issue.  So those are two

4    major differences.

5           THE COURT:  Does the Second Circuit in any way make

6    a distinction or a statement that might allow this Court to

7    conclude that when it said many inferences can be drawn as to

8    the inclusion of the hyperlinks and that those inferences

9    should be decided by the jury, that the Court's determination

10   in that regard was based on the fact that the hyperlinked

11   information was not information to the challenged underlying

12   source document but to some else's commentary, because I can't

13   glean that from this paragraph?

14          MR. KORZENIK:  You can.  That's why you have to read

15   Rakoff's decision below.

16          THE COURT:  Or the Second Circuit could tell me what

17   they believed was important.

18          MR. KORZENIK:  They --

19          THE COURT:  Stop.  And the Second Circuit did not

20   stay it was important and I am not going to assume that it

21   was.  Instead, what I am going to decide, as I did, is that

22   this was a decision in terms of the import of the hyperlink on

23   the question of malice will be one for the jury to decide.

24          You have been desperately trying to say something

25   and you haven't allowed you.

1          MR. KORZENIK:  Can I --

2          THE COURT:  Hold on.  The plaintiff wants to

3    respond.  Let me give him at least one opportunity.  Go ahead.

4          MR. GENENDER:  Your Honor, it took me 27 years to

5    realize when you don't need to speak, you probably shouldn't.

6          THE COURT:  So you're done?

7          MR. GENENDER:  So unless the Court wants to hear

8    from me, I do think there are a few things Mr. Korzenik has

9    said which we vehemently disagree with the law on.

10         THE COURT:  All right.

11         MR. KORZENIK:  So I will point to the citations on

12   the hyperlink issue.  I cited to -- on page 9 is the beginning

13   of the hyperlink discussion of pure opinion.  We cite the

14   *Yangtze* case in Judge Sherwood's decision.

15         THE COURT:  Slow down.  Where are you?

16         MR. KORZENIK:  Page 10 of our opening brief.

17         THE COURT:  Okay.  You are talking about the *Yangtze*

18   decision, but the analysis, then you take the *Yangtze* decision

19   and then you say this is how -- I'm sorry.  I hate to say this

20   to you:  Your papers let you down.  They just did.

21         MR. KORZENIK:  Can I read from them?

22         Yet Judge Sherwood in *Yangtze* actually list the

23   documents that both sides cited and relied on to make his

24   point.  He observed the report includes charts, graphs,

25   hyperlinks to a multitude of publicly available sources and

Proceedings                                    27

1   that's what the J Cap report does here.

2           Then I go to the *Eros* decision.  The *Eros* court went

3   through the same thing, talked about publicly available, all

4   disclosed and some hyperlink.

5           THE COURT:  Yes.

6           MR. KORZENIK:  We cite *Eros.*  We cite *Yangtze*.  And

7   we cite the other Silvercorp 7, all of which are there to

8   support the view that hyperlinks are the point --

9           THE COURT:  And then the Second Circuit big footed

10  everybody with the Palen decision.

11          MR. KORZENIK:  But I'm again asking Your Honor to

12  contemplate that there is a distinction between the facts in

13  Palen.  There was a credibility issue about Bennett as to

14  whether he did or did not see the link.  He says he did not.

15  There is no credibility issue here.

16          In other words, Bennett said I never looked at the

17  link.

18          Number two, the link that he didn't look at was an

19  ABC article.  It was not the criticized website, a totally

20  different thing.  And, therefore, I'm saying the *Yangtze*,

21  *Eros*, *MiMedx*, et cetera, are the accepted way in which this is

22  looked at, and the cases that I then later cite, more on the

23  actual malice side than the opinion side, point to the very

24  same thing.  So that's why these things are opinion, and

25  that's why I want to make a closing point about actual malice.

Proceedings                                                          28

1          THE COURT:  Because that's what we are talking

2   about, malice with Palen, or -- we are talking about

3   falsehood.

4          MR. KORZENIK:  That's correct, but I'm also speaking

5   to both.  In other words, when you do put the criticized

6   subject in a link in your article, particularly one of this

7   kind, and that is going to push both opinion and it is going

8   to defeat a claim of actual malice.

