## MILLER KORZENIK SOMMERS RAYMAN LLP
THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

*via ECF*                                                                                               May 20, 2024

Hon. LaShann DeArcy Hall
U.S. District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   ***Novagold Resources Inc. v. J Capital Research USA*, 20-cv-02875-LDH-PK**
   **Objections/Appeal of May 6, 2024 Order & March 29 Ruling [Dkt. 157]**

Dear Judge DeArcy Hall,

We represent J Capital Research ("JCap") in this defamation action by NovaGold Resources ("NG"). The action stems from JCap's May 2020 Report, "*Pipe Dream: The deposit that will never be mined,*" which analyzed and critiqued NG's 2012 feasibility study of the Donlin Mine and opined that the project is not feasible. In 2020, NG determined that it needed a new feasibility study. There is still no new feasibility study. **Appeal**—Pursuant to Individual Practice Rule IV.A, we appeal Magistrate Judge Kuo's March 29, 2024 discovery determination [Dkt. 157] and May 6, 2024 Order denying JCap's April 12 Motion for Reconsideration of the determination. J Cap's Motion for Reconsideration asked *in the alternative* to be treated as an appeal to Your Honor of the March 29 decision. This letter reformats the Motion as per Rule IV.A.

### I.   Identity of Party Shorting Stock is "News" under Reporters Privilege.

This Court has consistently reiterated its finding that New York's Reporters Privilege § 79-h applies to the Report. *See* Minute Order 8/11/21, Order 1/19/22, Order 2/16/24. The identity of a party shorting NG is "news" under 79-h, defined as "written [] information…concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare." N.Y. Civ. Rights Law § 79-h (a)(8) (2021). Sect. 79-h(b) provides "absolute protection for confidential news[.]" The privilege grants "the broadest possible protection to the sensitive role of gathering and disseminating news of public events[.]" *Holmes v. Winter*, 3 N.E.3d 694, 698-99 (N.Y. 2013) (citations omitted). It applies to "information obtained in the newsgathering process." *Beach v. Shanley,* 62 N.Y.2d 241, 245, (1984).

J Cap secures revenue as part of its editorial and publishing process and relies on that to support its independent reporting. As a niche publication writing in-depth analysis on public companies, unorthodox revenue streams "are not uncommon among, and in fact are essential to the economic viability of specialty or niche publications that target relatively narrow audiences by focusing on a topic not ordinarily covered by the general news media[.]" *Murray Energy Corp. v. Reorg Rsch., Inc*., 58 N.Y.S.3d 369, 371 (2017). Securing niche clients interested in shorting based on J Cap's reporting is "essential to the economic viability" of J Cap and an indisputable part of a specialty publication's newsgathering process. *Id*., *see also Wilkins v. Kalla*, 459 N.Y.S.2d 985, 987 (N.Y. Sup.

Ct. 1983) (application "*to all aspects of process of news gathering and dissemination*"). JCap promised anonymity to this client. The information is absolutely protected "information obtained in the newsgathering process." 79-h(b); *Beach*, 465 N.E.2d at 306.

Media outlets regularly report information on who is shorting a particular stock. For example, Yahoo Finance reported "Kerrisdale Capital is short MicroStrategy stock and long bitcoin."[1] The identity of shorts may lend credence to a position, like Investing.com reporting "Equinix [] stock took a hit after Hindenburg Research announced its short position."[2] Big names often surround short positions, as reported by Business Insider: "Elon Musk blasted short-sellers as bloodsuckers. Bill Gates, 'Big Short' star Michael Burry, and other top investors have bet against Tesla," "two prominent investors who were short Tesla around that time… Greenlight Capital's David Einhorn [and] … Jim Chanos, a famed short-seller (*viz*., Enron) and Kynikos Associates' chief, dismissed Tesla's stock as virtually worthless too."[3] The identity of a third-party who shorted NG in association with J Cap's report is unpublished news. *In re Eisinger*, No. 09-10053-PBS, 2011 WL 1458230, at *2 (S.D.N.Y. Apr. 12, 2011), *aff'd sub nom. Baker v. Goldman Sachs*, 669 F.3d 105 (2d Cir. 2012) (finding protection against disclosure of "unpublished details of the newsgathering process"). The identity of the anonymous short seller is "*absolute[ly]*" protected under 79-h(b).

