**BAKER BOTTS** LLP

| | |
|---|---|
| 30 ROCKEFELLER PLAZA<br>NEW YORK, NEW YORK<br>10112-4498<br><br>TEL +1 212.408.2500<br>FAX +1 212.408.2501<br>BakerBotts.com | AUSTIN NEW YORK<br>BRUSSELS PALO ALTO<br>DALLAS RIYADH<br>DUBAI SAN FRANCISCO<br>HOUSTON SINGAPORE<br>LONDON WASHINGTON |

June 13, 2024

Hon. Peggy Kuo
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Brendan F. Quigley
TEL: 2124082520
FAX: 2122592520
brendan.quigley@bakerbotts.com

      Re:    *Novagold Resources Inc. v. J Capital Research USA LLC*,
            No. 20-cv-02875-LDH-PK

Dear Magistrate Judge Kuo:

We represent Plaintiff Novagold Resources Inc. ("Novagold") in this action and respectfully submit this joint letter pursuant to Local Civil Rule 37.3(c) seeking the Court's intervention to compel Defendant J Capital Research USA LLC ("J Capital") to respond to certain deposition questions.[1]

     **I.**     **NovaGold's Position.**

By way of background, in April 2024, Novagold took the depositions of (i) Anne Stevenson-Yang, J Capital's CEO, who also functioned (by agreement of the parties) as J Capital's Rule 30(b)(6) witness, and (ii) Tim Murray, J Capital's co-founder and the primary author of the May 28, 2020 Report, who now works as CEO of a mining company. J Capital's counsel instructed the witnesses not to answer numerous questions that are clearly relevant to both (i) scienter and (ii) falsity elements of Novagold's defamation claim. After reviewing the transcripts, the parties engaged in meet and confers and further correspondence during May regarding the failures to answer. The parties have been unable to resolve their disputes on the following issues:

**Information Regarding J Capital's Compensation as a Result of the Report.** Ms. Stevenson-Yang admitted that J Capital received payment as a result of the Report's publication but was instructed not to answer any questions regarding (i) the identity of a person or entity who paid J Capital[2] and (ii) the existence of any written agreement with the client(s) who paid J Capital as a result of the Report.[3] Mr. Murray was similarly instructed not to answer questions about (i) identity of J Capital's "partners" who were its revenue sources, (ii) the industry these "partners" were in, or (iii) the amount of remuneration J Capital received as a result of the Report.[4] Further, although Ms. Stevenson-Yang as J Capital's 30(b)(6) witness, she was unable to remember how much J

---

[1] In an abundance of caution, Novagold has filed the relevant deposition transcripts of J Capital's witnesses under seal, given both were marked "Confidential". At J Capital's request, we are also attaching email correspondence between the parties on these issues.
[2] Stevenson-Yang Tr. 41:7-10, 18.
[3] Stevenson-Yang Tr. 48:9-11; 49:22-50:23.
[4] Murray Tr. 36:2-37:10, 38:16-21, 52:9-22.

ACTIVE 117580751.1

Capital was compensated for publishing the Report and admitted that she didn't look into that issue before testifying.[5]

Further, both witnesses were instructed not to answer questions regarding the identity of any purported funder or underwriter of the Report.[6]

**Advance Notice of the Report.** Mr. Murray was also instructed not to answer questions about whether (i) "anyone was given advance notice before May 28, 2020 that this report will be coming out,"[7] and (ii) whether J Capital had a practice of given its clients advance notice that a report would be coming out.

**Knowledge of Individuals Who Owned Novagold stock**. Mr. Murray also was instructed not to answer "How many people have you known who have owned Novagold stock or options?"[8]

**Identity of individuals consulted in connection with the Report**. Mrs. Stevenson-Yang and Mr. Murray refused to answer questions concerning the identity of individuals consulted with regarding the Report.[9] Moreover, in contrast to prior statements, the deposition testimony made clear that most of these individuals had ***not*** been promised or requested confidentiality. Ms. Stevenson-Yang testified that, as to an engineer, the purported promise of confidentiality had been part of a "blanket authorization" to an expert "network service," which she refused to identify, not to the engineer himself.[10] Further, Mr. Murray testified that he spoke to three other individuals about the Report, but refused to identify them based on his "implicit assumption" they wanted their identities to be kept confidential.[11]

**Sword and shield issue**. During his deposition, Mr. Murray acknowledged that, the day after the Report was issued, he stated on Twitter that "I have notes from the call, the emails, et cetera . . . and happy to discuss our research with $NG anytime." Murray nonetheless refused to answer questions about the materials he was referring to.[12]

    **II.**     **J Capital's Position.**

J Cap has answered the non-privileged, relevant demands that do not touch on matters addressed by the Interested Party in its motion to intervene.

