UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------ X
                                                        :
NOVAGOLD RESOURCES, INC.,            :
                                                       :
                            Plaintiff,                   :      **REPORT AND**
                                                       :      **RECOMMENDATION**
            -against-                         :
                                                       :      1:20-cv-2875 (LDH)(PK)
J CAPITAL RESEARCH USA LLC,           :
                                                       :
                            Defendant.             :
                                                       :
------------------------------------------------------ X

**Peggy Kuo, United States Magistrate Judge:**

      In this libel case brought by Plaintiff Novagold Resources Inc. ("Novagold") against Defendant J Capital Research USA, LLC ("JCap"), an anonymous Third Party has moved to intervene to protect against disclosure of its identity ("Motion to Intervene" or "Motion"). (Mot., Dkt. 175-1.) The Honorable LaShann DeArcy Hall has referred the Motion to Intervene to me for a Report and Recommendation. (Order dated July 3, 2024.)

## BACKGROUND

      Novagold alleges that JCap published false and misleading statements about it in a May 2020 research report titled "Pipe Dream" ("Report," Dkt. 39-1), causing harm to Novagold's reputation. (*See* Am. Compl., Dkt. 34.) The Third Party is a short seller and research client of JCap, who paid JCap a percentage of its earnings from trading Novagold stock, approximately $350,000, in exchange for pre-publication access to the Report. (*See* Third Party Ltr. at 3, Dkt. 186; Mot. at 1.)

      Novagold served discovery demands on JCap, including for the identity of any "funders" of the Report. (*See* Pl.'s Mot. to Compel at 3, Dkt. 56; Hr'g Tr. 44:7, August 11, 2021, Dkt. 70.) JCap has objected to that discovery, asserting various privileges, including the New York reporter's privilege, the anonymous speaker privilege, and, most recently, a purported right of "anonymous

1

association." (*See* Mem. Dec'n, Dkt. 157.) Because this last argument was newly raised and outside the scope of the narrow issue that was referred to me by Judge DeArcy Hall, I declined to consider it. (*Id.* at 13.)

Shortly thereafter, counsel for the Third Party appeared and informed the Court of its intention to move to intervene. (Min. Entry and Order, May 2, 2024.) On July 1, 2024, the Third Party filed the Motion, requesting (1) that it be permitted to litigate this motion anonymously,[1] (2) that it be allowed to "intervene for the limited purpose of seeking a protective order prohibiting disclosure of its identity in this case," and (3) that the Court issue such a protective order. (Mot. at 2–3.) Plaintiff opposed ("Opp.," Dkt. 178), and the Third Party filed a reply. ("Reply," Dkt. 179.).

## DISCUSSION

I. <u>Motion to Intervene</u>

The Federal Rules of Civil Procedure provide for intervention as of right under Rule 24(a). It states, in pertinent part: "On timely motion, the court must permit anyone to intervene who: …(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent the interest." Fed. R. Civ. P. 24(a). The Second Circuit has found that a movant seeking to intervene as of right "must (1) timely file an application, (2) show that [it has] an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F. 4th 792, 799 (2d Cir. 2022). "While an applicant must satisfy all four requirements, this test is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly

---

[1] On June 21, 2024, the Third Party moved for an emergency protective order after its identity was inadvertently disclosed to Plaintiff in metadata in the Third Party's motion papers. (Third Party Ltr., Dkt 171.) The Court granted the motion temporarily, pending a decision on the Motion to Intervene. (Order dated June 24, 2024.)

on any one of the criteria." *Gerschel v. Bank of Am., N.A.*, No. 20-CV-5217, 2021 WL 1614344, at *2 (S.D.N.Y. Apr. 26, 2021).

"In seeking intervention under this Rule, the proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016).

### A. Whether the Motion Is Timely

The timeliness of a motion to intervene is a matter entrusted to the sound discretion of the Court. *Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014). "Factors to consider in determining timeliness include: (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Id.* (internal quotation removed).

JCap's consistent attempts to resist disclosure of the Third Party's identity since 2021 should have given the Third Party notice that its interest in remaining anonymous was implicated in this litigation. The Third Party is "a sophisticated asset manager" who likely "has been following the litigation. . . ." (Opp. at 9 (citing *Farmland Dairies v. Comm'r of New York State Dep't of Agric. & Markets*, 847 F.2d 1038, 1044 (2d Cir. 1988) (affirming denial of motion to intervene on timeliness grounds and noting that the "[a]ppellants were aware of this and related litigation, and are not poor, ignorant people whose rights have to be protected").)

