UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
NOVAGOLD RESOURCES, INC.,

      Plaintiff,

   - against -

J CAPITAL RESEARCH USA LLC,

      Defendant.
----------------------------------------------------------------x

20-CV-2875 (LDH) (PK)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF THE ANONYMOUS THIRD PARTY'S MOTION TO STAY ENFORCEMENT PENDING APPEAL OF THIS COURT'S ORDER REGARDING APPLICABILITY OF THE FIRST AMENDMENT ASSOCIATIONAL PRIVILEGE**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................. 1

    I.     PROCEDURAL BACKGROUND ........................................................................ 3

          A.     The Third Party's Motion To Intervene ...................................................... 3

          B.     Judge Kuo's Temporarily Granted Protective Order ................................. 4

          C.     The Rule 45 Subpoenas ............................................................................. 5

    II.    LEGAL STANDARD ............................................................................................ 5

    III.   ARGUMENT ......................................................................................................... 6

          A.     The Third Party Is Likely To Prevail on Appeal, but the Importance of This Factor Is Negligible ...................................................... 6

          B.     Absent a Stay, There Is a Significant Risk That the Third Party Will Be Irreparably Harmed ....................................................................... 9

          C.     A Stay Will Not Cause Substantial Injury to Novagold ........................... 10

          D.     Given the First Amendment Interests At Stake, the Public Interest Strongly Favors a Stay ............................................................................. 12

          E.     On Balance, the Factors Favor Maintaining the Status Quo ..................... 13

CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ABC, Inc. v. Stewart*,
   360 F. 3d 90 (2d Cir. 2004)..................................................................................................8

*Barcia v. Stikin*,
   No. 79 Civ. 5381 (RLC), 2004 WL 691390 (S.D.N.Y. Mar. 31, 2004) ...................................7

*Callimanopulos v. Christie's Inc.*,
   No. 09 CIV. 4631 (WHP), 2009 WL 1741579 (S.D.N.Y. June 4, 2009) ..............................1, 6

*Carvel Corp. v. Eisenberg*,
   No. 87 Civ. 608 (CSH), 1988 WL 120135 (S.D.N.Y. Oct. 31, 1988) .......................................7

*Cassava Scis., Inc. v. Bredt*,
   1:22-cv-9409-GHW, 2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024).......................................11

*Cooper v. U.S. Postal Serv.*,
   246 F.R.D. 415 (D. Conn. 2007)................................................................................9, 12, 13

*Elrod v. Burns*,
   427 U.S. 347 (1976)...............................................................................................................10

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)...............................................................................................................11

*Goldstein v. Miller*,
   488 F. Supp. 156 (D. Md. 1980), *aff'd*, 649 F.2d 863 (4th Cir. 1981)......................................6

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006).......................................................................................2, 7, 8, 9

*Mohammed v. Reno*,
   309 F.3d 95 (2d Cir.2002).............................................................................................6, 9, 10

*Mohawk Industries, Inc. v. Carpenter*,
   558 U.S. 100 (2009)..................................................................................................................8

*Rosner v. United States*,
   958 F.3d 163 (2d Cir. 2020).....................................................................................................8

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*,
   No. 09-CV-3312 (ARR) (ALC), 2010 WL 5437208 (E.D.N.Y. Dec. 17, 2010) ......................6

*Tunick v. Safir*,
    209 F.3d 67 (2d Cir.2000) ..................................................................................10

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ................................................................................8

*X Corp. v. Media Matters for Am.*,
    120 F.4th 190 (5th Cir. 2024) ..............................................................................12

**State Statutes**

N.Y. Civil Rights Law 79-h ...............................................................................................3

**Rules**

Federal Rule of Appellate Procedure 8 ....................................................................1, 13

Federal Rule of Civil Procedure 45 ..........................................................................5, 9

**Other Authorities**

12 Moore's Federal Practice § 62.06[1] (3d ed. 2025) .....................................................6

The Anonymous Third Party (the "Third Party") respectfully submits this memorandum of law in support of its motion to stay enforcement pending appeal of this Court's Order dated March 31, 2025 (Dkt. 204) (the "Order"), including a stay of discovery against the Third Party.[1] In the alternative, the Third Party respectfully requests that the Court temporarily stay the enforcement of its Order, including temporarily staying discovery against the Third Party, long enough for the Second Circuit to hear an application for a stay pursuant to Federal Rule of Appellate Procedure 8.

