IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| NOVAGOLD RESOURCES, INC., | § | |
|---|---|---|
| Plaintiff, | § | |
| | § | No. 1:20-cv-02875 (LDH) (PK) |
| v. | § | |
| | § | |
| J CAPITAL RESEARCH USA LLC, | § | |
| Defendants. | § | |

**PLAINTIFF NOVAGOLD RESOURCES, INC.'S RESPONSE
TO ANONYMOUS THIRD PARTY'S MOTION TO STAY ENFORCEMENT PENDING
APPEAL OF THIS COURT'S ORDER REGARDING APPLICABILITY OF THE
FIRST AMENDMENT ASSOCIATIONAL PRIVILEGE**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 5

PROCEDURAL BACKGROUND................................................................................... 6

LEGAL STANDARD...................................................................................................... 9

ARGUMENT ................................................................................................................... 9

    I.      The ATP Cannot Make a "Strong Showing" of Success on Appeal. .............. 9

    II.     The ATP Does Not Face Irreparable Harm .................................................... 12

    III.    Novagold Would be Prejudiced By a Stay ..................................................... 14

    IV.    The Public Interest Does Not Support a Stay ................................................ 17

CONCLUSION............................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Clinton v. Jones*,
    520 U.S. 681 (1997)..........................................................................................................9

*Concern for Indep. Living, Inc. v. Town of Southampton, New York*,
    No. 24-CV-07101 (RPK) (JMW), 2025 WL 327983 (E.D.N.Y. Jan. 29, 2025) .....................10

*Dalbec v. Gentleman's Companion, Inc.*,
    828 F.2d 921 (2d Cir. 1987)............................................................................................17

*Hilton v. Braunskill*,
    481 U.S. 770 (1987)..........................................................................................................9

*In re Baker*,
    No. 05-CV-3487 (CPS), 2005 WL 2105802 (E.D.N.Y. Aug. 31, 2005)................................10

*In re Motor Fuel Temperature Sales Practices Litig.*,
    641 F.3d 470 (10th Cir. 2011) ..........................................................................................12

*In re Taub*,
    470 B.R. 273 (E.D.N.Y. 2012) ..........................................................................................10

*In re World Trade Ctr. Disaster Site Litig.*,
    503 F.3d 167 (2d Cir. 2007)....................................................................................7, 9, 10

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006).............................................................................................12

*Mohawk Industries, Inc. v. Carpenter*,
    558 U.S. 100 (2009)...................................................................................................12, 13

*Palin v. New York Times Co.*,
    113 F.4th 245 (2d Cir. 2024) ...........................................................................................16

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984)..........................................................................................................11

*Rosner v. United States*,
    958 F.3d 163 (2d Cir. 2020).............................................................................................12

*S.E.C. v. Rajaratnam*,
    622 F.3d 159 (2d Cir. 2010).............................................................................................12

*Techtronic Indus. v. Muddy Waters Capital*,
　No. A-24-MC-803 (DII), 2024 WL 5036609 (W.D. Tex. Sept. 17, 2024) ............................17

*Virginia Ry. Co. v. U.S.*,
　272 U.S. 658 (1926)..............................................................................................................9

*Whole Woman's Health v. Smith*,
　896 F.3d 362 (5th Cir. 2018) ..............................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1..........................................................................................................................17

Fed. R. Civ. P. 11 ..................................................................................................................... 8, 9

Fed. R. Civ. P. 45........................................................................................................................8

Plaintiff Novagold Resources, Inc. ("Novagold") files this Response to the Motion to Stay Enforcement Pending Appeal of this Court's March 31, 2025 Order Regarding Applicability of the First Amendment filed by the Anonymous Third-Party (the "ATP").

