1    UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF NEW YORK (BROOKLYN)

3  NOVAGOLD RESOURCES INC.,
                                     Case No. 1:20-cv-02875-LDH-PK
4            Plaintiff,

5  v.                                 Brooklyn, New York
                                      July 11, 2025
6  J CAPITAL RESEARCH USA LLC,        3:44 p.m.

7            Defendant.

8

9              TRANSCRIPT OF MOTION HEARING
            BEFORE THE HONORABLE PEGGY KUO
10          UNITED STATES MAGISTRATE JUDGE

    APPEARANCES:
11  For the Plaintiff/:          Brendan F. Quigley, Esq.
    Counterdefendant             Baker Botts, LLP
12                               30 Rockefeller Plaza
                                 New York, NY 10112
13
    For the Defendant:           David S. Korzenik, Esq.
14                               Gillian Vernick, Esq.
                                 Miller Korzenik Sommers Rayman,
15                               LLP
                                 The Paramount Building
16                               1501 Broadway
                                 Suite 2015
17                               New York, NY 10036

18  For Interested Party:        Adam I. Rich, Esq.
    (Anonymous)                  Robert D. Balin, Esq.
19                               Davis Wright Tremaine, LLP
                                 1251 Avenue of the Americas
20                               New York, NY 10020

21  Clerk:                       AJD

22  Court Recorder:              Electronic Sound Recording

23

24

25

1  Transcription Service:        Chris Hwang
                                 Abba Reporting
2                                PO Box 223282
                                 Chantilly, Virginia  20153
3                                (518) 302-6772

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
25

# INDEX

|  | Page |
|---|---|
| Motion, denied | 20 |
| Court's Ruling | 33 |

1     (Call to order at 3:44 p.m.)

2         THE CLERK:  This is civil cause for a motion hearing.

3     Novagold Resources, Inc. v. J Capital Research USA, LLC, 20-CV-

4     2875.  Magistrate Judge Peggy Kuo presiding.

5         Will the parties please state their appearances

6     beginning with the Plaintiff?

7         MR. QUIGLEY:  Good afternoon, Your Honor, for the

8     Plaintiff Novagold Resources, Inc., Brendan Quigley from Baker

9     Botts.  With the Court's permission, I'm joined by Emme Lee

10    Permicio (phonetic), who is a summer associate from Baker Botts

11    and rising 3L law student.

12        THE COURT:  Okay, wonderful.  Welcome.

13        MR. RICH:  Good afternoon, Your Honor, Adam Rich,

14    Davis Wright Tremaine, on behalf of the Movant anonymous Third

15    Party.  And with me is Rob Balin also from Davis Wright

16    Tremaine.

17        MR. KORZENIK:  Yes, good afternoon, Your Honor, David

18    Korzenik, Miller Korzenik Sommers Rayman.  And with me, Gillian

19    Vernick.

20        THE COURT:  All right, good afternoon, everyone.  We

21    are here today to discuss the motion that has been filed at ECF

22    Document 210 by the anonymous Third Party asking the Court to

23    stay enforcement of the Court's ruling that the Anonymous Third

24    Party's identity is not protected by the First Amendment

25    pending an appeal to the 2nd Circuit.

1            Let me just find out where -- how far the appeal has

2     gotten.  At what stage is the appeal?

3            MR. RICH:  Your Honor, our opening brief is due next

4     Thursday, July 17th.

5            THE COURT:  Okay.  Thank you.  And I've also

6     considered the opposition that Novagold the Plaintiff has filed

7     as well as the reply.  J Cap has not weighed in on this debate.

8            So I'll give, Mr. Rich, I'll give you an opportunity

9     just a few minutes to point out anything that you want the

10    Court consider that I might not have picked up from the papers.

11           And I'll give Mr. Quigley the same opportunity.  And

12    then, I may have some questions or I may be able to give you a

13    ruling orally from the bench, all righ?

14           So, Mr. Rich, go ahead.

15           MR. RICH:  Thank you, Your Honor.  Is it okay with

16    the Court if I remain seated?

17           THE COURT:  Yes, that's fine.

18           MR. RICH:  Okay.

19           THE COURT:  If you're referring to some papers, so

20    that's fine.  Just talk into the microphone because we don't

21    have a court reporter.

22           MR. RICH:  So, Your Honor, we were -- last time we

23    were here on April 16th, Your Honor made very clear and we

24    adhered to the order that this discovery process needed to move

25    forward.

1          THE COURT:  Uh-huh.

2          MR. RICH:  Couldn't have been more clear and that's

3     exactly what happened.  Novagold served subpoenas.  We accepted

4     service of those subpoenas.

