**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

NOVAGOLD RESOURCES INC.,

     Plaintiff,

    v.

J CAPITAL RESEARCH USA LLC,

     Defendant.

**1:20-cv-02875 (LDH) (PK)**

**PLAINTIFF NOVAGOLD'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY AND 28
U.S.C. § 1927**

**Table of Contents**

Page

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 3

   I.   ███████████████████████████████████████████████

    ████████████████████████ .......................................................... 3

   II.   Novagold's Initial Discovery Requests and the Hearing on the Motion to Compel .......... 7

   III.   J Capital Continues to Improperly Assert the Internal Editorial Process .................... 12

ARGUMENT ............................................................................................................. 15

   I.   The Court Should Impose Sanctions Pursuant to Its Inherent Power ............................... 15

    A.   Inherent Power Sanctions Are Appropriate ................................................. 15

    B.   Significant Sanctions Are Appropriate Pursuant to the Court's Inherent Power.......... 17

    C.   Judgment for Novagold and Payment of Certain Fees Are Appropriate ...................... 20

   II.   J Capital's Counsel Should Also Be Sanctioned Pursuant to 28 U.S.C. § 1927 ............. 22

CONCLUSION ............................................................................................................. 24

# Table of Authorities

**Page(s)**

CASES

*Berk v. Choy,*
    146 S.Ct. 546 (2026) ...........................................................................................23

*Brockton Savings Bank v Peat, Marwick, Mitchell & Co.,*
    771 F.2d 5 (1st Cir. 1985) ..................................................................................22

*Button v. New York Times Co.,*
    No. 1:24-CV-05888 (MKV), 2025 WL 2643674 (S.D.N.Y. Sept. 15, 2025) ........23

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ..............................................................................................17

*Chevron Corp.v. Berlinger,*
    629 F.3d 297 (2d Cir. 2011) .......................................................................2, 9, 16

*Cortsidis v. K'hal Bnei Torah of Mount Ivy,*
    No. 22-cv-10502 (CS), 2024 WL 37122 (S.D.N.Y. Jan 3, 2024) ........................23

*DLC Mgmt. Corp. v. Town of Hyde Park,*
    163 F.3d 124 (2d Cir. 1998) ................................................................................17

*Doe 1 v. East Side Club,*
    18-CV-11324 (KPF), 2021 WL 2709346 (S.D.N.Y. July 1, 2021) .......................18

*Eisemann v. Greene,*
    204 F.3d 393 (2d Cir. 2000) ................................................................................24

*Enmon v. Prospect Cap. Corp.,*
    675 F.3d 138 (2d Cir. 2012) ................................................................................17

*Esposito v. Suffolk Cnty. Cmty. Coll.,*
    517 F. Supp. 3d 126 (E.D.N.Y. 2021) ...................................................................1

*Fowler v. Vary,*
    No. 20-CV-9586 (LAK), 2022 WL 3211638 (S.D.N.Y. Aug. 9, 2022) ...................2

*Hong v. Mommy's Jamaican Mkt. Corp.,*
    No. 20-CV-9612 (LJL), 2024 WL 3824394 (S.D.N.Y. Aug. 14, 2024) ...........18, 19

*In re Fitch, Inc.,*
    330 F.3d 104 (2d Cir. 2003) ............................................................................9, 16

*In re Lightfoot,*
217 F.3d 914 (7th Cir. 2000) ...............................................................................19

*In re Reed,*
2016 WL 11780171 (Bankr. E.D. Mo. Apr. 20, 2016)............................................1

*In re Reyes,*
651 B.R. 99 (Bankr. S.D.N.Y. 2023) .....................................................................1

*In re Telxon Corp. Sec. Litig.,*
No. 01-CV-1078, 2004 WL 3192729 (N.D. Ohio July 16, 2004) .........................21

*Laba v. JBO Worldwide Supply Pty Ltd,*
No. 20-CV-3443 (AKH) (KHP), 2023 WL 4985290 (S.D.N.Y. July 19, 2023) ....23

*Lee v. Hong,*
No. 24-2435, 2025 WL 3637495 (2d Cir. Dec. 16, 2025) ....................................17

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.,*
191 F. Supp. 2d 440 (S.D.N.Y. 2002) ..............................................................17, 19

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union,*
212 F.R.D. 178 (S.D.N.Y. 2003) ...........................................................................22

*Murray Energy Corp. v. Reorg Research, Inc.,*
58 N.Y.S.3d 369 (1st Dep't 2017) ...........................................................................9

*Oliveri v. Thompson,*
803 F.2d 1265 (2d Cir. 1986)................................................................................24

*Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC,*
626 F. Supp. 3d 478 (D. Mass. 2022) ...................................................................22

*Roberts v. Bennaceur,*
658 F. App'x 611 (2d Cir. 2016) ...........................................................................22

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.,*
328 F.R.D. 100 (S.D.N.Y. 2018) .............................................................................1

*Usherson v. Bandshell Artist Mgmt.,*
No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020) ...............23

*Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC,*
776 F.3d 1 (D.C. Cir. 2015) ..................................................................................22

**STATUTES**

28 U.S.C. § 1927 ...........................................................................1, 24, 25, 26

N.Y. Civil Rights Law § 79-h(g) .................................................................................2, 9

**OTHER AUTHORITIES**

Gregory Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 28 ......................................19

Plaintiff Novagold Resources Inc. ("Novagold") submits this motion for sanctions pursuant to the Court's inherent authority and 28 U.S.C. § 1927.

## INTRODUCTION

"Federal litigation constitutes a search for truth."[1] This search depends in large measure on the candor of attorneys to the Court and to their adversaries, because "for the Court to conduct proceedings properly, it must be able to rely upon representations made on the record by attorneys licensed to practice before it."[2] An attorney's duty of candor requires "being open and honest," not just avoiding "technical[] lie[s]."[3] The search for the truth also depends on the parties themselves being honest, particularly when making under-oath assertions in interrogatory responses, declarations, or depositions.

