**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

NOVAGOLD RESOURCES INC.,

    Plaintiff,

    v.

J CAPITAL RESEARCH USA LLC,

    Defendant.

**20 Civ. 2875 (LDH) (PK)**

**PLAINTIFF NOVAGOLD'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY AND 28 U.S.C. § 1927**

# Table of Contents

**Page**

ARGUMENT ........................................................................................................... 1

I.    J Capital Continues to Misrepresent the Record ................................................. 1

II.    J Capital's Statements Were "Without Basis in Fact or Law" and Thus in Subjective Bad Faith ..................................................................................................................... 4

    A.    J Capital Misled the Court and Opposing Counsel About a Supposedly Internal Editorial Process ................................................................................... 4

    B.    Those Misrepresentations Were in Bad Faith ................................................ 5

    C.    In Any Event, There is No Basis to Apply the Reporter's Privilege to Communications with the ATP. ................................................................... 8

III.    Judgment for Novagold and Payment of Certain Fees Are Appropriate ...................... 10

CONCLUSION ..................................................................................................... 10

# Table of Authorities

**CASES**

*Eletson Holdings v. Levona Holdings, Ltd.*,
  No. 23-CV-7331 (LJL), 2026 WL 84510 (S.D.N.Y. Jan. 12, 2026) ........................................5

*Fowler v. Vary*,
  No. 20-CV-9586 (LAK), 2022 WL 3211638 (S.D.N.Y. Aug. 9, 2022) ....................................5

*Huebner v. Midland Credit Mgmt., Inc.*,
  897 F.3d 42 (2d Cir. 2018) ...............................................................................................5, 7

*In re Fitch, Inc.*,
  330 F.3d 104 (2d Cir. 2003) ...................................................................................4, 5, 9, 10

*In re Lightfoot*,
  217 F.3d 914 (7th Cir. 2000) ...............................................................................................5

*In re Reyes*,
  651 B.R. 99 (Bankr. S.D.N.Y. 2023) .....................................................................................7

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*,
  191 F. Supp. 2d 440 (S.D.N.Y. 2002) ..............................................................................5, 10

*Metro. Opera Ass'n, v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
  212 F.R.D. 178 (S.D.N.Y. 2003) .........................................................................................10

*Murray Energy Corp. v. Reorg. Research*,
  58 N.Y.S.3d 369 (1st Dep't 2017) .........................................................................................9

*Torres v. Donnelly*,
  554 F.3d 322 (2d Cir. 2009) .................................................................................................5

**STATUTES**

N.Y. Civil Rights Law § 79-h ..............................................................................................4, 8, 9

18 U.S.C. § 1927 .........................................................................................................................4

Novagold submits this reply in further support of its motion for sanctions.[1]

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████. In the face of this, J Capital's Opposition remarkably claims that J Capital "has been entirely candid,"[2] despite previously asserting that the "editorial process" was "internal" and belittling the notion of any third-party involvement.

Moreover, the Opposition misstates the factual record, the procedural history, and the law. It also shifts the goal posts, now claiming there was a good-faith basis to argue that the Reporter's Privilege should apply to the ATP. But that misses the point. If J Capital wanted to make that argument, it should have done so in 2020 and 2021. Instead, it chose to lie and obfuscate, depriving Novagold and the Court of a fair opportunity to litigate the privilege issue. It cannot attempt to re-argue in 2026, when, notwithstanding J Capital's best efforts (including moving to quash in the Western District of Texas), ████████████████████████████████. In any event, because the record shows ████████████████████████████████ ██████████████████, there is no basis for the privilege to apply. J Capital's continued misstatements and lack of remorse highlight the need for the sanctions requested by Novagold.

## ARGUMENT

### I.     J Capital Continues to Misrepresent the Record

Confronted with years of false and misleading statements, the Opposition responds with more of the same. *First*, it repeatedly misstates the facts ████████████████████████

---

[1] Defined terms and exhibit numbers herein correspond to the defined terms and exhibit numbers in Novagold's moving papers.
[2] Def.'s Mem. L. Opp'n, Apr. 7, 2026, ECF No. 226 at 1 ("Opp'n").

