# MILLER KORZENIK RAYMAN LLP

THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

April 30, 2026

*By ECF*
The Honorable Peggy Kuo
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

> **Re:** ***Novagold Resources Inc. v. J Capital Research USA LLC*, No. 20-cv-02875;**
> ***Defendant's Status Report on Discovery and of the Case.***

Dear Judge Kuo:

On behalf of Defendant J Capital Research LLC ("JCap"), we submit this letter to inform the Court about the status of discovery and summarize the remaining issues in the case.

On April 15, 2026 I wrote to Plaintiff's counsel, Brendan Quigley, to request an update of NovaGold's ("NG") document production and its answers to our interrogatories. Those need to be brought current. We await their response.

The last time that JCap received any documents from NG on our requests was on *November 23, 2023*. The Court had ordered this production on February 8, 2023. Relevant documents to be produced and updated include those regarding the status of the Donlin mine project, the status of the promised new Feasibility Study (promised in *2020*) and updates on the exercise of stock options, among other matters at issue.

### *Why These Updates Are Critical to Our Case*

The Court will recall that this libel case is directed at a Report that JCap published about NG and its Donlin Mine plans – plans embodied in a 2012 Feasibility Study ("FS2012"). The title of the Report was *Pipe Dream*: *The Deposit that Will Never Be Mined*. The Report criticized the Donlin FS2012 study, calling it unrealistic, overly optimistic and therefore "misleading." JCap's Report criticized the FS2012's cost projections as underestimated.

NG sued JCap for calling NG's FS2012 "misleading," and for challenging its cost projections. There are other related claims at issue, but the core libel claims pertain to the *cost projections*, JCap's challenge to the *feasibility* of the Donlin mine and JCap's reference to the FS2012 as "*misleading*."

### *Trying to Do Fact Discovery about Predictions*

One of the primary difficulties is that the parties are trying to conduct *fact* discovery about *predictions*, assumptions and projections. That is the task that we have all been put to and

which we have to manage. Whose predictions and projections are "true" or "false?" Even if those matters are ultimately dismissed at summary judgment as opinion, as likely they should, that is the discovery that we must nonetheless complete.[1]

To date, there is no mine at Donlin. The mine, the large power plant needed to run it and the approximately 300 mile pipeline needed to fuel the power plant are not under construction. The last discovery we received shows that there was not even a plan of construction, just an outdated FS2012, an interim "gap study," and a promised new Feasibility Study. The status of these anticipated efforts and the promised new Feasibility Study are material, relevant and critical to our case.

Immediate points of concern:

1.      *Updates to the Feasibility Study of 2012*: JCap's case centers on NG's FS2012 and its projections and projected costs. The 2023 discovery showed that NG had worked on a "*Gap Study" to address the deficiencies of the FS2012*. NG still planned a *new Feasibility Study* – which had been promised in 2020. Updates and correspondence on those matters are needed.

2.      *NG Chairman Thomas Kaplan*: Defendants are not sure that NovaGold chairman Thomas Kaplan's emails and correspondence were properly canvassed and collected. His correspondence with Barrick Gold (NG's 50/50 partner of NG on the Donlin project) is of central significance to the case. Barrick had always been *negative* on the Donlin project and would not include it on its list of active or prospective mining projects. When interviewed late last summer, Mr. Kaplan stated, among other things, that as long as Barrick held its interest in the Donlin project, *Donlin was "**in a coma**.*" That aligns with what JCap's Report had to say about Donlin. Had JCap said anything of the kind in its *Pipe Dream* Report, that too would have been one of the statements alleged in NG's Complaint to be "libelous." Mr. Kaplan's communications with Barrick and about Barrick, and Barrick's negative position on Donlin, should be provided as part of this update. Such documents will further support JCap's criticisms of NG.