9          So I want to just make one other point as to actual

10  malice and what it really entails and how it is that I think

11  the plaintiff is leading Your Honor into a view of actual

12  malice that is mistaken, and that is this:  When you look at

13  their opposition, they list what they say are four or five

14  factors.  They are actually four because they repeat one.

15  They are all statements, none of which constitute actual

16  malice under the law.

17         THE COURT:  I'm sorry, you're referring to the

18  underlying motion to dismiss?

19         MR. KORZENIK:  No.  I'm now referring to their

20  opposition to their reconsideration motion.

21         THE COURT:  But their opposition right now, in some

22  respect, is really of no moment because, as you can tell, I

23  don't believe your opening submission carries the day.  It

24  doesn't really matter what they said in response.  I have to

25  decide --

```
                    Proceedings                    29
```

1     MR. KORZENIK:  I understand that.  But let's look at

2  what they said.

3     THE COURT:  Why?  I don't think you carry the day on

4  your motion.

5     MR. KORZENIK:  What they did in their opposition was

6  to summarize what they said in their opposing papers and in

7  their Complaint, and I want to address this.

8     THE COURT:  It doesn't matter to me.  I don't

9  really --  with all due respect, I don't care what you wrote

10  in your opposition to the motion to re-consideration.  I read

11  the motion to dismiss papers, I made a determination based on

12  the submissions for the motion to dismiss, as I saw it.

13  You're saying reconsider that.  You have a burden that you

14  have to overcome that is independent of what the plaintiff may

15  write in opposition.

16     So if I don't believe that you have met that burden,

17  aren't I wasting my time if we have a discussion here

18  concerning their opposition?

19     MR. KORZENIK:  No.

20     THE COURT:  I don't think you met their burden.

21     MR. KORZENIK:  In the opening brief --

22     THE COURT:  Of which?

23     MR. KORZENIK:  In two, both motions.

24     THE COURT:  Okay.

25     MR. KORZENIK:  We discussed what actual malice

1  entails.  That is not a secret to anybody anyway.  Most

2  plaintiffs say they were out to get us, they were going to

3  make money by doing it, and they were careless, and would

4  have, could have, should have read it, or called somebody else

5  or called us back again.  That's exactly what they say, and

6  courts throw that out as not plausible pleading of actual

7  malice.

8          Now, I want to emphasize this important point.

9          THE COURT:  Okay.

10         MR. KORZENIK:  As to the cases that we cited in our

11 substantive motion and the reconsideration, they all point to

12 this one important point and that's Harte-Hanks.  You can be

13 negligent.  You can be irresponsible.  A publisher can be

14 grossly irresponsible, a publisher can grossly depart from

15 accepted norms of responsible reporting and speaking.  None of

16 that constitutes actual malice.  None of it does.  And that's

17 *Harte-Hanks*.  That is all of the other Supreme Court decisions

18 that we cited in the opening papers and that we have cited

19 here.  That's not been attended to.

20         And there's another feature of this that is crucial,

21 and that is you don't get to just plead ambient, generalized

22 actual malice.  Actual malice must be directed at a specific

23 statement that is said to be false.  You don't just say that

24 generally.  Even in the Palen case, Palen's -- plaintiff

25 counsel pointed to the specific statements that they

Proceedings                                        31

1    challenged.  They didn't just do the usual routine that most

2    plaintiffs do, which is they were out to make money.

3              *New York Times* versus Sullivan, the ad was an ad.

4    *New York Times* was making money by that and the courts have

5    repeatedly said that the fact that you are making money is of

6    no import on actual malice.  We said that in our opening brief

7    and we said that in the reconsideration.

8              What you can't do is you can't publish a falsehood

9    knowing that it's false or with a high degree of awareness of

10   its probable falsehood.  That's *Harte-Hanks*.  We cited it at

11   the beginning and we cite it at the end.  And when I point to

12   it in their summary --

13             THE COURT:  And, indeed, the Court cites it in its

14   opinion.