## II. The Court Should Not Have Overlooked or Disregarded JCap's Fully Briefed Anonymous Association Privilege.

On Feb. 2, 2022, NG appealed Mag. Kuo's Denial of its Renewed Motion to Compel Request 14 and Interrog. 3 to Your Honor. Dkt. 88. Your Honor remanded back the Reporters Privilege and anonymous speech question to Mag. Kuo on Sept. 28, 2022. During this years-long motions practice, NG has expanded the scope of the initial demands underlying Your Honor's referral to include various hypotheticals on "any type of financial arrangement…related to the report." Transcript, Dec. 22 Arg., 32: 12 -15. The Court noticed this was outside the scope of the underlying requests: "[T]he fact that you've now used the word financial arrangement is different from what your document request and interrogatories say." *Id*., at 32: 15; 33: 1-2. The Court recognized too that the word "funder" did not appear in the requests. *Id.* Opposing counsel even offered to propound new requests to cure this difficulty: "We're not at 25 interrogatories yet. We can conceivably serve other interrogatories." *Id*., at 12: 24-25. Nevertheless, NG did not serve new interrogatories that matched its evolving arguments.

J Cap has fully answered Req. 14 and Interrog. 3, and this Court agreed: "[T]he answer is no one paid any inducement to write the report, there was no commission, nobody commissioned it, and the same thing for consideration ...a quid pro quo... paid to

---

[1] Will Canny, "MicroStrategy Slumps 15% After Short Seller Says Stock Trades at an Unjustifiable Premium to Bitcoin," Yahoo Finance (March 28, 2024).
[2] David Love, "Short Sellers Target Equinix, NYCB in Commercial Real Estate Market Shift," Investing.com (March 21, 2024).
[3] Theron Mohamed, "Elon Musk blasted short-sellers as bloodsuckers. Bill Gates, 'Big Short' star Michael Burry, and other top investors have bet against Tesla," Business Insider (Sept. 19, 2023).

write the report. All of those, the elements of components of document request 14... And then for interrogatory [3], who paid and underwrote, he's saying J Cap did." Tr., Dec. 22 Oral Arg., 25: 10-18. There is nothing to compel. In response to broader demands now asking for "any type of financial arrangement," J Cap raised an additional privilege applicable: the right of anonymous association. J Cap has never waived this privilege and Mag. Kuo acknowledged that this privilege was fully briefed on remand.[4] Because the expanded demand was permitted on remand, the properly addressed privilege should have been considered. It was clear error to refuse to consider JCap's assertion of the anonymous association privilege. The intervenor will be asserting that privilege shortly.

This privilege—fully briefed and never waived—must be considered before any information is compelled. "There is no question that public disclosure of donor identities burdens the First Amendment rights to free speech and free association." *Citizens Union of City of New York v. Att'y Gen. of New York*, 408 F. Supp. 3d 478, 494 (S.D.N.Y. 2019) (citing *Citizens United, NAACP* etc.).[5] The First Amendment protects "not just [] speakers, but publishers and those who associate themselves with publications – distributors, donors, members, associations with groups involved in impact litigation, subscribers, purchasers of publications… all such persons associated with the distribution, dissemination, and receipt of a challenged publication." Def. Mem., Dkt. 120, at 10. JCap's Report, deemed by this Court protected by 79-h, is a "protected activity" to which the association privilege attaches. The First Amendment protects JCap's client's anonymous association with the Report.

### III. Neither Financial Motive Nor Identity Has Relevance for Actual Malice.

NG claims to need the *identity* for actual malice. Dkt. 88. But financial motives, specifically a short position, are not a basis for actual malice. As recent SDNY caselaw provides: "Plaintiff claims that Defendants' short positions in Plaintiff's stock gave them an improper motive to make defamatory statements about Plaintiff. **But the short positions on their own do not support a showing of actual malice…While the short position plausibly created a profit motive to publicize the short seller's critiques, that does not lead the Court to infer that they did not subjectively believe those critiques.** *See Biro v. Condé Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013)." *Cassava Sciences, Inc., v. Bredt, et al.,* No. 1:22-cv-09409, Dkt. 119 (March 28, 2024). JCap already revealed on the first page of the Report that it "may benefit from short positions a client has in all stocks covered herein." JCap confirmed being on the "short side of investments" during its deposition. NG has already taken discovery on JCap's putative bias. There is no mystery regarding JCap's financial incentive. <u>No revelation of the identity of a third-party holding a short position would prove that JCap did not subjectively believe its Report.</u> Its identity is not only privileged but also irrelevant.

---

[4] "I'm looking at the opening brief by defendant…it says the reporter's privilege, the First Amendment, and its association and anonymity rights. And so it is about the association. And so that I think is enough to put plaintiff on notice that if it wanted to address association rights, it was to do that in its opposition. And so I think that there's no need for further briefing on the issue." Oral Arg., Dec. 12, 2022, Tr. at 68: 8-17.

[5] *Citizens United I,* 558 U.S. 310, 366 (2010) (burden on speech); *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (per curiam) (burden on privacy of association and belief); *NAACP v. Button*, 371 U.S. 415, 428–29 (1963).

3

                                                Respectfully,

                                                */s/ David S. Korzenik*
                                                David S. Korzenik
                                                dkorzenik@mkslex.com

cc: Counsel of Record by ECF