         **a.**    **Questions Regarding the Interested Party.**

J Cap did not answer questions regarding the identity of a person or entity who paid J Cap or was a revenue sources. That is the subject of the pending motion. J Cap did answer in a

---

[5] Stevenson-Yang Tr. 42:6-17.
[6] Stevenson-Yang Tr. 39:9-13, 39:21-40-7; 40:11-12; 40:19-12; *see* Murray Tr. 35:5-21 (direction not to answer question about issues that "begin to touch on things that are at issue in the pending motion"); 77:3-5 (the same).
[7] Murray Tr. 73:13-74:15
[8] Murray Tr. 77:23-24.
[9] *See* Stevenson-Yang Tr. 24:14-18 (direction to the witness not to answer question about the identity of the "engineer"); Murray Tr. 88:2-18.
[10] Stevenson-Yang Tr. 26:24-5; 27:13-19.
[11] Murray Tr. 61:11-62:3.
[12] Murray Tr. 80:20-81:25.

May 13 email that the industry of the Interested Party was "Financial/business sector," and stated in a May 20 email that "[a]ny more specificity risks disclosing information that could identify the anonymous party at issue in the forthcoming intervention." J Cap has transparently disclosed its financial bias from day one of the Report. The anonymous identity does nothing to show that J Cap did not subjectively believe its Report; it has no legal bearing on actual malice.[13]

J Cap is willing to disclose that there was no written agreement in effect at the time of the Report with the anonymous party. J Cap is not willing to disclose the amount of money received from the Report, as it is necessarily encompassed in the Interested Party's motion and additionally not relevant to NovaGold's claims of bias. The amount or possibility of revenue was not known until *after* the Report's publication. This could not be relevant to whether J Cap subjectively believed its Report when it was writing and reporting—the relevant time period to analyze actual malice.

J Cap has already disclosed that the anonymous Interested Party was the party who received advance notice of the Report before May 28, 2020. J Cap did not reveal the identity and was cautious to provide identifying information. The underlying relationship and its nature have been described to NovaGold numerous times now. J Cap is willing to answer that it had no consistent practice of giving a client advance notice that a report would be coming out.

J Cap has answered that it believed the Interested Party held positions in NovaGold, and that neither Ms. Stevenson-Yang nor Mr. Murray held any NG positions. Other than the intervenor, neither J Cap nor any of its principals know of any other parties who held NG shares in connection with the Report.

### b. Questions Protected by Privilege.

J Cap did not answer questions regarding the identity of individuals consulted in connection with the Report – i.e., sources. That has been ruled privileged under the Reporters Privilege by this Court. NovaGold never met its burden to overcome that privilege and cannot relitigate it now.

J Cap did not answer questions regarding Mr. Murray's notes used in writing the Report. That has been ruled privileged under the Reporters Privilege by this Court. Mr. Murray has never waived that privilege. Mr. Murray stated in his deposition: "that tweet was made before a legal suit was made against J Capital, and that really changes my willingness to discuss anything." NG again asserted in a May 13 email: "Privileged. Any reference in tweet was pre-litigation, as Mr. Murray made clear in his deposition." Similarly, NovaGold has never met its burden to overcome that privilege and cannot relitigate it now.

---

[13] *See Cassava Scis., Inc. v. Bredt, et al.*, No. 1:22-cv-09409, 2024 WL 1347362 (S.D.N.Y. March 28, 2024) ("short positions on their own do not support a showing of actual malice...While the short position plausibly created a profit motive to publicize the short seller's critiques, that does not lead the Court to infer that they did not subjectively believe those critiques."), *adopting report and recommendation*, No. 22CV9409GHWOTW, 2024 WL 555484, at *FN 28 (S.D.N.Y. Jan. 3, 2024) (Wang) ("Pleading that [] Defendants are short sellers is insufficient to plead that [] Defendants knew that the [publications] were false or made with reckless disregard for their falsity.").

Respectfully,

Brendan F. Quigley

David S. Korzenik

ACTIVE 117580751.1