The Third Party contends, however, that it did not need to intervene in previous years because prior to the Court's Memorandum Decision on March 29, 2024, "Novagold's discovery arguments were rejected at every turn. . . . Consequently, any motion to intervene filed prior to [that Decision] would have been denied as unnecessary." (Reply at 4.)

The standard for timeliness is not when a party knows of its "need" to intervene but rather when "the applicant knew or should have known of its interest" in the action. *Floyd*, 770 F.3d at 1058. A party with an interest in the litigation is not permitted to wait on the sidelines for a fumble before asking to be on the field.

On the other hand, however, I do not find that granting the Motion to Intervene now will cause further delay or result in additional prejudice to Novagold, and the parties do not identify any unusual factors that militate for or against timeliness. (*See* Mot. at 14, n. 7.) While the parties' grasping for legal theories has contributed to delays in this case, analysis of the issue for which the Third Party seeks intervention—an order protecting its identity, based on a purported First Amendment right of association—is currently before Judge DeArcy Hall. (Mot. at 13.) Because the issue has not yet been fully litigated, allowing intervention at this point for this limited purpose does not give JCap "another bite at the apple" (*see* Opp. at 10), significantly delay this litigation, or otherwise prejudice Novagold. Thus, I find that the Third Party's Motion was timely under the circumstances.

### B. Third Party's Asserted Interests and Impairments of Those Interests in this Action

"[T]he putative intervenor [must] have an interest in the proceeding" that is "direct, substantial, and legally protectable. An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec., Inc.*, 922 F.2d 92, 96-97 (2d Cir. 1990) (citations omitted).

"To demonstrate impairment, the proposed intervenor must show that his interest may be impaired by the disposition of the action, which can be satisfied by asserting that as a practical matter, an adverse decision may compromise the party's claims." *Royal Park Invs. SA/NV*, 2018 WL 3655781, at *5 (quotation, citation, and alterations omitted).

The Third Party argues that it "has demonstrated a reasonable probability that it would be harmed, and suffer substantial impairment of its right to freedom of association" if it is not allowed to intervene to protect disclosure of its identity. (Mot. at 14.) Although JCap has already raised this constitutional privilege claim several times (Def.'s Mem. in Support of Protective Order at 9–10 (Dkt. 120); *see also* Def.'s Ltr. at 3 (Dkt 165); Hr'g Tr. 11:15–18, June 28, 2024 (Dkt. 180)), the Court has not yet considered it. The Third Party has sufficiently identified an interest that *may* be impaired. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001) ("An interest that is otherwise sufficient under Rule 24(a)(2) does not become insufficient because the court deems the claim to be legally or factually weak.").

### C. Whether the Third Party's Interests Are Adequately Protected

"The burden of showing that the [p]roposed [i]ntervenors' interests are not adequately protected by an existing party is 'minimal.'" *Id.* (quoting *CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991)). In general, "[t]he burden of persuasion to demonstrate adequacy of representation falls on the party opposing intervention." *CBS Inc.*, 136 F.R.D. at 368 (citation omitted). However, where a litigant and a proposed intervenor "have the same ultimate objective," the Second Circuit "demand[s] a more rigorous showing of inadequacy." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (citation omitted). In such instances, there is a "presumption of adequate representation" that "the movant to intervene must rebut." *Id.* at 179–80.

The Third Party and JCap share the same objective in this motion to maintain the confidentiality of the Third Party's identity, and JCap has attempted to protect the Third Party's identity since at least mid-2021. (Opp. at 14.) However, Novagold has repeatedly challenged JCap's standing to assert a constitutional right that it contends belongs to the Third Party, not JCap. (*See, e.g.*, Pl.'s Br. at 10 (Dkt. 118) ("J Capital does not have standing to assert [the constitutional rights of a third-party]."); Hr'g Tr. 47:16–17, December 22, 2022 (Dkt. 139) (same).) Because the issue of JCap's

5

standing may impede its ability to continue asserting this right, I find that the Third Party's interest is not adequately protected by JCap.

Based on consideration of all relevant factors, I find that the Third Party has shown that it may intervene as of right, and I respectfully recommend that it be permitted to intervene for the limited purpose of asserting a constitutional right to resist disclosure of its identity.

II.     **Request for a Protective Order to Shield Third Party's Identity from Disclosure**

Federal Rule of Civil Procedure 26 provides broad discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A district court may limit discovery "for good cause" by making "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order "forbidding the disclosure of discovery." Fed. R. Civ. P. 26(c)(1)(A). "[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987).