## PRELIMINARY STATEMENT

The Second Circuit will soon consider whether the First Amendment associational privilege protects the Third Party's identity from disclosure in this case. This Court, as well as Magistrate Judge Kuo, has found that the privilege does not apply here. By moving for a stay of the Order pending appeal, the Third Party is *not* asking this Court to reconsider its prior ruling. Rather, the Third Party respectfully requests that the Court maintain the status quo so that the constitutional question can be definitively resolved. As set forth below, a stay would not substantially harm Novagold. But if the Second Circuit ultimately reverses the Order, the Third Party will have been irreparably harmed by having its identity disclosed to Novagold (and very possibly publicly disclosed), in violation of its right to freedom of association. On balance, consideration of the well-established stay factors strongly favor granting this motion.

*First*, the Third Party believes that it will prevail on the merits of its appeal. But even if the Court does not agree with that assessment, this consideration is negligible in light of the other factors discussed below. *See Callimanopulos v. Christie's Inc.*, No. 09 CIV. 4631 (WHP), 2009

---

[1] The Order adopted in full Magistrate Judge Peggy Kuo's Report and Recommendation dated October 4, 2024, Dkt. 191 (the "R&R"), and denied the Third Party's motion for a protective order barring disclosure of its identity based on the First Amendment associational privilege.

1

WL 1741579, at *1 (S.D.N.Y. June 4, 2009) ("[T]he Court is not required to hold that it made an erroneous decision in order to grant . . . [a stay] pending appeal."). Novagold has argued that the Order is a non-final judgment over which the Second Circuit lacks appellate jurisdiction. But that argument fails because the appeal fits squarely within the well-established collateral order doctrine, which permits interlocutory appeal where (as here) an order conclusively determines a discrete issue that is not part of the claims at issue in the litigation and would be unreviewable on appeal from a final judgment. Since there is nothing preventing the Second Circuit from reaching the merits of the Third Party's appeal, consideration of this factor does not militate against granting a stay.

*Second*, absent a stay, there is a serious risk that the Third Party's identity will be publicly disclosed. While Magistrate Judge Kuo has prohibited Novagold from publicly disclosing the Third Party's identity, that order may well have practical limitations. That is because Judge Kuo has also ordered that the Third Party is not permitted to redact its identity from any documents it produces, or any deposition testimony it provides. Because it is likely that the Third Party's documents and testimony will be used as exhibits to the Parties' summary judgment motion papers (and perhaps also at trial), there is a real risk that these materials may become "judicial documents," subject to the presumptive First Amendment right of public access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125-26 (2d Cir. 2006) (holding that a presumption of public access applies to sealed exhibits in support of a motion for summary judgment, even where those documents were produced in reliance on a confidentiality order). So, in a very real sense, there is a substantial risk that discovery documents disclosing the Third Part's identity will become public absent a stay pending appeal. If the Second Circuit ultimately finds that the Third Party's

2

identify should have been barred from disclosure in this case pursuant to the associational privilege, the Third Party will have been irreparably harmed by any public disclosure of its identity.

***Third***, a stay will not substantially injure Novagold. Though Novagold has served four document and deposition subpoenas on the Third Party, the information that Novagold seeks has either already been produced by JCAP or is privileged and/or not relevant to this case. Thus, Novagold will not be materially prejudiced (much less substantially injured) by staying discovery against the Third Party while the appellate court determines the constitutional question at stake.

***Fourth***, granting a stay would serve the public interest in preserving First Amendment rights. Conversely, disclosure of the Third Party's identity here would have a chilling effect on speech that is critical of publicly-held companies.

On balance, consideration of these factors favors maintaining the status quo until the Third Party's appeal has been decided.

## I. PROCEDURAL BACKGROUND

### A. The Third Party's Motion To Intervene

On May 27, 2024, the Third Party moved to intervene in this case for the limited purpose of asserting its First Amendment right to freedom of association. Dkt. 175. Specifically, the Third Party moved for a protective order barring disclosure of its identity pursuant to the First Amendment associational privilege. *Id.*

The Third Party made three central points on its motion. ***First***, the Third Party argued that First Amendment rights are implicated by its association with JCAP for the purpose of exposing misstatements by a publicly held corporation. Dkt. 175-1, at 20-21. Indeed Magistrate Judge Kuo has twice held that JCAP's May 2020 research report about Novagold's Donlin mine project (the "Report") is "news" and that any communications between JCAP and the Third Party regarding the Report are protected against disclosure under New York's shield law, N.Y. Civil Rights Law

3

79-h.  *Id.* at 7-9.  **Second**, the Third Party demonstrated with clear, unrebutted evidence that disclosure of its identity in this case would lead to threats, harassment and reprisals, and would have a chilling effect on its associations.  *Id.* at 21-22.  **Third**, the motion argued that Novagold could not satisfy its burden of showing that the information sought is crucial to its case or goes to the heart of its claims.  *Id.* at 23-24.