## INTRODUCTION

The ATP's motion is essentially a regurgitation of arguments it raised in its April 10 letter to the Court, ECF No. 206, which Judge Kuo, after careful consideration at a hearing on April 16, 2025, rejected. The Court's written minute entry issued after that hearing (i) concluded the ATP "is not likely to succeed in its appeal"; (ii) allowed "Plaintiff [to] serve subpoenas on the [ATP] either through counsel or directly"; and (iii) ordered the parties "to keep the identity of the [ATP] confidential," pending the Second Circuit appeal but confirmed "this does not preclude the use of [the ATP's] identity in documents exchanged by counsel in furtherance of this litigation, or in any deposition testimony."[1]

At bottom, the ATP's motion asks the Court both to reverse itself and to assume Novagold will violate the Court's order "to keep the identity of the [ATP] confidential." There is no reason for the Court to do either. The ATP presents no new information or argument suggesting (i) that it can make a "strong showing" of success on its appeal; (ii) that it will be irreparably harmed despite the protective measures that the Court has already directed to protect the ATP's identity during the pendency of the appeal; (iii) that there will be no harm to Novagold if discovery in this five-year old case is delayed until the Second Circuit resolves the appeal (likely to be sometime in late 2025 or 2026); and (iv) that the public interest favors a stay. As such, the Court should deny the ATP's motion.

---

[1] Minute Entry and Order, 4/16/2025.

**PROCEDURAL BACKGROUND**

On May 27, 2024, the ATP moved to intervene in this case and sought a protective order protecting its identity from disclosure to Novagold (and to the public) on the grounds that the ATP's identity was shielded by the First Amendment "associational privilege." *See* ECF No. 175-1. However, the ATP inadvertently disclosed its identity in serving the papers on Novagold.[2] On June 21, 2024, the ATP sought an emergency protective order that prohibited Novagold from publicly disclosing the ATP's identity. ECF No. 171. Magistrate Judge Kuo "temporarily granted" that request on June 24, 2024, "pending a decision on the [ATP's] motion to intervene," Minute Order, 6/24/2024.

On October 4, 2024, Magistrate Judge Kuo issued her report and recommendation that the ATP's motion to intervene be granted but that the motion for a protective order based on the First Amendment associational privilege be denied. ECF No. 191. Judge Kuo determined that while the ATP "attempts to style itself as a type of corporate watchdog," its association with Defendant J Capital was "hardly the kind of expressive association that merits constitutional protection." *Id.* at 7. Judge Kuo applied caselaw "consistently reject[ing] associative protection for predominantly commercial organizations," and found that the ATP, a self-described "short seller," did not engage in expressive association with J Capital by obtaining pre-publication access to J Capital's reports in exchange for a percentage of profits on J Capital's short positions in Novagold stock. *Id.* at 10 ("A shared affinity for a particular investment strategy, however, does not transform a primarily commercial activity into one of a shared belief system or create a constitutionally protected

---

[2] The ATP once again repeats its tired and false claim accusing "Novagold of access[ing] metadata." Mot. at 4. As Novagold has stated numerous times over the last year, this is false, and the material was plainly viewable without any special searching or deliberate efforts to "access[]" metadata. Similarly false is the suggestion that Novagold unreasonably delayed notifying the ATP of its disclosure. In any event, the ATP cannot dispute that Novagold notified the ATP of the disclosure well before any material was filed on the public docket, allowing the ATP to seek and obtain a temporary protective order.

association between [the ATP] and [J Capital]."). On March 31, 2025, District Judge DeArcy Hall adopted the report and recommendation in its entirety. ECF No. 204. The ATP filed an appeal of the District Court's order on April 3, 2025. *See* 2nd Cir. Dkt. No. 25-791, ECF No. 1. On April 30, 2025, the ATP filed its scheduling notification in the Second Circuit, stating it would file its opening brief on July 17, 2025, 91 days after the ready date, the maximum allowable time under the Second Circuit's rules. *See* 2nd Cir. Dkt. No. 25-791, ECF No. 16; *see also* 2d Cir Local Rule 31-2.