5          And based on our review of those subpoenas, which had

6     not been before the Court before, we reviewed those subpoenas

7     and determined to commence a miscellaneous action in the

8     Western District of Texas to quash those subpoenas.  The reason

9     why because the place of compliance for these subpoenas was in

10    the Western District -- is in the Western District of Texas.

11    So there's a pending miscellaneous action there to quash those

12    subpoenas.

13         And in the meantime, we based on our review of the

14    subpoenas, including that they seek information that has either

15    already been produced to Novagold or information to which they

16    are not entitled, we wanted to seek a stay of Judge DeArcy

17    Hall's -- stay of enforcement of Judge DeArcy Hall's order.

18         The Federal Rules of Appellate Procedure, Rule 8,

19    allow for parties to seek appeals at the 2nd Circuit, but the

20    rule requires that such relief is first sought from the

21    district court.

22         So, because of that, we filed our motion directed at

23    Judge DeArcy Hall, asked her to stay it.  The order was

24    referred to this Court.

25         Now I think the main things that we really just

1    wanted to emphasize is, again, we understand loud and clear

2    that this Court made clear that it does not agree with the

3    position that we're taking at the 2nd Circuit.  And it

4    doesn't -- the Court said on the record that it doesn't believe

5    that we're going to succeed on the merits of that argument.  Of

6    course, we accept that and we're not here tore re-argue that or

7    challenge that in any way.

8            Our point is that under 2nd Circuit case law,

9    including the cases cited by Novagold in their brief, the

10   likelihood of success is not the determinative factor.

11           It -- there are other stay factors and including the

12   extent of irreparable harm that could be suffered if the -- if

13   no stay is granted.

14           And there -- the other factors include whether

15   there's going to be a substantial injury to Novagold.  And

16   ultimately, the Court is being asked under this standard to

17   weigh the equities and determine whether the status quo should

18   be preserved.

19           Here, we're simply asking for preservation of the

20   status quo for as long as it takes the appellate process to

21   complete, which as I mentioned at the beginning, we're, you

22   know, our filing our open brief on Thursday.

23           And you know, our view is that, you know, because we

24   will be irreparably harmed by -- if it turns out that we're

25   right, and the 2nd Circuit agrees, the disclosure of our

1   identity will constitute irreparable harm.  Novagold will not

2   be injured.

3          And you know, I think that -- I guess the one thing I

4   really -- other thing I wanted to highlight for the Court is as

5   part of the Court's order last April, the Court did put in

6   place protections for our client and protections for identity.

7          And those included an order that Novagold is not

8   allowed to just publicly disclose our identity.  We appreciate

9   those protections.

10         However, there are real practical limitations to the

11  effectiveness of those measures for the reasons we set forth in

12  our brief.

13         Namely, that under the law of this circuit, once a

14  document is used as an exhibit at summary judgment or used at

15  trial, it is in entitled to a presumption of First Amendment

16  access.

17         Now we would certainly oppose, you know, any argument

18  that our documents would be, you know, subject to public

19  access, but there's a danger we could lose.

20         And if we lost that argument, the fact that we've now

21  produced these documents, there's a very real palpable risk

22  that notwithstanding the Court's protections, those documents

23  could be publicly revealed.

24         THE COURT:  Okay.

25         MR. RICH:  Thank you.

1          THE COURT:  Okay.  Thank you.

2          Mr. Quigley?

3          MR. QUIGLEY:  Thank you, Your Honor.  Try to keep

4    this brief, but the standards in the 2nd Circuit for stay

5    pending appeal are well settled.

6          The strong showing of success -- a strong showing of

7    success on the merits is in fact a very important factor.

8    Courts in this district have repeatedly described it as such.

9          One of the cases is the ATP, the Anonymous Third

10   Party cites the Callimanopulos case.  It's a Judge Pauley

11   (phonetic) decision.  They cite it for the proposition that the

12   Court is not required to hold that it made an erroneous

13   decision in order to grant injunctive relief pending appeal.

14         But in the very next sentence, the Court says the

15   movement -- the movant has failed to raise sufficiently serious

16   questions going to the merits.  This factor weighs heavily

17   against granting a stay.

18         So it's a significant factor here.  They don't even

19   really argue that, you know, that there's -- this is not a

20   situation where there's circuit split or a split of authority.

21         Instead, you know, to the contrary, as far both Your

22   Honor and Judge DeArcy Hall have noted, courts have

23   consistently rejected associative protection for dominantly

24   commercial organizations.

25         Even procedurally, you know, I know they disagreed on

1    this, I think there are questions about where there's, you

2    know, appellate jurisdiction.  I'm not going to go too far into

3    that.

4         On the irreparable harm factor, two things.  Number

5    one, as the Court is aware, our client already knows who the

6    Anonymous Third Party is.  We've known that for over a year

7    now.  We haven't disclosed this identity.  Our client hasn't

8    disclosed this identity.  There's been none of the parade of

9    horribles that they've alleged would happen if this identity

10   was disclosed.