Here, at a court hearing over four and a half years ago, defendant's counsel repeatedly went out of his way to represent to the Court and opposing counsel that J Capital's May 28, 2020 report on Novagold (the "Report") resulted from an "internal editorial process," that there was "no third party," and that it would be a "waste of time" to even look for documents with a third-party, because "I . . . can't imagine that there were" any. J Capital's founder made under-oath declarations to similar effect, swearing in interrogatory responses that "there were three persons directly involved in drafting and preparing the Report," herself and two other J Capital employees.

Those representations were critical to the Reporter's Privilege issues then being litigated before the Court. This was true for multiple, independent reasons. First, New York's Reporter's Privilege is waived if a journalist "voluntarily discloses or consents to disclosure" of privileged

---

[1] *Esposito v. Suffolk Cnty. Cmty. Coll.*, 517 F. Supp. 3d 126, 127 (E.D.N.Y. 2021).

[2] *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.,* 328 F.R.D. 100, 118 (S.D.N.Y. 2018).

[3] *In re Reyes,* 651 B.R. 99, 143 (Bankr. S.D.N.Y. 2023) (quoting *In re Reed*, 2016 WL 11780171, at *116 (Bankr. E.D. Mo. Apr. 20, 2016)).

information to a third-party not entitled to claim the privilege.[4] In addition, because the Reporter's Privilege is intended to promote an "independent" press, a journalist's "independence" from those "'who have a stake in the subject of the reporting'" "is material to whether" the privilege applies.[5]

Magistrate Judge Kuo relied on counsel's representations regarding the internal editorial process to hold the Reporter's Privilege applied to the Report.[6] J Capital's counsel continued to repeat those assertions throughout this litigation, both explicitly and by citing Judge Kuo's ruling about J Capital's supposed independence. He has also relied on them to excuse J Capital's failure to produce a privilege log or essentially *any* discovery (about 36 documents, most already public) over almost six years of litigation.

Those representations about an "internal" and "independent" process were false. After extensive litigation both here and in the Western District of Texas, the Anonymous Third Party ("ATP")—the "research client" of J Capital's that "manages money on behalf of individuals, endowments, and pensions [sic] funds"[7] and ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████ an "internal" and "independent" process based on J

[4] N.Y. Civil Rights Law § 79-h(g) ("[A]person entitled to claim the exemption provided under subdivision (b) or (c) of this section waives such exemption if such person voluntarily discloses or consents to disclosure of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided by this section.").

[5] *Fowler v. Vary*, No. 20-CV-9586 (LAK), 2022 WL 3211638, at *7 (S.D.N.Y. Aug. 9, 2022) (quoting *Chevron Corp.v. Berlinger*, 629 F.3d 297, 308 (2d Cir. 2011)).

[6] *See, e.g.*, Ex. 1, Aug. 11, 2021 Hearing Tr., ECF No. 70, 30:1-4 ("[W]hat I'm hearing and is that Mr. Korzenik is saying that those other 'other materials' are internal documents that are discussions among the people at J Cap."); *see also id.* 30:13-16 ("They're saying that th[ey] might be responsive to the request, but they're asserting the report is privilege[d] and internal communication."); *id.* 31:7-9 ("[A]t least I can identify here that if ***the documents being over which the privilege is asserted are internal communications . . . .***" (emphasis added)); *id.* 51:3-6 ("I've heard Mr. Korzenik talk about ***internal communications and asserting the privilege, the reporter's privilege over* those[.]**" (emphasis added)).

[7] Ex. 2, Doe 2's Decl., ECF No. 175-2 ¶ 5.

Capital's "review and evaluation of publicly available documents,"[8] █████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████.

Given these false representations, sanctions are warranted. These now-demonstrably false representations resulted in rulings, specifically that the Reporter's Privilege applied to the Report, that formed a basic premise of literally years of litigation in this Court, the Second Circuit, and the Western District of Texas. Given the extent of these misrepresentations, their centrality to key issues, and the many times they were repeated and relied on by J Capital over the years, bad faith is evident, and sanctions are warranted. The Court should (i) enter judgment for Novagold on its affirmative claim, or at least on J Capital's anti-SLAPP counterclaim, and (ii) order J Capital and its counsel to pay Novagold's attorneys' fees and costs incurred in overcoming J Capital's baseless assertion of the Reporter's Privilege, including preparing this motion for sanctions.

## BACKGROUND



**I.**   █████████████████████████████████████████████████

████████████████████████████████████████████:

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[8] Ex. 3, Decl. David Korzenik, *Novagold Resources, Inc. v. J Capital Research*, 25-cv-850 (W.D. Tex. June 6, 2025), ECF No. 5-1 ¶ 12.













## II. Novagold's Initial Discovery Requests and the Hearing on the Motion to Compel

Novagold filed this lawsuit in June 2020. In October 2020, it served document requests and interrogatories on J Capital. Novagold sought information about (i) people involved in drafting and preparing the Report; (ii) who knew about the Report pre-publication; (iii) third parties with whom the Report was discussed; (iv) who paid J Capital in connection with the Report; and (v) editorial input or revisions or prior to publication.

J Capital's written responses asserted the Reporter's Privilege but also indicated that the Report was prepared internally. J Capital's responses to Novagold's interrogatories, sworn to by Ms. Stevenson-Yang, stated "there were three persons directly involved in drafting and preparing the Report: 1) Anne Stevenson-Yang, 2) Tim Murray, and 3) John Besant-Jones, a forensic accountant who works with JCAP." *See* Ex. 5, Def.'s Resp. Pl.'s First Set Interrogs., Interrog. No. 2, Nov. 24, 2020; *see also id.* at Interrog. No. 6 (Stevenson-Yang, Murray, and Beasant-Jones were "[t]he primary persons who knew about the Report or its preparation prior to its publication").

After meeting and conferring with J Capital, Novagold moved to compel on May 19, 2021. Ex. 6, Pl.'s Mot. Compel, ECF No. 56. Novagold's motion clearly argued that the New York Reporter's Privilege applied *only* to news that was "independent." As Novagold explained "'[t]hose who do not retain independence as to what they will publish but are subservient to the objectives of others who have a stake in what will be published have either a weaker privilege or none at all.'" *Id.* at 6 (quoting *Berlinger*, 629 F.3d at 308, and citing *Murray Energy Corp. v. Reorg Research, Inc.*, 58 N.Y.S.3d 369, 371 (1st Dep't 2017) ("Other courts have found the extent of a publication's independence and editorial control to be important in determining whether to apply the Shield Law." (collecting cases))); *In re Fitch, Inc.*, 330 F.3d 104, 111 (2d Cir. 2003) (New York privilege inapplicable given "a level of involvement with the client's transactions that is not typical of the relationship between a journalist and the activities upon which the journalist

reports.").[33] In short, Novagold's motion squarely presented the issue of the Report's independence.