████████████████████████████████████████████████████

████████, ████████████████████████████████████████, ███

████████████████████████████████████████████████████

████████████"[5] The Opposition also asserts that "[t]he research and writing were largely complete before [the] ATP was consulted."[6] Again plainly false. ████████████████

████████████████████████████████████████████████████

████, ████████████████████████████████████████████, ███

████████████████████████████████████████████████████

████████████"[10]

Second, the Opposition mischaracterizes the proceedings here. Novagold is not "mixing and matching"[11] or taking things "out of context"[12] by pointing out that Ms. Stevenson-Yang lied under oath when—████████████████████████—she stated "there were three persons

---

[3] Opp'n at 6.
[4] *Id.* at 7.
[5] *See also* Opp'n at 20 (claiming "minor edits").



████████████.
[6] *Id.* at 6.
[7] ████████████████
[8] ████████████████.
[9] *See* JCAP Report, May 28, 2020, ECF No. 39-1.
[10] ████████████.
[11] Opp'n at 12, 14.
[12] *Id.* at 10, 14, 21.

directly involved in drafting and preparing the Report," herself, Murray, and a JCAP accountant.[13]

Nor is it "out of context" to assert that Mr. Korzenik misled the Court when, for example, in 2024, he justified his client's production of essentially zero discovery by claiming "work on the Report consisted almost exclusively of internal communications," and J Capital had "just two people" doing "research and writing" on the Report.[14]

As to the August 2021 hearing, the Opposition goes so far as to alter a quote from the transcript—inserting "[non-confidential source]" after "some third party"[15]—to support its current interpretation of its own statements. But whatever J Capital's counsel now claims he thought he was telling the Court, his statements certainly left the impression with the Court and opposing counsel that the editorial process was "internal." And despite his duty of candor, he repeatedly rejected the opportunity to clarify, both at the hearing[16] and over the following years.[17] The Opposition also claims Mr. Korzenik "correctly" told the Court that he was withholding only "internal" documents in response to Novagold's Request for Production No. 6, which asked for documents "reflect[ing] or discussing" communications between Novagold and J Capital. Opp'n at 12-13. But even that is wrong. ████████████████████████████████████

████████████████████████████████████████████████████████.[18] Thus, it

---

[13] *See* Ex. 5 at Interrog. No. 2 *see also id.* at Interrog. No. 6 ("[t]he primary persons who knew about the Report or its preparation prior to its publication are the three JCAP persons").

[14] Ex. 21 at 7.

[15] Opp'n at 10. *Cf.* Ex. 1 Tr. 36:5-11 (If there's some third party . . . I don't know who it is right now . . . and I could look again, but I think it's a waste of time.").

[16] *See, e.g.*, Ex. 1 Tr. 27:16:20 ("THE COURT: So what I'm hearing you say, Mr. Korzenik, is that in response to this document request . . . other than the . . . publicly available documents you have produced, the other documents are internal documents which are the subject of privilege; is that right?" MR. KORZENIK. That's correct."); *id.* Tr. 56:24-57:3 ("THE COURT: [Document requests] 5, 6, 7, 8. Let me take a look at those. What documents you possess reviewed in connection with the decision. I heard the response to that is that those documents are internal communications. MR. KORZENIK: That's correct.").

[17] Ex. 21 at 7 (claiming "work on the Report consisted almost exclusively of internal communications," and J Capital had "just two people" doing "research and writing" on the Report).

[18] ████████████████████████████████████████.

3

was, in fact, false for Mr. Korzenik to claim there were only "internal" documents "reflect[ing] or discussing" communications between Novagold and J Capital.

Finally, the Opposition and Mr. Korzenik's declaration misstate the law, both claiming that the Second Circuit's decision in *In re Fitch, Inc.* was not a "79-h case[]" and instead "applied the weaker federal privilege."[19] But *Fitch*'s very first sentence states "[t]his appeal presents a question about the outer boundaries of the statutory protection . . . that New York has created for journalists," i.e., Section 79-h.[20] In short, the Opposition's arguments are based on misstatements about the facts, the procedural history, and the law.

## II.  J Capital's Statements Were "Without Basis in Fact or Law" and Thus in Subjective Bad Faith

The Court should also reject, for multiple reasons, the Opposition's argument that inherent power or Section 1927 sanctions are inappropriate because it had a good-faith basis to assert the Reporter's Privilege over communications with the ATP.

### A.  J Capital Misled the Court and Opposing Counsel About a Supposedly Internal Editorial Process

First, that argument misses the point. The time to argue the Reporter's Privilege applied to the ATP communications was in 2020 and 2021. Instead, J Capital and its counsel chose to mislead the Court and opposing counsel about the supposedly "internal editorial process," and continued doing so for years.