---

[1] We had a conference in May 2022 before Judge DeArcy-Hall after her denial of our Feb. 10, 2021 motion to dismiss. The motion was made on *opinion* grounds, among others. The Judge said that she might have ruled otherwise, as to opinion, had the motion been presented differently. She recommended that we follow my proposed "Plan B" – i.e., focused discovery, to be worked out by counsel, followed by a motion for partial summary judgment on the opinion grounds. We tried to frame that focused discovery, and I recommended a "track 1" and "track 2" discovery plan along those lines at a conference before Your Honor. But Your Honor viewed the track 1 and 2 plan impractical. Your Honor was correct; as it proved too difficult to separate discovery in that way. We therefore advanced with general discovery. But in 2022, NG objected to producing any documents *post-May 28, 2020* (the date of publication of JCap's Report). We moved to compel. ECF 128. Your Honor granted our motion to compel on Feb. 8, 2023, taking the view that the case engaged "continuing and ongoing matters." *See* Minute Entry 2/7/23 ("For the reasons stated on the record, and because statements made after May 28, 2020 may shed light on events that occurred before then, the 128 Motion to Compel the production of post-May 28, 2020 documents is granted."). NG took until *Nov. 23, 2023* to complete that discovery. The disclosures proved material to JCap's defense. *Infra* at 3-4.

**3.** ***Recent Sale of Barrick's Interest in Donlin*:** We understand that Barrick's interest in Donlin was very recently sold to a Paulsen entity. Information regarding that transaction should be disclosed as part of NG's update. Among the things that we expect to see would include the following:

a. The due diligence conducted in the Paulsen/Barrick/NovaGold transactions.
b. Correspondence between NG principals and its agents with Barrick and Paulsen and their agents regarding the Barrick/Paulsen Donlin transaction.
c. Documents regarding NG's assessment of the deal and how it was valued, including correspondence with third parties regarding valuation.
d. Who were the participants and intermediaries in the transaction and in the exploration and initiation of the deal.
e. Documents reflecting why Barrick chose to sell its interest in Donlin.
f. Communications with both Paulsen's people and Barrick including references to their valuations of the deal and their justifications for it.
g. Communications by Kaplan and other NG officials expressing their concerns and frustrations with Barrick's negative assessment of the Donlin.

We think that our existing and active discovery requests reach these matters. In our April 15 letter to NG counsel, we proposed that if they thought that our active existing requests do not comprehend these matters, then we will issue further requests. Since we have received no response to the April 15 letter, we will issue further requests. But the prior requests remain active and are not withdrawn.

**4.** ***Post-May 2020 Production*:** NG's production of documents, including their post-May 2020 documents, took almost ***10 months to complete*** – from February 8, 2023, when it was ordered, to November 23, 2023. It appears that NG may not have searched for post-May 2020 documents until after the Feb. 2023 Order. It may be that NG's last collection was in 2023 or in December of 2020. We need to be assured that Post-November 2023 documents are properly collected and the requests brought current.

The post-May 2020 documents remain critical. The production that ended November 2023 showed why that is so:

- Just *before* the May 2020 publication of the JCap Report, Novagold's engineers who had each year signed on to the FS2012, declined to continue to do so on the grounds that continued use of the FS2012 would be "*misleading.*"

- Just before the May 2020 publication of the JCap Report, NG's partner Barrick Gold expressed the same concern that NG's continued use of the FS2012 was "*misleading to the marketplace.*"

Just before the May 2020 publication and before NG's suit was filed, NG recognized the need for a revised FS2012 and an interim "Gap Study." It turns out that the interim Gap

Study projections were more in line with JCap's Report than with the FS2012. That makes the JCap Report's projections *substantially true.*

Thus, the post-May 2020 materials continue to be highly material to this lawsuit. They give substantial support to JCap's defense. It is critical that NG's responses to our requests be brought current and supplemented. The duty to update disclosures is an ongoing obligation.

**5.** ***Barrick Gold***: We had earlier subpoenaed documents from Barrick in about 2023 and received materials from them. We have contacted Barrick's counsel at Quinn Emanuel to update its production on the earlier document requests. Materials concerning Barrick's decision to sell its interest in Donlin are relevant. We will report to the Court on the status of their response.