15             MR. KORZENIK:  Correct, but didn't apply it in a way

16   that --

17             THE COURT:  You like.

18             MR. KORZENIK:  -- that reflects.  Okay.  But the

19   point is this --

20             THE COURT:  But you understand --

21             MR. KORZENIK:  I understand.

22             THE COURT:  Stop.  Stop.  So what?

23             At the end of the day this is a motion for

24   reconsideration.  The fact that I just said to you that I have

25   cited *Harte-Hanks*, that's the standard that the Court

1   undertook to apply.  You don't like the outcome and I get that

2   and I appreciate it.  I understand it.  That is not a basis,

3   however, for a motion for reconsideration.

4           So in the context of this proceeding, I hear your

5   full-throated disagreement with the way in which the Court

6   applied *Harte-Hanks*, but the fact that we both agree that

7   *Harte-Hanks* is the standard that applies, the fact that on

8   page 18 of my opinion I set out the standard in *Harte-Hanks*,

9   and then I go through an analysis, and based on my review, I

10  decided it meets the standard for the purpose, by the way, of

11  a motion to dismiss.  You simply disagreed with me.  You can't

12  say I overlooked the authority you cited.  You said

13  *Harte-Hanks*.  I say *Harte-Hanks*, page 18.

14          MR. KORZENIK:  I asked you to revisit it because I

15  think it is --

16          THE COURT:  But you have to ask me to revisit it in

17  a manner that is consistent with a motion for reconsideration.

18  It is not simply, judge, you got it wrong.  You don't get an

19  opportunity to simply re-litigate the issue.

20          So what is it that provides a basis under law that

21  would allow for me to reconsider it?

22          MR. KORZENIK:  Because Rule 60(b) provides any other

23  reason that would justify reconsideration and what good, what

24  service does it do to the Court, to the parties, to my client

25  that does not have anything close to the resources that the

Proceedings                                              33

1   plaintiff does to have them litigate issues that clearly are

2   matters of opinion or that clearly do not engage actual malice

3   in the way in which courts have widely applied it.

4          THE COURT:  Well, you know what, you will be able to

5   argue that on a motion for summary judgment with a fulsome

6   record and the Court will revisit it at the appropriate time.

7   But there's no basis for me to revisit my determination on

8   this motion to dismiss.

9          MR. KORZENIK:  Okay.  The closing point and I would

10  point -- there's more to be said.  But I -- Your Honor said

11  that there was -- acknowledged that Emunos (phonetic) stood

12  for the proposition that predictions equal opinion, but then

13  said the report does not signal to readers that it is

14  prediction.

15         THE COURT:  Are you talking about the footnote and

16  the words that I used that you say that are quoted are all

17  future statements?

18         MR. KORZENIK:  Yes.

19         THE COURT:  I was quoting you.

20         MR. KORZENIK:  But they are indeed all future

21  statements because they're nothing more --

22         THE COURT:  But your motion for reconsideration

23  takes issue with the fact that I quoted language that was

24  included future tense, but I was quoting you.  I mean, look at

25  the challenge and look at the footnote.  You take issue with

Proceedings                                                          34

1    it, but I wasn't quoting the report; I was quoting your

2    argument.

3              MR. KORZENIK:  Let's do this --

4              THE COURT:  No, let's not.  Let's stop.

5              MR. KORZENIK:  I am not faulting Your Honor here.

6    What I am saying is that if the statements at issue are

7    predictions about --

8              THE COURT:  Okay.  You know what, I'm kind of done.

9    I don't know what we are discussing because I have stopped

10   listening.  I've stopped listening because I have now said

11   multiple times you haven't met your burden.  I did, however,

12   probably 30 minutes ago, come up with what I thought was a

13   practical way forward so you can accomplish your goal.  I

14   suggest you stop trying to roll this boulder uphill and

15   instead direct your time aned attention to how it is that you

16   can fashion discovery in this case to accomplish what it is

17   that you want to accomplish.  I think you have a better sense

18   it when you do brief something for me what it is I expect.

19             I'm not going to play this is the house that Jack

20   built.  I'm not going to try to figure out what legal

21   citation, what fact citation goes to what.  It needs to be

22   written in a clear, concise, coherent manner so I can follow

23   it.  And with all due respect, it is not.