The only matter the Third Party seeks to protect is its identity, which it alleges is protected by a qualified privilege under the First Amendment freedom of association and should not be disclosed. (Mot. at 2–3.) The Third Party argues that it "associate[es] for the purpose of exposing misleading statements made by a publicly traded company" (*id.* at 20) and that it is "reasonably probable that disclosure of its identity" will infringe on its First Amendment rights (*id.* at 22). The Third Party argues further that Novagold's need for disclosure cannot withstand the "exacting scrutiny" standard required to overcome the privilege. (*Id.* at 23.)

A.     *Whether the Third Party's Freedom of Association Is Implicated*

The Supreme Court has protected the First Amendment "freedom of association" in two distinct senses: the "freedom of intimate association" and the "freedom of expressive association." The "freedom of intimate association" concerns an individual's "choices to enter into and maintain

certain intimate human relationships [that] must be secured against undue intrusion by the State." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984). It is not implicated here.

"Expressive association" is protected as the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618 (recognizing the freedom of expressive association "as an indispensable means of preserving other individual liberties"). For a group to obtain protection under the First Amendment's expressive associational right, the Court must first "determine whether the group engages in 'expressive association.'" *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (noting that while this protection "is not reserved for advocacy groups . . . a group must engage in some form of expression").

Here, the Third Party claims the freedom to associate with JCap, with whom it "associat[es] for the purpose of exposing misleading statements made by a publicly traded company. . . ." (Mot. at 20.) The Third Party attempts to style itself as a type of corporate watchdog whose mission is to "further[] the public interest in an honest marketplace" (Reply at 9) and claims to advance certain economic beliefs, *i.e.*, short selling and its purported market benefits. (Mot. at 21.) This type of association, however, is hardly the kind of expressive association that merits constitutional protection.

On the spectrum of associative activity that will be protected or unprotected by the First Amendment, the clearest instances of expressive associational protection are granted to religious groups, labor unions, and political advocacy organizations. (*See Jaycees*, 468 U.S. at 621–22 (collecting cases).) These groups engage in the activities that are core to their fundamental purposes and are explicitly protected by the First Amendment: speech, assembly, petition for the redress of grievances, and the exercise of religion. *See IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1191–92 (9th Cit. 1988). *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson* ("*NAACP*"), 357 U.S. (1958) (civil rights organization); *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000) (political party);

7

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012) (religious group); *Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1 (1964) (labor union).

On the other end of the spectrum, courts have consistently rejected associative protection for predominantly commercial organizations. *See, e.g.*, *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 20 (1988) (O'Connor, J, concurring) ("Predominately commercial organizations are not entitled to claim a First Amendment associational or expressive right"); *Jaycees*, 468 U.S. at 634 (O'Connor, J, concurring in part and concurring in judgment) ("[T]here is only minimal constitutional protection of the freedom of commercial association."); *Rivers v. Campbell*, 791 F.2d 837, 840 (11th Cir. 1986) (rejecting a freedom-of-association claim brought by a snow-cone vendor because it was a commercial enterprise); *Storer Cable Commc'ns v. City of Montgomery*, 806 F. Supp. 1518, 1560-61 (M.D. Ala. 1992) (rejecting a claim by cable-television franchisee, programmers, and distributor that cable-television ordinances violated their right to associate for commercial purposes). *See also* James D. Nelson, *The Freedom of Business Association*, 115 Colum. L. Rev. 461, 464 (2015) ("Although the Supreme Court has never explicitly endorsed the distinction between expressive associations and commercial associations, that basic dichotomy is commonly accepted in the law.").

In *IDK, Inc. v. Clark County*, the Ninth Circuit Court of Appeals denied expressive associational protection to a group of escorts contesting a county statute that purportedly violated their freedom of association rights. 836 F.2d 1185 (9th Cir. 1988). The court reasoned, "Under any test it is clear that the escort services are primarily commercial enterprises, and their activities are not predominantly of the type protected by the [F]irst [A]mendment." *Id.* at 1195. Despite the fact that escorts engaged in some expressive conduct, the court concluded that "the escort services make no claim that expression

is a significant or necessary component of their activities," noting that the services did not emphasize the escorts' "skills in conversation, advocacy, teaching, or community service."[2] *Id.*

Similarly, in *Wine & Spirits Retailers, Inc. v. Rhode Island*, the First Circuit Court of Appeals found that the business relationship between a wine franchisor and its franchisees did not have sufficient expression to be protected. 418 F.3d 36, 53 (1st Cir. 2005) ("[T]he mere fact that the joint activities that define the business relationship between the franchisor and its franchisees have some communicative component cannot, in and of itself, establish an entitlement to the prophylaxis of the First Amendment.").