On July 3, 2024, this Court referred the motion to Judge Kuo for a report and recommendation.  On October 4, 2024, Judge Kuo issued a Report and Recommendation (the "R&R").  The R&R recommended that the Third Party's motion to intervene be granted but that its motion for a protective order barring disclosure of its identity pursuant to the First Amendment associational privilege be denied.  Dkt. 191.

On March 31, 2025, this Court issued its Order, adopting the R&R in full.  Dkt. 204.  Three days later, the Third Party appealed the Order to the Second Circuit.  Dkt. 205.

### B. Judge Kuo's Temporarily Granted Protective Order

After the Third Party served its motion to intervene papers, Novagold accessed metadata that was inadvertently embedded in the signature line of the Third Party's anonymous declaration in support of its intervention motion, Dkt. 175-2, thereby revealing the Third Party's identity.  *See* Dkt. 171.  Rather than immediately notifying the Third Party's counsel that it had accessed this information (as required by New York's Rules of Professional Conduct), Novagold chose instead to include the inadvertently produced information in its opposition brief (which it served three weeks later, but did not file, pursuant to the Court's bundling rule).  *Id.*  The Third Party immediately sought a protective order to prohibit Novagold from using or disclosing the Third Party's identity.  *Id.*  That motion was temporarily granted by Magistrate Judge Kuo on June 24, 2024, "pending a decision on the forthcoming motion to intervene."  6/24/24 Minute Order.

On April 16, 2025, Judge Kuo continued the temporarily granted protective order in part

4

by ordering Novagold not to publicly disclose the Third Party's identity pending the appeal. 4/16/24 Minute Order. But at the same time—*without ruling on the permissibility of any particular discovery request*—Judge Kuo also ordered that Novagold could serve Rule 45 subpoenas on the Third Party, and that the Third Party cannot redact out its identity from the documents it produces and the deposition testimony it gives. *Id.* Specifically, Judge Kuo ordered that:

> The parties and counsel are ordered to keep the identity of the Third Party confidential, consistent with the Confidentiality Order, as amended on December 12, 2024, pending resolution of the Third Party's appeal of the Memorandum and Order. This does not preclude the use of that identity in documents exchanged by counsel in furtherance of this litigation, or in any deposition testimony. The parties are directed to agree on the specific terms of how the identity of the Third Party will be handled during discovery.

*Id.*[2]

### C. The Rule 45 Subpoenas

On April 17, 2025, the Third Party's counsel accepted service of four nonparty subpoenas from Novagold (the "Subpoenas"). The Subpoenas seek documents and deposition testimony from both the Third Party (by way of a corporate witness), and the anonymous officer of the Third Party who signed the Third Party's declaration in support of intervention.

On June 2, 2025, the Third Party filed a miscellaneous action in the Western District of Texas (the location identified in the Subpoenas as the place of compliance), and moved to quash the Subpoenas. That motion is pending.

## II. LEGAL STANDARD

Four criteria are relevant in considering whether to issue a stay of an order of a district court . . . pending appeal: the likelihood of success on the merits, irreparable

---

[2] Magistrate Judge Kuo also found that Third Party "is not likely to succeed in its appeal" regarding applicability of the associational privilege. The Third Party respectfully disagrees with that assessment.

injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest.

*Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir.2002). A balancing of these factors is required. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay. Simply stated, more of one excuses less of the other." *Id.* at 101 (alteration in original) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Gripentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). Finally, the court should "weigh the factors in light of the purpose of a stay pending appeal, which is to maintain the status quo." *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312 (ARR) (ALC), 2010 WL 5437208, at *10 (E.D.N.Y. Dec. 17, 2010) (citing *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 565 (2d Cir. 1991) ). "[M]aintaining the status quo means that a controversy will still exist once the appeal is heard." 12 Moore's Federal Practice § 62.06[1] (3d ed. 2025).

Consideration of each of these factors here favors issuance of a stay of the Order pending appeal.