On April 10, 2025, Novagold and the ATP filed a joint letter with the Court, in which Novagold sought (i) to confirm that the June 24, 2024 temporary protective order regarding the ATP's identity had expired because "a decision" had issued on the ATP's motion to intervene and (ii) to serve discovery on the ATP. *See* ECF No. 206. Novagold specifically argued that to the extent the ATP was arguing that discovery should await a decision on its Second Circuit appeal, "it in effect seeks a stay pending appeal." *Id.* at 1-2. Novagold further argued that a stay was inappropriate under the factors the Second Circuit examines "in assessing the propriety of a stay— whether the stay applicant has 'made a strong showing of success on the merits'; whether the stay will substantially injure other parties; the public interest; and any irreparable injury to the stay movant . . . ." *Id.* (citing *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)). The ATP responded arguing these factors favored "preserving the status quo." *See id.* at 2-4. On April 16, 2025, the parties, including the ATP, appeared before Magistrate Judge Kuo. After hearing arguments from the parties, Judge Kuo allowed discovery from the ATP to go forward, noting that "[t]he discovery [on the ATP] should go forward because I'm very concerned

about further delay in this case." ECF No. 207 (4/16/2025 Hearing Tr.) at 19:1-2.[3] To address the ATP's concerns, Judge Kuo issued "a more limited protective order" precluding Novagold from publicly disclosing Movant's identity. *See id.* at 18:2-4. Judge Kuo also noted "[i]f I am to weigh the likelihood of success on the [ATP's'] appeal [to the Second Circuit], I would say it's not a compelling appeal." *Id.* at 19:2-3

Following the hearing, Judge Kuo also entered a written order on the docket, (i) confirming that the temporary protective order had expired; (ii) declining to extend the protective order pending a decision by the Second Circuit, noting that the ATP "is not likely to succeed in its appeal"; (iii) stating "Plaintiff may serve subpoenas on the [ATP] either through counsel or directly"; (iv) ordering the parties "to keep the identity of the [ATP] confidential," pending the Second Circuit appeal but confirming "this does not preclude the use of [the ATP's] identity in documents exchanged by counsel in furtherance of this litigation, or in any deposition testimony." Minute Entry and Order, 4/16/2025.

Shortly thereafter, in accordance with Judge Kuo's instruction to proceed with discovery, Novagold served four subpoenas—two document subpoenas totaling four requests for production each and two deposition subpoenas—pursuant to Rule of Civil Procedure 45 on counsel for representatives of the ATP. On June 2, 2025, the ATP filed a motion in the Western District of Texas (i) to hold the subpoenas "in abeyance" pending the outcome of its Second Circuit appeal or (ii) in the alternative, to quash the subpoenas *in toto*. WDTX No. 1:25-mc-00850 (RP), ECF No. 1. On the same day, the ATP filed this Motion seeking to stay Judge DeArcy Hall's March 31, 2025 order pending its Second Circuit appeal. ECF No. 210. Later that week, J Capital filed its own (untimely)

---

[3] *See also* ECF No. 207 (4/16/2025 Hearing Tr.) at 19:14-17 ("I think the discovery process should go forward because I am concerned about further delay in this case that is getting quite old, and I don't see a need for that delay . . .").

8

motion in the Western District of Texas to quash the subpoenas served on the ATP. WDTX No. 1:25-mc-00850 (RP), ECF No. 5.

**LEGAL STANDARD**

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Virginia Ry. Co. v. U.S.*, 272 U.S. 658, 672 (1926). "The four factors to be considered in issuing a stay pending appeal are well known: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

**ARGUMENT**

**I.     The ATP Cannot Make a "Strong Showing" of Success on Appeal.**

With respect to the first stay factor, the ATP argues it "believes that it will prevail on the merits of its appeal." Mot. at 1. But "belief" is not the relevant standard.[4] Rather, the ATP must make a "made a strong showing that [they are] likely to succeed on the merits." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170. Here, the ATP cannot make that strong showing. Indeed, its appeal is likely to fail substantively because the associational privilege does not apply to

---

[4] Indeed, if the ATP does not "believe" its appeal was taken in good faith, it would be subject to sanctions. *Cf.* Fed. R. Civ. 11(b) (explaining that in presenting any filing to the court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, [the filing], *inter alia*, (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation [and] (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law").