11        Second, on the piece about judicial documents, we of

12   course will abide by the Court's protective order to the extent

13   there is summary judgment briefing, which may or may not happen

14   during the pendency of this appeal.  We'll abide by the Court's

15   protective order, file anything under seal that references

16   their client's name to the extent that stuff is turned over and

17   discovered.

18        On the (indiscernible) documents case, somebody would

19   have to move to unseal those documents.  And the presumption of

20   public access can be overcome by another issue.

21        Here, I think the pendency of the appeal would be a

22   sufficient factor to overcome at least temporarily the

23   presumption of public access.  Your Honor has essentially

24   already made that ruling in granting a temporary protective

25   order pending the outcome of the appeal.

1          Third, on prejudice to us, this is critical

2     discovery, right?  They're not, you know, we allege in the

3     first paragraph of our complaint a short and distort scheme.

4          They're one-half of that scheme.  They made seven

5     figure profits on short sales of our client's stock.  Those

6     short sales are what drove J Capital's profits on the stock.

7          You know, I don't think we can get into -- I don't

8     think it's proper -- I think they talk about relevance and

9     privilege.  I think that actually -- we disagree with them on

10    those issues.  We think these are highly relevant, not

11    privilege.

12         But if anything, counsel's against this thing,

13    because there's no reason to await -- for those issues to await

14    resolution until 2026 at some point when the 2nd Circuit

15    decides this appeal.

16         The motion is -- they have a motion to quash teed up

17    before Judge Lane right now in Texas.  That's where they

18    decided to bring it.  And he'll address those relevance of

19    privilege issues in due course.

20         And there is -- I mean, there is prejudice to us,

21    which is generally for passage of time.  And yes, we have to

22    have a counterclaim against us, but we're the Plaintiff, we

23    have the burden.

24         As time goes on, particularly in a case of this age,

25    witness' memories fade, documents fade.  We already have

1    concerns about evidence being lost by J Capital.

2           Just this week, Mr. Korzenik put in a letter in the

3    Western District of Texas case stating that his client, Ann

4    Stevenson Yang, was moving to China and had a serious medical

5    condition.  So, you know, that further delay further hurts us.

6           And then, on the final factor, it's again their

7    burden -- it's the public interest.  It's their burden to show

8    a stay is in the public interest.

9           The thing they rely on is they say there's no

10   critical discovery that Novagold can hope to obtain from the

11   Third Party.  Well, we disagree.  I mean, they wouldn't be

12   fighting this hard if there wasn't critical discovery we hope

13   to obtain.

14           Again, that's not a reason for a stay here.  That's

15   reasons to move through these issues.  So once the 2nd Circuit

16   of Appeal is decided, we can go forward with the case and get

17   the issues out.

18           THE COURT:  All right.

19           MR. QUIGLEY:  Thank you.

20           THE COURT:  Thank you.

21           MR. RICH:  Yes.

22           THE COURT:  Mr. Rich, let me just ask a practical

23   question, which is given that the Court has already directed

24   the parties to go forward with discovery and given that there

25   is a confidentiality order in place, what is the difference if

1    the -- if Judge DeArcy Hall's order is enforced or not?

2             MR. RICH:  A couple things, Your Honor.  First, you

3    know, there, you know, Mr. Quigley is talking about saying, you

4    know, there's a process in place that if some -- if they were

5    filed under seal and then someone could challenge that, but

6    what all of that means is that at the end of that process, we

7    could lose.  And our documents would be public.  So that is a

8    practical limitation.

9             And secondly, Your Honor, as we note in our brief,

10   Novagold has already in our view against the requirements of

11   the protective order entered by this Court, filed the document

12   on the public docket that was designated as confidential.  When

13   we challenged them on it, they did to their credit immediately

14   take it down.  And we appreciate that.

15            But their rationale for why they did it in the first

16   place was because they believed that it was a judicial document

17   to which the rules of -- the restrictions of the

18   confidentiality order didn't apply.

19            Now, obviously, that causes us concern, but even if

20   we were to presume that that would never happen again, there

21   remains the problem that, ultimately, if documents are used

22   and, you know, it seems like inevitably, if we produce

23   documents, there's a chance that they're going to be used on

24   summary judgment or in public filings or at trial, they would

25   be subject to this presumption of public access, which we would

1    fight, but we could lose. That's -- that is the problem.

2        And can I quickly just address some of the other

3    points Mr. Quigley made?

4        THE COURT: Sure.

5        MR. RICH: With respect to the merits, I just want to

6    point out that the key point that this Court and Judge DeArcy

7    Hall focused on in denying our request was our motion for a

8    protective order was the Court's finding that because our

9    relationship had primarily a commercial character, that it was

10    not entitled to First Amendment association protection.