J Capital opposed the motion. Its opposition relied on a sworn declaration from Ms. Stevenson-Yang. Ex. 7, Stevenson-Yang Decl., ECF No. 61. Clearly cognizant of the centrality of the independence issue, the declaration included a section called "Editorial Control and Independence." *Id.* ¶ 16. There, ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████,"[34] she swore that "to the extent any short sellers of NovaGold stock might act or did act on their review of the [Report], they had no control or right to control our reporting . . . ***No short seller or recipient of our reports has any right or ability to dictate what we publish or when we are ready to publish*** . . . . Our credibility and independence are central to what we do and what we publish." Ex. 7 ¶ 16 (emphasis added).

Magistrate Judge Kuo held oral argument on August 11, 2021. The Court proceeded through the document requests and interrogatories systematically. As discussed below, Mr. Korzenik stressed that the Report was produced through an "internal editorial process" and claimed that "virtually every single one" of Novagold's requests sought "internal news material[.]" Ex. 1 19:10, 27:4-5.

**Decision to Focus on Novagold.** As to Request for Production No. 5, which sought documents J Capital possessed, reviewed, read or received in connection with the decision to focus on Novagold, Mr. Korzenik went out of his way to emphasize "***that there's no third party here.***

---

[33] And, as noted above, the Reporter's Privilege is waived if a journalist shares otherwise privileged materials with a third party not entitled to claim the privilege. N.Y. Civil Rights Law § 79-h(g).

██ ████████████████████████.

***There's no mystery here.***" *Id.* 8:8-16 (emphasis added). Responding to the Court's questions, Mr. Korzenik reiterated "[t]he report is a typical report by, you know, analysts of companies ***based on the publicly available materials***." *Id.* 9:20-22 (emphasis added). The Court asked Mr. Korzenik whether, "other than the . . . publicly available documents that you have produced, the other documents are ***internal*** documents," to which Mr. Korzenik responded "that's correct." *Id.* 27:16-20 (emphasis added). Mr. Korzenik again went out of his way to stress that (███████████ ███████████████████████████████████), "***It's an internal decision. It's an internal editorial deliberation. It's an internal editorial process.***" *Id.* 19:9-11 (emphasis added), and faulted Novagold for requests regarding "***internal editorial process***[.]" *Id.* 25:2 (emphasis added).

      **Communications between J Capital and a Third Party**. Novagold also sought "[a]ll documents that constitute, reflect, or discuss communications or meetings between you and third persons regarding [Novagold]. . ." Ex. 8, Pl.'s First Req. Prod. Docs., Req. Prod. No. 7, Oct. 10, 2020. J Capital's written response stated that it "has already answered the Interrogatories regarding communications with third parties regarding [Novagold]. ***Those individuals have been identified***," a reference to the interrogatory response disclosing J Capital employees Murray, Stevenson-Yang, and Beasant Jones. Ex. 9, Resp. Def. to Pl.'s First Req. Prod. Docs., Req. Prod. No. 7, Nov. 24, 2020 (emphasis added). J Capital's written response added "[t]he Report was based on publicly available documents as the Report makes clear." *Id.*

      At oral argument, the Court asked Mr. Korzenik to confirm this response. ███████ ███████████████████████████████████████████████, Mr. Korzenik represented "***they're just internal***," Ex. 1 31:23-24 (emphasis added), and "when it comes to this, ***they're either internal discussions or they are discussions with confidential sources or***

***commenters, and that's it.*** *Id.* 33:21-23 (emphasis added). Mr. Korzenik added "it's either internal or it's confidential . We don't really . . . have a lot of sources . . . . [I]f we did speak to some third party, and ***by the way we disclosed everybody who was in the interrogatories. We disclosed everyone who was involved in writing the Report. If there's some third party . . . I don't know who it is right now . . . and I could look again, but I think it's a waste of time.***" *Id.* 35:11-36:11 (emphasis added).

The Court again asked whether the issue was only "about internal discussions," to which Mr. Korzenik responded that "I'll look at it again. ***I don't . . . can't imagine there were***. There could have been idle . . . conversation, we're looking at these guys, you know, what do you know about them?" *Id.* 37:25-38:8 (emphasis added). Of course, no clarification from Mr. Korzenik ever came forth over the last four and a half years.

**Responses Regarding Persons Involved in "Drafting" and "Preparing the Report."** Novagold's also sought information about those involved in preparing the Report.[35] Interrogatory No. 2 asked for the identities of "all persons who have provided information to you or received information from you . . . concerning . . . the drafting of the Report[.]" Ex. 10, Pl.'s First Set Interrogs., Interrog. No. 2, Oct. 9, 2020. As noted above, J Capital's written responses claimed that only "three persons [were] directly involved in drafting and preparing the Report"—Stevenson-Yang, Murray, and Besant Jones, all J Capital employees.[36] Additionally, Novagold sought "[a]ll documents. . . that reflect any editorial input, editorial oversight, edits or suggested edits, revisions or suggested revisions, or comment of or concerning the Report  . . . ." Ex. 8 at Req. Prod. No. 15.

---

[35] Ex. 8 Req. Prod. No. 2.

[36] *See* Ex. 5 Interrog. No. 2 (identifying "three persons directly involved in drafting and preparing the Report: 1) Anne Stevenson-Yang, 2) Tim Murray, and 3) John Besant-Jones"); *see also id.* at Interrog. No. 3 (same); *id.* at Interrog. No. 6 ("primary persons who knew about the Report or its preparation prior to publication" were Stevenson-Yang, Murray, and Besant-Jones).