"It is one thing for a lawyer to advocate an unreasonable position to a court; usually the court can prevent any serious harm to anyone just by rejecting the position. It is another thing for a lawyer to defeat an opposing party's claims by misleading the court, whether by a

---

[19] Opp'n at 20 (citing 330 F.3d 104, 106 (2d Cir. 2003)); Decl. D. Korzenik Opp'n ¶ 39, Apr. 7, 2026, ECF No. 228 (claiming *Fitch* applied the "weaker Federal common law privilege").
[20] 330 F.3d at 105; s*ee id.* at 109-10.

misrepresentation or pregnant omission." *In re Lightfoot*, 217 F.3d 914, 917 (7th Cir. 2000); *accord Eletson Holdings v. Levona Holdings, Ltd.*, No. 23-CV-7331 (LJL), 2026 WL 84510, at *57 (S.D.N.Y. Jan. 12, 2026) (duty to "'zealously represent . . . client' . . . does not include the presentation of 'false evidence,'" which "is true especially where the other party cannot contest the misrepresentation" (quoting *Torres v. Donnelly*, 554 F.3d 322, 326 (2d Cir. 2009))).

Here, rather than argue the merits of applying the Reporter's Privilege to the ATP,[21] as other litigants have done,[22] J Capital and its counsel repeatedly lied about a supposedly internal editorial process, depriving the Court and opposing counsel of the ability to fairly litigate this issue. "That is misconduct." *Lightfoot*, 217 F.3d at 917; *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) ("fraud upon the court" "occurs where a party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case").

### B. Those Misrepresentations Were in Bad Faith

Further, the subjective bad-faith standard is easily met for both J Capital and its counsel. "A court may infer bad faith when a party undertakes frivolous actions that are completely without merit." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018).

The question is not whether Mr. Korzenik or Ms. Stevenson Yang (wrongly) thought the Reporter's Privilege applied to communications with the ATP; it is whether they had a good-faith basis to assert the Report was the creation of an internal, J Capital-only editorial process. ███ ███████████████████████████████████, it was frivolous, and without factual basis, for

---

[21] J Capital's claim back in 2021 that producing a privilege log would itself have destroyed the privilege seemed far-fetched at the time and now, in hindsight, appears like part of J Capital's effort to mislead. Such a log could have easily been produced, describing the email communications (e.g., "correspondence with third party regarding draft of report").

[22] *See, e.g.*, *Fitch*, 330 F.3d at 110 (noting that documents over which reporter's privilege were asserted were filed under seal (presumably in camera) for court review); *Fowler v. Vary*, No. 20-CV-9586 (LAK), 2022 WL 3211638, at *3 (S.D.N.Y. Aug. 9, 2022) (describing procedural history of reporter's privilege issue in that case, including the court's in camera inspection of potentially privileged materials).

Mr. Korzenik to say, among other things, there was only an "internal editorial process,"[23] to claim that J Capital "disclosed everyone who was involved in writing the Report [ . . . ] If there's some third party . . . I don't know who it is right now . . . and I could look again, but I think it's a waste of time"[24] and to respond "that's correct" when directly asked by the Court whether the documents J Capital was withholding in response to requests "5, 6, 7, [and] 8," were only "internal communications."[25] It was similarly baseless for Ms. Stevenson Yang to say, under oath in 2020, there were only "three persons directly involved in drafting and preparing the Report: 1) Anne Stevenson-Yang, 2) Tim Murray, and 3) John Besant-Jones, a forensic accountant who works with JCAP"[26] and to give similar testimony in her deposition almost four years later.[27]

Further evidence of bad faith comes from Mr. Korzenik and Ms. Steveson-Yang echoing the "internal" and "independent" theme for years,[28] ███████████████████████

████████████████████████████████████████ ██████████████

---

[23] *See also* Ex. 1 Tr. 19:9-11 ("It's an internal decision. It's an internal editorial deliberation. It's an internal editorial process."); *id.* Tr. 25:2 (faulting Novagold for requests regarding "internal editorial process[.]").

[24] Ex. 1 Tr. 36:4-11.

[25] Ex. 1 Tr. 56:24-57:3 ('THE COURT: 5, 6, 7, 8. Let me take a look at those. What documents you possess reviewed in connection with the decision. I heard the response to that is that those documents are internal communications. MR. KORZENIK: That's correct.").

[26] *See* Ex. 5 at Interrog. No. 2; *see also id.* at Interrog. No. 6 ("The primary persons who knew about the Report or its preparation prior to its publication are the three JCAP persons: 1) Anne Stevenson-Yang; 2) Tim Murray; and 3) John Besant-Jones.").