**6.** ***The Texas Subpoena to the Anonymous Third Party ("ATP")***: After the ATP intervened to prevent disclosure of its identity, it's identity was inadvertently disclosed through document metadata. NG then subpoenaed the ATP in Texas. The ATP moved to quash in Texas. We joined the ATP in opposing NG's subpoena. We did so (1) as a matter of principle and (2) as a matter of contractual obligation to the ATP.

While the Western District of Texas required production of the *ATP's* documents, it did not require disclosure of the ATP's identity – leaving that to the New York court. It also left untouched the New York ruling that the New York Reporters' Privilege protected *JCap* from having to make such disclosures. It did not attempt to undo the 79-h rulings in EDNY.

**7.** ***The Texas ATP Documents***: When NG received the documents from the ATP in Texas, it became evident that NG's hopes of showing actual malice were gone. NG had argued to Your Honor in 2021, that the ATP's communications would demonstrate actual malice – that they would show the ATP pressing JCap to add knowing exaggerations and falsehoods into its Report. There was no such thing to be found among the ATP documents and communications. Nothing in the documents indicate any basis for actual malice. They show that JCap believed in the truth and soundness of its Report.

The consequence of a publisher's success in securing the protections of the Reporters Privilege is that the publisher may not then use the protected materials to show that it did not act with actual malice. *See Donnell v. Daily News L.P.,* 76 Misc. 3d 1210(A), 3 (N.Y. Sup. Ct. 2022). JCap's purpose was to honor its contractual obligation of confidentiality with the ATP. Now that the ATP documents have been disclosed, it is evident that NG has nothing to work with to deliver on its burden of proving "actual malice with clear and convincing evidence."[2]

---

[2] Actual malice is defined as publishing a deliberate and knowing falsehood or publishing a falsehood with "reckless disregard" which SCOTUS has defined as a "high degree of awareness of [a statement's] probable falsehood." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). It is this 'subjective" state of mind that must be shown with "clear and convincing evidence." *Id*.

JCap has never relied on any communications with the ATP to defend itself from NG's libel claims, despite the fact that these communications show an utter absence of actual malice. But now that they have been revealed, they ultimately will result in the collapse of NG's actual malice case. If JCap uses them, NG has nothing to work with as to actual malice. If JCap *does not* use them, NG has nothing to work with as to actual malice either. And, of course, if they were not obtained in Texas or they are deemed not admissible, then NG would also have nothing to work with as to actual malice. In all possible outcomes, the Texas documents make no difference as to actual malice. But JCap will have honored and not breached its confidentiality obligation to the ATP.

8. ***The Texas Depositions***: NG is now seeking the depositions of ATP in Texas. We do not see how any deposition of the ATP would make any difference given what the documents show. But, pointless or not, it is also clear that there is likely no way to prevent the depositions. NG will continue to insist that such depositions are "relevant" to actual malice. No doubt, the deposition(s) will take place sometime over the next few months.

9. ***The Anti-SLAPP Counterclaim***: Before the Court is JCap's Counterclaim under New York's anti-SLAPP law, C.R.L. §§ 70-a and 76-a. ECF 101. It was filed in 2022. JCap asserted the anti-SLAPP claim in its motion to dismiss. NG opposed, but Judge DeArcy-Hall ruled that it was applicable and did not dismiss it. After JCap filed its formal counterclaim, NG filed a pre-motion letter to Judge DeArcy-Hall seeking dismissal of the counterclaim, arguing that the anti-SLAPP cause of action was not available in federal court. Judge DeArcy-Hall declined their motion stating that she would not consider it until discovery was closed.

While there were some mixed opinions regarding the availability of the NY Anti-SLAPP in federal courts, that has since become clarified over the recent years. The consensus has now consolidated around the holding that the NY 70-a is applicable in federal court, that it is a state cause of action that must be recognized by a federal court sitting in diversity. *Grifols S.A., v Yu et al,* 2026 WL 836657 (S.D.N.Y. 2026) (citing *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 184–88 (S.D.N.Y. 2024); *Heilbut v. Cassava Sciences, Inc.*, F. Supp. 3d 551, 567–68 (S.D.N.Y. 2025)).