24             MR. KORZENIK:  I will take this frame and go through

25   each of them and address both the opinion and actual malice

1   issues in that form.  And that's why I suggested at the end

2   there's an alternative what Your Honor has now suggested that

3   we do some kind of motion for summary judgment and then we

4   will work out some scheduling for that.  We will go from

5   there.

6           We think we have done a fair amount of discovery so

7   far.  They may feel that's not the case and we will iron that

8   out with Magistrate Judge Kuo.  But that David and Jordan and

9   I will take a first shot at trying to figure out how to

10  organize that effort.

11          THE COURT:  Would you prefer that I deny your motion

12  or that you withdraw it?  Do you want a W?  I mean, an L.  I

13  don't know what happened with --

14          MR. KORZENIK:  I think you can deny it, because I

15  feel that it's something that I think is not the right

16  approach that we should be taking to the case.  In other

17  words, what would be the difference in Your Honor's view about

18  either way?

19          THE COURT:  Time and resources that I have to

20  undertake to write something when it's all been kind of clear

21  about what it is that I think of your motion and the bases for

22  it.  If --

23          MR. KORZENIK:  Your Honor, I will just take your

24  denial as the order and that would be it.  I do want paper on

25  it, so you just say you denied it.

Proceedings                                    36

1          THE COURT:  I will figure out what I want to do.

2          I'll hear from you.

3          MR. GENENDER:  Thank you, Your Honor.  A couple of

4   key few points, one we heard Mr. Korzenik talk about, his

5   client doesn't have the resources that my client has.

6          THE COURT:  It doesn't really matter to me.

7          MR. GENENDER:  I just want to highlight that because

8   the court does have pending before it an issue about whether

9   that's true or not.  We've been denied discovery on that very

10  about whether they've made a whole ton of money off of this

11  report.  That's what this is about.

12         Beyond that, I just want to say that we don't -- our

13  silence and patience, I don't want the Court to take it as we

14  agree with the factual recitations of the law.

15         THE COURT:  I did not.

16         MR. GENENDER:  Thank you, Your Honor.  I appreciate

17  your time today.

18         THE COURT:  All right.  So do not expect that I am

19  granting this motion for reconsideration.  I will, after

20  looking at it, decide whether I want to write or not write

21  about it.  But I don't want to spend a lot of time on it.  I

22  have a docket of 535 cases.  So having to spend any time on a

23  motion that I don't think has any legs is a little irksome.

24  But in any event, putting that aside --

25         MR. KORZENIK:  I will be happy with a straight

Proceedings                                        37

1    denial.  I just want to have a record of that.

2            THE COURT:  Okay.  But what I do want to say, since

3    I'm sending you gentlemen back to Judge Kuo, in my review in

4    preparation for not this hearing but deciding the motion to

5    compel, I had an opportunity to review the transcript before

6    Judge Kuo, and I can't remember who spoke when or not, but I

7    will tell you this, I was beyond disappointed with the tone

8    and the tenor with which one or both of you spoke to my

9    colleague.  And we don't need to get into who, what, when,

10   where and how.  But understand that when I read that

11   transcript, I was apoplectic.  It is in stark contrast to what

12   was on display before me today.  But I will not allow my

13   colleagues to be spoken to disrespectfully ever under any

14   circumstance.  So keep that in mind, because I will read the

15   transcript again to ensure that my colleagues are being

16   treated with the same level of respect that this Court was

17   treated with today.  So just be mindful of that, folks, be

18   respectful.  Yes?

19           MR. GENENDER:  I apologize, Your Honor.  I hope it

20   wasn't anything I said and certainly didn't intend that.  I

21   didn't get the impression from Magistrate Judge Kuo.  Be that

22   as it may, I apologize.  I hope it wasn't me.

23           On the discovery front, we'll go back to Magistrate

24   Judge Kuo.  My understanding is that we will do discovery.  Is

25   the Court ordering it to be limited?

Proceedings                                              38

1       We've been waiting to open up full discovery for

2   quite some time.  If he wants to get his rightful shot at

3   discovery.