In a case brought by the owner of a roller-rink and dance hall, the Supreme Court held that a roller-skating rink and its patrons do not have the protection of "expressive association." *City of Dallas v. Stanglin*, 490 U.S. 19 (1989). The court reasoned that "[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Id.* at 25.

By contrast, in *Dale*, the Supreme Court held that the Boy Scouts organization engaged in expressive activity where its general mission was "to instill values in young people." *Dale*, 530 U.S. at 649–60. Similarly, the Second Circuit Court of Appeals has found that "trade associations meet the criteria for expressive group activities protected by the First Amendment" where they had "an educational function," helped their members comply with regulations, and lobbied at the city and state level. *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 998–99 (2d Cir. 1997).

---

[2] As part of its analysis, the court examined the "advertisements and other publications" of the escort service plaintiffs to determine "whether they engage in protected expression." *IDK*, 836 F.2d at 1196, n 6. The court found that, contrary to plaintiffs' expressive contentions, their customers selected escorts based on commercial considerations.

9

The Third Party describes itself as a "short seller" that "manages money on behalf of individuals, endowments and pension funds." (Doe 2 Decl. ¶¶ 1, 5.) It focuses its investment activities on one specific strategy, short selling, which it argues provides benefits to the marketplace beyond its immediate clients (*see id.* ¶¶ 3-4). It also quotes JCap's self-description on its website, "'We're activists usually on the short side. We're biased.'" (Mot. at 9.) A shared affinity for a particular investment strategy, however, does not transform a primarily commercial activity into one of a shared belief system or create a constitutionally protected association between the Third Party and JCap.

The Third Party does not contend that it and JCap formed a trade association with any educational function or to engage in similarly expressive activity. The Third Party states clearly the purpose of its association with JCap was limited: "JCAP agreed to provide us with pre-publication access to their final report in exchange for a percentage of any net profits we generated from our short position on Novagold." (*Id.* ¶ 6.) In other words, the association between the Third Party and JCap aimed "to generate favorable returns for the money [the Third Party] manages on behalf of others." (Opp. at 16.) This is in stark contrast to the organizations that have received protection, for example, the Boy Scouts, *Dale*, 530 U.S. 640, an anti-domestic violence organization, *W. Virginia Coal. Against Domestic Violence, Inc. v. Morrisey*, 689 F. Supp. 3d 272 (S.D.W. Va. 2023), or a religious group, *Hosanna-Tabor*, 565 U.S. 171. The associational activity between JCap and the Third Party is more analogous to the primarily-economic activities that courts have declined to protect under the First Amendment: a roller-rink operator, *Stanglin*, a wine franchisor, *Wine & Spirits Retailers*, or escort services, *IDK*.

The Third Party invokes the Supreme Court's ruling in *NAACP* to support its argument that "compelled disclosure of one's economic associations" can infringe its First Amendment right. (Mot. at 17.) The Court in *NAACP* made clear, however, that such protected activity must relate to "an organization engaged in advocacy of particular beliefs." 357 U.S. 449, 462 (1958); *see also Bourne v. Arruda*, No. 10-CV-393-LM, 2012 WL 2891110, at *3 (D.N.H. July 16, 2012) ("[*NAACP*] stands for

the proposition that compelled disclosure of the membership list of an advocacy organization may violate the First Amendment right to freedom of association.").

The Third Party's association with JCap as a client who paid for early access to a public report did not give rise to an "organization" engaged in "advocacy of a particular belief." While engaging in short selling may contain "some kernel of expression," *Stanglin*, 490 U.S. at 25, it is not sufficient to convert the "economic associations" between two ideologically-aligned companies in a business relationship into an activity protected by the First Amendment freedom of association.

Accordingly, I find that there is no constitutionally-protected associational right which would be infringed by the disclosure of the Third Party's identity.[3]

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Motion to Intervene be granted, and that the request for a protective order barring disclosure of the Third Party's identity based on First Amendment associational privilege be denied.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
          October 4, 2024

---

[3] I find it unnecessary to consider whether Novagold has met the standard of "exacting scrutiny" in demanding disclosure of the Third Party's identity.

11