### III. ARGUMENT

#### A. The Third Party Is Likely To Prevail on Appeal, but the Importance of This Factor Is Negligible

The Third Party believes that it will succeed on the merits of its appeal. At the same time, the Third Party respects that this Court has reached a different conclusion on the law. But "[t]he likelihood-of-success standard does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal." *Goldstein v. Miller*, 488 F. Supp. 156, 172 (D. Md. 1980), *aff'd*, 649 F.2d 863 (4th Cir. 1981). *See also Callimanopulos*, 2009 WL 1741579, at *1 ("[T]he Court is not required to hold that it made an erroneous decision in order to grant injunctive relief [or a stay] pending appeal.") Instead, courts analyzing this criterion "may properly stay their own orders when they have ruled

6

on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Barcia v. Stikin*, No. 79 Civ. 5381 (RLC), 2004 WL 691390, at *2 (S.D.N.Y. Mar. 31, 2004) (quoting *Goldstein*, 488 F. Supp. at 172); *see Carvel Corp. v. Eisenberg*, No. 87 Civ. 608 (CSH), 1988 WL 120135, at *2 (S.D.N.Y. Oct. 31, 1988) ("[T]he mere fact that defendants' view of the merits is one that I do not share does not foreclose the issue of whether a stay should issue. . . . The equities . . . clearly favor the maintenance of the status quo during the . . . appeal [as] this action does present 'difficult legal questions' worthy of consideration by the court of appeals. . . .").

Novagold has argued elsewhere that the Third Party *cannot* prevail on appeal because the Second Circuit lacks appellate jurisdiction over non-final orders. *See* Dkt. 206, at 2. But interlocutory review of the Order is permissible under the "collateral order" doctrine, a well-established exception to the "final judgment" rule. *See Lugosch*, 435 F.3d at 117 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)). The collateral order doctrine permits interlocutory review of an order that "[(1)] conclusively determine[s] the disputed question, [(2)] resolve[s] an important issue completely separate from the merits of the action, and [(3) would] be effectively unreviewable on appeal from a final judgment." *Logosch*, 435 F. 3d at 117(quoting *United States v. Graham*, 257 F.3d 143, 147 (2d Cir. 2001)). Each of these factors applies here because the Order is final as to the Third Party, the associational privilege issue is completely separate from the merits of Novagold's defamation claim against JCAP, and disclosure of the Intervenor's identity now would render moot any later appeal. Though the Second Circuit has not directly decided whether the collateral order doctrine applies to a nonparty's request for a protective order pursuant to the associational privilege, it has applied the doctrine to allow interlocutory review of other First Amendment arguments asserted by nonparty intervenors in

7

different contexts, such as media access to judicial proceedings. *See, e.g.*, *Lugosch*, 435 F.3d at 118; *ABC, Inc. v. Stewart*, 360 F. 3d 90 (2d Cir. 2004).

Novagold nonetheless relies on *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), a decision in which the Supreme Court held that the collateral order doctrine does not apply to a *party's* dispute over the discoverability of its attorney-client communications. *Id.* at 114. But *Mohawk* is plainly inapposite. In that case, the Supreme Court reasoned that, as between parties, interlocutory review is unnecessary with respect to ordinary, evidentiary privilege issues because an appellate court can remedy any erroneous privilege decision in the post-judgment phase by remanding the case for a new trial. *Id.* at 109. This reasoning does not apply to claims asserted by nonparties. *See Whole Woman's Health v. Smith*, 896 F.3d 362, 367-68 (5th Cir. 2018) (distinguishing *Mohawk* and finding that the collateral order doctrine permits interlocutory review of an associational privilege claim asserted by a nonparty). "[A] new trial order can hardly avail a third-party witness who cannot benefit directly from such relief." *Id.* "*Mohawk* does not speak to the predicament of third parties, whose claims to reasonable protection from the courts have often been met with respect." *Id.*[3]

---

[3] Another case cited by Novagold on this point, *Rosner v. United States*, 958 F.3d 163 (2d Cir. 2020), is similarly distinguishable. In that case, the Second Circuit applied *Mohawk* to find that a *party* to a litigation cannot invoke the collateral order doctrine to appeal a non-final order adverse to his claimed "psychotherapist-patient privilege," because post-judgment review would suffice to protect the party's rights. *Id.* at 165-66. Specifically, the court held that any error could be remedied by "vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Id.* at 166 (quoting *Mohawk Indus.*, 558 U.S. at 112). But as set forth above, this reasoning does not apply to nonparties, much less nonparties like the Third Party whose Constitutional rights would (if the Second Circuit agrees) be infringed by disclosure of its identity. Remanding for a new trial could not possibly remedy the irreparable harm that the Third Party would suffer from infringement of its freedom of association.