9

primarily commercial activity. And procedurally there are, at best, serious questions as to whether there is jurisdiction over an interlocutory appeal about a privilege issue.

A. The ATP is Unlikely to Succeed on the Merits

The ATP devotes barely a paragraph to arguing it is likely to succeed on its appeal, most of which is spent arguing this factor is "negligible." Mot. at 9. But multiple courts in this district have described "likelihood of success" as "'[t]he single most important factor'" in deciding whether to grant a stay. *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012) (Kuntz, J.) (quoting *In re Baker*, No. 05-CV-3487 (CPS), 2005 WL 2105802, at *3 (E.D.N.Y. Aug. 31, 2005) (Sifton, J.)); *accord Concern for Indep. Living, Inc. v. Town of Southampton, New York*, No. 24-CV-07101 (RPK) (JMW), 2025 WL 327983, at *2 (E.D.N.Y. Jan. 29, 2025) (Wicks, MJ.) ("This prong is perhaps the most important consideration in determining whether a stay should be granted.").

In any event, as noted above, the standard requires a "strong showing" of success on the merits. Here, both Magistrate Judge Kuo's report and recommendation, ECF No. 191, and District Judge DeArcy Hall's order, ECF No. 204, set out in detail the reasons why the First Amendment associational privilege does not apply to the commercial association between the ATP and J Capital. The ATP is a self-described short-seller and investment firm that "manages money on behalf of individuals, endowments, and pension funds." Exhibit A, ECF No. 175-2 (Doe-2 Decl.) ¶¶ 1, 5. Likewise, J Capital self-describes its team as "activists usually on the short side" of trades, ECF No. 175-1 at 9 (quoting J Capital's website), and the home page of J Capital's website touts its ability to "profit" on its trades.[5] The arrangement between J Capital and the ATP, where J Capital sold early access to materials so that the ATP could place a short trade, is clearly commercial in nature. *See* Exhibit A, ECF No. 175-2 (Doe-2 Decl.) ¶ 6. And "a review of the case

---

[5] *See* J CAPITAL RESEARCH, https://www.jcapitalresearch.com/ (last accessed June 16, 2025).

law, which Judge Kuo conducted, makes clear that 'courts have consistently rejected associative protection for predominantly commercial organizations'" like the ATP. ECF No. 204 (Order Adopting Report and Recommendation) at 6. On the other hand, ATP has been unable to cite to any authority supporting its position that, solely because corporate entities possess freedom of speech, disclosure of their commercial associations and activities are protected by the First Amendment.

Thus, the ATP does not qualify for the associational privilege's "expressive associational protection" that is primarily granted to "religious groups, labor unions, and political advocacy organizations." ECF No. 191 (Report and Recommendation) at 7 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 621-22 (1984)). As such, the ATP cannot meet its burden to show a "strong" chance of success on appeal.

B.  **The ATP Cannot Make a "Strong Showing" There is Appellate Jurisdiction**

In addition to its low likelihood of success on the merits of the appeal, there are, at best, significant questions regarding appellate jurisdiction.

The Supreme Court and Second Circuit have held that adverse orders on privilege issues are generally not immediately appealable. *See Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (no interlocutory appeal for attorney-client privilege decision); *Rosner v. United States*, 958 F.3d 163, 166 (2d Cir. 2020) (noting the Second Circuit has extended *Mohawk* to numerous "other common-law evidentiary privileges and statutory privacy rights"); *S.E.C. v. Rajaratnam*, 622 F.3d 159, 168 (2d Cir. 2010) (courts lack jurisdiction to review "discovery orders allegedly adverse to a claim of privilege or privacy"). The Tenth Circuit has explicitly held that "discovery orders adverse to a claimed First Amendment privilege are not immediately appealable under the [collateral order] doctrine." *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 483 (10th Cir. 2011).