11        That, you know, I -- just to flag, I -- and obviously

12    respect the Court's view on that point, but I think it's worth

13    noting that recently, in May 2025, there were challenges to the

14    Trump administration's executive orders against law firms.

15        And in one of those cases in the District of D.C.,

16    Perkins Coie v. DOJ, 2025 W.L. 1276857, decided on May 2nd,

17    2025, the Court found as a ground in favor of Perkins Coie and

18    against the government that the -- that the communications

19    between -- that the relationship between Perkins Coie and its

20    clients, law firm and clients, was subject to protection under

21    the First Amendment associational privilege.

22        So, you know, that's just an example of that is a

23    commercial relationship between a law firm and a client. And

24    it -- there was recognized a freedom of association

25    relationship there.

1    So, again, we're not trying to re-litigate this

2  before the Court, but just to make the point that we believe

3  that we do have a good faith basis on the merits of that

4  appeal.

5    And with respect to Novagold's jurisdictional

6  arguments, with think we have very strong arguments that the

7  collateral order doctrine apply to appeals here, because you

8  know, Novagold's arguing that there's no appellate jurisdiction

9  because this is not a final order.

10    Our position is that it falls within the collateral

11  order doctrine.  And there is, you know, the cases on which

12  they rely are not applicable here because they involve party

13  challenges to evidentiary privileges.

14    But in the 2nd Circuit, First Amendment challenges

15  like for example with media access, those have been granted

16  under the collateral order doctrine immediate interrogatory

17  review.  So we think we're going to fine on the jurisdictional

18  question.

19    With respect to the public interest, you know, our

20  argument on the public interest is not -- was mischaracterized

21  just now.  The reason that this is in the public interest is

22  because the public interest has an interest in protection of

23  the First Amendment rights.

24    And so, to the extent, you know, our view is that our

25  client worked in association with J Cap to expose

1    mischaracterizations and misrepresentations by a publically

2    held corporation.

3         We're not denying that there was a commercial element

4    to it, but there was a piece of it, a driving piece we would

5    argue, that was protected by the First Amendment.  And

6    the -- there's a public interest in maintaining that.

7         And our view is that, you know, there -- as I said

8    before, the substantial -- there's no substantial injury.

9    There's no delay.  You know, Mr. Quigley's talking about the

10   delay, but there's a procedural delay as we fight out these

11   motions, but as far as substantive for them getting discovery

12   for their claims, they're not able to point to anything in

13   these discovery requests that would have any meaningful impact

14   or arguably even be relevant to their claims.  So there's no

15   substantial injury.

16        And sorry, there was one other point I wanted to

17   make.  Oh, sorry.  Okay, that's it, Your Honor, thank you.

18             THE COURT:  Okay.  Okay, so thank you for your --

19             MR. RICH:  Oh, I'm sorry, Your Honor.

20             THE COURT:  Oh.

21             MR. RICH:  Can I just make -- say one other thing?

22             THE COURT:  Go ahead.

23             MR. RICH:  If the Court ultimately disagrees with

24   this motion and what we're asking for, there's an alternate

25   position that we would propose.

1          And again, would not -- we don't -- this is not our

2     preferred position, but if the Court is inclined to deny our

3     motion, at the very least, we would ask for a further order

4     prohibiting Novagold -- for the reasons that I've explained,

5     prohibiting Novagold from using any documents or any deposition

6     testimony produced by our client in any public filing or at

7     trial without leave from the Court.

8          THE COURT:  Okay, thank you.

9          So I am -- thank you for your very clear and helpful

10    arguments.  I think I did have some questions, which I was able

11    to pose.  And I think you clarified the issues and your

12    client's positions very well.  So thank you.

13         So on a motion for a stay pending appeal, the Court

14    must consider four things.  The likelihood of success on the

15    merits, irreparable injury if a stay is denied, substantial

16    injury to the party opposing a stay if one is issued, and the

17    public interest.  So the parties have set that out clearly.  So

18    I'll take each one in turn.

19         So the likelihood of success on the merits as Mr.

20    Rich has acknowledged, this Court has made clear.  Judge DeArcy

21    Hall has also -- it's not just one judge.  It's two judges that

22    find that to be the case on the merits.

23         And then, you know, on the issue of whether the 2nd

24    Circuit has jurisdiction at all, I don't have a view on that,

25    but I think ultimately, if it takes appeal, I guess there are

1  two ways for you to lose then.

2          It could be that the 2nd Circuit doesn't take the

3  appeal.  And I think once they take the appeal, they will agree

4  with the district court.  So the likelihood of success weighs

5  in favor of not granting the stay.