At the August 11, 2021 conference, by the time it got to Request No. 15 and having heard Mr. Korzenik's earlier representations that J Capital had "disclosed everybody who was in the interrogatories" as those "involved in writing the Report," Ex. 1 36:3-5, as well as his assertions about the "internal editorial process," the Court rhetorically asked Novagold's counsel "if in fact the Defendant is covered by the Reporter's Privilege, then this would be covered, right, because of editorial process?" *Id.* 47:19-21.

***

Mr. Korzenik's representations at the August 11, 2021 conference plainly led the Court to believe that the editorial process that generated the Report was internal to J Capital. Judge Kuo noted that "what I'm hearing [] is that Mr. Korzenik is saying that those other 'other materials' are internal documents that are discussions among the people at J Cap." Ex. 1 30:1-5; *see also id.* 30:13-16 ("They're saying that th[ey] might be responsive to the request, but they're asserting the report is privilege[d] and ***internal*** communication." (emphasis added)). She added that "[A]t least I can identify here that [] ***the documents being over which the privilege is asserted are internal communications***," *id.* 31:7-9 (emphasis added), and that "I've heard Mr. Korzenik talk about ***internal communications and asserting the privilege, the Reporter's Privilege over those***," *id.* 51:3-5 (emphasis added).

At the end of the conference, the Court concluded that the "upshot of our discussion and what I'm deciding today is that I'm going to deny the motion to compel because based on the description -- based on my finding or my conclusion that the Defendant is engaged in news and so can assert the Reporter's Privilege . . . ." *Id.* 55:2-6. Judge Kuo added, as to Requests for Production Nos. 5 through 8, for example, that, "I heard the response to that is those documents are ***internal communications***." *Id.* 56:24-57:2 (emphasis added). Mr. Korzenik affirmed, "that's

correct," and the Court responded, "[s]o that would all be covered by the Reporter's Privilege." *Id.* 57:3-5.

### III.   J Capital Continues to Improperly Assert the Internal Editorial Process

On September 10, 2021, Novagold filed a renewed motion to compel, seeking information about funding for the Report and a privilege log. Ex. 11, Pl.'s Mem. L. Supp'n Renewed Mot. Compel, ECF No. 74. J Capital opposed Novagold's renewed motion. In doing so, it dug in on its "internal" and "independence" theme, including in its response another sworn declaration from Ms. Stevenson-Yang, where she again asserted— ███████████████████████████ █████████████████████████—that J Capital "controls the content of its reports. No one else does. Nor can they[,]" Ex. 12, Stevenson-Yang Decl., ECF No. 79 ¶ 6(b). In support of its opposition, J Capital also attached an exhibit, ████████████████████████ ██████████████████████. Specifically, in the email in which Novagold asked Mr. Korzenik to "confirm that none of the withheld materials have been voluntarily disclosed to anyone outside of JCAP?" *see* Ex. 13, Exhibit A, ECF No. 80-1 at 4. Mr. Korzenik responded, "the documents we have withheld under the 79-h Reporter's Privilege are confidential materials or internal materials." *Id.* at 3. Responding to a follow-up question, Mr. Korzenik claimed he was "unaware" of any voluntary disclosure to a non-reporter. *Id.* at 1.

On January 19, 2022, Judge Kuo denied Novagold's renewed motion to compel. Text Order Jan. 19, 2022. On February 2, 2022, Novagold appealed that order to Judge DeArcy Hall, Ex. 14, Pl. Appeal, ECF No. 88, who later remanded the matter to Magistrate Judge Kuo for additional briefing on the issues of "whether the reporter privilege shields from disclosure the identity of any purported funder of the Report" and "whether, if the reporter privilege is inapplicable, the anonymous speaker privilege applies." Ex. 15, Mem. & Order, ECF No. 113 at 2-3.

In further briefing and argument on remand before Judge Kuo, J Capital and its counsel continued to emphasize the supposed "internal" process through which the Report was created and J Capital's supposed "independence." For example, in its opening brief following remand, J Capital contended it has "in fact already addressed these issues and established its independence" and "*no third party had any control over the content or timing of the report,*"[37] █████████████

████████████████████████████████████████████████████████████████

████████" In another brief filed on remand, J Capital opened its argument section by claiming "[J Capital] has already shown (and this Court has already ruled) that it is a professional independent journalism organization" and smugly asserted Novagold's arguments "demonstrate[] its lack of understanding of the privilege." Ex. 17, Def.'s Opp'n to Mot. Compel, ECF No. 125 at 2. Mr. Korzenik pressed this theme again at oral argument a month later, on December 22, 2022, claiming "the declaration of Ann[e] Stevenson-Yang . . . established the journalistic standing of J Capital Research, the independence of its reporting. . . . So there's no factual basis on the record to even suggest that J Cap's report was not independent[.]" Ex. 18, Dec. 22, 2022 Hearing Tr., ECF No. 139 58:7-15. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████" *see supra*, Mr. Korzenik falsely asserted that J Capital "exclusively controlled *what* it published and *if* it published at all." Ex. 19, Def.'s Mem. L. Supp'n Recon., ECF No. 159 at 1 n.1 (emphasis in original).

For her part, in her April 2024 deposition, Ms. Stevenson-Yang was asked to confirm J Capital's interrogatory response that "The primary persons who knew about the Report and its preparations were the three JCap persons . . . which is yourself, Mr. Murray, and Mr. Beasant

---

[37] Ex. 16, Def.'s Mot. Prot. Order, ECF No. 120 at 7 (emphasis added).

Jones." Ex. 20, Stevenson-Yang Dep. Tr., 51:23-25. Ms. Stevenson-Yang responded, "Correct. . . . Uh-huh." *Id.* 52:2-5. That answer now appears perjurious, ███████████████████████████████ ███████████████████████████████████. More broadly, Ms. Stevenson-Yang was utterly unprepared as J Capital's 30(b)(6) witness, and her approach to the matter was summed up by her admission that she believed the whole thing was "a totally meaningless case." *Id.* 213:24-25.[38]

In status letters and other filings continuing through 2024 and 2025, J Capital and its counsel continued to falsely represent that the Report was produced through an "internal" process at J Capital. *See, e.g.*, Ex. 21, Joint Status Letter, ECF No. 151 at 7 (claiming "***work on the Report consisted almost exclusively of internal communications***" (emphasis added); Ex. 19 at 1 n.1 ("JCap exclusively controlled *what* it published and *if* it published at all." (emphasis in original)). As recently as the summer of 2025, Mr. Korzenik swore under oath in the Western District of Texas that "[t]he Report was based on JCap's review and evaluation of publicly available documents about Novagold," Ex. 3 ¶ 12, an assertion that is plainly perjurious ████████ ███████████████████████.