[27] Ex. 20 Tr. 51:23-25 (responding "correct . . . uh-huh" when asked to confirm that "that the primary persons who knew about the Report and its preparations were the three JCap persons . . . which is yourself, Mr. Murray, and Mr. Beasant Jones.").

[28] *See, e.g.*, Ex. 28 at 3 ("JCap's Interrogatory responses demonstrate how its principals exercised full editorial control over the Report's content and publication."); Ex. 31 Tr. 9:6-11 ("MR. KORZENIK: . . . we identified the other people who had some potential input and we – those two people are Anne Stevenson-Yang and Tim Murray and both of them were previously journalists and they run this operation as journalists and they *keep editorial control* over it." (emphasis added)); Ex. 28 at 8 ("[A]s the Stevenson-Yang Declaration sets forth, JCap retained 'independence and editorial control' in conceiving of, writing, and publishing the Report. [] No one controls the substance of JCap's reports, or when a report is ready to be published, except JCap."); Ex. 16 at 7 ("No third party had any control over the content or timing of the report. This is especially important to JCap as 'credibility and independence are central to what we do and what we publish.'" (internal citations omitted)); Ex. 17 at 5 ("JCap itself covered all costs associated with preparing the [R]eport, and no third party had any control over the content or timing of the [R]eport."); *id.* at 8 ("More important, that fantasy has already been debunked by JCap's declaration establishing editorial independence."); Ex. 18 Tr. 58:13-14 ("MR. KORZENIK: So there's no factual basis on the record to even suggest that J Cap's report was not independent . . .").

[29] ████████████████████████████████████████████████.

6

████ ████████. Mr. Korzenik's subjective intent is also shown by his affirmative belittling of the possibility of any third-party involvement in creating the Report, made in statements to both the Court and to opposing counsel, and rejecting the opportunity to clarify any ambiguity. In 2021, for example, he told the Court he could not "imagine there were" any conversations with third-parties regarding the Report.[31] The following month, when asked by Novagold's counsel whether any "of the withheld materials have been voluntarily disclosed to anyone outside of JCAP," Mr. Korzenik repeatedly responded he was "unaware of any such documents,"[32] ███████ ████████████████████████████████████████████████████ ███████"[33] In 2022, Mr. Korzenik maintained to the Court "[t]here's no factual basis on the record to even suggest that J Cap's report was not independent . . . ."[34] *Cf. In re Reyes*, 651 B.R. 99, 143 (Bankr. S.D.N.Y. 2023) (duty of candor requires an attorney to be "open and honest in expression," not just avoid "technical[] lie[s]").

Moreover, although unnecessary to find frivolous the assertions regarding the supposedly independent/internal editorial process, the Opposition does not dispute that J Capital committed other misconduct here, including failing to produce communications that Murray (acting on false pretenses) had with Novagold; ████████████████████████████████████████ ████; failing to properly prepare its Rule 30((b)(6) witness; and making improper privilege objections at her deposition (resulting in an admonishment from the Court). These other "frivolous and vexatious actions" further support bad faith. *Huebner*, 897 F.3d at 55.

---

[30] ████████████████.
[31] Ex. 1 Tr. 37:25-38:8.
[32] Ex. 13 at 1-4.
[33] ████████████████.
[34] Ex. 18 Tr. 58:13-14.

**C.**     **In Any Event, There is No Basis to Apply the Reporter's Privilege to Communications with the ATP**

As noted above, it is no answer to these false statements for J Capital's Opposition to now claim the Reporter's Privilege should apply to its communications with the ATP. In any event, the text of Section 79-h makes clear there is no basis to apply the privilege. *First*, the ATP is not a "source of news" to whom the privilege applies. While "confidential source" has been used as a shorthand throughout this litigation, that term does not appear in the statutory text. Instead, the absolute privilege in Section 79-h(b) protects "news obtained or received in confidence or *the identity of the source of any such news*[.]" N.Y. Civil Rights Law § 79-h(b) (emphasis added). The qualified privilege protects "unpublished news obtained or prepared . . . in the course of gathering or obtaining news . . . or the *source of any such news*[.]" *Id.* § 79-h(c) (emphasis added).[35] But the ATP was not a "source of any . . . news" about Novagold. Indeed, in a footnote, the Opposition concedes "the ATP had no inside information about NG." Opp'n at 9 n.9. Even if J Capital agreed to keep the ATP's identity "confidential" in their private agreement, that does not somehow transform the ATP into a "source" of "news."[36]

*Second*, ████████████████████████████████████ ████████████████████████████████████ ██████ cannot, by definition, be material that J Capital "received or obtained in confidence," *cf.* § 79-h(b). Moreover, J Capital's sending otherwise privileged materials to a party not entitled

---

[35] The statute defines "news" as "written, oral, pictorial, photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare." N.Y. Civil Rights Law § 79-h(a)(8).