10. ***JCap's Motion for Summary Judgment and the Substance of the Case***: JCap has been working on its motion for summary judgment. As Your Honor has noted, Judge DeArcy-Hall requires that a 56.1 Statement and supporting documents accompany the pre-motion letter.

The work on the MSJ has been set back by (1) the motion practice in Texas, (2) the ATP's appeal to the 2nd Circuit; (3) NG's recent time consuming and ugly motion for sanctions; (4) the still needed update of discovery from NG and Barrick; and (5) the upcoming depositions in Texas. All have consumed much in time and cost for JCap. No doubt NG would object to any MSJ before their Texas depositions.

**11.** ***The Anti-SLAPP Merits and the Prospects of the Case***: Here are the prime features of this case as it now stands:

   a. With the disclosure of the ATP Texas documents, it has become apparent that NG has no evidence to work with to meet its burden to prove "***actual malice*** *with clear and compelling evidence*." All the documents show is that JCap believed confidently in the substance of its Report.

   b. NG's central libel claim against JCap for calling NG's FS2012 "***misleading***" has been dispositively crippled by the revelation of NG documents that show:

   i. that NG's own engineers in 2020 would no longer sign on to the FS2012 because they viewed it as outdated and "*misleading*"; and
   ii. that NG's 50/50 partner on the Donlin project, Barrick Gold, took the view that continued use of the FS2012 by NG could be "*misleading to the market*."

   c. NG's claim that JCap's *cost projections* for Donlin were "false" was itself shown false by NG's own 2020 Gap Study which presented *cost projections* that were closer to those made by JCap's Report than by its own FS2012. JCap's cost projections were therefore "***substantially true***."

   d. JCap's ***opinion*** defense will, on Motion for Summary Judgment be dispositive. The bulk of NG's claims pertain either a) to predictions and projections which are by definition matters of opinion; and b) statements about Donlin that are based on disclosed public documents identified, linked to and quoted in JCap's Report. Those too are non-actionable opinion. Most short report cases in New York are terminated on the opinion ground alone. That is partly because New York State's Constitution mandates a more protective opinion defense than does the 1st Amendment. *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 249 (Ct. App. 1991). *Immuno* provides that statements which, standing alone, may appear to be factual are deemed opinion when seen in a broader context.

**12.** ***JCap's Anti-SLAPP Counterclaim***: This also means that NG's exposure to the anti-SLAPP counterclaim has been magnified. NG will not be able to show that its libel suit has a "*substantial basis in law or fact*" as the anti-SLAPP law requires if NG is to escape the mandatory anti-SLAPP remedies due JCap: NG will not be able to demonstrate "actual malice with clear and convincing evidence;" NG will not be able to overcome the more generous opinion defense that the N.Y. Constitution requires; and NG will not be able to prove that its FS2012 was not "misleading" or that JCap's projected costs were not "substantially true."

   a. JCaps's anti-SLAPP Counterclaim is all the more powerful because NG knew that its FS2012 was "misleading." NG knew that shortly *before* the Report was

published and *before* NG sued JCap for calling the FS2012 "misleading." That makes NG's libel suit all the more abusive.

b.  NG's effort to block discovery of these materials—including the Gap Study projections which vindicate JCap's projections—compounds NG's exposure to the anti-SLAPP law.

c.  NG's SLAPP action was brought and maintained to suppress and punish speech that is *legitimate opinion* or *substantially true*. It was also brought to out and intimidate the ATP short seller so that NG management could continue to exercise annual stock options at elevated values. JCap is a small actor in this case. Of its two principals, Tim Murray departed JCap a few years ago and works in Australia. The lone principal Anne Stevenson-Yang is not well and lives with her daughter in Taiwan. She continues to write, recently publishing an op-ed on China for the *New York Times*, and is working on a novel.

If NG resists updating its Post-May 2020 discovery, then we may seek the Court's intervention. NG should advise the Court of its remaining needs; we will meet and confer with them on all these issues to resolve them; and we should then have a conference on a concluding schedule shortly after the Texas depositions are done.

Respectfully Submitted,

*/s/ David Korzenik*
David Korzenik

*Counsel for Defendant*
*J Capital Research USA LLC*