4       THE COURT:  I guess I'm a little confused.  I

5   thought that the defendants had asked for a stay of discovery

6   that was denied, that discovery has progressed in earnest with

7   the exception of the information concerning the funding, am I

8   mistaken?

9       MR. GENENDER:  I never tell a judge they're

10  mistaken.

11      THE COURT:  That's okay.

12      MR. GENENDER:  The state of play was Magistrate

13  Judge Kuo allowed limited discovery and stayed all further

14  discovery until this Court ruled.

15      THE COURT:  What was the limited discovery on?

16      MR. GENENDER:  A good portion of it was the basis

17  for some of the statements in the report.  A lot of that was

18  covered by the New York reporter's privileged which she held

19  applicable and we don't fuss with that at this point.  But

20  that was the bulk of it.  We have not done discovery into

21  certain other areas that we would like to.  We would like to

22  pursue the funding obviously.

23      MR. KORZENIK:  I should tell Your Honor I did not --

24  we have made some discovery requests, but we have not really

25  received very much.  So we do want to engage that.

1            But I would say that when Magistrate Judge Kuo

2    opened on our first session, she just said to them well, what

3    do you want?  They were very ample and they listed what they

4    wanted.  She said okay and we then -- they proceeded with

5    propounding those interrogatories and document demands and we

6    responded very forthrightly to them.

7            And I would at some point take a look at the

8    affidavit of Anne Stevenson-Yang, who is one of the two

9    members of our -- of J Capital Research, she describes how it

10   is.  We explained who was involved in the report, how we

11   generated it, how we decided to choose the subject of it.

12           What we didn't disclose was confidential material

13   which we felt we had a right not to under 79-h.  So we think

14   we have advanced things quite a bit.  If there is something

15   that they want to discuss, we will sort that through, maybe

16   start the conversation outside when we step out and then see

17   what we can do with setting up a conference with Judge Kuo.

18           THE COURT:  All right.  I'm not take making any

19   wholesale determination on how discovery will advance because

20   I really tried not to step on my colleague's toes.  But what I

21   will say is that there is a particular issue that was raised

22   in connection with the motion to dismiss briefing as to

23   opinion or fact statements, some of which require discovery,

24   and I assume you talented lawyers may be able to come up with

25   a way to fashion discovery that might allow for a motion for

Proceedings                                40

1   partial summary judgment on that issue.  I'm not suggesting

2   that no other discovery can ensue, but rather the order in

3   which you will do discovery so that if the case can be

4   narrowed and perhaps then -- I don't know if the statements

5   are narrowed, then it may also implicate other aspects of

6   discovery as a result of the narrowing.

7          I really love the fact that I don't deal with

8   discovery issues as a district court judge.  So that's about

9   all I'm going to say on that.  And I will leave it to my very

10  able colleague and you experienced lawyers who also understand

11  the nuances and the facts of this case to come up with a way,

12  because what I am saying is I would entertain a motion for

13  summary judgment, a partial motion for summary judgment that

14  might serve, potentially, to narrow the scope of the case.

15         We all know what I am saying?  Everyone knows when

16  you go back to Judge Kuo --

17             MR. GENENDER:  Understood.

18             THE COURT:  -- I have not said how, just said give

19  it to you all to figure out.

20             MR. GENENDER:  Understood.  My wife's phrase is for

21  your comment there is not my circus.

22             THE COURT:  That's exactly right.

23             MR. KORZENIK:  Look, Your Honor, I don't like

24  discovery either.

25             THE COURT:  I have to tell you, it's such an

Proceedings                                              41

1    important part of the process and I'm grateful to have Judge

2    Kuo to assist me in that regard.

3                Gentlemen, I do look forward to having you before me

4    again.

5                If there is a motion for summary judgment, just so

6    that you all know, it will operate like the motion to dismiss

7    where we will have a pre-motion conference in advance of the

8    briefing.  My motion for summary judgment practice is somewhat

9    onerous upfront because I do require the 56.1 statements to be

10   prepared in advance of the pre-motion conference.  So,

11   basically, you all have to sort out what it is that you want

12   to say before you start your briefing because you will have to

13   rely on 56.1 statements prepared long before.