In short, Novagold's argument that the Second Circuit does not have jurisdiction here is meritless. The Third Party is also likely to prevail on the merits of its appeal. But ultimately, the importance of the first factor in this analysis is negligible, because—as set forth below, the equities strongly favor maintaining the status quo. *See Mohammed*, 309 F.3d at 100-01. "The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." *Id.* (alteration in original) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)); *see also Cooper v. U.S. Postal Serv.*, 246 F.R.D. 415, 418 (D. Conn. 2007) ("In looking at the other factors . . . the court believes that the balance of hardships favors the Intervenor Defendants, which in turn means that their burden for the first factor (i.e., likelihood of success) is lower.").

### B. Absent a Stay, There Is a Significant Risk That the Third Party Will Be Irreparably Harmed

Novagold has served four Rule 45 subpoenas, seeking documents and deposition testimony from the Third Party pursuant to Judge Kuo's 4/16/25 Minute Order. Should the Third Party be required to comply with these discovery requests, that will require the Third Party to disclose (without redactions) its identity in the documents and testimony it produces to the parties. *See* 4/16/25 Minute Order (requiring disclosure of the Third Party's "identity in documents exchanged by counsel in furtherance of this litigation, or in any deposition testimony."). Once that happens, there is a significant risk that the Third Party's identity and its confidential association with JCAP (an association formed in part for the beneficial public purpose of exposing misleading projections made by Novagold) will be disclosed publicly. That is because there is a likelihood that Novagold will attempt to use the Third Party's documents and deposition testimony as exhibits on summary judgment or at trial. The Third Party's unredacted materials could then be deemed "judicial documents," and subject to a presumption of public access. *See, e.g.*, *Lugosch*, 435 F.3d at 125-

9

26 (finding that a presumption of public access applies to "judicial documents," including summary judgment filings, even where those documents were produced in reliance on a confidentiality order). Indeed, Novagold has already taken the position that it is not bound by the standing Confidentiality Order in this case with respect to material it unilaterally deems to be "judicial documents." *See* Declaration of Adam I. Rich ("Rich Decl.") ¶¶ 13-20 (describing Novagold's invocation of public access rights as justification for its unilateral decision to file JCAP's expired written agreement with Third Party on the public docket even though that document had been clearly designated as confidential. Novagold ultimately agreed to remove the material from the public docket three days later).

If discovery proceeds against the Third Party and the Second Circuit later determines that the associational privilege protects the Third Party's identity from disclosure in this case, the Third Party will have been irreparably harmed by the loss of its First Amendment freedom of association. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir.2000) (recognizing that violations of First Amendment rights are presumed to be irreparable).

The second factor strongly favors a stay.

### C. A Stay Will Not Cause Substantial Injury to Novagold

On the other hand, Novagold will suffer no genuine prejudice from a stay pending appeal, much less "substantial injury." *Mohammed*, 309 F.3d at 100. Novagold is likely to claim harm from any delay in obtaining discovery from the Third Party, but that argument is meritless. As evidenced by the Subpoenas themselves, Novagold has no non-retaliatory basis for obtaining discovery from the Third Party: nearly all of the information Novagold seeks has *already been produced* by JCAP or is privileged and/or not relevant to any claim or defense in this action.

Thus, the Subpoenas seek documents and deposition testimony regarding the Third Party's agreements with JCAP and its payments to JCAP. But JCAP has already testified that—at the time the Report was published—there was no written agreement between JCAP and the Third Party. Rich Decl. ¶ 6. JCAP further testified that it had an oral agreement with the Third Party with respect to the Report, and testified as to all of that agreement's material terms, including the percentage of any net profits from Novagold stock that the Third Party agreed to pay JCAP, and the total amount of money that the Third Party paid JCAP. *Id.* ¶¶ 6,7, 9. JCAP also produced documents evidencing the date and amount of each payment made by the Third Party to JCAP under the agreement. *Id.* ¶ 10. JCAP even produced its prior, written agreement with the Third Party, which expired in 2018 (before publication of the Report). *Id.* ¶ 8.