The ATP relies on the pre-*Mohawk Industries* case of *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) to argue that the collateral order doctrine will apply to the Appeal. The collateral order doctrine allows interlocutory review of an order that (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of an action, and (3) would effectively be unreviewable on appeal. *Lugosch*, 435 F.3d at 117. But the ATP overlooks that in *Lugosch*, the issue was whether an appeal was necessary to prevent the loss of the intervenor news organizations' "*immediate* right of access" to court filings in order to timely report the news. *Id.* at 118 (emphasis added). Unlike in *Lugosch*, among other things, there is no timing issue in this case, such that the order "conclusively determines the disputed question." *See id.* at 117. Instead, as discussed below, the Court has put in place protections to prevent the loss of the ATP's rights via public disclosure of its identity.[6]

Ultimately though, as the proponent of the stay, the ATP bears the burden of making a "strong showing" of likelihood of success. Tellingly, it barely even tries to make any such showing on the merits of its appeal. And, as to whether there is even appellate jurisdiction, there are, at best, serious questions, in light of *Mohawk Industries* and its progeny. As such, the likelihood of success factor weighs against a stay here.

## II. The ATP Does Not Face Irreparable Harm

Nor can the ATP show irreparable harm absent a stay.

---

[6] Likewise, the ATP's reliance on *Whole Woman's Health v. Smith*, 896 F.3d 362, 367-68 (5th Cir. 2018), misses the mark. That out-of-circuit case allowed an interlocutory appeal under the collateral order doctrine where a religious organization claimed privileges that "go to the heart of the constitutional protection of religious belief and practice as well as citizens' right to advocate sensitive policies in the public square." *Id.* at 368. That is a far cry from the current case, where the ATP merely seeks to avoid the production of commercial information and communications related to Novagold's claims.

First, as to the ATP's claim "if the Second Circuit ultimately reverses the Order, the Third Party will have been irreparably harmed by having its identity disclosed to Novagold," Mot. at 1, the fact is that Novagold *already knows* the ATP's identity and has known that for nearly a year, given the ATP's prior disclosure.

Second, Magistrate Judge Kuo has already entered a protective order requiring Novagold "to keep the identity of the [ATP] confidential" from the public during the pendency of the appeal. Minute Entry and Order, 4/16/2025. As such, the ATP's fears about "unredacted materials" being publicly filed are misplaced. Mot. at 9. Novagold will of course comply with the Court's order and, to the extent it is necessary to file materials identifying the ATP, it will do so under seal pending the outcome of the appeal. Essentially, the ATP argues that the Court should assume that Novagold will violate its orders. That argument is frivolous, offensive, and is not a basis to enter a stay.

In short, the ATP's claims of irreparable harm absent a stay are meritless, particularly in light of the measures already in place to protect its identity from public disclosure during the pendency of the appeal.[7]

---

[7] The ATP cites Novagold's filing of a redacted copy (which was produced by J Capital in redacted format such that it does ***not*** identify the ATP even to Novagold) of an expired agreement between the ATP and J Capital, which had been marked "Confidential." Mot. at 10. It is unclear how or why the ATP thinks this portends irreparable harm. In any event, to avoid wasting Court resources, Novagold agreed to re-file the document under seal (again, even though it doesn't even identify the ATP). When it had first filed the document on the docket, Novagold reasonably believed the initial protective order in this case allowed the parties to publicly file "confidential" documents, given, among other things, (i) prior discussions with J Capital regarding whether the produced, redacted copy of agreement contained any proprietary or confidential terms; (ii) the ATP's own references to the terms of its agreement in publicly filed documents; and (iii) J Capital's own repeated quoting of "Confidential" materials in public filings, *see, e.g.*, ECF No. 163 at 2; *see also* ECF No. 151 at 3-4; ECF No. 181 at 2-5 (joint status reports incorporating verbatim J Capital's stated position).