6          As far as irreparable injury to ATP, if the stay is

7  denied, Mr. Rich, you have posited certain risks such as the

8  disclosure of the identity of your client, but as you also

9  mentioned, there are things -- measures in place to minimize

10  that, indeed to protect it in the meantime.

11          So the discovery is going forward, but with the

12  confidentiality order.  Novagold may not use -- may not

13  disclose this information and I made that very clear.  And it

14  seems they've been complying.

15          The one instance, I don't remember now what happened,

16  but it was quickly rectified and I trust that that won't happen

17  again.

18          And then, as far as the use of any of these documents

19  in summary judgment, if that is going to have -- and I think

20  the parties need to seek permission of the Court first to -- so

21  that I understand what those documents are before they get used

22  as judicial documents.

23          But even then, there is a process for using -- for

24  filing those documents.  Traditionally, they would be filed

25  under seal.  And then, anybody who wants to unseal them would

1     make the argument that they're not judicial document -- or that

2     they are judicial documents.  Sorry, and therefore, there is

3     the presumption of access.  So there is another check on the

4     potential disclosure.

5              I get your point about the risk, but I think the risk

6     is very small.  And it's in the future downstream.  And if we

7     get to that point, certainly, the parties can come to the Court

8     before that risk emerges.

9              So I think that injury is not irreparable.  It is

10    very avoidable and I will keep a close eye on that as we move

11    forward.

12             So as far as the substantial injury to the party

13    opposing the stay, it is true that there isn't a specific very

14    obvious big injury, but I would say in this case that the delay

15    and the risk that the delay brings in terms of the loss of

16    evidence and witnesses is substantial, constitutes substantial

17    injury.

18             This case was filed in 2020.  It's been delayed.  And

19    I will note that even though Plaintiff is not completely

20    innocent of the delay, a large part of it is on the side of the

21    Defendant.  And the fact that we're dealing with this issue at

22    this point so late in the game is not because of the

23    Plaintiff's actions.

24             And so, the case needs to move forward.  And that's

25    why I've been pressing it to go forward, even though these

1    other legal issues are still playing out, but I have put in

2    place measures to make sure that there isn't an immediate

3    disclosure, so that things are protected.

4            And if the 2nd Circuit rules against the -- this

5    Court's order, any injury by things moving forward is not

6    irreparable because the identity will not have been disclosed

7    to the public at that point.

8            And then, the final point is the public interest and

9    the chilling effect here.  I do not see that there's a chilling

10   effect on the public because I don't -- just invoking the First

11   Amendment does not make it per se a public interest.

12           I think here, the public interest is in this very

13   small class of people, who might want to enter into a business

14   relationship with some other -- a business entering a business

15   relationship with another business.

16           And so, I -- and invoking a First Amendment right

17   here, I don't think they're going -- anybody with an interest

18   in that is going to be chilled just because this matter gets

19   enforced pending the appeal by the 2nd Circuit.

20           So weighing all of these factors, I find that

21   there -- I'm going to deny the request for a stay pending

22   appeal.

23           But again, I'm trying to make sure that there are

24   measures in place to keep things cabined as much as possible

25   while the 2nd Circuit does its work.

1    So the request, Mr. Rich, was to order Novagold not

2  to file anything on the public docket should we get at any

3  point up to and including the summary judgment motion.  And so,

4  I would just ask if we get to that point, well, and this appeal

5  still hasn't been decided, that the parties confer and, you

6  know, to the extent that there might be information that's

7  going to be filed, you let the Court know.

8    I mean, it could just be that the document is filed

9  redacted.  And then, it's preserved, right?  So it's a judicial

10 document, but the judicial document is a redacted document.

11 And I don't think if the Court is not being asked to consider

12 the identity of the Third Party, then that information is not

13 part of the judicial document with the presumption of access,

14 okay?

15    So you could have the document and if you black out

16 the name of the Third Party, because it's not important to the

17 Court's consideration of the summary judgment, then I don't

18 think there's a problem.

19    But we're not there yet.  I don't know how much

20 discovery there is to be done.  Do you remember the discovery

21 deadline that's in place now?

22    MR. QUIGLEY:  Your Honor, I think we have some

23 pending requests, but I think Your Honor had said you're going

24 to hold this in abeyance till after Judge DeArcy Hall resolves

25 the remaining order (indiscernible).

1          THE COURT:  That's right.  That's right.  So Judge

2    DeArcy Hall still needs to decide some issues.  But in the

3    meantime, whatever needs to happen here in discovery should

4    move forward and wrap up because then depending on -- it'll be

5    done except for any piece that would remain as a result of

6    Judge DeArcy Hall's rulings on the pending matters before her.

7          But this is, again, one of those things where I want

8    all the pieces to just keep moving forward.  This case is now

9    five years old.  And I have weighed the factors that the 2nd

10   Circuit says I need to weigh and I am denying the stay.

11         So, yes, Mr. Korzenik?

12         MR. KORZENIK:  Regarding on two points, since we're

13   discussing discovery and status and so on, I would only request

14   that the Plaintiff update their discovery because the last time

15   we got discovery from them on their ongoing plans of

16   construction of their mine, which seems not to have advanced, I

17   would like to get that further discovery through the present

18   date.