J Capital also continued to cite the rulings made at the August 11, 2021 conference—which were based on its counsel's representations about the "internal" editorial process and the lack of third party involvement, *see supra*—to oppose discovery in this Court,[39] the Western District of

---

[38] *See also* Ex. 20 42:8-11 (admitting she did not "look into" how much J Capital received as a result of the Report); *id.* 15:2-18 (admitting she did not "look into" how many times the Report was accessed on J Capital's website).

[39] *See, e.g.*, Ex. 22, Joint Status Letter, ECF No. 208 at 3.

Texas,[40] and the Second Circuit, where it filed a "reply" brief despite not even being a party to the appeal.[41] All of these representations were plainly false, ███████████████████.

## ARGUMENT

### I. The Court Should Impose Sanctions Pursuant to Its Inherent Power

#### A. Inherent Power Sanctions Are Appropriate

Federal courts have inherent power to sanction bad-faith litigation conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). "'[T]o impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay.'" *Lee v. Hong*, No. 24-2435, 2025 WL 3637495, at *1 (2d Cir. Dec. 16, 2025) (quoting *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)); *accord DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (affirming award, under court's inherent power, of two-thirds of fees incurred by plaintiffs in pursuing discovery that was ultimately belatedly produced because party had "acted in conscious disregard of their discovery obligations" (quotation

---

[40] Ex. 23, No. 1:25-cv-00850, Def.'s Mot. Quash Non-Party Sub., ECF No. 5 at 2 ("J Cap is a financial research firm that independently researches and publishes articles . . . ."); *id.* at 7 n.2 (claiming J Capital had "complete editorial independence"); Ex. 24, No. 1:25-cv-00850, Def.'s Reply re Mot. Quash Non-Party Sub., ECF No. 17 at 4 ("JCAP and EDNY Court have Repeatedly Affirmed J Cap's Independence"'; "J Cap's independence has never been disturbed"); Ex. 25, Def.'s Appeal Mag. J. Order, ECF No. 29 at 7 ("The Court's Ruling Conflicts with New York Court's Finding that Report was "Independently" Published by "Professional Journalists," and Must be Overruled"); Ex. 26, Def.'s Reply re Appeal Mag. J. Order. ECF No. ECF No. 35 at 4 ("The 'protected activity' prong has been established by EDNY rulings that JCap is a 'professional journalist' (i.e. 'independent') and that its Report is 'news.' JCap and ATP seek to protect their anonymous association. Instead of meeting the test, [Novagold] tries to reargue here the same failed arguments it relied on in EDNY papers — relying on *Fitch* and *Chevron*, among others, to attack, again, JCap's 'independence.'").

[41] Ex. 27, Reply Brief of J Capital, *Novagold Resources, Inc. v. J Capital Research USA LLC*, 25-cv-791 (2d Cir. 2025), ECF No. 28-1 at 2 ("[Novagold] seeks indirectly to undo those rulings by relitigating JCap's status as a professional journalist, its independence and its Report's status as 'news' and the several rulings that established both. [Novagold]'s effort to undo that is costly and vexatious to JCap which has nothing close to the resources of [Novagold]. . . . JCap has been ruled to have 'independently' prepared and published its Report and is a 'professional journalist.'"); *id.* at 16 ("The Court should not indulge [Novagold]'s renewed quibbling inquiry into JCap's business model, especially as its work has already been ruled 'independent' reporting of 'news' by a 'professional journalist.'"); *id.* at 22-23 ("The EDNY's Multiple Dispositive Rulings and Findings that JCap Was an 'Independent Professional Journalist' and its Report Protect 'News'").

omitted)). "Fraud upon the court" is one kind of improper purpose and "occurs where a party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action.'" *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (quotation omitted).

Here, first, there can be no serious dispute that J Capital and its counsel acted "without color." They made *many* statements to the Court about an "internal"[42] and "independent"[43] editorial process. ███████████████████████████████████, those statements are "unsupported by the facts." *Cf. Doe 1 v. East Side Club*, 18-CV-11324 (KPF), 2021 WL 2709346, at *30 (S.D.N.Y. July 1, 2021) (actions "without color" where party's arguments were "unsupported by the facts" and "led to extensive and unnecessary litigation"). In short, "there were

---

[42] *See, e.g.*, Ex. 28, Ltr. Mot. for Discovery Conference (Joint), ECF No. 51 at 3 ("JCap's Interrogatory responses demonstrate how *its principals exercised full editorial control* over the Report's content and publication." (emphasis added)); Ex. 29, Def.'s Mem. of Law Opp'n to Mot. Compel, ECF No. 62 at 8 ("No one controls the substance of JCap's reports, or when a report is ready to be published, except JCap."); Ex. 30, Def.'s Reply Prot. Order, ECF No. 64 at 3 ("JCap detailed in its interrogatory responses how its principals were 'solely responsible for deciding what to report on.'"); Ex. 1 8:13-15 ("MR. KORZENIK: . . . I'm going to say so much as to indicate that there's no third party here. There's no mystery here."); *id.* at 19:8-10 ("MR. KORZENIK: But we made this choice. It's an internal decision. It's an internal editorial deliberation. It's an internal editorial process."); Ex. 12 ¶ 6(a)-(b) ("JCap controls the content of its reports. No one else does. Nor can they."); Ex. 16 at 7 ("Thus, JCap retained full editorial control of its work . . ."); Ex. 17 at 5 ("In answers to interrogatories served in November 2020 and in the co-founder's declaration filed in June 2021, JCap addressed both the origin of the report and its editorial independence"); Ex. 19 at 1 n.1 ("JCap exclusively controlled *what* it published and *if* it published at all." (emphasis in original)).