[36] The Opposition's reliance on the agreement is also misplaced for multiple reasons. For one, the agreement had expired by the time of the Novagold report. *See, e.g.*, Ltr. from J Capital to Court, Oct. 15, 2024, ECF No. 193 at 1 ("No written agreement was in place between JCap and the A[T]P at the time of the Report."). Second, whatever its relevance, it was not produced until September 11, **2024**, and thus has no bearing on J Capital's prior misstatements. Third, in any event, the terms of the agreement cannot override the actual factual record of ████ ███████████████████████████████████████████ .

to claim the privilege expressly *waives* Section 79-h privilege for those materials. N.Y. Civ. Rights Law 79-(g) ("a person entitled to claim the" reporter's privilege "waives such exemption if such person voluntarily discloses or consents to disclosure of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided by this section").

*Third*, while J Capital now attempts to downplay the significance of "independence" to the Reporter's Privilege, it was certainly aware of "independence's" significance back in 2020 and 2021. Ms. Stevenson-Yang's declaration in opposition to Novagold's original motion to compel had a whole section entailed "Editorial Control and Independence."[37] And New York appellate authority holds "the extent of a publication's independence and editorial control [is] important in determining whether to apply the Shield Law."[38] █████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████ █ ███████████ █ ███████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

---

[37] Ex. 7 ¶ 16; *see also id.* (misleadingly claiming under oath that "[n]o short seller or recipient of our reports has any right or ability to dictate what we publish or when we are ready to publish"); ████████████████████████ ██████████████████████████████████████████████ ").

[38] *Murray Energy Corp. v. Reorg. Research*, 58 N.Y.S.3d 369, 371 (1st Dep't 2017).

[39] ████████████████ .

[40] Ex. 2 ¶ 5.

██████ ▪ ████████████████████████████████████████████████████

██████████" *Fitch*, 330 F.3d at 111.

However, unlike the ratings agency in *Fitch*, which provided the Court with sufficient information to make this determination, J Capital withheld information and lied for years, depriving the Court and Novagold of the ability to fully and fairly address the Reporter's Privilege issue. *Fitch* thus highlights how J Capital's bad faith actions "hinder[ed] . . . [the] fair adjudication of the case," constituting "fraud upon the court."[42]

## III. Judgment for Novagold and Payment of Certain Fees Are Appropriate

The Court should award the sanctions Novagold sought in its opening brief. The Opposition levels no real argument regarding the type of sanctions that should be imposed. If anything, the Opposition's continued misstatements and obfuscation, *see supra* Section I, further emphasize the need for severe sanctions, reinforcing the presence of "intentional bad faith," "a pattern of misbehavior rather than an isolated instance," a failure to correct the misconduct, and a likelihood that the misconduct will continue.[43]

## CONCLUSION

The Court should grant the motion for sanctions (i) enter judgment for Novagold on its affirmative claim, or at least on J Capital's anti-SLAPP counterclaim, and (ii) order J Capital and its counsel to pay Novagold's attorneys' fees and costs incurred in addressing J Capital's baseless assertion of the Reporter's Privilege, including preparing this motion for sanctions.

---

[41] ██████████████.

[42] *McMunn*, 191 F. Supp. 2d at 445.

[43] *Id.* at 461 (listing factors courts using in determining appropriate inherent power sanctions); *see also Metro. Opera Ass'n, v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 230 (S.D.N.Y. 2003) ("[B]ecause of the egregiousness of the conduct at issue and because it continued in the face of repeated, documented examples of non-compliance and repeated inquiries by . . . counsel and the Court, a lesser sanction [than dismissal] would not be adequate[.]").

Dated: April 21, 2026
       New York, NY

Respectfully submitted,

*/s/ Brendan F. Quigley*
Seth T. Taube
Brendan F. Quigley
Graeme M. Waples
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel: 212.408.2500
seth.taube@bakerbotts.com
brendan.quigley@bakerbotts.com
graeme.waples@bakerbotts.com

***Attorneys for Plaintiff,***
***Novagold Resources Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2026 a true and correct copy of the foregoing was served on all counsel of record via email.

_/s/ Brendan F. Quigley_
Brendan F. Quigley