14               MR. KORZENIK:  Those are always fun.  I just want to

15   match my colleague's statement about any kind of -- as to our

16   conferences with Magistrate Judge Kuo, whom we have always

17   accepted her rulings on things.  And if I did anything

18   appropriately, I deeply apologize for it because I view

19   respect of the Court.

20               THE COURT:  I appreciate.

21               MR. KORZENIK:  And as one's adversary, I never have

22   hostile relationships if I can absolutely avoid it.

23               THE COURT:  This conference has been a pleasure.  It

24   doesn't stand in stark contrast to what I read, but maybe it

25   read poorly.  But if it did, it read poorly to my clerk as

Proceedings                                     42

1   well.

2          MR. KORZENIK:  By the way, this is one of the

3   things, this is goes back to how it started, those phone calls

4   things are hard because you don't know when people are

5   starting and stopping and then there is a delay as well.

6          THE COURT:  They're horrible.

7          MR. KORZENIK:  So I think that if I was the one who

8   appeared that way, please assign it to that.

9          THE COURT:  I will take it, gentlemen.  I would have

10  been remiss if I hadn't mentioned it, but I accept your

11  representation and will assume that any disrespect was

12  inadvertent and certainly not intended.

13         It is Friday and three o'clock.  I will say this,

14  you're a partner at your firm?

15         MR. GENENDER:  I am.

16         THE COURT:  Your colleague is a?

17         MR. GENENDER:  Is an associate.

18         THE COURT:  Understand.  What year are you?

19         MS. KAZLOW:  Sixth.

20         THE COURT:  A sixth year.  Well, will I have an

21  opportunity to hear from your colleague at some point?

22         MR. GENENDER:  She has already argued in front of

23  Magistrate Judge Kuo, and yes, you will, Your Honor.

24         THE COURT:  I look for to it.

25         MR. GENENDER:  I didn't get much of a chance today

Proceedings                                        43

1   myself.

2            THE COURT:  No, you didn't.  Fair enough.

3            MR. GENENDER:  For what it is worth, it may appear

4   to be kissing up, Magistrate Judge Kuo is wonderful.  She has

5   a great demeanor.  I don't agree with her rulings all the

6   time, but I can't complain that she didn't give us a fair shot

7   at it.

8            THE COURT:  She did not raise this issue with me.

9   This was just on me.  And she is.  I happen to believe the

10  judges in this courthouse just as individual people are

11  incredible.  They're smart and I think they approach this with

12  the level of humanity that is not always seen everywhere.  At

13  the end of the day, we are all here to do our jobs to the best

14  of our ability.

15           MR. GENENDER:  I will tell you, the security

16  downstairs were the nicest security that I have dealt with in

17  any courthouse in the country.

18           THE COURT:  The E.D.N.Y., I'm telling you.

19           MR. KORZENIK:  The last time I was here in the

20  courthouse, I was before Judge Weinstein.  He was 90 -- he

21  must have been 98 when I was there in '99.  He was just

22  unbelievably on top of it, respectful of everybody and gave

23  everybody their shot.

24           One thing that is fascinating, he said, look, you

25  both sides have some science issues here.  I can't decide this

1   without understanding it.  He said so we are going to have a

2   science day and you guys are going to come in and tell me

3   about the science and technology at issue from your point of

4   view.  It's not a motion.  I just want to learn.

5            THE COURT:  Educate me.

6            MR. KORZENIK:  Yes.

7            THE COURT:  And isn't it nice when we can all

8   recognize what we do and do not know.  We don't get degrees in

9   everything because they elevate us to the bench.  So we have

10  to do our best.  So when you all can educate us, it is always

11  a great fortune for us to have.

12           MR. GENENDER:  I've been told getting to be a good

13  lawyering doesn't involve necessarily knowing more, just be

14  comfortable not knowing it and finding out.

15           THE COURT:  It's true.  It's been a pleasure having

16  you before me.  Thank you all.

17           (Matter adjourned.)

18

19

20

21

22

23

24

25