The Subpoenas also seek information regarding the Third Party's trading positions with respect to Novagold. Novagold has previously suggested that the Third Party's trading information somehow bears on the question of whether *JCAP* published the Report with actual malice (the applicable fault standard that Novagold must satisfy to prove its defamation claim). *See* Dkt. 197, at 16. But the Third Party's trading positions have no conceivable connection to the question of whether JCAP subjectively believed the Report to be false. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 n.6 (1974) (actual malice turns on a journalist's "subjective awareness of probable falsity."). Since Novagold has already provided sworn statements stating that it did not know the Third Party's trading position on Novagold (or whether the Third Party even had any position at all), Rich Decl. ¶¶ 11-12, there cannot possibly be any connection between the Third Party's trading position and JCAP's state of mind at the time of publication.[4] This information

---

[4] Even if JCAP *did* know that the Third Party had a short position on Novagold's stock, that would not support an inference of actual malice. *See, e.g.*, *Cassava Scis., Inc. v. Bredt*, 1:22-cv-9409-GHW, 2024 WL 1347362, at *25 (S.D.N.Y. Mar. 28, 2024) (finding that a defendant's

simply has no relevance to any claim or defense in the Underlying Action.

Last, in its Subpoenas, Novagold also seeks communications between the Third Party and JCAP over a *six-year period*, but those communications (to the extent they exist) have either already been held to be privileged, or (with respect to any communications that took place during the pendency of this litigation) are protected by the common interest doctrine.

In short, Novagold has no real need for discovery from the Third Party, and it will not be substantially harmed by pausing discovery against the Third Party while the Second Circuit decides the constitutional question.[5]

The third factor strongly favors granting a stay.

### D. Given the First Amendment Interests At Stake, the Public Interest Strongly Favors a Stay

The public has a strong interest in the protection of First Amendment rights. Absent a stay, there is a significant risk that the Third Party's identity will be disclosed. That will have a chilling effect on both the Third Party and others who might wish to speak out against publicly held companies. "And 'because First Amendment freedoms need breathing space to survive,' the public interest is better served by avoiding even the 'risk of a chilling effect on association.'" *X Corp. v. Media Matters for Am.*, 120 F.4th 190, 196 (5th Cir. 2024) (quoting *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 618-19 (2021)); *see also Cooper*, 246 F.R.D. at 418 ("The public interest here lies in the proper preservation and implementation of those rights and freedoms guaranteed by the First Amendment.").

---

short position supports an "inference of Defendant's genuine conviction that Plaintiff's stock was overvalued").

[5] *See also* Order at 3 ("[B]ecause intervention would not significantly delay the litigation or otherwise prejudice Plaintiff, Judge Kuo found the motion 'timely under the circumstances.'").

While it is true that there is also a public interest in prompt resolution of litigation, a stay will not meaningfully impair that interest here because there is no critical discovery that Novagold can hope to obtain from the Third Party.

The fourth factor strongly favors a stay.

### E. On Balance, the Factors Favor Maintaining the Status Quo

On balance, consideration of the four factors favors granting a stay and maintaining the status quo. As another district court in this Circuit reasoned in granting a motion for a stay:

> [B]ecause the court has found that the Intervenor Defendants have a stronger case with regard to the second, third, and fourth factors, their burden for the first factor (likelihood of success) is lowered. Therefore, even though the court is not convinced that the Intervenor Defendants are likely to succeed, the other factors considered by the court necessitate a stay.

*Cooper*, 246 F.R.D. at 418. The same is true here. The potentially detrimental effects of a possible First Amendment injury far outweigh any interest Novagold might have in quickly obtaining discovery that has already been produced by JCAP.

### CONCLUSION

For the foregoing reasons, the Court should preserve the status quo and stay enforcement of the Order (including a stay of discovery from the Third Party) pending resolution of the appeal. In the alternative, the Third Party respectfully requests that the Court temporarily stay the enforcement of its Order (and temporarily stay discovery against the Third Party) long enough for the Second Circuit to hear an application for a stay pursuant to Federal Rule of Appellate Procedure 8.

Dated: New York, New York
June 2, 2025

                              Respectfully submitted,

                              DAVIS WRIGHT TREMAINE LLP

                              By: */s/ Robert D. Balin*
                                  Robert D. Balin

                              Robert D. Balin
                              Adam I. Rich
                              1251 Avenue of the Americas, 21st Floor
                              New York, NY  10020-1104
                              (212) 489-8230 Phone
                              (212) 489-8340 Fax

                              *Attorneys for Anonymous Third Party*