### III. Novagold Would be Prejudiced By a Stay

Further, staying the discovery would prejudice Novagold. As noted above, the ATP sought the longest time possible—91 days after the ready date—to file its Second Circuit brief, and its brief is not due until July 17, 2025. As such, it is unlikely the appeal will be argued until at least late 2025 and possibly not decided until 2026, six years after this case started and two years after the ATP first appeared on the scene.

The ATP argues that the information Novagold seeks through discovery "has *already been produced* by JCAP or is privileged and/or not relevant . . . ." Mot. at 10. Novagold disagrees with each of these positions, as set forth below, but perhaps the most important point for present purposes is that the ATP provides no reason why resolution of any discovery issues should wait the six to 12 months it may take the Second Circuit to decide the ATP's appeal, which would result in even further delay to the extent the ATP or J Capital seek to litigate (and potentially appeal) those discovery issues as well.[8]

As to the ATP's claims that J Capital has "*already . . . produced*" "nearly all of the information Novagold seeks," Mot. at 9, the ATP's basis for this argument is unclear. However, J Capital has produced effectively zero discovery in this case—approximately three dozen documents, the vast majority of which were already publicly available, compared to 28,000 documents produced by Novagold. Quigley Decl. at ¶ 3. Moreover, Novagold has serious concerns about J Capital's preservation and spoliation of evidence, given J Capital has repeatedly failed to produce other documents that, at least at one time, were within its possession. For example, it failed to produce the full set of communications one of its principals (acting on false pretenses)

---

[8] The ATP and/or J Capital have raised these same arguments in support of their motions to quash in the Western District of Texas.

14

had with Novagold prior to the Report. *Id.* ¶ 4. With respect to payments from the ATP in particular, it also failed to preserve records relating to two of the (at least) three wire transfers it had with the ATP. *Id.* ¶ 5. And as to agreements with the ATP, J Capital has not provided any documentary evidence (such as an email or text exchanges) regarding its supposed agreement to proceed with the ATP on an informal basis after the expiration of their written agreement. *Id.* ¶ 6.

Nor are the communications between the ATP and J Capital privileged.[9] The ATP cites no authority for this argument. *Cf.* Mot. at 12 (not citing anything for the argument that the communications "have . . . already been held to be privileged"). In any event, to the extent the ATP is now claiming the reporter's privilege applies, the ATP's own sworn declarations state that the ATP was a "research client" of J Capital's, which "*obtain[ed]*" information and "brief[ings]" from J Capital"[10]—i.e., a commercial *recipient* of information from J Capital, not a journalist or "source" of "news" or newsgathering materials for the Report. And even if the ATP was a source for, or had editorial input into, the Report, it would be inappropriate to apply the reporter's privilege. The ATP's short position on Novagold provided it with incentive to make the Report as damaging as possible and is the opposite of the journalistic independence the privilege is intended to protect.[11]

Further, the documents Novagold seeks from the ATP are directly relevant to elements of Novagold's defamation claims and the scheme alleged in the complaint. "[T]he heart of

---

[9] While the ATP complains that the subpoenas seek communications over a six-year time period, had the ATP sought to meet and confer, Novagold would have been willing to narrow the timeframe, such that the end date for the relevant period would be September 2020 (several months after the Report and around the time the ATP apparently made its last payment to J Capital).

[10] Exhibit A, ECF No. 175 (Doe-2 Decl.) ¶¶ 1, 5 (emphasis added).

[11] *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) (explaining that the purpose of the reporter's privilege is to "protect the public's interest in being informed by a vigorous, aggressive and *independent* press"); *In re Fitch, Inc.*, 330 F.3d 104, 111 (2d Cir. 2003) (finding New York privilege did not apply to ratings agency given "a level of involvement with the client's transactions that is not typical of the relationship between a journalist and the activities upon which the journalist reports")

15

[Novagold's] claims" is that J Capital engaged in a "'short and distort' scheme" designed to damage Novagold's stock price by the publication and dissemination of false information regarding Novagold's business ventures. ECF No. 34 (Am. Complaint) ¶ 1. The ATP's own voluntary admissions in seeking to intervene in this case make clear it was a key player in this scheme. The ATP admitted that, prior to the Report's publication, J Capital "briefed us on the findings in its Report" and then "agreed to provide us pre-publication access to their final report in exchange for a percentage of any net profits we generated from our short position on Novagold." Exhibit A, ECF No. 175-2 (Doe -2 Decl.) ¶ 6.