19         The last time that we got discovery from them was in

20   November of '24 I believe, had been '23, but it should be

21   updated because as Your Honor had observed, when you granted

22   disclosure of information from Novagold post publication, you

23   said there are ongoing issues because at issue here is a

24   prediction, a prediction of whether they can build their mine

25   or not.  And for the past five years, they've done nothing.

1          THE COURT:  All right, so --

2          MR. KORZENIK:  And so, I want to be able to get

3     discovery of that ongoing activities that Your Honor had cited

4     to them and bring it up to date.

5          THE COURT:  The parties are always under an

6     obligation to update their discovery disclosures.

7          MR. KORZENIK:  Right.

8          THE COURT:  And you can work out with each other when

9     those occur and up to what point.  I'm not going to arbitrarily

10    say that as of today, they need to be up to date to today.

11         MR. KORZENIK:  That's fine.

12         THE COURT:  I could then turn to you and say the same

13    thing for you.

14         MR. KORZENIK:  Right, absolutely.

15         THE COURT:  And so, I think it's -- that's one of

16    those things that the parties should talk and work out the

17    details of updating, but of course, both parties have the

18    obligation to continuously update.

19         MR. KORZENIK:  So I just want to put that out on the

20    table.

21         The other thing is that Brendan mentioned my client's

22    condition.  And it's something that I want the Court to be

23    mindful of.  He said that she's moving to China.

24         She's not well.  Her resources are now gone in terms

25    of her ability to defend this case.  She is sick.  She has a

1    neurological disorder that is troubling.  Her work as a writer

2    has slowed down, so the company's now basically her.  Dan

3    Murray (phonetic) has left the company a few years ago.

4             So it's her loan.  And one of the things that I find

5    that is significant about this case is that in many respects,

6    she's not really what this case is about.

7             Since our first conference with Your Honor in

8    September of 2020, the -- Jonathan Rubenstein, who was then the

9    counsel for the Plaintiff, this is now the third, he made the

10   point that this is a short and distort scheme and we believe

11   that J Cap did not act alone.

12            And the discovery -- you then said, well, what

13   discovery do you want?  And they said we want discovery about

14   third-parties that either influenced J Cap's decision to target

15   Novagold, or who worked with it to create the report, or who

16   put the report in motion.

17            So from day one, they were looking for the anonymous

18   party because it was intended to out the short and to

19   intimidate anyone who was a short seller, so that no one

20   shorted their stock, and they could exercise their options at a

21   higher price.

22            This case is essentially not really about my client

23   as it is about tracking down the -- and outing the anonymous

24   party.

25            And what they're now doing is they're now seeking

1    discovery now that they obtained the identity of the short, of

2    the activist short, based on this representation to Your Honor,

3    they said they knew that Your Honor's ruling had been against

4    them on Request 15 and Interrogatory 6.  That precisely these

5    issues -- these communications with the short seller were

6    privileged.  Your Honor ruled that directly.  They then came

7    into a status conference knowing what your orders have been.

8              THE COURT:  Mr. Korzenik, I tell --

9              MR. KORZENIK:  I just -- I want to complete this

10   thought and then I'll -- I will --

11             THE COURT:  Okay, you're losing me.  So I don't know

12   where the thoughts --

13             MR. KORZENIK:  All right, so here's what they have

14   paid.

15             THE COURT:  -- where the thought is leading.

16             MR. KORZENIK:  So they obtained the identity and

17   ability to subpoena the short seller on this representation.

18   They said, Your Honor, we're not seeking communications.  We

19   are not saying that the activist short is the speaker or an

20   anonymous speaker.

21             We're not saying that they were a source.  We just

22   want their identity in order to find out financial

23   arrangements.  We gave them financial arrangements.

24             And now what are they asking for in Texas?

25   Communications from between us and the short.  That was

1  something that Your Honor ruled multiple times against.

2       And what I'm concerned about is the fact that we

3  continue to have to spend money on the fifth version of this

4  request that Your Honor found -- denied back in 2021.

5       THE COURT:  Mr. Korzenik, what is your request to the

6  Court?

7       MR. KORZENIK:  So what I'm putting on

8  the -- it's -- I may need to get a protective order at some

9  point because of my client's being burdened with having to

10 litigate the same communication requests five times in this

11 case, five times this case has -- we have litigated these very

12 same issues, once with Mr. Rubenstein, another time with Mr.