[43] *See, e.g*, Ex. 31, Apr. 26, 2021 Hearing Tr., ECF No. 52 at 9:6-11 ("MR. KORZENIK: . . . we identified the other people who had some potential input and we – those two people are Anne Stevenson-Yang and Tim Murray and both of them were previously journalists and they run this operation as journalists and they *keep editorial control* over it." (emphasis added)); Ex. 7 ¶ 16 ("Our credibility and independence are central to what we do and what we publish."); Ex. 28 at 8 ("[A]s the Stevenson-Yang Declaration sets forth, JCap retained 'independence and editorial control' in conceiving of, writing, and publishing the Report. [] No one controls the substance of JCap's reports, or when a report is ready to be published, except JCap."); Ex. 29 at 3 ("Th[e] evidence establishes JCap's journalistic mission, editorial independence, and confidentiality promises to third parties in the course of writing the Report." (emphasis in original)); Ex. 32, Def.'s Opp. Appeal Mag. J. Ruling, ECF No. 89 at 2 ("JCap's Declaration described their editorial objectives, their editorial independence, and the importance of their journalistic credibility."); Ex. 16 at 7 ("No third party had any control over the content or timing of the report. This is especially important to JCap as 'credibility and independence are central to what we do and what we publish.'" (internal citations omitted)); Ex. 17 at 5 ("JCap itself covered all costs associated with preparing the [R]eport, and no third party had any control over the content or timing of the [R]eport."); *id.* at 8 ("[T]hat fantasy has already been debunked by JCap's declaration establishing editorial independence."); Ex. 18 58:7-11 ("MR. KORZENIK: But the reality is that in the declaration of Ann Stevenson-Yang, we established the journalistic standing of J Capital Research, the independence of its reporting . . . ."); *id.* 58:13-14 ("MR. KORZENIK: [T]here's no factual basis on the record to even suggest that J Cap's report was not independent . . .").

flat-out misstatements of fact made to the Court on numerous occasions." *Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20-CV-9612 (LJL), 2024 WL 3824394, at *14 (S.D.N.Y. Aug. 14, 2024) (imposing inherent power and Section 1927 sanctions).

Second, there cannot be any serious dispute these misrepresentations were for improper purposes, including delay and obstruction, and constituted a fraud on the court. Again, counsel made numerous statements about an "internal" and "independent" editorial process, and Ms. Stevenson-Yang's swore under oath that "there were three persons directly involved in drafting and preparing the Report,"[44] herself and two other J Capital employees, without any mention or suggestion of the ATP. ███████████████████████████████████████████

███████████████████████████████, it "require[s] the conclusion that" J Capital and its counsel's actions "must have been undertaken for some improper purpose such as delay." *Hong*, 2024 WL 3824394, at *12. These actions also resulted in years of needless motion practice and, moreover, delayed access to relevant evidence, thereby "hinder[ing] the fact finder's fair adjudication of the case," *McMunn*, 191 F. Supp. 2d at 445, and thus constituting a fraud on the court.[45] In short, the false statements at issue were "without color" and "for improper purposes," and, as such, inherent power sanctions are appropriate.

### B.  Significant Sanctions Are Appropriate Pursuant to the Court's Inherent Power

Inherent power sanctions can include attorneys' fees and expenses, entry of a default judgment, dismissal of the action, vacating orders procured by false filings, and requiring

---

[44] *See* Ex. 5 Interrog. No. 2.

[45] Nor can Mr. Korzenik and J Capital's actions be excused as simply zealous advocacy for the Reporter's Privilege. As the Seventh Circuit has explained, "it is one thing for a lawyer to advocate an unreasonable position to a court; usually the court can prevent any serious harm to anyone just by rejecting the position. It is another thing for a lawyer to defeat an opposing party's claims by misleading the Court." *In re Lightfoot*, 217 F.3d 914, 917 (7th Cir. 2000). Here, Mr. Korzenik and Ms. Stevenson-Yang clearly did the latter.

continuing legal education. *See* Gregory Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 28 (collecting cases). In determining the appropriate sanction to impose, courts consider "(1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue in the future." *McMunn*, 191 F. Supp. 2d at 461.

Here, first, there can be no question the misconduct was the product of intentional bad faith. For one, J Capital's counsel, an experienced First Amendment and Reporter's Privilege lawyer, was well aware of case law that a party's financial stake in the outcome of a publication renders the Reporter's Privilege inapplicable, as does disclosure of privileged information to third parties. ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████. Despite this, in addition to his repeated comments about the "internal editorial process," Mr. Korzenik claimed "***If there's some third party . . . I don't know who it is right now . . . and I could look again, but I think it's a waste of time.***" Ex. 1 36:5-11 (emphasis added). Indeed, throughout this case, Mr. Korzenik has cast aspersions on Novagold's compliance with the ethical rules and its knowledge of the Reporter's Privilege, all while he and his client were misleading the Court. J Capital and Mr. Korzenik also refused to produce privilege logs, despite a Court order that they do so, and indeed threatened sanctions against Novagold when Novagold pressed for compliance with the Court's order. *See* Minute Entry and Order Oct. 16, 2023 ("privilege logs shall be exchanged by November 28, 2023"); Ex. 33, Ltr. from D. Korzenik to B. Quigley (Dec. 18, 2023), at 2, 5 ("We object to the shrill outrage displayed in your letter . . . . To feign ignorance of the *years* of motion practice over this subject is sanction-

worthy in itself." (emphasis in original)). These calculated and repeated efforts to mislead the Court and opposing counsel are the epitome of bad faith.

Second, Novagold was prejudiced. Had J Capital been forthright in 2021 that a █████████ ███████████████████████████████████████████████████████████████████████ ███████, the Reporter's Privilege would have never been asserted. The "search for the truth" in this case could have proceeded much more efficiently; J Capital would not have been able to improperly assert the Reporter's Privilege issue to obstruct discovery of key documents and facilitate baseless objections and false deposition testimony.