Accordingly, discovery regarding the relationship between J Capital and the ATP bears directly on the elements of Novagold's defamation claim. In particular, the nature of the financial relationship between J Capital and the ATP, the incentives offered, and the precise timing of correspondence between the parties clearly goes to J Capital's state of mind in publishing the report, an inquiry which necessarily depends on *all* the surrounding facts and circumstances. *See, e.g.*, *Palin v. New York Times Co.*, 113 F.4th 245, 263 (2d Cir. 2024) (explaining that "malice may be proven by inferential and circumstantial evidence 'because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control . . . .'") (quoting *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987)). Other discovery from the ATP, like the ATP's trading positions in Novagold, are relevant to multiple issues in the case, including damages and to giving the jury at trial a full picture of the "short and distort" scheme. *Cf. e.g.*, *Techtronic Indus. v. Muddy Waters Capital*, No. A-24-MC-803 (DII), 2024 WL 5036609, at *2 (W.D. Tex. Sept. 17, 2024) (ordering non-party that apparently assisted author of a report in an alleged "short and distort" scheme "to produce internal trading-related documents" about the company that was the subject of the short seller report and internal

16

communications about the target of the Report, and ordering an officer of the non-party to sit for a deposition).

Thus, the Court should reject the ATP's argument that the discovery Novagold served on the ATP—a grand total of four document requests in each of the requests for production and two deposition subpoenas—is simply to "retaliat[e]" against the ATP. Mot. at 10. That the ATP resorts to such attacks on the integrity of Novagold and its counsel simply shows the lack of any good faith basis for the ATP's position resisting (across multiple jurisdictions) this discovery.

In short, staying the case, and simply punting the issues surrounding this critical discovery for another 6-12 months would prejudice Novagold in this already five-year old case.

## IV. The Public Interest Does Not Support a Stay

The ATP's only argument on the public interest factor is that "[a]bsent a stay, there is a significant risk that the [ATP's] identity will be disclosed." Mot. at 12. This, of course, ignores the fact that Novagold already knows who the ATP is and assumes, without any basis, that Novagold will not comply with the Court's directive to keep the ATP's identity confidential from the public until the appeal is decided.

In reality, the public interest does not support a stay. Federal civil litigation is intended to be "just and speedy." Fed. R. Civ. P. 1. But due to J Capital and the ATP's extended obfuscation and refusal to comply with their discovery obligations, this proceeding has been neither. Proceeding with discovery while protecting the ATP's identity from public disclosure will serve the public's interest in timely resolution of legal disputes.

## CONCLUSION

Each of the four factors the Second Circuit uses to determine the propriety of a stay weighs heavily against a stay here. Accordingly, Novagold respectfully requests that the Court deny

Movant's Motion to Stay Enforcement Pending Appeal and grant such other and further relief as the Court deems just and proper.

Dated: June 16, 2025

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/Brendan F. Quigley*
Seth T. Taube
Brendan F. Quigley
Eric Dupont
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 408-2500
brendan.quigley@bakerbotts.com

*Attorneys for Plaintiff Novagold Resources, Inc.*

## CERTIFICATE OF SERVICE

I certify that on June 16, 2025, the foregoing document was filed electronically using the Court's CM/ECF system, which will send notification of such filings to all counsel of record.

*/s/ Brendan F. Quigley*
Brendan F. Quigley

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the Court's word-limits set out in Local Rule 7.1(c) because it contains 4,563 words, excluding the portions excepted by the Rule.
.

*/s/ Brendan F. Quigley*
Brendan F. Quigley