13 Genender, and several times with Mr. Quigley.

14      So what I'm saying is that the burden is becoming

15 vexatious and unfair.  It looks as if we're sort of the ones

16 who delayed things because we asserted the report is

17 privileged.

18      They keep making the same demands that Your Honor

19 denied and that the Court denied -- and that Judge Hall denied.

20 And we have to pay for that every time around.

21      And we can't carry that.  And I need to get some kind

22 of protection on a practical level from that repetitive stuff.

23 They are now asking in Texas for the same documents that Your

24 Honor denied.

25      THE COURT:  Mr. Korzenik, what does this have to do

1  with Ms. Stevenson Yang's health?

2          MR. KORZENIK:  It relates to a protective order that

3  eventually I may need to seek in order to because I want it to

4  be clear that the -- what -- that this litigation to out this

5  short is vexatious and it's repetitive.  And to say as Your

6  Honor makes suggested that we're responsible for the delay on

7  this, there were five times --

8          THE COURT:  Mr. Korzenik?

9          MR. KORZENIK:  It's been --

10         THE COURT:  Mr. Korzenik --

11         MR. KORZENIK:  Yes.

12         THE COURT:  -- the record speaks for itself.  I have

13  been managing this pre-trial discovery.  There have been many,

14  many conferences during Covid and subsequently where I have

15  been trying to get information from you.  I have tried to get

16  clarification from you.

17         You have promised information in terms of the

18  discovery and the bi -- the issue of the bifurcation of

19  discovery.  We had numerous conferences on that and I couldn't

20  get a straight answer from you.

21         MR. KORZENIK:  We didn't fight that.

22         THE COURT:  So Mr. Korzenik --

23         MR. KORZENIK:  I agreed with you on that.

24         THE COURT:  What I'm saying is my observation of this

25  case is that it has taken too long.  And all I'm saying is the

1   Plaintiff is entitled to get the case moving forward.

2           If it was purely the Plaintiff's fault that things

3   were delayed, it would count against them.  My observation,

4   having dealt with all of this up to this point in the past

5   years, the past five years, is that the -- it is not entirely

6   the Plaintiff's fault what is happening in terms of delay,

7   which is why I'm very concerned about the delay.

8           Normally I've heard said, and it is true, simple

9   delay is not substantial injury.  I get that.  But what I'm

10  saying here is that the Plaintiff is not to blame for all of

11  the delay here.  And so, they are entitled to have the case

12  moved forward.  That's --

13          MR. KORZENIK:  No, I understand that.

14          THE COURT:  -- and I agree that you are entitled to

15  assert First Amendment claims on behalf of your client.  I

16  agree that you are entitled to make zealous arguments on behalf

17  of your client, but I am -- I made that remark based on my very

18  close supervision of this case and the conduct of parties in

19  the course of discovery and pre-trial matters.

20          And there is -- there has been a lot of delay.  I'm

21  not saying it's 100 percent you, but I am saying that there is

22  enough here for me to consider the delay -- further delay in

23  this case to be a harm and an injury to the Plaintiff.  So that

24  is the context.

25          MR. KORZENIK:  Yeah.

1          THE COURT:  I'm not going to get into an argument

2     about you about the things that you think I think you did

3     wrong.  That doesn't matter.  It's behind.  It's water under

4     the bridge at this point.  It is really up about the harm to

5     the Plaintiff by further delay.

6          I'm also hearing in your invoking Ms. Yang's health

7     that the delay is also causing harm to you -- to your client.

8     And so, that is another reason that this case should not be

9     delayed.

10          MR. KORZENIK:  Correct.

11          THE COURT:  And so, we should be moving forward as

12     expeditiously as possible rather than having a lot of side

13     arguments and stays, which is one of the reasons that I denied

14     the stay.

15          MR. KORZENIK:  I did not oppose the --

16          THE COURT:  That there should not be delay --

17          MR. KORZENIK:  I don't oppose what you're saying,

18     Judge.  The practicality --

19          THE COURT:  Okay, so if you have a protective --

20          MR. KORZENIK:  -- but I just -- yeah.

21          THE COURT:  If you have a request for protective

22     order, you may make it in writing to the Court and set forth

23     exactly what it is that you are basing the request on.

24          I want you to confer with the Plaintiff first, so

25     that they understand what you're talking about.  If there are

1    things you can work out, so that you don't need to bring the

2    matter to the Court's attention, you should do so.

3          I hear that there is this motion in Texas.  This is

4    the first time I'm hearing about it.  I have no idea what it's

5    about.  I have no idea what the subpoena was there.  It has not

6    been presented to me for decision.