Third, J Capital's behavior was not an isolated instance. As demonstrated above, the false statements and obstructive conduct here was repeated in court hearings, deposition testimony, declarations, interrogatory responses, and court filings. They were part of a pattern of J Capital flouting its obligations to its adversary and to the Court throughout many years. Again, over six years, J Capital produced effectively zero discovery. Ex. 34, Quigley Decl., ECF No. 213-1 ¶ 3. Moreover, J Capital failed to preserve evidence. For example, it failed to produce the full set of communications one of its principals (acting on false pretenses) had with Novagold prior to the Report. *Id.* ¶ 4. ████████████████████████████████████████████████████ ███████████████████████████████████████████████. *Id.* ¶ 5. Stevenson-Yang, J Capital's founder and Rule 30(b)(6) witness, was not prepared to answer basic questions about how many times the Report was accessed via J Capital's website[46] or how much J Capital received in connection with the Report,[47] and of course, the Court had to admonish J Capital's counsel for improper privilege objections during the deposition. Ex. 35, Joint Status Letter, ECF No. 199; *see*

---

[46] Ex. 20 15:2-17 ("Q: Was that something you looked into in preparing to testify today? A: No.").

[47] *Id.* 41:19:42:11 ("Q: Is that something you looked into in preparation for your testimony today as the 30(b)(6) witness? A: No.").

*also* Minute Entry Nov. 13, 2024. In short, J Capital has treated its discovery obligations and obligations of candor as a complete joke, as if, to quote Ms. Stevenson-Yang's deposition testimony, this was a "totally meaningless case." Ex. 20 213:24-25.

The fourth and fifth factors—whether the misconduct was corrected and whether further misconduct is likely to occur in the future, also weigh in favor of severe sanctions. J Capital cannot "un-ring" the bell of the years of litigation in this case based on false premises about the supposedly "internal[lly]" produced Report. Indeed, remedying the situation would require allowing Novagold to re-serve discovery, including interrogatories and depositions, and requiring J Capital respond again without its now frivolous invocations of the Reporter's Privilege. *See, e.g.*, *In re Telxon Corp. Sec. Litig.*, No. 01-CV-1078, 2004 WL 3192729, at *35 (N.D. Ohio July 16, 2004) (dismissing case as a sanction because "lesser sanctions would result in 'unwinding' over three years of litigation" and "require the re-taking of many depositions, the taking of new depositions . . . and the propounding of new interrogatories."). Further, J Capital's repeated intransigence suggests that this type of conduct will continue in the future. *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 230 (S.D.N.Y. 2003) ("[B]ecause of the egregiousness of the conduct at issue and because it continued in the face of repeated, documented examples of non-compliance and repeated inquiries by . . . counsel and the Court, a lesser sanction [than dismissal] would not be adequate[.]"). Indeed, J Capital's conduct would have likely gone undetected had not the ATP appeared in the case, and Novagold sought and—after extensive litigation in this Court and the Western District of Texas—███████████████. In short, each factor that courts consider in assessing the severity of the kind of sanction to be imposed weighs in favor of severe sanctions.

### C. Judgment for Novagold and Payment of Certain Fees Are Appropriate

At least two types of sanctions are warranted here. First, the Court should enter judgment for Novagold on liability. While admittedly severe, courts have imposed such sanctions in the past based on a party's sustained and egregious abuses in the context of discovery. *Brockton Savings Bank v Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 9-10 (1st Cir. 1985) (affirming default judgment for plaintiff as an inherent-power sanction following "a most lamentable display of recalcitrance, evasiveness, and disobedience" by defendant and counsel, in particular their "steadfast[] resist[ance]" to producing certain documents and then claiming that the documents did not in fact exist).[48] In the alternative, at the very least, the Court should dismiss J Capital's anti-SLAPP counterclaim. It would be improper and inequitable for J Capital to advance a counterclaim under a statute intended to prevent bad-faith litigation when its entire approach to its obligations to the Court in this case has been characterized by bad faith.[49]

Second, in addition, the Court should award Novagold its reasonable fees for litigating and addressing J Capital's claims of the Reporter's Privilege and for litigating this sanctions motion.

---

[48] *See also Roberts v. Bennaceur*, 658 F. App'x 611, 614 (2d Cir. 2016) (district court "properly exercised its discretion in entering a default judgment in the amount of $8,136,222.60 as a discovery sanction against Defendants after two years of their repeated defiance of court orders"); *Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 8 (D.C. Cir. 2015) (no abuse of discretion for "default judgment against [defendant] as a sanction for his total discovery lapse"); *Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*, 626 F. Supp. 3d 478, 507 (D. Mass. 2022) (entering default judgment as sanction where plaintiff "was long deprived of documents that are evidence of the merit of its claim and could have led to the discovery of more such evidence.").

[49] Dismissal of the anti-SLAPP claim standing alone would be, respectfully, a relatively weak sanction, since the anti-SLAPP claim is a weak claim. First, given that Novagold's defamation claim survived a motion to dismiss, J Capital cannot seriously argue that the claim lacks "a substantial basis," the required showing for an anti-SLAPP claim. Moreover, there is an ongoing debate in the district courts of the Second Circuit about whether an anti-SLAPP claim can even be asserted in federal court. *Compare Cortsidis v. K'hal Bnei Torah of Mount Ivy*, No. 22-cv-10502 (CS), 2024 WL 37122, at *6 (S.D.N.Y. Jan 3, 2024) (finding that the attorneys' fees provision of the New York anti-SLAPP statute does not apply in federal court "because its standard conflicts with Federal Rules of Civil Procedure 12 and 56" and collecting cases to that effect), *with Button v. New York Times Co.*, No. 1:24-CV-05888 (MKV), 2025 WL 2643674, at *20 (S.D.N.Y. Sept. 15, 2025) (concluding the opposite and citing cases to that effect). The Supreme Court of the United States has recently found that another state pleading standard that imposed additional requirements on plaintiffs violated the *Erie* doctrine, *see Berk v. Choy*, 146 S.Ct. 546 (2026), suggesting that the *Cortsidis* line of cases will ultimately prevail.