7          So for you to bring it up now, I can't do anything

8    with it.  But if you have a valid basis for a protective order,

9    with reasons for it, and what it is you're seeking

10   specifically, and you haven't been able to reach an agreement

11   with Mr. Quigley about working it out and coming to some sort

12   of agreement or compromise, then by all means you can file it

13   with the Court, but -- and maybe I should just thank you for

14   bringing to my attention a heads up that something is coming.

15         So maybe that's where I should start.  Thank you for

16   letting me know, but there's nothing I can do about it today.

17         MR. KORZENIK:  No, I realize that.

18         THE COURT:  I look forward to your filing.

19         MR. KORZENIK:  No, I'm not asking you to do anything.

20         THE COURT:  Okay, so.

21         MR. KORZENIK:  I'm just a status conference dimension

22   to this and that's why I raise it.

23         THE COURT:  Okay, you started by talking about Ms.

24   Yang, so then, it went into a different direction.  It confused

25   me.  So thank you for clarifying.  If you're going to file a

1  protective motion, do so quickly after, again, speaking with

2  Mr. Quigley to try to work it out.

3          There may well be some compromises that you can reach

4  so that it's not necessary to litigate this. And that would be

5  great because again, I hear actually an agreement between

6  Plaintiff and Defendant that this case should move forward

7  expeditiously because there are many reasons it should not be

8  drawn out. So please work on that, all right?

9          So work on work -- discussing those things. And if

10 there is a problem, you can bring it to the Court's attention.

11 And once I've had a chance to look at everything, I can make a

12 decision.

13         MR. RICH: Your Honor?

14         THE COURT: I don't have enough detail to do

15 anything.

16         Yes, Mr. Rich?

17         MR. RICH: Sorry, Your Honor, and with apologies for

18 prolonging this on a summer Friday afternoon, but just to

19 clarify the Court's order on our motion, the relief we sought

20 and your order's very clear denying our motion for the stay,

21 but we also as I said at the beginning of the argument plan to

22 ask the 2nd Circuit -- to file a motion separate from our

23 appeal, to file a motion for a stay pending appeal under their

24 rules.

25         THE COURT: Of course.

1    MR. RICH:  And the second part of our requested

2  relief was asking this Court to at least put in place a

3  temporary stay so that we could have the 2nd Circuit rule on

4  our request for a stay pending appeal from them, just a

5  temporary stay to allow us to do that?

6    THE COURT:  What's the time frame for that?

7    MR. RICH:  We would file our motion as soon as

8  possible.  I think -- I believe my understanding is that they

9  rule quickly, but I don't control their calendar.  So I

10  couldn't really say how quickly they're going to do it, but my

11  understanding is that it would, you know, not be prolonged.

12    THE COURT:  But I -- I have no experience.  Is it in

13  this area.  Is it a week?  Is it two months?

14    MR. RICH:  I --

15    THE COURT:  Or is it five months?

16    MR. RICH:  I -- as far as I know, Your Honor, they

17  don't have a -- there's no deadline that they have, but where

18  they have to turn around a decision, just as this Court doesn't

19  have deadlines to turn around decisions.  I don't know how

20  quickly they would do it, but my understanding is that it would

21  be treated as, you know, an emergency appeal.  And we'd be

22  seeking emergency relief from them.

23    And so, at least if we could have the status quo

24  until we get an answer from them on that?

25    THE COURT:  Uh-huh.  I hear what you're saying and I

1  understand why this process exists.  Thinking through what is

2  happening in practical terms in real life, it doesn't sound

3  like there is any need for a stay, because there is the

4  confidentiality order.  Any of the harms that you're talking

5  about would only happen once we're getting to summary judgment

6  or if Novagold decides to file something, a motion to the

7  Court, I've already directed them not to do so without prior

8  approval.

9          So any harm that could occur that would necessitate

10  stay does not exist.  And so, I'm going to deny that request as

11  well.

12          All right, so Mr. Quigley, is there anything else for

13  the --

14          MR. QUIGLEY:  Nothing on behalf of Plaintiff, Your

15  Honor, thank you.

16          THE COURT:  Okay, and Mr. Rich, anything else?

17          MR. RICH:  Nothing else, thank you, Your Honor.

18          THE COURT:  All right, thank you.

19          Mr. Korzenik, anything from you?

20          MR. KORZENIK:  No, thank you, Your Honor.

21          THE COURT:  All right, thank you, everybody.  Have a

22  great week.

23          MR. KORZENIK:  Thank you, Your Honor.

24      (Proceedings concluded at 4:26 p.m.)

25

1                          **CERTIFICATE**

2

3

4          I, Chris Hwang, court approved transcriber, certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the above-

7    entitled matter.

8

9

10

11          /s/ *Chris Hwang*

12    _____          July 18, 2025

13    Chris Hwang                       Date

14    Court Reporter

15

16

17

18

19

20

21

22

23

24

25