"Awarding opposing counsel's attorneys' fees and costs is a 'well-accepted measure of sanctions for bad faith conduct that unnecessarily prolongs a proceeding and multiplies the expense incurred by an adversary.'" *Laba v. JBO Worldwide Supply Pty Ltd*, No. 20-CV-3443 (AKH) (KHP), 2023 WL 4985290, at *13 (S.D.N.Y. July 19, 2023) (quoting *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661, at *20 (S.D.N.Y. June 26, 2020)). Here, throughout this litigation, J Capital's improper and now clearly factually baseless privilege arguments required Novagold to file numerous motions and status letters, to deal with improper privilege objections in depositions, and, in general, to litigate this matter on the now plainly discredited premise that the Report was prepared internally at J Capital.[50] None of this would have been necessary, and Novagold's fees would not have been incurred, if J Capital and its counsel had been forthright with the Court about the nature and extent of ███████████████████████████████████ ██████. Accordingly, requiring J Capital and its counsel, jointly and severally, to pay Novagold's reasonable fees for litigating and addressing J Capital's claims of the Reporter's Privilege and litigating this motion is warranted.

---

[50] These relevant filings and court appearances include: Ex. 1; Ex. 6; Ex. 14; Ex. 18; Exs. 21-22; Ex. 28; Ex. 35; Pl.'s Opp Def.'s Req., ECF No. 58; Pl.'s Mem. Opp. Prot. Order, ECF No. 63; Pl.'s Ren. Mot. Compel, ECF Nos. 73-75; Pl.'s Mot. Leave Reply & Strike, ECF No. 82; Pl.'s Req. Oral Arg., ECF No. 84; Joint Mot. to Am. Discovery Plan, ECF No. 86; Req. Conf. Re Discovery, ECF No. 98; Tele. Discovery Conf., Minute Entry July 5, 2022; Joint Status Ltr., ECF No. 110; Pl.'s Proposed Discovery Plan, ECF No. 116; Pl.'s Br. App. Rep. Priv., ECF No. 118; Pl.'s Resp. Br., ECF No. 124; Ltr. Re Rep. Priv., ECF No. 135; Joint Status Ltr., ECF No. 142; Ltr. Req. Discovery Sch., ECF No. 146; Discovery Hearing, Minute Entry Oct. 12, 2023; Ltr. Resp. to Def.'s Pre-mot. Conf. Req., ECF No. 153; Pre-mot. Conf., Minute Entry Feb. 15, 2024; Joint Status Ltr., ECF No. 156; Pl.'s Opp'n Def.'s Mot. Reconsid., Order, ECF No. 160; Status Conference, Minute Entry dated May 2, 2024; Status Ltr. to Judge DeArcy Hall, ECF No. 162; Pl.'s Reply Def.'s Ltr., ECF No. 164; Ltr. Opp. Def.'s App., ECF No. 166; Joint Status Ltr., ECF No. 181; Status Conference, Minute Entry Aug. 2, 2024; Ltr. Re Def.'s Improper Dep. Objs., ECF No. 189; Pl.'s Ltr. to Judge Kuo, ECF No. 192; Ltr. Response to Def.'s Oct. 15, 2024 Ltr., ECF No. 194; Pl.'s Opp'n Objs. R&R, ECF No. 197; Joint Ltr. Re Discovery, ECF No. 203; Joint Ltr. for Hearing Re Discovery, ECF No. 206; Discovery Conference, Minute Entry Apr. 16, 2025.

## II.   J Capital's Counsel Should Also Be Sanctioned Pursuant to 28 U.S.C. § 1927

In addition to the Court's inherent power, courts can also impose sanctions on an attorney under 28 U.S.C. § 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Like inherent power sanctions, Section 1927 sanctions are awarded when a party's attorney makes claims "without color" and "in bad faith." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000). Indeed, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is, as noted above, that awards under § 1927 are made only against attorneys . . . while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

As such, for reasons set forth in more detail above, the Court should award Section 1927 sanctions against Mr. Korzenik. Mr. Korzenik's statements at the August 11, 2021 conference, including that "there's no third party here,"[51] that it was "correct" that "other than the . . . publicly available documents that you have produced, the other documents are internal documents which are subject of privilege . . . ,"[52] that "it's an internal editorial process,"[53] "they're just internal,"[54] and that "they're either internal discussions or they are discussions with confidential sources or commenters, and that's it'"[55] are plainly "without color" ████████████████████████

---

[51] Ex. 1 8:14.

[52] *Id.* 27:14-21.

[53] *Id.* 19:9-10, 25:2.

[54] *Id.* 31:23-24.

[55] *Id.* 33:22-23.

████████████████████████████████████████████████████████. Indeed, Mr. Korzenik went so far as to claim "[i]f there's some third party . . . I don't know who it is right now . . . and I could look again, but I think it's a waste of time." Ex. 1 36:5-11.

Second, these assertions were in bad faith and motivated by improper purposes, and clearly "multiplie[d] the proceedings," *see* § 1927, over the last four and a half years. For one, ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████.[56] Further proof of bad faith comes from Mr. Korzenik's continued invocation of J Capital's supposed independence and internal process over the last four-plus years and his refusal to produce a privilege log, which would have surely put the lie to his claim about an "internal editorial process." In short, the Court should sanction Mr. Korzenik pursuant to § 1927 and, to the extent it does not do so under its inherent power, order him to pay Novagold's fees in connection with litigation over the Reporter's Privilege and this motion.

## CONCLUSION

The Court should grant the motion for sanctions and (i) enter judgment for Novagold on its affirmative claim, or at least on J Capital's anti-SLAPP counterclaim, and (ii) order J Capital and its counsel to pay Novagold's fees and costs incurred in addressing J Capital's baseless assertion of the Reporter's Privilege, including preparing this motion.

Dated: March 6, 2026
      New York, NY

Respectfully submitted,

*/s/ Brendan F. Quigley*
Brendan F. Quigley
Graeme M. Waples
BAKER BOTTS L.L.P.

---

[56] ████████████████████████████████████████████████████████.

30 Rockefeller Plaza
New York, New York 10112
Tel: 212.408.2500
brendan.quigley@bakerbotts.com
graeme.waples@bakerbotts.com

***Attorneys for Plaintiff,***
***Novagold Resources Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2026 a true and correct copy of the foregoing was served on all counsel of record via email.

*/s/ Brendan F. Quigley*
Brendan F. Quigley

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing contains 8,744 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c). The undersigned relied on the word count of the word-processing program used to prepare this document.


Dated: March 6, 2026                              */s/ Brendan F. Quigley*
                                                  Brendan F. Quigley